UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN H. SOKOLOWSKI and CHRISTOPHER H. SOKOLOWSKI, <br><br> Plaintiffs <br><br> - against - <br><br> DIGITAL CURRENCY GROUP, INC., BARRY E. SILBERT, and SOICHIRO "MICHAEL" MORO, <br><br> Defendants. | Electronically Filed <br><br> Civil Action No. 4:25-cv-00001 <br><br> Hon. Phillip J. Caraballo <br><br> Complaint filed January 2, 2025 |

**MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO DISMISS OF DEFENDANTS
<u>DIGITAL CURRENCY GROUP, INC. AND BARRY E. SILBERT</u>**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

MCCORMICK LAW FIRM
835 W 4th St,
Williamsport, PA 17701

*Attorneys for Defendants Digital
Currency Group, Inc. and Barry E.
Silbert*

# TABLE OF CONTENTS

P<small>AGE</small>

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND ....................................................................................7

    A.  Defendants and Relevant Nonparties ...........................................................7

    B.  Plaintiffs and the Transactions at Issue ......................................................7

    C.  The Alleged Misrepresentations ................................................................12

    D.  The Genesis Bankruptcy and CM's Assignment of All Claims ...............14

ARGUMENT ..........................................................................................................15

  I.   Plaintiffs Lack Standing .............................................................................16

  II.  Plaintiffs Waived Any and All Claims Against DCG and Silbert ...............22

  III.   Plaintiffs Fail to Allege a Claim Under the UTPCPL .............................23

    A.  Plaintiffs Did Not Purchase or Lease Goods or Services from DCG or Silbert ..............................................................................................24

      i.   Plaintiffs Are Not Purchasers or Lessees.............................................24

      ii.  Plaintiffs Had No Commercial Dealings with DCG and Silbert............26

    B.  Plaintiffs Do Not Allege a Purchase or Lease of Goods or Services.........27

    C.  Neither DCG nor Silbert Is Alleged to Have Engaged in Any Unlawful Act or Practice on Which Plaintiffs Justifiably Relied ......................28

  IV.  The Amended Complaint Fails to Allege a Basis for Exercising Personal Jurisdiction Over DCG or Silbert ...........................................................32

CONCLUSION ......................................................................................................35

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*,
731 F.2d 112 (2d Cir. 1984) ................................................................ 19

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*,
170 F.3d 349 (2d Cir. 1999) ......................................................... 21-22

*Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*,
122 F.3d 130 (2d Cir. 1997) .............................................................. 21

*Balderston v. Medtronic Sofamor Danek, Inc.*,
285 F.3d 238 (3d Cir. 2002) ......................................................... 24-26

*Belmont v. MB Inv. Partners, Inc.*,
708 F.3d 470 (3d Cir. 2013) ......................................................... 29-31

*Bolus v. Fleetwood Motor Homes of IN, Inc.*,
2012 WL 3579609 (M.D. Pa. Aug. 17, 2012) ................................... 34

*Branche v. Wells Fargo Home Mortg., Inc.*,
624 F. App'x 61 (3d Cir. 2015) (per curiam) ................................... 25

*Branche v. Wells Fargo Mortg. Co.*,
2013 WL 5954730 (M.D. Pa. Nov. 6, 2013), *aff'd*, 624 F. App'x 61 (3d Cir. 2015) ............................................................................................ 26

*Brownell v. State Farm Mut. Ins. Co.*,
757 F. Supp. 526 (E.D. Pa. 1991) .................................................... 26

*Buck v. Hampton Twp. School Dist.*,
452 F.3d 256 (3d Cir. 2006) ........................................................... 7-8

*Ciolli v. Iravani*,
651 F. Supp. 2d 356 (E.D. Pa. 2009) ............................................... 33

*DeFazio v. Gregory*,
836 A.2d 935 (Pa. Super. Ct. 2003) ................................................ 27

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*,
    566 F.3d 94 (3d Cir. 2009) ................................................................ 32-33

*Francis v. Humana, Inc.*,
    2025 WL 365687 (M.D. Pa. Jan. 31, 2025) .................................... 30

*Gemini Phys. Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    40 F.3d 63 (3d Cir. 1996) ................................................................. 16

*Gregg v. Ameriprise Fin., Inc.*,
    245 A.3d 637 (Pa. 2021) ................................................................. 29

*Henehan v. Penn Anthracite Colliers Co.*,
    2023 WL 4854831 (M.D. Pa. July 11, 2023) .................................. 30

*IMO Indus., Inc. v. Kieckert AG*,
    155 F.3d 254 (3d Cir. 1998) ............................................................ 33

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ........................................................................ 32

*ITT Corp. v. Lee*,
    663 F. App'x 80 (2d Cir. 2016) ........................................... 16-17, 23

*Katz v. Aetna Cas. & Sur. Co.*,
    972 F.2d 53 (3d Cir. 1992) ........................................................ 24-26

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
    337 F.3d 314 (3d Cir. 2003) ............................................................ 22

*Legal Cap., LLC v. Med. Pro. Liab. Catastrophe Loss Fund*,
    750 A.2d 299 (Pa. 2000) ................................................................. 18

*Loc. Union 97, Int'l Bhd. of Elec. Workers v. Niagra Mohawk Power Corp.*,
    67 F.4th 107 (2d Cir. 2023) ............................................................ 22

*Loften v. Diolosa*,
    2008 WL 2994823 (M.D. Pa. July 31, 2008) ................................. 30

*Lutz v. Portfolio Recovery Assocs., LLC*,
    49 F4th 323 (3d Cir. 2022) ............................................................. 20

*Morse/Diesel, Inc. v. Trinity Indus., Inc.*,
    859 F.2d 242 (2d Cir. 1988) ........................................................... 17

*In re Motors Liquidation Co.*,
    689 F. App'x 95 (2d Cir. 2017) ................................................................... 18-20

*Odell v. CIT Bank*,
    2017 WL 3675401 (E.D. Pa. Aug. 24, 2017) ................................................... 30

*Rector v. Calamus Grp., Inc.*,
    794 N.Y.S.2d 470 (N.Y. App. Div. 2005) ....................................................... 23

*Remick v. Manfredy*,
    238 F.3d 248 (3d Cir. 2001) ............................................................................. 33

*S. Seafood Co. v. Holt Cargo Sys., Inc.*,
    1997 WL 539763 (E.D. Pa. Aug. 11, 1997) ..................................................... 34

*Segal v. Zieleniec*,
    2015 WL 1344769 (E.D. Pa. Mar. 24, 2015) ............................................. 27-28

*Shadduck v. Christopher J. Kaclik, Inc.*,
    713 A.2d 635 (Pa. Super. 1998) ....................................................................... 19

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l*,
    198 F.3d 88 (2d Cir. 1999) ............................................................................... 22

*Taylor v. Creditel Corp.*,
    2004 WL 2884208 (E.D. Pa. Dec. 13, 2004) ................................................... 28

*Tracy v. P.N.C. Bank, N.A.*,
    2021 WL 3682198 (W.D. Pa. Aug. 19, 2021) ................................................. 27

*Vertrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*,
    75 F.3d 147 (3d Cir. 1996) ............................................................................... 33

*Vinco Ventures, Inc. v. Milam Knecht & Warner, LLP*,
    2021 WL 4399682 (E.D. Pa. Sept. 27, 2021) ................................................. 34

*Weinberg v. Sun Co., Inc.*,
    777 A.2d 442 (Pa. 2001) .................................................................................. 31

*Wilson v. Dantas*,
    746 F.3d 530 (2d Cir. 2014) ............................................................................ 17

*Wolfe v. Allstate Prop. & Cas. Ins. Co.*,
    877 F. Supp. 2d 228 (M.D. Pa. 2012) ............................................................. 19

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
    854 A.2d 425 (Pa. 2004) ................................................................. 31

### Statutes & Rules

11 U.S.C. § 101(5) ........................................................................... 14

18 U.S.C § 152 ................................................................................ 14

18 U.S.C. § 157 ............................................................................... 14

18 U.S.C. § 3571 ............................................................................. 14

42 Pa. Cons. Stat. § 5322(b) ........................................................... 32

73 Pa. Cons. Stat. § 201-2 .............................................................. 29

73 Pa. Cons. Stat. § 201-(4)(v), (vii), (xxi) ................................... 29

73 Pa. Cons. Stat. § 201-3 .............................................................. 29

73 Pa. Cons. Stat. § 201-9.2 ................................................. 24, 27, 29

Fed. R. Bankr. P. 3001(b) ............................................................... 14

