# APPENDIX A

**Supplemental Tables**

**Table A-1: Examples of Direct Substantive Dealing with Individual Plaintiffs**

| Summary | Supporting Quotation | Alleged Reason |
|---|---|---|
| Genesis set up chat group including individual Plaintiffs for all comms. | "...I am going to create a broader group with the rest of the folks on our side, will add you in a moment. We can use it for all future communication (lending, trading, settlement etc)." <br><br>(AC Ex. H, at 24) | Client Retention |
| Genesis CFO directly negotiated terms/allocations with Plaintiff Christopher Sokolowski and recognized distinction between personal/household and business funds. | CFO Ballensweig communicated directly with Plaintiff Christopher Sokolowski regarding distinct personal/household vs. PROHASHING LLC funds where the ownership of litecoins was clearly delineated not only between passthrough members, but also between personal/household use and business use. <br><br>(AC ¶ 72) | Acquiring Funds |

| Summary | Supporting Quotation | Alleged Reason |
|---|---|---|
| Multiple Genesis personnel directly worked with non-owner James Webster in depositing his own funds. | J. Webster: "Hi Hanson, I'd like to send some more bitcoin your way. Approximately 11.7 BTC. Is that doable, and what would be the first step?"<br><br>Hanson: "Hey James You want to add 11.7 BTC to the current balance?"<br><br>J. Webster: "Right. 11.718..."<br><br>Hanson: "Sure thing, @DanGenesis can provide BTC address for you"<br><br>Deleted Account [presumably *DanGenesis*]: "this address works"<br><br>J. Webster: "Roger that. Will transfer soonish"<br><br>(AC Ex. H, at 24) | Acquiring Funds |
| Genesis personnel assisted non-owner James Webster in reconciling inconsistent records. | "Hi, I'm trying to reconcile our spreadsheet compared with the September EOM balance and can't account for 1000.00 bits."<br><br>(J. Webster to Genesis, AC Ex. F at 108) | Client Retention |

A-2

| Summary | Supporting Quotation | Alleged Reason |
|---|---|---|
| Genesis personnel acknowledged Plaintiff Christopher Sokolowski's decision-making over his own funds | S. Sokolowski: "...I need to talk to [Plaintiff Christopher Sokolowski] about whether we would just like to withdrawal"<br><br>Genesis Employee: "Understood. Please let us know."<br><br>(AC Ex. F, at 30) | Client Retention |
| Genesis personnel sell Plaintiff Stephen on interest rates and are rebuffed because Stephen has to obtain authorization from other CM LLC depositors | Hanson: "…would you be willing to meet at 3.75%"<br><br>Stephen: "I only have authorization for 4 right now…"<br><br>Hanson: "Okay, sounds good…"<br><br>(AC Ex. F, at 76-77) | Client Retention |
| Genesis personnel confirmed test transaction details directly for Plaintiff Stephen Sokolowski's personal funds. | Extensive back-and-forth confirming small test deposits, e.g., "yes .1 eth landed"<br><br>(Genesis Employee, AC Ex. F, at 53) | Acquiring Funds |

A-3

| Summary | Supporting Quotation | Alleged Reason |
|---|---|---|
| Genesis personnel discussed payroll withdrawals directly with Stephen acting on behalf of non-party PROHASHING LLC. | S. Sokolowski: "good morning—I need $33333.39 for employee salaries this month..."<br><br>(AC Ex. F, at 56) | Client Retention |

**Table A-2: Instances Where Defendants Acknowledge Having Treated CM LLC as a Distinct Entity**

| Summary | Supporting Quotation | Alleged Reason |
|---|---|---|
| Genesis refused direct transfer from Plaintiff's personal account to CM LLC. | Both Briefs, citing Birringer: "'legally we cannot do that'..." (regarding moving funds between Stephen's individual and CM LLC entity accounts).<br><br>(ECF No. 37 at 17, citing AC Ex. F, at 9-11)<br>(ECF No. 38, at 9, citing AC Ex. F, at 9-10) | Avoiding Notice of Regulators |
| Genesis required CM LLC bank account for withdrawals out of Genesis. | Both Briefs, citing Birringer: "'[y]ou will need to have a bank account in the name [of] the entity...We cannot send funds to a personal account.'"<br><br>(ECF No. 37 at 17-18, citing AC Ex. F, at 52)<br>(ECF No. 38, at 9, citing AC Ex. F, at 52) | Avoiding Notice of Banks |
| Genesis personnel requested clarification on LLC ownership during onboarding. | Moro's Brief citing Birringer asking S. Sokolowski to "'clarify the ownership of the LLC.'"<br><br>(ECF No. 38, at 9, citing AC Ex. H, at 27) | Avoiding Notice of Regulators |

| Summary | Supporting Quotation | Alleged Reason |
|---|---|---|
| Genesis conducted formal Due Diligence process additionally on CM LLC. | Both Briefs stating Genesis conducted "independent diligence on CM as a new customer..."<br><br>(ECF No. 37, at 18, referencing AC Ex. K)<br>(ECF No. 38, at 9, referencing AC Ex. K) | Avoiding Notice of Regulators |
| Genesis required CM LLC onboarding instead of converting personal account. | DCG/Silbert's Brief describing Genesis informing S. Sokolowski CM needed to be onboarded separately rather than converting his personal account.<br><br>(ECF No. 37, at 11-12) | Avoiding Notice of Regulators |

**Table A-3: List of Defendants' Misrepresentations**

| Misrepresentation | Why | Citation |
|---|---|---|
| Gemini Earn channel and marketing | Dealings with Gemini implanted belief that Genesis dealt with consumers and was a safe location for consumer assets | (AC ¶¶ 23, 29, 76-81, 85-88) |
| Contradictory positions on CM LLC's formation and status | Genesis suggested creation of LLC to exceed deposit minimums, dealt with depositors individually, but insisted on corporate formalities for regulators and now in their briefs (Appx. A, Table A-1, Table A-2) | (AC ¶ 41 (LLC suggestion)), (AC ¶ 48 (DDQ showing LLC = pass-through)), (AC ¶¶ 66-74 (direct chats)) |
| Employees described Genesis as being safe, stable, and reliable while Genesis extended risky undercollateralized loans | Direct conflict between outward safety claims and hidden risk; capacity to confuse even the diligent. | (AC ¶¶ 76-78, 90) |
| Defendant Moro publicly tweeted that the 3AC losses were finite and they had "moved on" | Tweet reassured Stephen Sokolowski of solvency, and the Court can reasonably infer from the allegations in the AC that tweet also influenced Plaintiff Christopher Sokolowski | (AC ¶ 92) |
| All Defendants personally signed the fraudulent promissory note | Concealed Genesis insolvency and allowed scheme to continue | (AC ¶ 93) |

A-7

| Misrepresentation | Why | Citation |
|---|---|---|
| Genesis employee Griffin Tiedy sent fraudulent balance sheet directly to Plaintiffs | Plaintiffs would have withdrawn all assets but for receiving this balance sheet | (AC ¶¶ 94-101, 105) |
| Genesis functioned as a bank, lending out money at a higher interest rate than paid to depositors, instead of being used for intercompany dealings and fraudulent schemes | Plaintiffs would not have dealt with Genesis had they known the true nature of what Genesis did with deposits | (AC ¶¶ 83-84, Ex. E at 5-6) |

A-8