# APPENDIX B

**Summary of Evidence of Single Enterprise and Disregard for Corporate Separateness**

*(Demonstrating DCG/Silbert treated Genesis & other DCG subsidiaries as interchangeable parts of a single enterprise)*

**I       Strategic & Operational Control by DCG/Silbert over Genesis**

| Evidence of Commingling / Disregard for Corporate Separateness | Supporting AC ¶ or Exhibit | Implication for Veil Piercing / Single Enterprise Operation |
|---|---|---|
| DCG CEO Silbert directly instructed top Genesis personnel (including CEO Moro) to attend DCG board strategy sessions and updates. | AC ¶ 116 (referencing *NYAG Action*, Dkt. No. 40) | DCG dictating Genesis's strategic involvement at the highest levels, treating Genesis leadership as directly accountable and subordinate to DCG's board and strategic direction, not as an independent entity. |
| DCG (Silbert) formulated existential strategic options for Genesis (e.g., "Jettison Genesis," "Shock & Awe" plan) without the full knowledge or input of Genesis's own management. | AC ¶ 117 (referencing *NYAG Action*, Dkt. No. 42) | DCG exercising ultimate control over Genesis's future and operational direction, capable of making decisions to dissolve or fundamentally alter Genesis without its independent management's full participation. |

| Evidence of Commingling / Disregard for Corporate Separateness | Supporting AC ¶ or Exhibit | Implication for Veil Piercing / Single Enterprise Operation |
|---|---|---|
| Silbert (DCG CEO) directed both DCG and Genesis personnel to work "24/7" to fill Genesis's significant "equity hole" by a crucial reporting deadline. | AC ¶ 109 (referencing *NYAG Action*, Dkt. No. 91) | DCG issuing direct operational commands to Genesis personnel to manage Genesis's severe financial crisis, indicative of direct control over Genesis's financial reporting and crisis management. |
| Amidst Genesis withdrawal requests, Silbert (DCG CEO) inquired what "we/DCG" could do to instill confidence in Genesis, blurring the lines of responsibility. | AC ¶ 120 (referencing *NYAG Action*, Dkt. No. 43) | Silbert viewing Genesis's stability crisis and the necessary response as a collective "we/DCG" problem, indicating a unified operational and reputational front rather than distinct corporate responsibilities. |
| Multiple high-ranking DCG employees (beyond Silbert) were extensively involved in communications and decisions regarding the Genesis crisis and its strategic direction. | AC ¶ 121 (referencing *NYAG Action*, Dkt. Nos. 42, 43, 44) | Widespread DCG executive involvement in Genesis's core affairs and crisis management, indicating deep operational integration and DCG oversight extending beyond a typical parent-subsidiary holding structure. |

## II     Commingling of Assets and Personnel, and Inter-Subsidiary Resource-Shifting

| Evidence of Commingling / Disregard for Corporate Separateness | Supporting AC ¶ or Exhibit | Implication for Veil Piercing / Single Enterprise Operation |
|---|---|---|
| DCG's "Shock & Awe" plan for Genesis involved Silbert (DCG CEO) becoming Genesis CEO, and DCG contributing assets and the investment team of *another DCG subsidiary, DCGI,* to Genesis. | AC ¶ 117(b) (referencing *NYAG Action*, Dkt. No. 42) | Blatant commingling of leadership (Silbert), assets, and specialized personnel (DCGI team) between DCG, Genesis, and another DCG subsidiary, treating them as interchangeable components of a single enterprise. |
| Silbert (DCG) acknowledged the "Shock & Awe" plan would put assets of DCGI (another DCG subsidiary) "under Genesis creditors," prioritizing DCG shareholder liquidity via a Genesis IPO. | AC ¶ 117(c) (referencing *NYAG Action*, Dkt. No. 42) | DCG demonstrating willingness to sacrifice assets of one distinct subsidiary (DCGI) to benefit another (Genesis) and ultimately DCG shareholders, disregarding corporate separateness and individual subsidiary risk. |
| Moro (then Genesis CEO, acting in concert with DCG) discussed a plan involving "some combination of assets from DCG parent and DCGI [another DCG subsidiary] placed into GGC [Genesis Global Capital]." | AC ¶ 118 (referencing *NYAG Action*, Dkt. No. 91) | Direct plan to transfer and commingle assets from the DCG parent and another distinct DCG subsidiary (DCGI) into Genesis, treating assets across the group as fungible for strategic purposes. |

