UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN H. SOKOLOWSKI and CHRISTOPHER H. SOKOLOWSKI,<br><br>                          Plaintiffs,<br><br>- against -<br><br>DIGITAL CURRENCY GROUP, INC., BARRY E. SILBERT, and SOICHIRO "MICHAEL" MORO,<br><br>                         Defendants. | Electronically Filed<br><br>Civil Action No. 4:25-cv-00001<br><br>Hon. Karoline Mehalchick<br><br>Amended Complaint filed March 25, 2025 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS DIGITAL CURRENCY GROUP, INC. AND BARRY E. SILBERT**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

MCCORMICK LAW FIRM
835 W 4th St
Williamsport, PA 17701

*Attorneys for Defendants Digital Currency Group, Inc. and Barry E. Silbert*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ......................................................................................................5

   I.   Plaintiffs Lack Standing ...........................................................................5

     A.  The UTPCPL Claim Neither Accrued to Nor Belongs to Plaintiffs............5

     B.  Plaintiffs' Equitable Estoppel Argument Fails .........................................10

   II.   Plaintiffs Waived Any and All Claims Against DCG and Silbert ...............14

   III.   Plaintiffs Fail to Allege a Claim under the UTPCPL ...............................16

     A.  Plaintiffs Do Not Allege That They Purchased or Leased from Defendants.........................................................................................16

     B.  Plaintiffs Do Not Allege a Purchase or Lease of Goods or Services.........17

     C.  Defendants Are Not Alleged to Have Engaged in Any Unlawful Act or Practice on Which Plaintiffs Justifiably Relied ................................20

   IV.   The Amended Complaint Fails to Allege a Basis for Exercising Personal Jurisdiction Over DCG or Silbert or Obtaining Jurisdictional Discovery ..........28

     A.  Plaintiffs Do Not Allege Personal Jurisdiction .........................................28

     B.  Plaintiffs Are Not Entitled to Jurisdictional Discovery .............................30

CONCLUSION ...................................................................................................31

# TABLE OF AUTHORITIES[*]

PAGE(S)

CASES

*Baker v. Cambridge Chase, Inc.*,
    725 A.2d 757 (Pa. Super. 1999) ............................................................. 6

*Balderston v. Medtronic Sofamor Danek, Inc.*,
    285 F.3d 238 (3d Cir. 2002) .................................................................. 7

*Belmont v. MB Inv. Partners, Inc.*,
    708 F.3d 470 (3d Cir. 2013) ................................................................ 23

*Bolus v. Fleetwood Motor Homes of IN, Inc.*,
    2012 WL 3579609 (M.D. Pa. Aug. 17, 2012) .................................... 30

*Branche v. Wells Fargo Home Mortg., Inc.*,
    624 F. App'x 61 (3d Cir. 2015) ...................................................... 7, 16

*Brownell v. State Farm Mut. Ins. Co.*,
    757 F. Supp. 526 (E.D. Pa. 1991) ...................................................... 17

*Carotek, Inc. v. Kobayashi Ventures, LLC*,
    875 F. Supp. 2d 313 (S.D.N.Y. 2012) ................................................ 25

*Ciolli v. Iravani*,
    651 F. Supp. 2d 356 (E.D. Pa. 2009) ................................................. 28

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*,
    2023 WL 5688392 (Del. Ch. Sept. 5, 2023) .................................. 23, 24, 25, 27

*Commonwealth ex rel. Zimmerman v. PepsiCo, Inc.*,
    836 F.2d 173 (3d Cir. 1988) ............................................................... 19

*Commonwealth v. Navient Corp.*,
    354 F. Supp. 3d 529 (M.D. Pa. 2018) ................................................ 18

---

[*] Unless otherwise noted, all case and other citations omit internal citations, quotation marks, or alterations, and all emphasis is added.

*DeFazio v. Gregory*,
    836 A.2d 935 (Pa. Super. Ct. 2003) .................................................................. 19

*DG BF, LLC v. Ray*,
    2021 WL 776742 (Del. Ch. Mar. 1, 2021) ........................................................ 25

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
    623 F.3d 147 (3d Cir. 2010) ............................................................................ 31

*Frank v. TeWinkle*,
    45 A.3d 434 (Pa. Super. Ct. 2012) .................................................................... 8

*Geist v. State Farm Mut. Auto. Ins. Co.*,
    49 F.4th 861 (3d Cir. 2022) .............................................................................. 5

*Gemini Phys. Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    40 F.3d 63 (3d Cir. 1994) ................................................................................. 5

*Gregg v. Ameriprise Financial, Inc.*,
    664 Pa. 567 (2001) ......................................................................................... 20

*Harrison v. Ocwen Loan Servicing, LLC*,
    2018 WL 4635969 (M.D. Pa. Sept. 27, 2018) ........................................... 10-11

*Hedlund Manufacturing Company, Inc. v. Weiser, Stapler & Spivak*,
    539 A.2d 357 (Pa. 1988) .................................................................................. 8

*Hurley v. Hurley*,
    492 A.2d 439 (Pa. Super. Ct. 1985) .................................................................. 8

*ITT Corp. v. Lee*,
    663 F. App'x 80 (2d Cir. 2016) ....................................................................... 14

*Katz v. Aetna Cas. & Sur. Co.*,
    972 F.2d 53 (3d Cir. 1992) ..................................................................... 7, 16, 17

*Legal Cap., LLC v. Med. Pro. Liab. Catastrophe Loss Fund*,
    750 A.2d 299 (Pa. 2000) .................................................................................. 9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................... 9

*Lutz v. Portfolio Recovery Assocs., LLC*,
    49 F.4th 323 (3d Cir. 2022) ............................................................................. 9

*Matter of Part 60 Put-Back Litig.*,
    36 N.Y.3d 342 (2020) .................................................................. 14-15

*Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*,
    2004 WL 415251 (Del. Ch. Mar. 4, 2004) ....................................... 27

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004) ......................................................... 29, 30

*Mobil Oil Corp. v. Linear Films, Inc.*,
    718 F. Supp. 260 (D. Del. 1989) ...................................................... 27

*People v. Gemini Trust Co., LLC*,
    2025 N.Y. Misc. LEXIS 2293 (N.Y. Sup. Ct. April 9, 2025) .......................... 22

*P.H. Glatfelter Co. v. Babcock & Wilcox Power Generation Grp., Inc.*,
    2020 WL 7342754 (M.D. Pa. Dec. 14, 2020) ................................. 15

*Salsberg v. Mann*,
    310 A.3d 104 (Pa. 2024) .................................................................. 12

*Segal v. Zieleniec*,
    2015 WL 1344769 (E.D. Pa. Mar. 24, 2015) ........................................ 18,19-20

*Sensenig v. Pennsylvania R. Co.*,
    78 A. 91 (Pa. 1910) ........................................................................ 8

*Shadduck v. Christopher J. Kaclik, Inc.*,
    713 A.2d 635 (Pa. Super. Ct. 1998) .................................................. 6

*In re Tallarico's Est.*,
    228 A.2d 736 (Pa. 1967) ............................................................. 11, 12

*Toy v. Metro. Life Ins. Co.*,
    928 A.2d 186 (Pa. 2007) ............................................................... 23

*In re Tronox, Inc.*,
    855 F.3d 84 (2d Cir. 2017) ............................................................ 24

*United States v. Asmar*,
    827 F.2d 907 (3d Cir. 1987) ........................................................... 11