Defendants Digital Currency Group, Inc. ("DCG") and Barry E. Silbert respectfully submit this memorandum of law in support of their Motion to Dismiss [ECF No. 25] the Amended Complaint filed by Plaintiffs Stephen H. Sokolowski and Christopher H. Sokolowski ("Plaintiffs") [ECF No. 22] with prejudice.[1]

## PRELIMINARY STATEMENT

The Amended Complaint ("AC") **_still_** fails to plead Plaintiffs' standing to sue on their sole cause of action under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").  It fails to allege any facts that, if credited, would plausibly establish key elements of a UTPCPL claim.  And it fails to allege any facts to support personal jurisdiction over Defendants.  Plaintiffs filed the Amended Complaint—in lieu of responding to Defendants' motion to dismiss—after reviewing all of Defendants' arguments for dismissal [ECF No. 17]. Yet, despite adding or modifying 44 paragraphs and adding seven new exhibits comprising hundreds of pages, Plaintiffs fail to address **_any_** of the dispositive arguments Defendants raised.  All but six of the new allegations have nothing to do with Defendants, and those six consist entirely of unsupported labels, legal conclusions, and fact-free assertions that must be disregarded on a motion to

---

[1] Unless otherwise noted, all case and other citations omit internal citations, quotation marks, or alterations, and all emphasis is added.  References to "AC" refer to the Amended Complaint, and references to "Ex." refer to Exhibits filed concurrently with this brief, unless context dictates otherwise.

dismiss.  As the Amended Complaint confirms, Plaintiffs cannot plead any claim against Defendants, and no amount of further amendment will change that.

The Amended Complaint continues to suffer from the same fatal defects as the original.  Plaintiffs—acting pro se, through a pleading "most[ly] … written by AI models"—again assert a single UTPCPL claim based on loan transactions to which they were not parties, against Defendants who also were not parties to those loans and with whom Plaintiffs never interacted.  The claim itself was also waived in the governing loan documents at the outset of the transactions at issue, and Plaintiffs subsequently caused it to be assigned to a third party in a bankruptcy proceeding in exchange for hundreds of thousands of dollars, thereby extinguishing any right to sue Plaintiffs may ever have had.  Once again, Plaintiffs all but admit they either made false statements in the bankruptcy court in violation of federal criminal law or else have asserted a baseless claim in this Court in violation of Federal Rule of Civil Procedure 11.  Accepting that the AI models that drafted the Amended Complaint can do many things, protecting their users from confessing to criminal or sanctionable conduct is not among them.  The Amended Complaint's new allegations and exhibits only confirm these shortcomings.

The case continues to be based exclusively on alleged misstatements that nonparty Genesis Global Capital LLC ("Genesis") purportedly made to nonparty Cryptocurrency Management LLC ("CM") to induce CM to lend it digital assets

under a Master Loan Agreement (the "MLA").  But a glance at the case caption still reveals, and the Amended Complaint still freely admits, that none of the parties to the MLA or the loans are parties in this lawsuit.  Instead, Plaintiffs (the Sokolowski brothers) allegedly owned the lender CM and/or lent assets to it, and Defendants (DCG and Silbert) are corporate affiliates of the borrower Genesis.  This alone dooms Plaintiffs' claim.

The Amended Complaint contains nothing new to support an inference that Plaintiffs have a right to sue in relation to loans to which they were not parties.  The bulk of the new allegations and exhibits concern the circumstances of CM's formation and its onboarding as a lender by Genesis, but none of that helps Plaintiffs.  Far from suggesting that CM and Plaintiffs are interchangeable, as Plaintiffs would have it, the Amended Complaint confirms ***the opposite***:  Genesis refused to substitute CM for Plaintiffs on loans they had already made in their personal capacities, and instead required CM to make its ***own*** loans from its ***own*** account.  And CM's operating agreement provides that Plaintiffs and its other lenders are not personally liable for its debts or obligations or any claims against it, demonstrating that Plaintiffs and CM are not one and the same.  The amendments thus underscore what Defendants argued in their motion to dismiss—the only entity that had any claims relating to the loans at issue was CM, ***not Plaintiffs.***

But the allegations that the Plaintiffs were not the lenders—and therefore never owned the claim—and that Defendants were not the borrowers—and therefore owed no duties to Plaintiffs—is only the beginning.  The governing MLA expressly represents that CM acted for its own account in making the loans, provides that there are no third-party beneficiaries and waives "any and all claims and liabilities" against "any of [Genesis's] parents or affiliates, including but not limited to [DCG]" and its CEO, Silbert (i.e., Defendants).  So, even if Plaintiffs **had been** the actual lenders, they waived the claim and have nothing to assert.

To manufacture a right to sue, Plaintiffs continue to assert that CM was a sham and that they were the true lenders all along.  In fact, the Amended Complaint doubles down on this rather brazen attempt to offensively self-pierce CM's own corporate veil to gain standing, adding dozens of allegations and hundreds of pages of Telegram chats with a Genesis employee, all to the point that Genesis supposedly knew that Plaintiffs were using CM to pool assets and circumvent Genesis's minimum asset lending thresholds.  But, setting aside that Genesis's knowledge about CM has nothing to do with Defendants (and the Amended Complaint contains no allegations otherwise), Plaintiffs' ploy still leads to the conclusion that Plaintiffs are admitting **either** to criminal Bankruptcy fraud and defrauding the buyer of CM's claim, **or** to a violation of Federal Rule of Civil Procedure 11.  This is because when Genesis filed for bankruptcy without repaying

the loans, Plaintiffs caused **CM** (i.e., the entity they now allege is a sham) to assert the associated claim against Genesis by filing in the bankruptcy court a proof of claim subject to federal criminal penalties—thereby representing that **CM** was Genesis's actual creditor.  Then, in exchange for a payment of approximately $740,000—from which, as the Amended Complaint acknowledges, Plaintiffs personally profited—they caused CM to assign and sell to Jefferies Leveraged Credit Products LLC ("Jefferies") its claim against Genesis, together with all "claims and causes of action … arising under or in connection with" that claim.

Accordingly, if, as Plaintiffs allege, CM is indeed a sham and they were the true lenders, then it would have been fraud on the bankruptcy court and Jefferies for CM to file the proof of claim (because Plaintiffs, not CM, were the actual creditors of the estate) and to pocket over $700,000 from selling the claim (because CM had nothing to sell).  And if, as represented in the documents referred to and relied upon in the Amended Complaint, CM—the actual party to the MLA and the loans at issue—was the true lender, then Plaintiffs' allegations in the Amended Complaint would be baseless.  Plaintiffs cannot have it both ways.

Besides, if Plaintiffs **were** the real parties to the loans, then **they** (having personally benefitted from the sale) are bound by the broad and unqualified assignment to Jefferies of any and all claims "arising under or in connection with" the loans.  Such language extinguished the standing of the assignor—whether CM

or Plaintiffs—to sue on *any* cause of action, with no exceptions for UTPCPL claims.  Plaintiffs' new observation that the assignment does not specifically single out UTPCPL or other statutory claims is therefore irrelevant.

For all of these reasons, Plaintiffs lack standing to pursue (and have waived) any claim against Defendants under the UTPCPL.

Beyond that, Plaintiffs' UTPCPL claim fails as a matter of law.  Only plaintiffs who buy or lease goods or services may bring UTPCPL claims, but Plaintiffs and CM are not alleged to be purchasers or lessees, but rather lenders who cannot assert UTPCPL claims, much less against DCG and Silbert, with whom they still allege no commercial dealings.  Plaintiffs also fail to plead any deceptive conduct by DCG or Silbert, neither of whom allegedly had any contact with Plaintiffs *whatsoever* or made *any* representations to Plaintiffs.  Plaintiffs, as such, cannot allege justifiable reliance on anything Defendants said or did.