| Evidence of Commingling / Disregard for Corporate Separateness | Supporting AC ¶ or Exhibit | Implication for Veil Piercing / Single Enterprise Operation |
|---|---|---|
| Silbert (DCG CEO) indicated *Foundry (another DCG subsidiary)* would be brought in to address Genesis's lending issues, with a new hire to help Foundry assess Genesis's loan book. | AC ¶ 119 (referencing *NYAG Action*, Dkt. No. 44) | Utilizing yet another distinct DCG subsidiary (Foundry) and its resources/personnel to solve Genesis's internal business problems, indicative of a centralized resource allocation across the DCG enterprise. |
| Silbert (DCG CEO) stated DCGI (another DCG subsidiary) would "play a role" in addressing Genesis's equity "hole" through pledges or the downstreaming of DCGI's assets. | AC ¶ 119(b) (referencing *NYAG Action*, Dkt. No. 44) | Clear intention by DCG leadership to use assets of one DCG subsidiary (DCGI) to financially shore up another financially distressed subsidiary (Genesis), ignoring separate corporate financial structures. |
| Genesis, DCG, and other DCG subsidiaries (Grayscale, CoinDesk) engaged in complex lending/investment strategies involving GBTC (a product of DCG subsidiary Grayscale). | AC ¶ 124, ¶ 125(a) | Coordinated financial and investment strategies across the DCG conglomerate, utilizing products of one subsidiary (Grayscale's GBTC) in the operations and dealings of others (Genesis, DCG itself). |
| DCG, Genesis, and Gemini agreed to pledge 30.9M GBTC shares (nearly half of DCG conglomerate's holdings, a product of DCG subsidiary Grayscale) as collateral for Gemini's consumer loans to Genesis. | AC ¶ 125 (referencing *NYAG Action*, Dkt. No. 52), ¶ 125(a) | Massive use of assets from a DCG subsidiary (Grayscale's GBTC), controlled and deployed by DCG and Genesis, to support Genesis's obligations to an external third party (Gemini). |

## III    Financial Interdependence and DCG Treating Genesis as its Financial Arm/Treasury

| Evidence of Commingling / Disregard for Corporate Separateness | Supporting AC ¶ or Exhibit | Implication for Veil Piercing / Single Enterprise Operation |
|---|---|---|
| DCG executed a $1.1 billion fraudulent promissory note payable to Genesis, signed by Silbert (DCG/Genesis) and Moro (Genesis), to conceal Genesis's insolvency after the 3AC collapse. | AC ¶ 93 (Ex. B, C) | DCG directly intervening with a massive, non-arm's length financial instrument to artificially prop up Genesis's balance sheet, demonstrating profound financial entanglement and use of Genesis for deceptive purposes. |
| DCG's "Support Genesis" plan involved DCG potentially using its *own resources* and injecting its *own liquidity* to stabilize Genesis's balance sheet if DCG decided to. | AC ¶ 117(d) (referencing *NYAG Action*, Dkt. No. 42) | DCG viewing itself as financially responsible for Genesis's solvency and prepared to use its own funds, blurring the financial distinctions and responsibilities between parent and subsidiary. |
| Silbert (DCG CEO) stated: "I can't raise money at DCG if there is a Genesis bankruptcy risk." | AC ¶ 122(b) (referencing *NYAG Action*, Dkt. No. 45) | Admission of direct financial interdependence: DCG's own financial viability and ability to raise capital was inextricably linked to the (perceived) financial health and stability of its subsidiary, Genesis. |

| Evidence of Commingling / Disregard for Corporate Separateness | Supporting AC ¶ or Exhibit | Implication for Veil Piercing / Single Enterprise Operation |
|---|---|---|
| DCG had borrowed an additional $575 million from Genesis (beyond the $1.1B note) "to fund investment opportunities and to repurchase DCG stock from non-employee shareholders." | AC ¶ 128 (referencing Shareholder Letter), ¶ 128(a) (Bankruptcy Docs.) | Genesis acting as a de facto treasury for DCG, with substantial Genesis funds being upstreamed and used for DCG's own corporate purposes (investments, stock buybacks) rather than solely for Genesis's business. |
| Debt owed by DCG to Genesis (including the $1.1B note and $575M loans) represented up to 50% of Genesis's total assets at the time of its collapse. | AC ¶ 126 | Extreme financial enmeshment where the subsidiary's assets are overwhelmingly constituted by receivables from its parent, indicating a lack of independent financial footing for Genesis. |
| After Genesis halted withdrawals, DCG and Silbert actively sought external investors to provide money to save Genesis from collapse. | AC ¶ 127 | DCG and its CEO taking direct responsibility for rescuing Genesis, acting as if Genesis's failure was DCG's failure. |