*Va. House of Delegates v. Bethune-Hill*,
    587 U.S. 658 (2019) ...................................................................... 10

*Volkswagen Grp. of Am., Inc. v. Kimmel & Silverman*,
  74 A.3d 1042 (Pa. Super. Ct. 2013) ................................................................... 8

*Vorchheimer v. Philadelphian Owners Ass'n*,
  903 F.3d 100 (3d Cir. 2018) ............................................................................. 12

*Walden v. Bank of N.Y. Mellon Corp.*,
  2024 WL 1556937 (W.D. Pa. Apr. 10, 2024) .................................................. 18

*Wallace v. Wood*,
  752 A.2d 1175 (Del. Ch. 1999) ........................................................................ 24

*In re Wilton Armetale, Inc.*,
  968 F.3d 273 (3d Cir. 2020) ............................................................................. 24

*Wolfe v. Allstate Prop. & Cas. Ins. Co.*,
  877 F. Supp. 2d 228 (M.D. Pa. 2012) ................................................................ 8

*Zitelli v. Dermatology Educ. & Rsch. Found.*,
  633 A.2d 134 (Pa. 1993) ............................................................................ 11, 13

### STATUTES & RULES

73 Pa. Cons. Stat. § 201-9.2 ........................................................................... 16, 17

Defendants DCG and Barry E. Silbert respectfully submit this reply memorandum of law in further support of their Motion to Dismiss [ECF No. 25] Plaintiffs' Amended Complaint [ECF No. 22] with prejudice.[1]

## PRELIMINARY STATEMENT

Plaintiffs Stephen and Christopher Sokolowski are trying to assert a UTPCPL claim against Defendants with whom they did not interact, relating to transactions in which they (and Defendants) did not participate. No matter how many different ways Plaintiffs try to recast their claim in their AI-generated Opposition's 73 pages and 14,921 words, or the 18 pages of appendices thereto, these allegations do not plead a cause of action.

In their Moving Brief, Defendants demonstrated that Plaintiffs lack standing to pursue their lone UTPCPL claim, failed to plead factual allegations plausibly supporting the elements of that claim (much less with the required particularity), and failed to plead any factual basis for this Court to exercise personal jurisdiction over Defendants. Plaintiffs' Opposition—despite its great length, convoluted arguments, and myriad, inapposite case citations—does nothing to undercut these conclusions. Plaintiffs' claim fails for a host of reasons, including:

---

[1] Capitalized terms shall have the same meaning as in DCG and Silbert's Memorandum of Law in Support of their Motion to Dismiss [ECF 37] ("Moving Brief" or "Br."). Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss [ECF 44] is cited as "Opposition" or "Opp."

**Plaintiffs Lack Standing:**  Plaintiffs allege that nonparty Genesis induced nonparty CM to lend crypto assets to Genesis pursuant to an MLA agreement that expressly negates any third-party beneficiaries.  As Plaintiffs freely admit, they personally did not enter into the MLA, and they do not identify any other transactions they *did* enter into.  They thus lack standing.  Even if Plaintiffs were trying to assert their claim through CM (which they now disclaim and, in any event, cannot as a matter of law), they still could not assert the claim at issue because CM assigned its claim and all related claims against Defendants and other Genesis affiliates to a third party in 2023.

**Plaintiffs Waived Their Claims:**  If Plaintiffs somehow had standing to bring a claim that they were induced to enter the MLA or transactions thereunder, that claim still would fail because the MLA explicitly waives any claims against DCG and Silbert and is incorporated into all subsequent transactions.

**Plaintiffs Fail to State a Claim:**  Plaintiffs wholly fail to allege the elements of a UTPCPL claim.  Such claims are available only to purchasers or lessees of goods and services.  Here, the only alleged transaction was between CM and Genesis, so Plaintiffs neither purchased nor leased anything, let alone from DCG and Silbert.  Moreover, even if Plaintiffs stood in CM's shoes, CM was a *lender* and lenders are neither purchasers nor lessees.  Plaintiffs also fail to allege

that DCG and Silbert had any interaction with them whatsoever, much less that DCG and Silbert made deceptive statements on which Plaintiffs justifiably relied.

**No Personal Jurisdiction:** DCG and Silbert are not Pennsylvania residents, and neither is alleged to have directed any conduct to Pennsylvania relating to Plaintiff's claim. Accordingly, this Court lacks personal jurisdiction over them.

Far from contesting these arguments, Plaintiffs' Opposition confirms **all** the key points on which they are based. Plaintiffs, for example, do not actually dispute their lack of standing. To the contrary, they now admit that CM "never owned a UTPCPL claim" (Opp. 57) and concede that they are not bringing their claim as CM's third-party beneficiaries under the MLA (Opp. 39). The problem, for Plaintiffs, however, is that the Amended Complaint does not allege ***any transactions*** in which ***they*** participated—the only alleged transactions are between CM and Genesis. Plaintiffs try to contend that Defendants should be equitably estopped from arguing standing or claiming that Plaintiffs are legally distinct from CM because Defendants purportedly interacted with Plaintiffs as individuals. But, not only does this argument fail to satisfy any of the legal requirements for equitable estoppel, standing is a constitutional requirement that cannot be waived. Moreover, Plaintiffs' supposed evidence of "Defendants'" interactions with them relates exclusively to ***Genesis*** and has nothing to do with DCG or Silbert. And Plaintiffs further disregard that they were CM's owner and agents and thus the only

3

human beings with whom Genesis *could* discuss CM's loan transactions.

Likewise, Plaintiffs effectively concede that they do not and cannot allege the elements of a UTPCPL claim. The Opposition fails to identify any allegations in the Amended Complaint that Plaintiffs purchased or leased any good or service from Genesis, let alone Defendants—a fundamental defect for a UTPCPL claim. Plaintiffs attempt to argue that they "purchased" a "comprehensive financial service" from Genesis but merely calling CM's loan—which is the only transaction they allege—by a different name does not make it actionable under the UTPCPL. Likewise, the only allegedly deceptive conduct on which Plaintiffs purport to have relied—the provision of a "fraudulent" balance sheet—was alleged to have been done by Genesis, not Defendants. To the extent that Plaintiffs claim that Genesis's conduct may be imputed to Defendants through veil piercing, that theory is not only unsupported, but it directly contradicts Plaintiffs' contention that they are *not* asserting a veil-piercing claim against Defendants but rather are suing them directly for their *own* alleged misconduct.

As for personal jurisdiction, Plaintiffs fail to contest—and thus concede— that DCG and Silbert are not subject to general jurisdiction in Pennsylvania, and they still fail to identify *any* conduct by them that occurred in or that was directed specifically at Plaintiffs or Pennsylvania. Indeed, the only conduct Plaintiffs allege as a basis for jurisdiction is the signing of a promissory note between DCG and

nonparty Genesis—an act that is not alleged to have taken place (and did not take place) in Pennsylvania and is not alleged to have been in any way directed at Pennsylvania. Plaintiffs' other allegations all relate to the conduct of **Genesis**, which cannot establish personal jurisdiction over **Defendants**.

For all these reasons, and those below, Plaintiffs' Amended Complaint should be dismissed with prejudice.

## ARGUMENT

Plaintiffs' claim must be dismissed because the Amended Complaint fails to plead standing, Plaintiffs waived their claim, and they fail to allege the elements of a UTPCPL claim or facts supporting personal jurisdiction over Defendants. Moreover, Plaintiffs have now had multiple opportunities to correct these defects and plainly cannot. Accordingly, dismissal should be with prejudice. *See, e.g., Geist v. State Farm Mut. Auto. Ins. Co.*, 49 F.4th 861, 866 n.6 (3d Cir. 2022).