Finally, while the Court does not even need to reach this argument, there still is no alleged basis to assert personal jurisdiction over DCG or Silbert who are not residents of or alleged to have taken any actions in or directed toward Pennsylvania in connection with the loans at issue.  Plaintiffs' allegation that they are entitled to jurisdictional discovery is both factually unsupported and legally incorrect.

For all of these reasons and those set forth in more detail below, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

## FACTUAL BACKGROUND[2]

### A. Defendants and Relevant Nonparties

Nonparty Genesis, the "entity through which Plaintiffs engaged in [the] lending activities" relevant to this case, allegedly was in the business of borrowing and lending cryptocurrencies.  (AC ¶¶ 6, 78.)  It filed for bankruptcy in January 2023.  (*Id.* ¶ 6.)  Genesis is owned by Defendant DCG, a Delaware corporation headquartered in Connecticut.  (*Id.* ¶ 7.)  Defendant Silbert, a New York resident, is DCG's CEO.  (*Id.* ¶ 9.)  Defendant Soichiro Michael Moro, who is not a party to this motion, was Genesis's CEO until August 24, 2022.  (*Id.* ¶ 10.)  Plaintiffs do not allege they ever interacted with DCG or Silbert in any way or received any information from them.  A single vague allegation purports to describe certain unspecified "marketing materials and communications" from "Genesis and DCG" (*id.* ¶ 78), but the Amended Complaint does not allege that Plaintiffs ever actually received any such information from or about DCG.

### B. Plaintiffs and the Transactions at Issue

Plaintiffs are Pennsylvania residents who allegedly loaned cryptocurrency to

---

[2] The allegations in this section, which are assumed to be true solely for purposes of Defendants' Motion to Dismiss, are drawn from the factual allegations in the Amended Complaint, its exhibits, the documents that are integral to it and on which it relies or that are incorporated therein by reference, and/or on other documents and materials of which the Court may take judicial notice.  *See, e.g., Buck v. Hampton Twp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Genesis in September 2022 at interest.  (*Id.* ¶¶ 2, 4-5, 105.)  Plaintiffs allegedly

made the loans to Genesis through an investment fund, CM.[3]  (*Id.* ¶¶ 8, 22, 31.)

According to the Amended Complaint, Plaintiff Stephen Sokolowski was the sole

owner of CM, but Plaintiff Christopher Sokolowski, as well as another individual

and entity, also signed its operating agreement and provided assets to it to lend on

to Genesis or other cryptocurrency borrowers.  (*Id.* ¶¶ 41, 58, Ex. G.)  CM's loans

to Genesis were governed by an MLA between CM and Genesis.  (AC ¶ 22.)

Plaintiffs admit that "none of the named Plaintiffs (in their personal capacities) nor

any of the named Defendants"—including DCG and Silbert—"were parties to that

agreement."  (*Id.* ¶ 8.)  The MLA, however, designates Plaintiff Stephen

Sokolowski as CM's "authorized agent," and he signed that agreement as CM's

"authorized representative" and "Owner."[4]  (Ex. 1 at GENESIS_DCG_00140477,

---

[3] Plaintiffs allege they formed CM to "circumvent … minimum deposit requirement[s]" (AC ¶ 40) and obtain superior interest rates—a point Plaintiff Stephen Sokolowski confirmed in prolific blogposts sharing crypto research and investment advice on the Prohashing website, where he is CTO (*see id.* Ex. E at 1). *See, e.g.*, Steve Sokolowski, *Crypto lending untruths – Part 1:BlockFi*, #Prohashing Blog (Jan. 22, 2023), https://prohashing.com/blog/crypto-lending-untruths-part-1-blockfi (last visited Mar. 18, 2025).

[4] Plaintiffs did not annex a copy of the MLA as an exhibit to their Amended Complaint, but because it is central to the transactions on which they base their claims, the Court may consider it on this motion.  *See Buck*, 452 F.3d at 260.  The MLA incorporates a "Master Loan Agreement," for transactions in which CM was acting as "Borrower" and Genesis as "Lender" (Ex. 1 at GENESIS_DCG_00140455), a "Master Borrow Agreement," pursuant to which Genesis acted as "Borrower" and CM as Lender (*id.* at 140477), and a "Tri-Party

(….continued)

140495-96.)

Plaintiffs allege that they are not bound by the MLA's provisions (AC ¶ 22), and that **they** made loans to Genesis "using simple one-page term sheets" that contained the basic terms of the loans (*see id.* ¶ 83). These allegations, however, are inconsistent with the MLA, which defines CM—not Plaintiffs—as "Lender." (Ex. 1 at GENESIS_DCG_00140477-78; *see generally id.* at 140479-82.) On their face, moreover, the loan term sheets form an integral part of and incorporate all terms of the MLA. (*See id.* at 140479 (defining "Loan Term Sheet"); *id.* at 140492 (providing that MLA "and all Loan Term Sheets constitute the entire Agreement among the parties"); *id.* at 140497 (form of term sheet "incorporates all of the terms of the Master Borrow Agreement between Genesis and Borrower").)

The MLA expressly waives "any and all claims and liabilities" against DCG and Genesis's other affiliates. (*See id.* at 140493.) For example, the MLA's "Successors and Assigns" provision broadly provides that "[n]either this Agreement nor any provision hereof, nor any Exhibit hereto or document executed or delivered herewith, or Loan Term Sheet hereunder, shall create any rights in favor of or impose any obligation upon any person or entity other than the parties

─────────────────────

Settlement Agreement" among CM and various Genesis entities, allowing those entities to settle CM's cryptocurrency transactions (*id.* at 140498). Citations to the MLA herein are to the "Master Borrow Agreement" portion.

hereto." (*Id.*)  The MLA further provides, "[f]or the avoidance of doubt," that

"***any and all claims and liabilities against Genesis arising in any way out of this***

***Agreement are only the obligation of Genesis, and not any of its parents or***

***affiliates, including but not limited to [DCG]***," and that "none of Genesis' parents

or affiliates shall have any liability under this Agreement."  (*Id.*)  Thus, the MLA

makes absolutely clear that the loan transactions entered into under that

agreement—or any "document delivered" with such a transaction—cannot give

rise to any claims for or against ***anyone*** except the parties themselves (or their

permitted successors and assigns).

Plaintiffs allege that they "never intended to convey ownership or title" of

the loaned digital assets to CM (AC ¶ 36) and that "[n]o reasonable third party"

would have believed that CM was "a genuine … business." (*Id.* ¶ 39.)  The MLA,

by contrast, establishes that CM is an actual, legitimate entity.  Among other

things, it represents that CM "is acting for its ***own account***," "has the power … to

enter into the Loans contemplated hereby and to perform its obligations,"

maintains "necessary licenses and registrations to operate," and has "the right to

lend [the] Loaned Assets … free and clear of all liens and encumbrances other than

those arising under" the MLA.  (Ex. 1 at GENESIS_DCG_00140488-89.)  CM

likewise represented that the MLA and the loans thereunder "constitute[] ***a legal,***

***valid, and binding obligation enforceable against it*****.**"  (*Id.* at 140488.)[5]

Similarly, Plaintiffs added an allegation in their Amended Complaint that "Genesis understood at all times that it was working with [Plaintiffs] directly and individually."  (AC ¶ 44.)  But Plaintiffs' new exhibits contradict that assertion. Rather, they confirm that CM was an independent entity and that both Plaintiffs and Genesis viewed it as such.  For instance, CM's operating agreement makes clear that "[n]o lender or owner of this LLC"—including Plaintiffs—"shall be personally liable for the expenses, debts, obligations, or liabilities of the LLC, or for claims made against it."  (*Id.* Ex. G § 16.)  Meanwhile, after forming CM, Plaintiff Stephen Sokolowski asked Genesis whether he could simply change his existing, personal account "to be owned by the LLC, so that way you don't have to