| Evidence of Commingling / Disregard for Corporate Separateness | Supporting AC ¶ or Exhibit | Implication for Veil Piercing / Single Enterprise Operation |
|---|---|---|
| Silbert, DCG CEO, prioritizes maintaining "trust and confidence in Genesis" to prevent "money leaving Genesis and depleting our liquidity" | AC ¶ 119(a) (referencing *NYAG Action*, Dkt. No. 44) | Silbert (DCG CEO) refers to money leaving Genesis as depleting "*our*" liquidity, not just Genesis's liquidity. Implies DCG does not have its own separate, diverse set of investors—that DCG's funding is so dependent on Genesis acquiring investors and then loaning that money to DCG that Genesis's failure could singlehandedly cut off DCG's access to capital. |

## IV  Coordinated Messaging, Concealment & Awareness of Veil Piercing Risks

| Evidence of Commingling / Disregard for Corporate Separateness | Supporting AC ¶ or Exhibit | Implication for Veil Piercing / Single Enterprise Operation |
|---|---|---|
| DCG (Silbert) instructed that Genesis management be kept unaware of certain DCG-devised strategic plans for Genesis ("Jettison," "Shock & Awe"), indicating DCG's intent to control Genesis covertly. | AC ¶ 117 (referencing *NYAG Action*, Dkt. No. 42) | DCG intentionally circumventing Genesis's own supposed independent management in critical decision-making, treating Genesis as an operational arm rather than a distinct entity with its own governance. |
| DCG (Silbert) explicitly coordinated "with counsel to ensure best defenses against veil piercing" in the context of plans to financially support Genesis. | AC ¶ 117(d) (referencing *NYAG Action*, Dkt. No. 42) | DCG's own leadership acknowledging that its deep involvement and intermingling with Genesis created a significant risk of veil-piercing claims, showing awareness of the disregarded corporate separateness. |
| Silbert (DCG CEO), Moro (Genesis CEO), and other DCG/Genesis personnel coordinated messaging (e.g., "Genesis Source of Strength Talking Points," caution about being recorded) to present a misleading narrative of Genesis's stability. | AC ¶ 107 (*NYAG Action*, Dkt. No. 69), ¶ 120 (*NYAG Action*, Dkt. No. 43) | Joint effort by DCG and Genesis leadership, directed by DCG, to manage public/lender perception and actively conceal Genesis's true, precarious financial condition, operating as a unified front. |

| Evidence of Commingling / Disregard for Corporate Separateness | Supporting AC ¶ or Exhibit | Implication for Veil Piercing / Single Enterprise Operation |
|---|---|---|
| DCG actively managed communications across its network of subsidiaries to present a unified front of strength and reaffirm "our position" regarding Genesis's stability, asking "is there anything we/DCG can do to further install confidence in genesis?" | AC ¶ 120(a) (referencing *NYAG Action*, Dkt. No. 43) | DCG orchestrating a conglomerate-wide messaging and PR strategy for the benefit of one subsidiary (Genesis), indicating centralized control over external communications and reputational management. |

## V  Merger Considerations Treating Entities as a Single Economic Unit

| Evidence of Commingling / Disregard for Corporate Separateness | Supporting AC ¶ or Exhibit | Implication for Veil Piercing / Single Enterprise Operation |
|---|---|---|
| DCG (Silbert) discussed a potential merger involving DCG, Genesis, and Gemini with DCG and Genesis employees, treating them as a unified economic bloc. | AC ¶ 122 (referencing *NYAG Action*, Dkt. No. 45) | DCG, as parent, considering strategic mergers that involved itself and its subsidiary Genesis as a combined entity, demonstrating a view of them as a single operational and financial unit for M&A purposes. |
| Silbert (DCG) discussed moving DCG subsidiary Grayscale's cryptocurrency assets into Gemini's custody as part of a broader entanglement strategy involving Genesis. | AC ¶ 123 (referencing *NYAG Action*, Dkt. No. 45) | DCG considering strategic redeployment of assets from one distinct subsidiary (Grayscale) to further operational entanglement in the context of maneuvers involving another subsidiary (Genesis) and a third party. |