## I.    Plaintiffs Lack Standing

### A. The UTPCPL Claim Neither Accrued to Nor Belongs to Plaintiffs

As demonstrated in the Moving Brief, Plaintiffs lack standing to assert a UTPCPL claim. (Br. 16-22.) **First**, if there were any claim, it would have accrued to CM—as Genesis's actual counterparty on the loan at issue—and not Plaintiffs. *See Gemini Phys. Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 65 (3d Cir. 1994) (dismissing UTPCPL claim by party who was "not a

purchaser or consumer of goods or services"). Plaintiffs were not parties to the MLA or the Loan Term Sheets thereunder. (*See* Br. 9, 16; ECF 37-1 at GENESIS_DCG_00140493.) Indeed, they repeatedly admit this fact. (AC ¶¶ 8, 22, 31-32; Opp. 20, 36, 62.) Plaintiffs thus did not purchase, lease, or otherwise transact with anyone and cannot assert UTPCPL claims arising from the loans.

**Second**, even if CM and Plaintiffs are indistinguishable (as Plaintiffs sometimes contend), CM assigned any claims "arising under or in connection with" the Genesis loans to Jefferies. (Br. 18; ECF 37-2.) Courts recognize that UTPCPL claims "arise[] out of, or relate[] to" a contract where they are not "temporally and factually distinct" from breach of contract and are based upon "the same factual averments." *See Shadduck v. Christopher J. Kaclik, Inc.*, 713 A.2d 635, 627-38 (Pa. Super. Ct. 1998). Here, Plaintiffs admit that their claims arise out of CM's contract with Genesis, stating that they are seeking "rescission" and for the Court to find that "the MLA and its term sheets are voidable." (Opp. 68.)[2] Thus, the assignment unquestionably includes claims under the UTPCPL.

Plaintiffs' arguments to the contrary are unavailing. They do not cite any cases holding that a plaintiff who is not a purchaser or a lessee can have standing

---

[2] This argument underscores Plaintiffs' lack of standing because rescission seeks to place "***the parties*** to a contract . . . in their former positions with regard to the subject matter of the contract." *Baker v. Cambridge Chase, Inc*., 725 A.2d 757, 766 (Pa. Super. 1999).

to bring a UTPCPL claim, (*see* Opp. 21-30, 53-65.), and the Third Circuit has repeatedly held that such plaintiffs do not.[3]  Plaintiffs, moreover, trip over their multiple, contradictory attempts to identify a basis for them (as opposed to CM) to bring this lawsuit.  For example, to evade the conclusion that they are bound by CM's assignment, Plaintiffs now assert that "CM LLC never owned a UTPCPL claim" (Opp. 57) and admit that they are ***not*** suing "as third-party beneficiaries of the MLA" or CM's loan transactions (*id.* 39).   But, if all that is true, then Plaintiffs concede they have no basis to sue because the only transactions alleged in the Amended Complaint are the loan transactions between CM and Genesis pursuant to the MLA.  (*See* AC ¶ 32 (admitting that "Plaintiffs' assets—both cryptocurrency and US Dollars—were nominally funneled through CM LLC . . . and then immediately loaned to Genesis").)  CM is the only entity who could have conceivably purchased or leased anything, so if CM does not have a UTPCPL claim, then neither do Plaintiffs—regardless of whether they can pierce their own corporate veil to treat themselves as CM's alter ego.  (Br. 19-22.)

Similarly, even assuming that CM ***did*** have some claim, Plaintiffs cite no authority for the proposition that UTPCPL claims are not assignable (Opp. 55-56.),

---

[3] *See, e.g.*, *Branche v. Wells Fargo Home Mortg., Inc.*, 624 F. App'x 61, 64 (3d Cir. 2015) (per curiam); *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 241 (3d Cir. 2002); *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 57 (3d Cir. 1992).

and authority from this District and the Pennsylvania courts makes clear that UTPCPL claims can be assigned. *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 877 F. Supp. 2d 228 (M.D. Pa. 2012); *see also Volkswagen Grp. of Am., Inc. v. Kimmel & Silverman*, 74 A.3d 1042, 1046 (Pa. Super. Ct. 2013) (holding that appellant "lacks standing to bring" UTPCPL claim where it was "neither the purchaser, nor the less[ee], of the defective automobiles at issue . . . nor has an UTPCPL right been assigned" to it). Plaintiffs neither distinguish *Wolfe* (or any other case recognizing the assignability of UTPCPL claims) nor cite any contrary authority. (Opp. 63-64.) And Plaintiffs' decades-old citations stating that pure tort claims are not assignable say nothing about statutory rights of action under the UTPCPL.[4] Further, while Plaintiffs invoke champerty (Opp. 56), which their own authority describes as a "defense" to suits brought by a plaintiff who acquired claims from another party, *Frank v. TeWinkle*, 45 A.3d 434, 440 (Pa. Super. Ct. 2012), they cite no authority allowing them to void ***their own assignment of claims*** as champertous.

---

[4] Instead, those cases hold that a plaintiff in a discrimination suit cannot assign the right to seek treble damages, *Sensenig v. Pennsylvania R. Co*., 78 A. 91, 91-92 (Pa. 1910), and that tort claims are not marital property. *Hurley v. Hurley*, 492 A.2d 439, 442 (Pa. Super. Ct. 1985). In all events, Plaintiffs' argument is difficult to square with the Pennsylvania Supreme Court's ruling in *Hedlund Manufacturing Company, Inc. v. Weiser, Stapler & Spivak*, 539 A.2d 357 (Pa. 1988), that causes of action, other than for personal injury, are freely assignable. *Id.* at 358-59.

Plaintiffs next contend that they only assigned CM's proof of claim for payment under the MLA to Jefferies.  (Opp. 54-55.)  But, as discussed, they also assigned "causes of action" "arising under or in connection with" that claim, which plainly includes the instant claims.  (AC ¶ 131; ECG 37-2.)  Plaintiffs neither address this language nor argue that the instant claims *did not* arise under or in connection with that claim.  Instead, they argue that (1) the contract might be ambiguous and (2) there may be additional documents underlying the assignment beyond the notice to which they cite, which are not presently in the record.  (Opp. 58-60.)  But the party invoking federal jurisdiction bears the burden of establishing standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  On a motion to dismiss, Plaintiffs' legal conclusion that the assignment did not include UTPCPL claims is not entitled to deference.  *See, e.g.*, *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022) (courts "disregard[] . . . legal conclusion[s]" alleged in complaint).  Plaintiffs bear the burden of pleading the facts underlying those conclusions, and, here, the Complaint only references the notice of transfer of claim (AC ¶ 131), which unambiguously transferred any UTPCPL claim they may have had.[5]

---

[5] Indeed, if other documents did state that the assignment only covered CM's proof of claim against Genesis, Plaintiffs doubtless would have cited them. Plaintiffs fault Defendants for citing New York caselaw on the scope of the assignment (Opp. 61-62), but fail to dispute that the Notice—and thus the scope—
(….continued)

Plaintiffs assert that CM lacked authority to assign claims arising under or in connection with its claims under the MLA. (Opp. 60.) This argument is circular. If CM is a separate legal entity from Plaintiffs, then any claims arising from CM's contract with Genesis accrued to CM, not to Plaintiffs. And if CM was Plaintiffs' alter ego, such that its claims accrued to Plaintiffs, then it could assign those claims. In either case, the UTPCPL claim must be dismissed for lack of standing.