---

[5] These same provisions are at odds with Plaintiffs' repetitive allegations that the loans they made to Genesis were "consumer" and "household" transactions exclusively involving their own, personal digital assets.  (AC ¶¶ 2, 4-5, 28, 30-32, 35-37, 114, 130, 143.)  Those assertions are also belied by Exhibits E and F to Plaintiffs' Amended Complaint.  In Exhibit E, a media interview with Plaintiff Stephen Sokolowski, he admitted that CM was ***not*** used solely to invest his own and his brother's personal, household assets with Genesis, but that it was a "fund" that pooled together Plaintiffs' assets with Prohashing's business "reserve"—i.e., "money that the company uses to pay bills and things like that"—as well as with assets from "two other people … who are involved in it."  (*Id.* Ex. E at 1-2, 11-13.) And Exhibit F, a Telegram chat conversation with Genesis, shows that CM would withdraw funds to cover "employee salaries."  (*Id.* Ex. F at 57.)  If necessary, Defendants reserve the right to challenge Plaintiffs' claim in the future on the additional ground that the transactions at issue were not primarily for a consumer or household purpose.

close out and reopen loans." (*Id.* Ex. H at 21.)  Genesis informed him that it could not fulfill his request, and CM would instead have to be onboarded as a new client with its own account, all of his personal loans would have to be closed, and CM would have to open new loans in its own name.  (*Id.*)  As part of that onboarding process, Genesis conducted due diligence on CM as its new counterparty.  (AC ¶ 47, Ex. K.)  Consistent with the foregoing, Genesis treated CM as an independent entity, separate from Plaintiffs, throughout their relationship.  For instance, when Stephen Sokolowski subsequently asked Genesis to transfer his personal loans to CM, Genesis told him that they could not transfer the loans, as a legal matter, and that Mr. Sokolowski would need to redeem his loans and then open new loans with new term sheets in CM's name.  (*Id.* Ex. F at 9-11.)  Then, when Steven Sokolowski asked if Genesis could transfer funds from CM's account to his personal bank account, Genesis explained that they could only transfer CM's funds to an account in CM's name.  (*Id.* at 52.)

### C. The Alleged Misrepresentations

Plaintiffs allege that in September 2022, they decided to renew their loans to Genesis after receiving a balance sheet from a nonparty Genesis employee that "purport[ed] to show Genesis's financial condition as stable" and discussing that balance sheet with him.  (AC ¶ 94; *see also id.* ¶¶ 11, 95-97, 105.)  Plaintiffs contend that the balance sheet was "fraudulent" because it allegedly misclassified a

"$1.1 billion unsecured, 10-year promissory note from DCG as a 'current asset'"
(instead of a "long-term asset"), which allegedly portrayed Genesis as stable when
it purportedly "faced significant financial instability." (*Id.* ¶¶ 94.b, 98-101,
103-04.) Plaintiffs do not, however, allege that Defendants DCG or Silbert had
any role in preparing the Genesis balance sheet, determining how Genesis should
classify the note, or deciding to share the balance sheet with Plaintiffs. Nor do
Plaintiffs allege that DCG or Silbert made any statements to them or publicly about
the balance sheet. Rather, Plaintiffs allege merely that DCG—at Silbert's
direction—made the promissory note purportedly to shore up Genesis's equity, that
Silbert signed the promissory note and that he "knew or should have known" at
some unidentified point that treating it is as a current asset "misled anyone viewing
the statement into believing Genesis was financially sound." (*Id.* ¶¶ 90, 93, 103,
109.) Plaintiffs assert that "DCG, through Silbert and Moro, orchestrated and
approved the presentation of Genesis's financial condition" (*id.* ¶ 111), but there
are no factual allegations supporting this assertion. Indeed, there are no allegations
of any conduct by DCG or Silbert, other than discussions about DCG's various
options for preserving or disposing of its ownership interest in Genesis. (*Id.*
¶¶ 116-28.)[6]

---

[6] Plaintiffs devote substantial allegations to describing a lending program
that Genesis had with a different cryptocurrency company called Gemini, through
(....continued)

### D. The Genesis Bankruptcy and CM's Assignment of All Claims

As a result of Genesis's bankruptcy filing in January 2023, Plaintiffs' "cryptocurrency assets and US Dollars" allegedly "were lost or severely diminished." (*Id.* ¶ 130.) Plaintiffs—subject to federal criminal penalties—caused CM to assert a claim against the Genesis bankruptcy estate as the creditor under the loans at issue here, but rather than wait to obtain recoveries through the bankruptcy process, Plaintiffs then caused CM to assign and sell its previously filed claims to Jefferies on January 27, 2023.[7] (*Id.* ¶ 131.) Plaintiffs allege that they collectively received $742,142.73 in connection with the sale. (*See id.* ¶ 155.) The Notice of Transfer of Claim (the "Notice")—which was signed by Plaintiff Stephen Sokolowski on behalf of CM as its owner—provides that CM sold all

_____

which Gemini's customers—"[m]any" of whom "held relatively small amounts of cryptocurrency"—purportedly loaned their digital assets to Genesis. (AC ¶¶ 85-89.) Plaintiffs, however, concede that they did not participate in the Gemini program at times relevant to the Amended Complaint and do not allege that they are suing in connection with any transactions under that program (*id.* ¶ 89), so these allegations are irrelevant to the claim here.

[7] Notably, under federal bankruptcy law, a "claim" is a right to payment or equitable remedy for breach. 11 U.S.C. § 101(5). Under the Federal Rules of Bankruptcy Procedure, moreover, a proof of claim generally may only be submitted by "the creditor or the creditor's authorized agent," Fed. R. Bankr. P. 3001(b), and filing a false proof of claim in a bankruptcy proceeding is a federal felony punishable by a $500,000 fine or up to five years in prison, or both, *see* 18 U.S.C §§ 152, 157, 3571. Thus, by causing CM to file a claim and then transfer its claim, Plaintiffs were representing, subject to criminal penalties, that CM was the actual creditor entitled to payment in connection with the loan transactions under the MLA.

"right, title, interest, claims and causes of action in and to, or arising under or in connection with" its claim against Genesis "and each of its … non-debtor affiliates."[8]  (Ex. 2.)  Both DCG and Silbert (its CEO)—i.e., Defendants here—are allegedly non-Debtor affiliates of Genesis.  (*See* AC ¶¶ 7, 9.)[9]

## ARGUMENT

The Amended Complaint fails to allege a UTPCPL claim against Defendants DCG and Silbert for a host of reasons.  In addition to Plaintiffs' lack of standing and their express waiver of claims in the MLA, the Amended Complaint fails to

---

[8] Because the Notice is a document to which the Amended Complaint directly cites and that was publicly filed with the bankruptcy court (AC ¶ 131) and signed by a Plaintiff, it is subject to this Court's judicial notice.

[9] Acting pro se, Plaintiffs subsequently prepared and filed the Complaint and, after Defendants filed motions to dismiss, filed the Amended Complaint. Plaintiffs certified that "[m]ost of the [Amended] Complaint was written by AI models" (AC, Cert. of Use of Generative AI ¶ 2), and Stephen Sokolowski also publicly announced in lengthy posts on both X and Reddit that he produced the Complaint using generative AI technologies and intends to continue posting about the case as it proceeds. *See* Steve Sokolowski, @SteveSokolowsk2, X (Jan. 2, 2025, 3:02 pm), https://x.com/SteveSokolowsk2/status/1874909215455674432; Steve Sokolowski, @Ok-Bullfrog-3052, Reddit (Jan 2, 2025, 3:09 pm), https://www.reddit.com/r/singularity/comments/1hs32ql/announcement_of_the_first_o1_pro_guided_federal/.  Mr. Sokolowsk has since posted regular updates about this matter on X and Reddit. *See, e.g.* Steve Sokolowski, @SteveSokolowsk2, X (Mar. 20, 2025, 4:31 pm), https://x.com/SteveSokolowsk2/status/1902820424343314446; Steve Sokolowski, @SteveSokolowsk2, X (Mar. 26, 2025, 4:36 pm), https://x.com/SteveSokolowsk2/status/1904995802214281690; Steve Sokolowski, @Ok-Bullfrog-3052, Reddit (Mar. 23, 2025), https://www.reddit.com/r/singularity/comments/1ji8wf4/comment/mjhwovb/?context=3.

plead facts plausibly supporting the elements of a UTPCPL claim.  And in any event, the Court lacks personal jurisdiction over DCG and Silbert.