### B. Plaintiffs' Equitable Estoppel Argument Fails

Recognizing their lack of standing, Plaintiffs contend that equitable estoppel precludes Defendants from arguing that CM, rather than Plaintiffs, was Genesis's counterparty under the MLA. (Opp. 11-20.) But Plaintiffs cite no authority allowing them to manufacture standing by claiming that Defendants have waived their right to challenge it. Indeed, "[a]s a jurisdictional requirement, standing to litigate cannot be waived or forfeited." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662-63, (2019).

Moreover, Plaintiffs do not allege the required elements for equitable estoppel: "(1) a misrepresentation by another party; (2) which [was] reasonably relied upon; (3) to [the other party's] detriment." *Harrison v. Ocwen Loan*

---

is governed by New York law. In all events, Pennsylvania law is the same. (Br. 18 (citing *Legal Cap., LLC v. Med. Pro. Liab. Catastrophe Loss Fund*, 750 A.2d 299, 302 (Pa. 2000)).)

*Servicing, LLC*, 2018 WL 4635969, at *3 (M.D. Pa. Sept. 27, 2018) (quoting *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987)).

***First***, Plaintiffs do not identify any misrepresentation that could constitute inducement, let alone by Defendants.  Plaintiffs argue that ***Genesis*** suggested that they create CM as a passthrough LLC to satisfy Genesis's minimum deposit requirements, communicated directly with the individual Plaintiffs (who owned and controlled CM) regarding the lending relationship, and knew that CM's role was to invest Plaintiffs' money.  (Opp. 13-14.)  But Plaintiffs nowhere allege that Genesis affirmatively misrepresented the identity of the parties to the MLA or otherwise told them that Plaintiffs would individually be counterparties on the loans.  Nor do Plaintiffs contend that Genesis told them that CM would not be the actual counterparty.  To the contrary, Plaintiffs freely admit that CM was, in fact, Genesis's counterparty.  (AC ¶ 22; Opp. 32.)  This alone defeats any claim of equitable estoppel, which "cannot be predicated on errors of judgment by [the] person asking its benefit."  *Zitelli v. Dermatology Educ. & Rsch. Found.*, 633 A.2d 134, 140 (Pa. 1993) (quoting *In re Tallarico's Est.*, 228 A.2d 736, 741 (Pa. 1967)).

Moreover, Plaintiffs nowhere suggest that ***DCG or Silbert*** made any representation to them, much less induced them to believe that CM would not be treated as a distinct legal entity.  Indeed, in the appendix Plaintiffs devote to showing purported examples of "[d]irect [s]ubstantive [d]ealing[s] with

[i]ndividual Plaintiffs," there is not a ***single*** reference to Defendants.  (Opp. App. A, Tbl. A-1.)  A party cannot be estopped by someone else's conduct.  *See Tallarico's Est.*, 228 A.2d at 741-42 (limiting estoppel to "the person inducing the belief" and holding that decedent's children were not estopped where, "[i]f there was any misrepresentation . . . it was on the part of the decedent and not on the part of his children").

***Second***, Plaintiffs claim that they relied on Genesis' purported misrepresentation and "believed that Genesis . . . recognized them as the true beneficial owners and counterparties."  (Opp. 16.)  This contention, however, directly contradicts the exhibits to the Amended Complaint (Br. 10-12, 17-18) and thus is entitled to no weight, *see Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111-12 (3d Cir. 2018).  The argument also conflicts with Plaintiffs' repeated assertion that they were not parties to the MLA and are not bound by its terms.  (AC ¶ 22; Opp. 32.)  Further, Plaintiffs suggest that Genesis's "direct, substantive communication and negotiation with the individual Plaintiffs" somehow evidences this reliance and showed them that Genesis did not recognize CM's corporate form.  (Opp. 16.)  But "a corporation can only act through its officers, agents, and employees."  *Salsberg v. Mann*, 310 A.3d 104, 123 (Pa. 2024).  Thus, Genesis's communications with the individual Plaintiffs, who owned and controlled CM, do not indicate any fraud or misrepresentation about the nature

of the relationship.  Plaintiffs further suggest that "Genesis made no effort to correct [their] belief that they were the true parties in interest" to the MLA.  (Opp. 16).  But, even if that were so, as noted above, Plaintiffs' own "error of judgment . . . precludes [their] claim of estoppel." *Zitelli*, 633 A.2d at 140.  Regardless, the Complaint demonstrates that Genesis *repeatedly* reminded them that CM was separate from Plaintiffs.  For instance, Genesis refused to simply let Stephen Sokolowski directly assign his personal loans to CM (AC Ex. H at 21.) or to withdraw Genesis's funds to his private bank account (*id*. Ex. F at 52).  Indeed, the entire reason Plaintiffs formed CM was to aggregate their assets because Genesis refused to borrow from Plaintiff Christopher Sokolowski directly as he, as an individual, had insufficient assets.  (AC ¶ 41.)

*Third*, Plaintiffs have not alleged prejudice.  The only prejudice they allege is that "they would be unable to seek relief for Defendants' conduct."  (Opp. 17).  But Plaintiffs are not prejudiced by their inability to assert a claim that never belonged to them and that has since been assigned to a third party, and they cite no authority to the contrary.

Taking a different tack, Plaintiffs argue that Defendants should be equitably estopped from arguing that they assigned their UTPCPL claim to Jefferies because Plaintiffs decided to assign that claim based on "media reports that DCG had borrowed $575 million from Genesis to fund DCG share buybacks," which

13

purportedly led them to believe that their claims against Genesis were worthless. (Opp. 61.) But, once again, Plaintiffs do not assert that ***Defendants*** made any misrepresentations to them, or even that these media reports were false. Further, this allegation has no bearing on any alleged inducement by Defendants or supposed reliance by Plaintiffs that would change the foregoing analysis or preclude DCG and the Court from recognizing CM's assignment of its claims. Accordingly, Plaintiffs' equitable estoppel claim is baseless and cannot shield them from their patent lack of standing to assert a UTPCPL claim against Defendants.

## II.    Plaintiffs Waived Any and All Claims Against DCG and Silbert

Defendants further established that the MLA explicitly waived any claims against them. (Br. 22-23.) Plaintiffs do not deny this. (Opp. 30.) Such provisions are enforceable and thus bar Plaintiffs' claims against DCG and Silbert. *See ITT Corp. v. Lee*, 663 F. App'x 80, 83-84 (2d Cir. 2016).

Plaintiffs argue that contractual provisions that exculpate a party for fraud are void as against public policy (Opp. 31-32), but this does not help them. The MLA is governed by New York law. (ECF No. 37-1, at GENESIS_DCG_00140490.) Under New York law, a contract that ***exculpates*** defendants from all liability for certain intentional acts may be void, but a contract that ***limits*** liability is enforceable. *See Matter of Part 60 Put-Back Litig.*, 36

N.Y.3d 342, 348-49 (2020) (a clause that "purports to limit, but not eliminate, the remedies available to the plaintiff" is not voidable).[6]

Here, the provision at issue is ***not*** a pure exculpatory clause. It does not eliminate Plaintiffs' remedies because it allows them to collect in full from ***Genesis***. Moreover, this provision merely clarifies what is already apparent: As Plaintiffs' Amended Complaint and Opposition make clear, neither DCG nor Silbert were involved in negotiating the MLA or the loans thereunder, nor had any interaction with Plaintiffs whatsoever, and thus cannot have any conceivable liability to them. (*See infra* Point III.C.) The contractual language merely confirms that fact and thus, under the circumstances, hardly exculpates them.