## I.    Plaintiffs Lack Standing

Plaintiffs lack standing to assert a UTPCPL claim.  ***First***, they did not enter into any alleged transactions with Defendants or anyone else and have no rights or claims under the MLA or the loan transactions.  The UTPCPL "contemplates as the protected class only those who purchase goods or services, not those who may receive a benefit from the purchase." *Gemini Phys. Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 65 (3d Cir. 1996); *see also infra* Point III.A.  Plaintiffs, however, admit that neither they nor Defendants are parties to the MLA or any loans at issue.  (AC ¶¶ 8, 22, 31-32.)  The MLA itself unambiguously provides that the only persons with ***any rights*** in respect of the loans are the "parties [t]hereto"—i.e., CM and Genesis—and expressly ***negates*** the rights of anyone else under the MLA or any Loan Term Sheet (which sets the terms of each loan) thereunder.  (Ex. 1 at GENESIS_DCG_00140493.)  New York law, which governs the MLA, enforces such clear contractual language limiting the parties and beneficiaries to an agreement.  *See* Ex. 1 at GENESIS_DCG_00140490 (providing that MLA "shall be construed and enforced under" New York law); *see, e.g.*, *ITT Corp. v. Lee*, 663 F. App'x 80, 83-84 (2d Cir. 2016) (holding that similar language in merger agreement established that target's stockholders had no individual

obligations on which they could be sued); *Wilson v. Dantas*, 746 F.3d 530, 537 (2d Cir. 2014) (third party cannot enforce contract where "there is no evidence that any provisions … grant enforceable rights to any entity other than" the signatories). Indeed, negation clauses like the MLA's even preclude tort liabilities.  *See Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 859 F.2d 242, 248-49 (2d Cir. 1988) (dismissing negligence claims because third-party defendant subcontractors owed no duty to third-party plaintiff where their agreements with general contractor contained "controlling" term providing for "explicit negation of third party beneficiary obligations").  Here, where Plaintiffs admit that they were not Genesis's actual counterparties on any loans, and the MLA explicitly negates third-party beneficiary rights, Plaintiffs cannot assert any claims arising from the loan transactions.  *See, e.g.*, *Wilson*, 746 F.3d at 537.

The new exhibits annexed to the Amended Complaint further confirm the understanding—by **both** Genesis **and** Plaintiffs—that Plaintiffs neither were parties to the loans at issue nor have any rights in respect of those loans against Genesis, much less DCG or Silbert.  For instance, the exhibits establish that Genesis would not let Plaintiff Stephen Sokolowski (i) transfer his personal loans to Genesis into CM's name, but rather required him to close those loans and for CM to open new loans in its own name under its own account; or (ii) transfer CM's funds to his personal bank account but would only agree to transfer them to CM's

17

account.  (AC ¶ 47; *id*. Ex. F at 9-11, 52; *id*. Ex H at 21.)  Likewise, Genesis

conducted independent diligence on CM as a new customer before allowing it to

open an account.  (AC ¶¶ 46-47; *id*. Ex. K.)  Not only that, but Plaintiffs

themselves signed CM's operating agreement, which declares that "[n]o lender or

owner of" CM would be "personally liable" for CM's expenses, debts, or

obligations, reflecting their ***own*** understanding that CM was a distinct entity from

themselves as individuals, and that CM—not they—was entitled to the rights and

responsible for the obligations under the loans it made.  (*Id.* Ex. G at 5.)

***Second***, even if Plaintiffs may ever have had a UTPCPL claim against

Defendants (and they did not), they assigned it to Jefferies in the Genesis

bankruptcy, extinguishing their right to assert it here.  CM—acting through its

agent Plaintiff Stephen Sokolowski—assigned and sold not only its claims under

the MLA against Genesis, but also any "claims or causes of action in and to, or

arising under or in connection with," that claim, whether asserted against Genesis

or its "non-debtor affiliates"—including DCG and Silbert.  (AC ¶ 131; Ex. 2.)  An

assignment, unless qualified, extinguishes the assignor's rights while transferring

them to the assignee.  *Legal Cap., LLC v. Med. Pro. Liab. Catastrophe Loss Fund*,

750 A.2d 299, 302 (Pa. 2000); *accord In re Motors Liquidation Co.*, 689 F. App'x

95, 96 (2d Cir. 2017) ("An unequivocal and complete assignment extinguishes the

assignor's rights against the obligor and leaves the assignor without standing to sue

the obligor." (quoting *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984))).  UTPCPL claims are not exempt from general assignments made using language strikingly similar to the Notice.  *See Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 877 F. Supp. 2d 228, 231 (M.D. Pa. 2012) (holding UTPCPL claims transferred by assignment of "any and all rights, claims and causes of action arising out of" insurer's failure to defend).

Here, CM's assignment of all claims "arising under or in connection with" any claim against Genesis or its affiliates transferred any UTPCPL claims, which arise exclusively from alleged loan transactions under the MLA.  *See Shadduck v. Christopher J. Kaclik, Inc.*, 713 A.2d 635, 638 (Pa. Super. 1998) (enforcing arbitration clause as to UTPCPL claims "arising out of, or relating to" contract where they are not "temporally and factually distinct" from breach of contract and are based upon "the same factual averments").[10]  It makes no difference that CM was the actual party to the MLA and the assignment and sale to Jefferies because, *if*, as Plaintiffs allege, they ever had any standing to sue, then it is because they are indistinguishable from CM, in which case, CM's claims and Plaintiffs' supposed

---

[10] Plaintiffs' new allegation that "no assignment document relevant to this case mentions statutory, consumer protection, or UTPCPL claims" only supports this conclusion.  (AC ¶ 134.)  As Plaintiffs concede, nothing in the relevant agreement carves out statutory, consumer protection, or UTPCPL claims from CM's broad and unqualified assignment of claims arising in connection with the underlying claim transferred to Jefferies.

claims would necessarily be ***one and the same***.  Plaintiff Stephen Sokolowski admits in the Amended Complaint that CM sold ***his*** claim, (AC Ex. E at 15 ("[T]hat was why I decided to sell ***my claim*** because I don't want to stick around in this bankruptcy….")), and Plaintiffs allege they personally received $742,142.73 in exchange for that sale (AC ¶ 155).  Plaintiffs allege that Genesis "entered into [the] loans" at issue "***with Plaintiffs*** using simple one-page term sheets" (*id.* ¶ 83), which are part of and incorporate the terms of the MLA (*supra* Factual Background § B).  In fact, Plaintiffs even seek to recover through this action the "exact coins" that CM lent to Genesis.  (AC ¶¶ 155-56.)  Plaintiffs' purported UTPCPL claim and CM's claims under the MLA and Notice therefore are inseparable, and CM's assignment—for which Plaintiffs were compensated—also assigned and extinguished any purported claims Plaintiffs may have had.  *See, e.g.*, *In re: Motors Liquidation Co.*, 689 F. App'x at 96.

Plaintiffs cannot evade the MLA's negation clause or the consequences of the Notice through unsupported allegations that the assignment "did not and could not release or waive Plaintiffs' individual claims under UTPCPL."  (AC ¶ 134.) That allegation fails as a barebones legal conclusion.  *See, e.g.*, *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F4th 323, 327 (3d Cir. 2022) (courts "disregard[] … legal conclusions" alleged in complaint).  The allegation is also wrong.  Plaintiffs contend that CM was a sham entity from the start, created solely "to allow

Plaintiffs to circumvent Genesis's minimum deposit requirement" and should be disregarded in this lawsuit.  (AC ¶ 40.)[11]  But, these allegations, even if credited, would simply be ***admissions*** that Plaintiffs were CM's alter egos, and, as such, were fully bound by the terms of the MLA, the loan transactions and the Notice of assignment, with the corollary loss of any standing to sue.  *See, e.g.*, *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997) (nonsignatory is bound by contract as alter ego when, as here, it completely dominates and controls subsidiary in manner that wrongs adverse party, as determined based on same factors that Plaintiffs here concede).  Such admissions likewise estop Plaintiffs from disclaiming the terms of those agreements because, as Plaintiffs acknowledge, they knowingly exploited the MLA and the Notice and received "direct benefits" under those agreements—namely, interest payments under the MLA and a large cash payment for CM's claims under the Notice.  *See, e.g.*, *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (enforcing contract against nonparties who received "several direct