Plaintiffs argue that "the specific language of the MLA waiver does not cover the claims asserted here" (Opp. 32), but they are mistaken. While Plaintiffs try to limit the MLA waiver to claims alleging breaches of the MLA itself (*id.* at 32-33), they read the MLA's plain language too narrowly. The waiver applies to "***any and all*** claims and liabilities . . . arising in any way out of this Agreement"—not solely breach of contract claims. (ECF No. 37-1, at

---

[6] Pennsylvania law similarly enforces limitations on liability over exculpatory clauses. *See P.H. Glatfelter Co. v. Babcock & Wilcox Power Generation Grp., Inc*., 2020 WL 7342754, at *10-11 (M.D. Pa. Dec. 14, 2020) (collecting cases for the proposition that limitations on liability are "presumptively enforceable" under Pennsylvania law).

GENESIS_DCG_00140493.)  As discussed, Plaintiffs' claims, which seek "rescission" of the MLA, plainly arise out of that agreement.  (Opp. 68.) Moreover, the waiver is not limited to the MLA and the loans but encompasses all liability arising from any "document . . . delivered" with the MLA (ECF No. 37-1, at GENESIS_DCG_00140493), including, for instance, the allegedly fraudulent balance sheet provided by Genesis that Plaintiffs allege induced them to make the loan at issue.  Accordingly, to the extent Plaintiffs ever had any claims against Defendants relating to the MLA, they have been waived.

## III.   Plaintiffs Fail to Allege a Claim under the UTPCPL

As Defendants also demonstrated, the Amended Complaint fails to allege the elements of a UTPCPL claim.  (Br. at 23-31.)

### A. Plaintiffs Do Not Allege That They Purchased or Leased from Defendants

As Defendants established, Plaintiffs do not allege that they personally purchased or leased goods or services from DCG or Silbert—or, for that matter, at all.  (*Id*. at 24-27.)  The UTPCPL "unambiguously permits only persons who have purchased or leased goods or services to sue."  *See Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992); *see also Branche v. Wells Fargo Home Mortg., Inc.*, 624 F. App'x 61, 64 (3d Cir. 2015) (per curiam) (affirming dismissal of UTPCPL claim where plaintiff "was not a purchaser of [defendant]'s services, as it was [her] common law husband who obtained the mortgage"); *see generally* 73 Pa.

16

Cons. Stat. § 201-9.2.  Moreover, UTPCPL claims may be asserted only against a seller, lessor, or some other entity in the "chain of supply."  *Brownell v. State Farm Mut. Ins. Co.*, 757 F. Supp. 526, 533 (E.D. Pa. 1991) (dismissing UTPCPL claim where defendant "was not in any trade or commercial relationship with plaintiff."); *see also, Katz*, 972 F.2d at 57 (affirming summary judgment on UTPCPL claim where plaintiff "lack[ed] any commercial dealings with the defendant.").

Here, the Amended Complaint's allegations foreclose a UTPCPL claim. Plaintiffs allege that CM (not they) negotiated and entered into the MLA and loan transactions with Genesis (not Defendants), and concede that none of Plaintiffs, DCG, or Silbert was a party to the MLA or the loans.  (AC ¶¶ 8, 22, 32, 51.)  They neither challenge this point in their Opposition nor cite any authority allowing non-parties to a transaction to sue other non-parties to that transaction under the UTPCPL.  Accordingly, their claim fails.

### B.  Plaintiffs Do Not Allege a Purchase or Lease of Goods or Services

The Moving Brief also demonstrates the Amended Complaint's failure to allege a purchase or lease of goods or services.  (Br. 27-28.)  *See* 73 Pa. Cons. Stat. § 201-9.2.  Instead, Plaintiffs allege that they or CM ***loaned*** funds and crypto assets to Genesis.  (*See, e.g.*, AC ¶ 2 (Plaintiffs "did not purchase securities or equity; they simply ***lent*** their personally owned cryptocurrency and U.S. Dollars to Genesis in exchange for interest"); ¶ 28 ("The assets ***loaned*** to Genesis were

Plaintiffs' personal savings. . . ."); ¶ 31 ("Plaintiffs' intention was to safely **lend**

their personally owned assets. . . ."); ¶ 32 (Plaintiffs' assets were aggregated in CM

"and then immediately **loaned** to Genesis"); ¶ 83 ("Genesis entered into **loans** with

Plaintiffs using simple one-page term sheets.").)  Under Pennsylvania law, one

who lends money or assets in exchange for interest is not a purchaser or lessee of

goods or services.  *See Segal v. Zieleniec*, 2015 WL 1344769, at *4 (E.D. Pa. Mar.

24, 2015) ("In funding loans to Israeli borrowers through the Trust Agreements,

[plaintiff] did not purchase a good or service.").[7]

In a total about-face, Plaintiffs now maintain that calling the transactions at

issue loans "fundamentally mischaracterizes" them and attempt to recast the loans

they allegedly made to Genesis as the purchase of "access to, and use of" a

"financial-services platform."  (Opp. 21.)  But, Plaintiffs cannot amend their

---

[7] For this reason, Plaintiffs' assertion that the UTPCPL expansively defines
"trade" and "commerce" (Opp. 21) misses the point—a private action still requires
the plaintiff to purchase or lease goods or services, and Plaintiffs' failure to allege
they did is fatal to their claim.  None of the cases Plaintiffs cite is to the contrary or
otherwise suggests that a lender can be deemed a purchaser or lessee under the
UTPCPL.  Those cases either involved public enforcement actions, which are not
private actions and do not require alleging the purchase of goods or services, *see
Commonwealth v. Navient Corp.*, 354 F. Supp. 3d 529, 559-60 (M.D. Pa. 2018)
(lender and servicer sufficiently alleged to have engaged in deceptive conduct), or
else have nothing to do lending activity, *see Walden v. Bank of N.Y. Mellon Corp.*,
2024 WL 1556937, at *1-2 (W.D. Pa. Apr. 10, 2024) (genuine issue regarding
deceptive conduct where defendant failed to disclose that fiduciary wealth
managers were incentivized to invest in affiliate funds).

complaint in their Opposition. *Commonwealth ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). To the extent Plaintiffs cite allegations from the Amended Complaint to support their argument, those allegations confirm that Plaintiffs did not buy or lease anything but instead provided loans. (Opp. 22-23 (citing, *inter alia*, AC ¶ 23 (alleging that "Defendants were offering a hands-off, interest-based ***lending*** service"), ¶ 28 (describing Plaintiffs' attempt to avoid "spending their assets, which were ***loaned*** to Genesis," and "the need to leave a small amount of 'open term' ***loans***").[8]

Moreover, Plaintiffs cannot be purchasers because they do not allege that they ***paid*** for any goods or services. Under the UTPCPL, "purchase" means "to obtain (as merchandise) *by **paying money or its equivalent**." DeFazio v. Gregory*, 836 A.2d 935, 939 (Pa. Super. Ct. 2003). Here, Plaintiffs do not allege that they paid any money to Genesis. Rather, Genesis paid Plaintiffs interest in exchange for the loans. (*See* Opp. 13.) While Plaintiffs note that Genesis may have profited from its dealings with CM (*Id.* 24), that a borrower will benefit from borrowing money does not give a lender a cause of action under the UTPCPL. *See, e.g.*,

---

[8] While Plaintiffs plead their "belief that they were ***participating*** in a stable, consumer-level financial service," they do not allege that they purchased or leased such a service. (AC ¶ 83.b.) To the contrary, they allege they were lenders under it. (*Id.* ¶ 83.a (loans "involved loaning a single asset and receiving back that same asset at maturity"); ¶ 83.c ("All Genesis interest rates were fixed at the time of loan origination. . . .").)