---

[11] *See also* AC ¶¶ 8, 32-40 (alleging that Plaintiffs were at all relevant times "the true beneficial owners of the[ loaned digital] assets," that CM "had no business activities or assets," "no employees," and "no office," shared its registered address with Plaintiffs' home, did not keep corporate books and records, conducted no meetings, resolutions or other activities "separate from the Plaintiffs' personal efforts," had "a complete lack of separate existence, resources and operational identity," and served strictly as a conduit for Plaintiffs to lend their cryptocurrencies and facilitate their "personal financial decisions").

benefits" from it).[12]

In short, Plaintiffs cannot have it both ways. Either—as they caused CM to represent to the federal bankruptcy court subject to criminal penalties—CM is the real party to the MLA, the loans and the Notice, and Plaintiffs never had any personal claims thereunder. Or else, as they alleged subject to Rule 11 in their original Complaint and Amended Complaint, Plaintiffs and CM are effectively one, in which case they are bound by the MLA's negation clause and the assignment. Either way, the UTPCPL claim must be dismissed for lack of standing.[13]

## II. Plaintiffs Waived Any and All Claims Against DCG and Silbert

Additionally, Plaintiffs cannot sue DCG and Silbert because Plaintiffs,

---

[12] *See also Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l*, 198 F.3d 88, 97-98 (2d Cir. 1999) (nonsignatory estopped from "resisting arbitration" under contract where it "derived other benefits under the agreement"), *abrogated in part on other grounds as stated in Loc. Union 97, Int'l Bhd. of Elec. Workers v. Niagra Mohawk Power Corp.*, 67 F.4th 107 (2d Cir. 2023); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (party may not "gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

[13] Additionally, as Plaintiffs acknowledge, the MLA contains arbitration and forum selection clauses that would preclude this lawsuit if enforced. (AC ¶ 22; Ex. 1 at GENESIS_DCG_00140490-91.) In the event that the Court determines that Plaintiffs have standing as lenders and have not waived their claims, DCG and Silbert reserve—and do not waive—the right to argue in the future, if necessary, that the Court should enforce the MLA's arbitration clause against Plaintiffs, dismiss or stay this action, and compel arbitration.

through CM, waived any claims against them.  (Ex. 1 at

GENESIS_DCG_00140493.)  As set forth above, CM—acting through Plaintiffs—

voluntarily and expressly waived "[a]ny and all claims and liabilities … arising in

any way out of this Agreement" as against Genesis's "parents or affiliates,

including but not limited to [DCG]" and Silbert, including to the extent such

claims are based on any "Loan Term Sheet" or "any … document executed or

delivered" with such term sheet.  (*Id.*; *see also supra* Factual Background § B.)

Such provisions are enforceable under New York law, which governs the MLA.

*See, e.g.*, *ITT Corp.*, 663 F. App'x at 83-84; *see also*, *e.g.*, *Rector v. Calamus Grp.*,

*Inc.*, 794 N.Y.S.2d 470, 470-72 (N.Y. App. Div. 2005) (enforcing limitation of

liability provision against nonsignatory because "[a]ssuming that she is a third-

party beneficiary … she is bound by the terms of that contract").  As demonstrated,

Plaintiffs allege that their claims plainly "aris[e] … out of" the MLA, a "Loan

Term Sheet [t]hereunder," or a document—i.e., the allegedly misleading balance

sheet—"delivered [t]herewith" (*see supra* Factual Background § B).  The MLA

thus bars the instant suit.

## III.    Plaintiffs Fail to Allege a Claim Under the UTPCPL

Plaintiffs' claims should also be dismissed because they fail to allege the

elements of a UTPCPL claim.

### A. Plaintiffs Did Not Purchase or Lease Goods or Services from DCG or Silbert

A plaintiff cannot maintain a cause of action under the UTPCPL where "plaintiff lack[ed] any commercial dealings with the defendant." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 57 (3d Cir. 1992). Plaintiffs here do not and cannot allege this basic requirement because, as they admit in their Amended Complaint, they did not enter into ***any transactions with anyone*** (and therefore cannot be purchasers or lessees), and they do not allege any interactions with DCG or Silbert ***at all***.

### i. Plaintiffs Are Not Purchasers or Lessees

Plaintiffs do not allege that ***they*** purchased or leased any goods or services, dooming their claims because the UTPCPL "unambiguously permits only persons who have purchased or leased goods or services to sue." *Id.* at 55; *see also Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 241 (3d Cir. 2002) (same); *see generally* 73 Pa. Cons. Stat. § 201-9.2. Here, Plaintiffs do not allege that they purchased or leased anything. Instead, they allege that a separate entity— CM—entered into the MLA and loaned cryptocurrency to Genesis thereunder. (*E.g.*, AC ¶¶ 8, 22, 32, 131.) Because Plaintiffs admit that "***none of the named Plaintiffs***" were parties to the MLA and "never signed nor agreed to" it "in their individual capacities" (*id.* ¶¶ 8, 22), Plaintiffs cannot be deemed to have engaged in any relevant transaction, precluding them from being "purchasers" under the

UTPCPL.  *See, e.g.*, *Branche v. Wells Fargo Home Mortg., Inc.*, 624 F. App'x 61, 64 (3d Cir. 2015) (per curiam) (affirming dismissal of UTPCPL claim where plaintiff "was not a purchaser of [defendant]'s services, as it was [her] common law husband who obtained the mortgage").

The Amended Complaint tries to circumvent this reality by alleging that Plaintiffs (1) were beneficiaries of CM's MLA because they used CM to aggregate their assets (AC ¶¶ 31-32), and (2) they negotiated the MLA as CM's members or agents (*id.* ¶ 35), but the Third Circuit has rejected both arguments.  In *Katz*, the Third Circuit held that even "intended beneficiaries" of a transaction who are not, themselves, the purchasers do not have a claim under the UTPCPL.  *Katz*, 972 F.2d at 55 (affirming that plaintiff car accident victims could not sue driver's insurance company for concealing additional insurance coverage "because [plaintiffs] did not purchase the … policy [and] lacked standing to bring suit under the CPL").  And in *Balderston*, the Third Circuit similarly held that being a "'decisionmaker' in the 'purchase transaction[]'" did not suffice to enable a plaintiff to assert UTPCPL claims.  *Balderston*, 285 F.3d at 241 (holding that doctor who prescribed surgical screws to his patients who ultimately purchased them was not a "purchaser" under UTPCPL who could sue).  Here, even setting aside that Plaintiffs were ***not*** intended beneficiaries of the MLA (*supra* Point I), if any goods and services were purchased—and they were not (*see infra* Point III.B)—they were purchased by

CM, not by Plaintiffs, and Plaintiffs accordingly cannot sue under the UTPCPL.

### ii.    Plaintiffs Had No Commercial Dealings with DCG and Silbert

Regardless of whether Plaintiffs were purchasers or lessees, they still would have no claims against DCG and Silbert because they fail to allege commercial dealings with either Defendant.  The UTPCPL "is aimed at commercial transactions between consumers *and sellers*, or those in the chain of supply who affirmatively mislead purchasers whose reliance was reasonable and specifically foreseeable."  *Brownell v. State Farm Mut. Ins. Co.*, 757 F. Supp. 526, 533 (E.D. Pa. 1991).  The UTPCPL does not extend "to a plaintiff lacking any commercial dealings with the defendant."  *Katz*, 972 F.2d at 57; *Branche v. Wells Fargo Mortg. Co.*, 2013 WL 5954730, at *4 (M.D. Pa. Nov. 6, 2013) (same), *aff'd*, 624 F. App'x 61 (3d Cir. 2015).