*Segal*, 2015 WL 1344769, at *2 (dismissing UTPCPL claim by lender who alleged that loans made to defendant were used "for his own personal gain.").

Plaintiffs' other arguments likewise fail. They note that Genesis, as a borrower, represented that it was stable and offered a convenient lending mechanism. (Opp. 22-23.) But that does not convert Plaintiffs' alleged loans into purchases of goods or services. Plaintiffs also suggest that, had Genesis not offered the alleged financial services, they would have made "direct loans." *See* Opp. 23-24. But Plaintiffs *did* (through CM) make loans to Genesis (*see* AC ¶ 83 ("Genesis entered into loans with Plaintiffs.")), and allege that they created CM "to safely lend their personally owned assets and earn modest interest" (*id.* ¶ 31).

To the extent Plaintiffs believe that the only allegation required for a UTPCPL claim is that "the defendants create 'confusion or misunderstanding' surrounding their services" (Opp. 26), they are mistaken. The sole case Plaintiffs cite for this proposition, *Gregg v. Ameriprise Financial, Inc.*, merely holds that the UTPCPL does not have a "state of mind element," but nowhere addresses the separate requirement that private plaintiffs have purchased or leased goods or services—an element that was not disputed in that case. 664 Pa. 567, 577 (2001).

### C. Defendants Are Not Alleged to Have Engaged in Any Unlawful Act or Practice on Which Plaintiffs Justifiably Relied

Plaintiffs' UTPCPL claim is defective for the additional reason that Plaintiffs fail to allege that DCG or Silbert committed any unlawful act or practice

on which Plaintiffs justifiably relied.  (Br. 28-31.)  The Amended Complaint does not allege that Defendants had any contact with Plaintiffs whatsoever and exclusively alleges misstatements by *Genesis*.  (*See, e.g.*, AC ¶¶ 76, 91-92, 94-95.)

Plaintiffs' Opposition confirms this fatal deficiency.  Plaintiffs ask "**[w]ho**" committed the alleged fraud and answer "*Genesis* personnel."  (Opp. 69.)  Further, the alleged misstatements they point to include "[e]arly-on marketing and onboarding statements that *Genesis* made 'loans' that were collateralized, low risk, and supported by a 'blue-chip' balance-sheet"; a "September 23, 2022 balance sheet" provided to CM by *Genesis*; and "[n]umerous other misrepresentations and false statements from *Genesis* employees."  (*Id*.)

Attempting to avoid their Amended Complaint's shortcomings, Plaintiffs contend that the Genesis personnel acted "at the direction of Silbert" and made statements "directed by Defendants."  (*Id*.)  But Plaintiffs fail to cite any allegations in the Amended Complaint for the latter claim, and the paragraphs they cite for the former fall well short of supporting a plausible inference that DCG or Silbert directed any misconduct.[9]  In fact, the Amended Complaint does not allege

---

[9] Many of the allegations that Plaintiffs cite do not identify any conduct by DCG or Silbert, and instead focus on statements or actions by others.  (*See* AC ¶¶ 10, 23, 77, 90-92.)  To the extent that the allegations even reference DCG or Silbert, they either are entirely conclusory (*id.* ¶ 78), or aver conduct that is not deceptive, such as that Silbert was well compensated and wished to avoid Genesis's collapse (*id.* ¶ 9), that Genesis, DCG and its subsidiaries made unsecured

(….continued)

that DCG or Silbert were even aware of Genesis's relationship with CM or Plaintiffs. The only other allegations about Defendants are that they held internal discussions about various options for preserving or disposing of DCG's ownership interest in Genesis, which is not alleged to be deceptive.[10] (AC ¶ 116-28.)

For the same reason, Plaintiffs fail to allege that they justifiably relied upon DCG and Silbert's conduct. While Plaintiffs devote much attention to the $1.1 billion promissory note that DCG provided to Genesis in June 2022, they do not dispute that they were unaware of and did not rely on that note when CM made loans to Genesis. (Opp. 71.) Instead, they contend only that they relied on the allegedly "misleading financial picture presented in the balance sheet," which Plaintiffs admittedly received from *Genesis*. (*Id.*; AC ¶ 11.) Other than the conclusory accusation that Defendants participated in an "overall scheme" (Opp. 71), Plaintiffs fail to link DCG or Silbert to the balance sheet in any way. They do not, for example, allege any *facts* plausibly suggesting that DCG or Silbert had any

---

intercompany loans (*id.* ¶ 76), and that Defendants entered into a promissory note with Genesis following the collapse of one of Genesis's larger borrowers (*id.* ¶ 93).

[10] Plaintiffs note that a New York court recently declined to dismiss claims against DCG and Silbert in separate action brought by the New York Attorney General under the New York Martin Act and Executive Law. (Opp. 47-48 (citing *People v. Gemini Trust Co., LLC*, No. 452784/2023 (N.Y. Sup. Ct. April 9, 2025) ("*Gemini*").) But that decision, which involved different allegations and different claims with different elements, has no bearing on whether *Plaintiffs here* have stated a claim against DCG and Silbert under the UTPCPL based on the specific allegations in their Amended Complaint.

role in preparing or communicating that balance sheet to CM or Plaintiffs. Thus, even if the MLA did not preclude reliance on the balance sheet, Plaintiffs still do not allege any conduct by DCG or Silbert "that caused them" to enter into the loan transactions at issue, defeating their UTPCPL claim. *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 499 (3d Cir. 2013).[11]

Unable to allege actionable conduct by DCG and Silbert, Plaintiffs contend, without explanation or support, that Genesis's statements are "imputed to Defendants through veil piercing and participation in the fraudulent scheme." (Opp. 69.) Veil piercing, however, is irrelevant here. That doctrine is merely a means to hold one affiliate liable for another's misconduct. *See, generally*, *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at 4-5 (Del. Ch. Sept. 5, 2023). But Plaintiffs emphatically maintain that they are ***not*** suing to recover debts owed to them by Genesis but instead are suing

---

[11] As the Moving Brief demonstrated, the MLA's integration clause independently bars justifiable reliance on the balance sheet. (Br. 31.) Plaintiffs argue that DCG and Silbert cannot invoke the MLA's integration clause to "bar claims of fraudulent inducement" (Opp. 34), but setting aside that Plaintiffs do not plead fraudulent inducement, the only case they cite for this proposition says the opposite. *See Toy v. Metro. Life Ins. Co*., 928 A.2d 186, 205 (Pa. 2007) (holding that "parol evidence may ***not*** be admitted based on a claim that there was fraud in the inducement of the contract"). Nor, contrary to Plaintiffs' argument, is the MLA's integration clause limited to "to representations made *prior to or contemporaneous with* the MLA's execution" (Opp. 34-35 (emphasis in original)), as the integration clause expressly covers "Loan Term Sheets," which, Plaintiffs acknowledge, were entered into ***after*** the MLA and reincorporate all of the MLA's terms. (ECF 37-1 1 at GENESIS_DCG_00140492, -497; Opp. 35.)