Here, the Amended Complaint alleges only nonparty *Genesis's* purported commercial dealings with CM and Plaintiffs.[14]  Plaintiffs do not allege that they

---

[14] *See, e.g.*, AC ¶ 4 (Plaintiff "engaged with Genesis's platform"); *id.* ¶ 28 ("assets loaned to Genesis"); *id.* ¶ 29 (describing how "Genesis represented itself"); *id.* ¶ 41 ("Genesis employees then suggested"); *id.* ¶ 66 ("Genesis employees communicated directly" with Plaintiffs); *id.* ¶ 76 (describing "Genesis's marketing and communications with Plaintiffs"); *id.* ¶ 77 ("Genesis provided a simplified Web dashboard"); *id.* ¶ 83 ("Genesis entered into loans with Plaintiffs" and "consistently offered relatively modest interest rates"); *id.* ¶ 85 (describing "Genesis's claim that it catered solely to sophisticated, institutional clientele"); *id.* ¶¶ 94-95, 105 (Plaintiffs renewed loans with Genesis after interacting with Genesis employee).  Indeed, Plaintiffs' new exhibits to their Amended Complaint include
(....continued)

had any commercial dealings or communications with DCG or Silbert.  (*Supra*

Factual Background § C.)  Nor do Plaintiffs allege that DCG or Silbert were

somehow in the "chain of supply" for the MLA or any of the loans thereunder.

Indeed, Plaintiffs do not allege that DCG and Defendant Silbert sold or leased

anything at issue here, precluding any UTPCPL claim against them.

### B. Plaintiffs Do Not Allege a Purchase or Lease of Goods or Services

The Amended Complaint independently fails to plead a UTPCPL claim

because it does not allege a purchase or lease of goods or services.  73 Pa. Cons.

Stat. § 201-9.2; *see Tracy v. P.N.C. Bank, N.A.*, 2021 WL 3682198, at *1 (W.D.

Pa. Aug. 19, 2021) (dismissing UTPCPL claim where "complaint does not allege

with any degree of clarity what was purchased").  Pennsylvania courts construe the

term "purchase" according to its "common and approved usage," that is, "to obtain

(as merchandise) by paying money or its equivalent: buy for a price …." *DeFazio

v. Gregory*, 836 A.2d 935, 939 (Pa. Super. Ct. 2003).  Where, as here, Plaintiffs are

lenders, rather than purchasers or lessees, they by definition "cannot obtain relief

under the plain language of the statute."  *See Segal v. Zieleniec*, 2015 WL

1344769, at *4 (E.D. Pa. Mar. 24, 2015) ("In funding loans to Israeli borrowers

through the Trust Agreements, [plaintiff] did not purchase a good or service."); *see*

---

reams of chat history with **Genesis** employees—but **no communications with any
DCG employee or Silbert**.  (*See Id.* Exs. F, H, I.)

*also Taylor v. Creditel Corp.*, 2004 WL 2884208, at *1, *7 (E.D. Pa. Dec. 13, 2004) (holding that plaintiff's receipt of secured promissory note from company officer in exchange for investment in company "was not a 'purchase' or 'lease' of goods").

Here, neither Plaintiffs nor CM allegedly purchased or leased goods or services from ***anyone***, but, instead, purportedly loaned cryptocurrency ***to*** Genesis. In fact, Plaintiffs acknowledge as much on the first page of the Amended Complaint. (AC ¶ 2 ("[Plaintiffs] did not ***purchase*** securities or equity; they simply ***lent*** their personally owned cryptocurrency and US Dollars to Genesis in exchange for interest[.]").) The word "lease" does not even appear in the Amended Complaint. Instead, Plaintiffs characterize their relationship to Genesis as a lender, not a purchaser or lessee. (*See, e.g.*, AC ¶ 28 ("The assets ***loaned*** to Genesis were Plaintiffs' personal savings"); *id.* ¶ 31 ("Plaintiffs' intention was to safely ***lend*** their personally owned assets"); *id.* ¶ 83.a ("These ***loans*** … involved ***loaning*** a single asset and receiving back that same asset at maturity").) Allegations of "loaning" assets are insufficient to plead that Plaintiffs purchased or leased goods or services, defeating their UTPCPL claim. *See Segal*, 2015 WL 1344769, at *4.

### C. Neither DCG nor Silbert Is Alleged to Have Engaged in Any Unlawful Act or Practice on Which Plaintiffs Justifiably Relied

The Amended Complaint fails for yet other reasons: Plaintiffs do not allege

unlawful acts or practices by DCG or Silbert—let alone ones on which Plaintiffs

justifiably relied.  *See Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa.

2021) (listing unlawful acts and justifiable reliance as elements of any UTPCPL

claim).  UTPCPL plaintiffs must allege that defendants committed one of several

enumerated "[u]nfair methods of competition" or "unfair or deceptive acts or

practices."  73 Pa. Cons. Stat. §§ 201-2; 201-3; 201-9.2.  While Plaintiffs purport

to allege three such violations (AC ¶ 139), the Amended Complaint does not plead

any facts to support the assertions that DCG or Silbert misrepresented any goods or

services as having characteristics they did not or as being "of a particular standard,

quality or grade," nor that DCG or Silbert engaged "in any other fraudulent or

deceptive conduct" in violation of the UTPCPL's catchall provision.  *See* 73 Pa.

Cons. Stat. § 201-2(4)(v), (vii), (xxi).

Setting aside Plaintiffs' failure to allege that they purchased or leased any

goods or services, the Amended Complaint does not allege ***any*** representations by

DCG or Silbert about ***anything at all***.  (Factual Background § A.)  Plaintiffs, in

other words, "have not alleged any conduct" by DCG or Silbert, "deceptive or

otherwise, that caused them" to enter into the MLA or any loan transaction with

Genesis.  *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 499 (3d Cir. 2013)

(dismissing UTPCPL claim against executive of an investment advisor who was

not alleged to have done anything to induce plaintiffs to invest in another

executive's Ponzi scheme).  Plaintiffs generically allege that unnamed "Defendants" purportedly "represent[ed] that their lending platform was stable, well-capitalized, and secure," (AC ¶ 139.a), but such collective assertions—"without any differentiating averments" that "articulate the conduct of each Defendant alleged to constitute a violation of the UTPCPL"—are patently deficient.  *Loften v. Diolosa*, 2008 WL 2994823, at *8 (M.D. Pa. July 31, 2008). Moreover, the only allegations referring to such representations concern statements made by ***Genesis***, ***not DCG or Silbert***.  (*See, e.g.*, AC ¶¶ 76, 91-92, 94-95.) Plaintiffs cannot plead a UTPCPL violation where, as here, the Amended Complaint "aver[s] that Plaintiff[s] had no contact with [Defendants] whatsoever." *Loften*, 2008 WL 2994823, at *8; *see also, e.g.*, *Odell v. CIT Bank*, 2017 WL 3675401, at *7 (E.D. Pa. Aug. 24, 2017) (dismissing UTPCPL claim because plaintiff did not "allege facts that make out unfair or deceptive practices"); *accord Henehan v. Penn Anthracite Colliers Co.*, 2023 WL 4854831, at *8 (M.D. Pa. July 11, 2023) (similar).[15]

---

[15] As noted (Factual Background § A, *supra*), Plaintiffs' lone, generic allegation regarding unspecified "marketing materials and communications" from "Genesis and DCG" (AC ¶ 78) is too vague and conclusory to support a plausible UTPCPL claim.  *See, e.g.*, *Francis v. Humana, Inc.*, 2025 WL 365687, at *6 (M.D. Pa. Jan. 31, 2025) (dismissing UTPCPL claim based on allegations that are "conclusory in nature and lack facts to support that Defendant's agents engaged in fraudulent or deceptive conduct").

As for Plaintiffs' allegations that DCG and Silbert entered into a 10-year promissory note with Genesis (AC ¶¶ 9, 109, 111)—even assuming the note were somehow deceptive or improper, and it was not—those allegations still cannot support a UTPCPL claim because Plaintiffs do not and cannot allege that they justifiably relied on or even knew about the note when they purportedly entered into the MLA and loan transactions with Genesis. *See Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001) (plaintiff must allege that "he heard and believed [defendant's] false advertising"); *accord Belmont*, 708 F.3d at 499. Furthermore, the supposedly fraudulent Genesis balance sheet that Plaintiffs allegedly received from and discussed with a Genesis employee (AC ¶¶ 94-96), even if it somehow could be attributed to DCG or Silbert, was external to the loan term sheets and the MLA incorporated therein, which collectively constituted the "Entire Agreement" concerning the loans that Plaintiffs (through CM) entered into with Genesis (*See id.* ¶ 83; Ex. 1 at GENESIS_DCG_00140492, 140497). The MLA's integration clause, too, thus bars Plaintiffs from claiming justifiable reliance on the balance sheet or anything else outside of the MLA and loan term sheets themselves. *See Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 439 (Pa. 2004) (dismissing UTPCPL claims where plaintiffs "explicitly disclaimed reliance on any such representations" contained in informational brochure where they signed agreement with integration clause).