Defendants for "independent, fraudulent, and deceptive conduct ***directed at***

***Plaintiffs*** that induced their reliance and caused ascertainable loss." (Opp. 54; *see*

*also id.* at 42 (seeking to hold defendants "personally answerable for torts in which

they personally participate").) Of course, Plaintiffs' inability to plead misleading

conduct by Defendants forecloses any such claim.[12]

More fundamentally, Plaintiffs fail to allege the requirements of veil

piercing. Genesis is a Delaware LLC. (*See* AC Ex. B.) To pierce the corporate

veil under Delaware law, "the corporation must be a sham and exist for no other

purpose than as a vehicle for fraud." *Wallace v. Wood*, 752 A.2d 1175, 1184 (Del.

Ch. 1999). Courts in Delaware will dismiss claims based on veil piercing where,

as here, Plaintiffs' "own allegations subvert the notion that [the subsidiary] is

indistinguishable from [the parent]." *Cleveland-Cliffs Burns Harbor LLC v.*

*Boomerang Tube, LLC*, 2023 WL 5688392, at *6 (Del. Ch. Sept. 5, 2023). In

---

[12] In addition, Plaintiff does not have standing to bring any claims based on veil piercing because such claims are exclusively entrusted to the Genesis bankruptcy estate. *See, e.g.*, *In re Tronox, Inc.*, 855 F.3d 84, 99-100, 106 (2d Cir. 2017) (holding that claims based on alter ego liability are derivative claims—i.e., "those that arise from harm done to the estate and that seek relief against third parties that pushed the debtor into bankruptcy"—and are estate property); *accord In re Wilton Armetale, Inc.*, 968 F.3d 273, 282 (3d Cir. 2020) (holding that claim that third parties left debtor "with insufficient assets to pay [its] creditors" was a derivative claim entrusted to estate). For this reason, DCG intends to promptly file an adversary proceeding in the U.S. Bankruptcy Court for the Southern District of New York seeking to enjoin individual creditors, such as Plaintiffs, from pursuing derivative claims against it.

*Cleveland Cliffs*, the Delaware Court of Chancery dismissed claims based on veil piercing allegations where the complaint alleged that the parent and subsidiary were in different industries, which "belie[d] any inference that [they] functioned as a single economic entity" and "ma[d]e it unreasonable to infer that [they] are sham entities." *Id*.; *see also DG BF, LLC v. Ray*, 2021 WL 776742, at *27 (Del. Ch. Mar. 1, 2021) (dismissing claims based on veil piercing where complaint pleads that subsidiary is a "multi-million dollar . . . business"; "owns several subsidiaries"; and was a "business active."); *Carotek, Inc. v. Kobayashi Ventures, LLC*, 875 F. Supp. 2d 313, 350-51 (S.D.N.Y. 2012) (veil piercing inappropriate under Delaware law where subsidiary "purchases, owns and manages patents"; "entered into licensing agreements"; and "sold other products").

Here, Plaintiffs' allegations, as confirmed by their Opposition, show that Genesis was an independent business. CM contracted directly with Genesis and neither DCG nor Silbert were parties to that agreement. (AC ¶ 8.) Genesis had its own officers (AC ¶¶ 10, 72) and employees (AC ¶¶ 11, 66). Genesis allegedly offered its lenders a convenient infrastructure for lending cash and digital assets (Opp. 22-23), which it borrowed from lenders "nationwide." (*Id*. at 43.) And Genesis operated a sizeable lending business, lending billions of dollars to third-party borrowers. (AC ¶ 90.) On the basis of these allegations, Plaintiffs do not

carry their burden of pleading that Genesis was a sham that existed for no purpose other than to facilitate fraud.

Plaintiffs' list of purported evidence of domination and control—submitted in an appendix—does nothing to change this conclusion. Plaintiffs only allege that:

- DCG engaged in discussions about strategy for Genesis, its indirect wholly owned subsidiary (*see, e.g.*, Opp. Appx. B at B-1 ("DCG (Silbert) formulated existential strategic options for Genesis . . ."); *id*. at B-2 ("DCG employees . . . were extensively involved in communications and decisions regarding the Genesis crisis and its strategic direction"));

- DCG assessed options for giving a struggling subsidiary an equity infusion (*see, e.g.*, *id*. at B-3 ("Moro (then Genesis CEO, acting in concert with DCG) discussed a plan involving 'some combination of assets from DCG parent . . . placed into [Genesis]'"); *id*. at B-5 (DCG discussed "potentially using its *own resources* and injecting its *own liquidity* to stabilize Genesis's balance sheet"));

- DCG borrowed money from Genesis—which was a money-lending institution (*see, e.g.*, *id*. at B-6 ("DCG had borrowed an additional $575 million from Genesis")); and

26

- DCG was involved in discussions about its indirect wholly owned subsidiary's merger (*see, e.g.*, *id.* at B-10 ("DCG (Silbert) discussed a potential merger involving DCG, Genesis, and Gemini")).

Plaintiffs cite no authority stating that any of these activities are anything other than routine interactions between a parent and its wholly owned subsidiary, much less that they support veil piercing.

Further, Plaintiffs do not allege that Genesis's "corporate form in and of itself operates to serve some fraud or injustice." *Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, 2004 WL 415251, at *4 (Del. Ch. Mar. 4, 2004). The required fraud or injustice must be "distinct from the alleged wrongs of" defendant. *Id.*; *Cleveland-Cliffs Burns Harbor LLC*, 2023 WL 5688392, at *6 ("The fraud or injustice must, however, come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim.") For instance, the mere fact that a subsidiary allegedly caused some injury to plaintiff does not establish fraud or injustice where "it can hardly be said that the [subsidiary] was formed for the purpose" of committing such wrongs. *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 270 (D. Del. 1989).

Here, Plaintiffs solely allege that Genesis induced CM to enter loan agreements based on misrepresentations about its balance sheet. They plead no facts suggesting that DCG and Silbert somehow used Genesis's corporate form to

defraud Plaintiffs or, again, that DCG and Silbert committed any fraud whatsoever. Accordingly, to the extent they seek to pierce Genesis's corporate veil, their claims fail.

## IV.    The Amended Complaint Fails to Allege a Basis for Exercising Personal Jurisdiction Over DCG or Silbert or Obtaining Jurisdictional Discovery

### A. Plaintiffs Do Not Allege Personal Jurisdiction

Finally, as DCG and Silbert demonstrated, Plaintiffs fail to allege facts to support this Court's exercise of personal jurisdiction over them because Plaintiffs do not allege that either DCG or Silbert engaged in or directed any relevant conduct in or to Pennsylvania.  (Br. 32-33.)  Plaintiffs do not dispute that Defendants are not subject to general jurisdiction in Pennsylvania.  Rather, Plaintiffs claim that the Court has specific jurisdiction over DCG and Silbert. (Opp. 41-42.)  But, Plaintiffs fail to allege that Defendants "purposefully avail[ed]" themselves "of the privilege in conducting activities in the forum"; "expressly aimed" tortious conduct at the forum; or, indeed, had any contact relevant with Pennsylvania at all.  *Ciolli v. Iravani*, 651 F. Supp. 2d 356, 365, 368 (E.D. Pa. 2009).[13]