## IV.   The Amended Complaint Fails to Allege a Basis for Exercising Personal Jurisdiction Over DCG or Silbert

While the Court need not even reach this argument, the Amended Complaint should be dismissed as to DCG and Silbert because the Court lacks personal jurisdiction over them.  Neither DCG nor Silbert is a resident of Pennsylvania, nor do Plaintiffs allege any facts indicating that they regularly conduct business in the state.  (AC ¶¶ 7, 9.)  "A federal district court may assert personal jurisdiction over a nonresident … to the extent authorized by [state] law."  *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).  Here, jurisdiction is governed by Pennsylvania's long-arm statute, which extends jurisdiction "to the fullest extent allowed under the Constitution."  42 Pa. Cons. Stat. § 5322(b).  Accordingly, jurisdiction over DCG and Silbert turns on whether they had "certain minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *D'Jamoos*, 566 F.3d at 102 (alterations in the original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Plaintiffs do not and cannot allege that the Court has general jurisdiction over DCG or Silbert, and their failure to allege that Defendants had ***any*** contacts with Pennsylvania or ***any*** interactions with Plaintiffs precludes the conclusory assertion that the Court has specific jurisdiction over them.  (*Compare* AC ¶ 15, *with* Factual Background §§ A, C.)  Indeed, whether evaluated under either the

"traditional test" or the "effects test," DCG and Silbert are not subject to personal

jurisdiction in Pennsylvania in connection with this case.  While the elements of

the tests differ in certain respects, both require allegations that the defendant

"purposefully avail[ed] himself of the privilege of conducting activities in the

forum" or "expressly aimed" tortious conduct at the forum.  *Ciolli v. Iravani*, 651

F. Supp. 2d 356, 365, 368 (E.D. Pa. 2009).  But the lack of any alleged conduct by

DCG or Silbert **in or expressly aimed at** Pennsylvania negates these elements.[16]

Accordingly, this Court lacks personal jurisdiction over DCG and Silbert.

In their Amended Complaint, Plaintiffs now request leave to conduct

"limited" jurisdictional discovery (AC ¶ 16), but the request is baseless and should

be denied.  The proposed targets of the discovery—"Defendants' internal

communications … concerning their knowledge of **Genesis's** Pennsylvania

---

[16] *See, e.g.*, *D'Jamoos*, 566 F.3d at 103 (no jurisdiction over suit against manufacturer concerning plane crash in Pennsylvania where manufacturer built and sold airplane in Europe); *Ciolli*, 651 F. Supp. 2d at 368-70 (no personal jurisdiction over defendant's employee whose Pennsylvania contacts were unrelated to plaintiffs' claims; knowledge that plaintiff resided in Pennsylvania was insufficient); *see also Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001) (defendant who allegedly published defamatory letters throughout country did not expressly target Pennsylvania); *IMO Indus., Inc. v. Kieckert AG*, 155 F.3d 254, 267 (3d Cir. 1998) (that plaintiff "reasonably knew that" information would "be forwarded to [plaintiff] in New Jersey" did not suffice to establish jurisdiction); *cf. Vertrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 152 (3d Cir. 1996) (no personal jurisdiction based solely on fact that defendant contracted with Pennsylvania-based plaintiff).

clientele, their directives regarding financial reporting and client communications, and the intended scope and purpose of the $1.1 billion promissory note's accounting treatment" (*id.*)—concern, at most, ***Genesis's*** Pennsylvania contacts, ***not Defendants'***, and have nothing to do with whether DCG or Silbert took actions in or directed at Pennsylvania in connection with Plaintiffs' loans to Genesis. The topics, in short, provide no specific information regarding "the additional [jurisdictional] contacts they hope to find," which is plainly insufficient. *Bolus v. Fleetwood Motor Homes of IN, Inc.*, 2012 WL 3579609, at *11 (M.D. Pa. Aug. 17, 2012) (denying jurisdictional discovery for failure to plead "factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'" (quoting *S. Seafood Co. v. Holt Cargo Sys., Inc.*, 1997 WL 539763, at *8 (E.D. Pa. Aug. 11, 1997))); *see also Vinco Ventures, Inc. v. Milam Knecht & Warner, LLP*, 2021 WL 4399682, at *15 (E.D. Pa. Sept. 27, 2021) (denying request for jurisdictional discovery where plaintiffs "made no effort in the first instance to plead any contacts or expressly aimed conduct" by defendants). Jurisdictional discovery is not permitted based on Plaintiffs' vague hopes. When, as here, Plaintiffs fail to plead any factual basis to suggest that further discovery would allow them to allege sufficient jurisdictional contacts to confer personal jurisdiction, their request must be denied.

## CONCLUSION

For the foregoing reasons, DCG and Silbert respectively request that the

Court dismiss Plaintiffs' Amended Complaint with prejudice.

Dated:  New York, New York
April 22, 2025

Respectfully submitted,

**DAVIS POLK & WARDWELL LLP**

*/s/ Benjamin S. Kaminetzky*
Benjamin S. Kaminetzky (*admitted pro hac vice*)
Daniel J. Schwartz (*admitted pro hac vice*)
Matthew R. Brock (*admitted pro hac vice*)
450 Lexington Avenue
New York, New York 10017
Telephone:   (212) 450-4000
Facsimile:    (212) 701-5800
ben.kaminetzky@davispolk.com
daniel.schwartz@davispolk.com
matthew.brock@davispolk.com

  – and –

**McCORMICK LAW FIRM**

*/s/ Brian J. Bluth*
Brian J. Bluth
PA I.D. 87432
835 West Fourth Street
Williamsport, PA 17701
Telephone:   (570) 326-5131
Facsimile:    (570) 601-0768
bbluth@mcclaw.com

*Attorneys for Defendants Digital Currency Group, Inc. and Barry E. Silbert*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN H. SOKOLOWSKI and CHRISTOPHER H. SOKOLOWSKI,<br><br>                              Plaintiffs<br><br>        - against -<br><br>DIGITAL CURRENCY GROUP, INC., BARRY E. SILBERT, and SOICHIRO "MICHAEL" MORO,<br><br>                              Defendants. | Electronically Filed<br><br>Civil Action No. 4:25-cv-00001<br><br>Hon. Phillip J. Caraballo<br><br>Complaint filed January 2, 2025 |

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.8

This brief complies with L.R. 7.8(b)(2) and the Court's March 18, 2025 order granting Defendants Digital Currency Group Inc. and Barry E. Silbert's Uncontested Motion for Leave to File a Brief in Excess of Fifteen Pages [ECF No. 35], because it does not exceed 35 pages and contains 8,746 words using the word count features of Microsoft Word in 14-point font size and Times New Roman Type Style.

DAVIS POLK & WARDWELL LLP

By:  */s/ Benjamin S. Kaminetzky*
Benjamin S. Kaminetzky (*admitted pro hac vice*)
Attorneys for Defendants Digital Currency Group, Inc. and Barry E. Silbert

New York, New York 10017
Telephone:   (212) 450-4000
Facsimile:    (212) 701-5800
ben.kaminetzky@davispolk.com

## CERTIFICATE OF SERVICE

I hereby certify that the attached Memorandum of Law in Support Of Motion To Dismiss Of Defendants Digital Currency Group, Inc. and Barry E. Silbert, was electronically filed with the court and electronically served upon all counsel on April 22, 2025.

DAVIS POLK & WARDWELL LLP

By:  */s/ Benjamin S. Kaminetzky*
Benjamin S. Kaminetzky (*admitted pro hac vice*)
Attorneys for Defendants Digital Currency Group, Inc. and Barry E. Silbert

New York, New York 10017
Telephone:   (212) 450-4000
Facsimile:   (212) 701-5800
ben.kaminetzky@davispolk.com