_____

[13] Apparently concerned that they had failed to plead any contacts with Pennsylvania, two days after they filed their Opposition, Plaintiffs filed a "nearly identical" complaint in the U.S. District Court for the District of Connecticut— where DCG's corporate headquarters is based—to purportedly preserve the right to litigate in that forum if and when this Court determines that it lacks personal

(….continued)

In their Opposition, Plaintiffs argue that "six interlocking contacts" allegedly confer jurisdiction over all Defendants. (Opp. 42-45.) But none of the listed "contacts" shows DCG or Silbert directing any activity to Pennsylvania. The sole "contact" with respect to DCG and Silbert is that they executed a $1.1 billion promissory note to Genesis, but Plaintiffs do not allege that DCG and Silbert signed that note in Pennsylvania or specifically intended to communicate it to Pennsylvania. (*Id.* at 42-43.) The remaining "contacts" relate solely to Genesis, including that "**Genesis**' DDQ and mandatory KYC on *individual* Plaintiffs identified them as Pennsylvania residents" and "**Genesis** e-mailed Plaintiffs in State College, Pennsylvania a false balance sheet." (*Id*. at 43.) And nonparty Genesis's contacts with Pennsylvania are irrelevant to personal jurisdiction over DCG and Silbert.[14]

Undeterred, Plaintiffs argue that Genesis's forum contacts must be attributed to DCG and Silbert because "[c]ontacts of a dominated subsidiary . . . are imputed when the complaint plausibly pleads alter-ego domination." (*Id.* at 41-42 (citing

---

jurisdiction over defendants DCG and Silbert. *See* Notice of Related Protective Action Filed in The District of Connecticut [ECF No. 45].

[14] Plaintiffs also misleadingly suggest that Defendants participated in a "nationwide offering of the Gemini Earn program to customers in all 50 states." (Opp. 43.) As alleged in the Complaint, Gemini was a third party that conducted business with Genesis and has no connection to Defendants or the events at issue. (Br. 13-14 n.6; AC ¶¶ 85, 89.)

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101-02 (3d Cir. 2004)).)  However, as discussed, this reasoning is belied by Plaintiffs' insistence that they are asserting **direct** claims against Defendants based on their own alleged conduct, as opposed to derivative claims based on Genesis.  (*See supra* Section III.C)  And, as set forth above, Plaintiffs have failed to plead facts to suggest that Genesis was DCG's or Silbert's alter ego.  (*See Id.*)[15]

## B. Plaintiffs Are Not Entitled to Jurisdictional Discovery

As DCG and Silbert have explained, Plaintiffs have not provided any valid basis to support their request for jurisdictional discovery.  (Br. 33-34.)  Plaintiffs' Opposition does nothing to salvage that request.  (*See* Opp. 48-49.)  Before allowing jurisdictional discovery, a court must determine that the complaint contains "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts."  *Bolus v. Fleetwood Motor Homes of IN, Inc.*, 2012 WL 3579609, at *10 (M.D. Pa. Aug. 17, 2012) (internal quotation marks omitted).  As Plaintiffs' own authority acknowledges, ""[a] plaintiff may not . . .

---

[15] Plaintiffs contend that "DCG/Silbert do not deny having directed actions towards Pennsylvania" related to issues other than Plaintiffs' lending relationship with Genesis under the MLA.  (Opp. 46.)  That is flatly wrong.  (Br. 32.)  Moreover, Plaintiffs allege no such conduct and, regardless, any conduct that is irrelevant to the subject transaction is, by definition, irrelevant to establishing specific jurisdiction with respect to that transaction.  And Plaintiffs' citation to *Gemini* in support of their personal jurisdiction argument (Opp. 47-48) is misplaced, as personal jurisdiction was not an issue in that case.

undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (denying jurisdictional discovery where plaintiff "[fell] woefully short of making factual allegations suggesting with 'reasonable particularity' the possible existence of contacts between" the defendant and the forum state).

Here, Plaintiffs fail to describe with any particularity what contacts they hope to find between DCG, Silbert, and the Commonwealth of Pennsylvania. Instead, they list a blunderbuss request for all documents that "evidence Defendants' awareness of Pennsylvania lenders and their strategy for disseminating the $1.1 billion promissory note," including "internal dashboards, compliance questionnaires, investor-relations materials, and Slack/Telegram (or comparable) channels." (Opp. 48.) None of that, however, has any apparent nexus to Plaintiffs' claim or is geared to identifying conduct *by Defendants* relating to that claim that took place in Pennsylvania or is directed at Pennsylvania. And knowledge of *Genesis's* Pennsylvania contacts is not relevant to whether DCG and Silbert have the requisite contacts with Pennsylvania. (Br. 34.) Accordingly, Plaintiffs are not entitled to jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in their opening

brief, DCG and Silbert respectively request that the Court dismiss Plaintiffs'

Amended Complaint with prejudice.

Dated:  New York, New York
July 1, 2025

Respectfully submitted,

**DAVIS POLK & WARDWELL LLP**

*/s/ Benjamin S. Kaminetzky*
Benjamin S. Kaminetzky (*admitted pro hac vice*)
Daniel J. Schwartz (*admitted pro hac vice*)
Matthew R. Brock (*admitted pro hac vice*)
450 Lexington Avenue
New York, New York 10017
Telephone:   (212) 450-4000
Facsimile:   (212) 701-5800
ben.kaminetzky@davispolk.com
daniel.schwartz@davispolk.com
matthew.brock@davispolk.com

– and –

**McCORMICK LAW FIRM**

*/s/ Brian J. Bluth*
Brian J. Bluth
PA I.D. 87432
835 West Fourth Street
Williamsport, PA 17701
Telephone:   (570) 326-5131
Facsimile:   (570) 601-0768
bbluth@mcclaw.com

*Attorneys for Defendants Digital Currency Group, Inc. and Barry E. Silbert*

32

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

STEPHEN H. SOKOLOWSKI and
CHRISTOPHER H. SOKOLOWSKI,

                              Plaintiffs

         - against -

DIGITAL CURRENCY GROUP, INC.,
BARRY E. SILBERT, and SOICHIRO
"MICHAEL" MORO,

                              Defendants.

Electronically Filed

Civil Action No. 4:25-cv-00001

Hon. Phillip J. Caraballo

Complaint filed January 2,
2025

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.8

This brief complies with L.R. 7.8(b)(2) and this Court's Order [ECF No. 51]

because it contains 6,420 using the word count features of Microsoft Word in 14-

point font size and Times New Roman Type Style.

DAVIS POLK & WARDWELL LLP

By:  */s/ Benjamin S. Kaminetzky*
     Benjamin S. Kaminetzky (*admitted pro
     hac vice*)
     Attorneys for Defendants Digital
     Currency Group, Inc. and Barry E.
     Silbert

     New York, New York 10017
     Telephone:   (212) 450-4000
     Facsimile:   (212) 701-5800
     ben.kaminetzky@davispolk.com

## CERTIFICATE OF SERVICE

I hereby certify that the attached Memorandum of Law in Support Of Motion To Dismiss Of Defendants Digital Currency Group, Inc. and Barry E. Silbert, was electronically filed with the court and electronically served upon all counsel on July 1, 2025.

DAVIS POLK & WARDWELL LLP

By:  */s/ Benjamin S. Kaminetzky*
Benjamin S. Kaminetzky (*admitted pro hac vice*)
Attorneys for Defendants Digital Currency Group, Inc. and Barry E. Silbert

New York, New York 10017
Telephone:   (212) 450-4000
Facsimile:   (212) 701-5800
ben.kaminetzky@davispolk.com