## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN H. SOKOLOWSKI AND CHRISTOPHER H. SOKOLOWSKI,<br><br>         Plaintiffs,<br><br>   v.<br><br>DIGITAL CURRENCY GROUP, INC., BARRY E. SILBERT, AND SOICHIRO "MICHAEL" MORO,<br><br>         Defendants. | Case No. 4:25-CV-00001-PJC |

## REPLY IN SUPPORT OF SOICHIRO "MICHAEL" MORO'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone +1 202.942.5000

KLEHR HARRISON HARVEY BRANZBURG LLP
1835 Market St., Suite 1400
Philadelphia, PA 19103
Telephone: +1 215.569.3003

# **TABLE OF CONTENTS**

Preliminary Statement.................................................................................1

Argument....................................................................................................4

    I.     Plaintiffs Do Not Allege Mr. Moro Violated the UTPCPL .................4

    II.    Plaintiffs Do Not Allege Any Violation of the UTPCPL ....................9

    III.   Plaintiffs Lack Standing To Assert Any UTPCPL Claims.................12

    IV.   Plaintiffs Do Not Allege The Court Has Personal Jurisdiction
         Over Mr. Moro ...................................................................................17

Conclusion ...............................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abramson v. Caribbean Cruise Line, Inc.*,
  No. 2:14-CV-00435, 2014 WL 2938626 (W.D. Pa. June 30, 2014)...................8

*Branche v. Wells Fargo Home Mortg., Inc.*,
  624 F. App'x 61 (3d Cir. 2015) ............................................................9

*Brownell v. State Farm Mut. Ins. Co.*,
  757 F. Supp. 526 (E.D. Pa. 1991)........................................................9

*Car Carriers, Inc. v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir. 1984) .............................................................7

*Katz v. Fiat/Chrysler Automobiles*,
  No. 3:15-CV-0036, 2015 WL 2452419 (M.D. Pa. May 21, 2015) ...................13

*Chester Extended Care Ctr. V. Penn. Dep't of Pub. Welfare*,
  526 Pa. 350, 586 A.2d 379 (1991).......................................................14

*Ciolli v. Iravani*,
  651 F. Supp. 2d 356 (E.D. Pa. 2009)....................................................18

*Com., State Public School Bldg. Authority v. Noble C. Quandel Co.*,
  585 A.2d 1136 (1991)................................................................16, 17

*Commonwealth ex rel. Zimmerman v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988) .........................................................7, 10

*Dobson v. Milton Hershey School*,
  356 F. Supp. 3d 428 (M.D. Pa. 2018)..............................................2, 5, 6

*In re Tallarico's Estate*,
  228 A.2d 736 (Pa. 1967)..................................................................14

*Katz v. Aetna Cas. & Sur. Co.*,
  972 F.2d 53 (3d Cir. 1992) .................................................................9

*Novelty Knitting Mills, Inc. v. Siskind*,
  457 A.2d 502 (1983)................................................................16, 17

*Santiago v. Brooks Range Cont. Servs., Inc.*,
   No. CIV.A. 11-7269, 2012 WL 1019060 (E.D. Pa. Mar. 26, 2012) ...................8

*Segal v. Zieleniec*,
   No. 13-7493, 2015 WL 1344769 (E.D. Pa. Mar. 24, 2015) ...............................10

*Wayne Moving & Storage of N.J., Inc. v. School Dist. Of
   Philadelphia*,
   625 F.3d 148 (3d Cir. 2010) .................................................................14, 15, 16

## **Statutes**

73 Pa. Cons. Stat. § 201-9.2 ........................................................................9

Pa. Stat. §§ 201-3(a), 201-9.2 .....................................................................2

Pennsylvania's Unfair Trade Practices and Consumer Protection Law ...................1

UTPCPL ................................................................................*passim*

Defendant Soichiro "Michael" Moro ("Mr. Moro") submits this Reply in further Support of his Motion to Dismiss. ECF No. 24.[1]

## **PRELIMINARY STATEMENT**

Plaintiffs' Amended Complaint asserts only one cause of action against Mr. Moro: a violation by Mr. Moro of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Am. Compl. at 65 (Count I). This violation is premised, in turn, on one alleged "unfair or deceptive act," namely, Genesis' provision of an allegedly "fraudulent balance sheet and related communications" to Plaintiffs in September 2022, which Plaintiffs allege they relied on when deciding to maintain and extend certain loans to Genesis. *See, e.g.*, Am. Compl. ¶¶ 1, 15, 27, 30, 94-106. But as detailed in Mr. Moro's Moving Brief, even accepting Plaintiffs' allegations as true and notwithstanding the multiple other fatal deficiencies in their Amended Complaint, Mr. Moro cannot be liable for *Genesis'* provision of a fraudulent balance sheet in September 2022 for the simple reason that Mr. Moro stepped down as C.E.O. of Genesis as of August 24, 2022, Am. Compl. ¶ 10, and had no relationship with or control over any Genesis entity or employees for nearly a month before Plaintiffs allege the fraudulent balance sheet was provided. Br. at 15-16; Am. Compl. ¶ 10.

---

[1] Capitalized terms used but not defined herein shall have the same meaning as in Mr. Moro's Memorandum of Law in Support of his Motino to Dismiss [ECF No. 38] ("Moving Brief" or "Br."). Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss [ECF No. 44] is cited as "Opposition" or "Opp."

Despite this simple, clear, and uncontested basis for dismissal of the Amended Complaint, Plaintiffs respond that Mr. Moro's arguments are "complex, convoluted, difficult to understand, irrelevant, [and] rely upon inadmissible evidence…" Opp. at 9. Plaintiffs then spend more than 72-pages attempting to establish the existence of a "conspiracy," "fraudulent scheme," "fraudulent inducement," and other causes of action that Plaintiffs have not alleged as a basis for liability in their Amended Complaint. Opp. at 1, 34. Despite their voluminous arguments, Plaintiffs nevertheless fail to identify any factual allegations that demonstrate Mr. Moro engaged in "[u]nfair methods of competition and unfair deceptive acts or practices in the conduct of any trade or commerce," 73 Pa. Stat. §§ 201-3(a), 201-9.2, or that Plaintiffs "justifiably relied on [*Mr. Moro's*] wrongful conduct or representation," and "suffered harm as a result." *Dobson v. Milton Hershey School*, 356 F. Supp. 3d 428, 435 (M.D. Pa. 2018). For this reason alone, Plaintiffs' Amended Complaint must be dismissed as to Mr. Moro.

Plaintiffs' Amended Complaint also must be dismissed against all Defendants, including Mr. Moro, for several additional reasons.[2] First, Plaintiffs fail

---

[2] While Mr. Moro responds to each argument in Plaintiffs' Opposition that applies to him, Plaintiffs' 72-page Opposition includes several arguments in response to Defendants DCG's and Silbert's (the "DCG Defendants") briefing which Plaintiffs may or may not intend to apply to Mr. Moro as well. Where applicable, Mr. Moro addresses those arguments briefly and refers the Court to the DCG Defendants' Reply Memorandum of Law in Support of Motion to Dismiss filed July 1, 2025 (the "DCG Reply") for a more fulsome response to Plaintiffs' arguments.

to allege that they are purchasers or lessees of goods and services as required under the UTPCPL. The only transactions at issue in Plaintiffs' Amended Complaint are *loans* pursuant to *Lending Agreements* between CM and Genesis. While Plaintiffs attempt to creatively rewrite history in their briefing by claiming that CM did not make loans to Genesis but instead purchased "a comprehensive financial service," Plaintiffs' Amended Complaint unequivocally alleges otherwise.

Second, Plaintiffs lack standing to assert any UTPCPL claim against Mr. Moro. At most, Plaintiffs allege that Genesis induced nonparty CM, not Plaintiffs, to lend crypto assets pursuant to the Lending Agreements at issue in this case. Plaintiffs do not identify any transactions that *they* entered into with Genesis themselves and, as a result, have no standing to pursue an UTPCPL claim. And Plaintiffs freely admit that "CM LLC never held a UTPCPL cause of action" that they could assert on its behalf. Opp. at 56. In fact, CM assigned any such claims against Defendants and other Genesis affiliates to a third party in 2023. Am. Compl. 131. In an attempt to sidestep this reality, Plaintiffs argue that Defendants, including Mr. Moro, are equitably estopped from asserting any defenses based on the distinction between CM and Plaintiffs. Yet Plaintiffs fail to allege that any Defendant, including Mr. Moro, ever made *any* representation to Plaintiffs (or CM) whatsoever, much less that Mr. Moro made a misrepresentation regarding the relationship between Genesis and CM on which Plaintiffs relied to their detriment.

Third, Plaintiffs fail to allege this Court has personal jurisdiction over Mr. Moro, a New York resident. Plaintiffs fail to allege that Mr. Moro engaged in any conduct at all relating to Plaintiffs' UTPCPL claim—much less that he directed any conduct towards Pennsylvania. At most Plaintiffs allege that Genesis, or certain Genesis employees, engaged in conduct targeting Pennsylvania, but such allegations are insufficient to establish personal jurisdiction over *Mr. Moro*.

For all of these reasons, as discussed further below, Plaintiffs' Amended Complaint should be dismissed with prejudice.

## **ARGUMENT**

## I. **PLAINTIFFS FAIL TO ALLEGE THAT MR. MORO VIOLATED THE UTPCPL**

Defendants, including Mr. Moro, assert several bases for the dismissal of Plaintiffs' Amended Complaint that do not require the Court to ever reach the merits of Plaintiffs' UTPCPL claim. While Mr. Moro addresses these arguments below, i*nfra* Sections III (Plaintiffs' lack of standing),[3] IV (lack of personal jurisdiction),[4] Plaintiffs' failure to plead a violation of the UTPCPL by Mr. Moro, specifically, warrants the Court's consideration at the outset. Contrary to Plaintiffs' claim that Mr. Moro's arguments are "complex, convoluted, difficult to understand, irrelevant,

---

[3] *See also* Moving Br. § I. DCG Defendants likewise address Plaintiffs' lack of standing at DCG Br. § I, and DCG Reply § I.

[4] *See also* Moving Br. § III. DCG Defendants address the lack of personal jurisdiction as to them on similar grounds at DCG Br. § IV, DCG Reply § IV.

rely upon inadmissible evidence, and—most importantly—**are contradictory**," Opp. at 9 (emphasis in original), Mr. Moro's argument could not be more simple: Plaintiffs have not alleged, and cannot allege, that they (i) justifiably relied on any wrongful conduct or representation by Mr. Moro, and (ii) suffered harm as a result, the essential elements of a UTPCPL claim. *Dobson v. Milton Hershey School*, 356 F. Supp. 3d 428, 435 (M.D. Pa. 2018).

As explained in Mr. Moro's Moving Brief, the sole "act" Plaintiffs allege they relied on and were harmed by was Genesis' provision of an allegedly fraudulent balance sheet to CM on September 23, 2022. Br. at 4 n. 3 (citing Am. Compl. ¶¶ 15(b), 19, 94-106, 97, 111, 135). Plaintiffs' Opposition once again confirms that the September 2022 balance sheet is the only basis for their UTPCPL claim:

- "When the renewal period approached, Genesis employees sent a false balance sheet into Pennsylvania. This balance sheet referenced the fraudulent promissory note signed by Defendants as a 'current asset,' inducing Plaintiffs to renew the loans a second time." Opp. at 7 (internal citations omitted);
- "Most critically, it is indisputable that the fraudulent promissory note's classification on the balance sheet represented 'characteristics…benefits, or qualities,' that the note 'did not have,'" causing 'confusion or misunderstanding.'" Opp. at 27 (citing UTPCPL);
- "[T]he fraudulent September 2022 balance sheet provided by Genesis personnel—[was] designed to and did induced Plaintiffs to continue and renew their participation in the lending program *under the existing MLA framework*." Opp. at 34-35 (emphasis in original);
- "On September 23, 2022, Genesis e-mailed Plaintiffs in State College, Pennsylvania a false balance sheet that incorporated the Note." Opp. at 43;

- "Genesis employee Griffin Tiedy's Pennsylvania-directed transmission of the fraudulent balance sheet is imputable to Genesis and, given their domination and orchestration, to DCG, Silbert, and Moro." Opp. at 45 (internal citation omitted);
- "Plaintiffs would never have deposited any money into the fraudulent scheme but for Defendants' misrepresentations and the false balance sheet." Opp. at 68;
- Identifying "[t]he September 23, 2022 balance sheet listing that note as a 'current asset'" as basis for claim. Opp. at 69; and
- "Plaintiffs justifiable relied on the misleading financial picture presented in the balance sheet, which falsely portrayed Genesis as solvent and liquid." Opp. at 71.

Yet Plaintiffs' Amended Complaint concedes that Mr. Moro stepped down as C.E.O. of Genesis as of August 24, 2022, *a month before* Genesis allegedly provided the fraudulent balance sheet to Plaintiffs, Am. Compl. ¶ 10. Furthermore, the balance sheet on its face is labeled "Genesis Lending Snapshot as of 9/21/2022," Am. Compl. Ex. A, making plain that it provides a picture of Genesis' finances at a time that was well after Mr. Moro's departure

Accordingly, even if the Court accepts Plaintiffs' allegations that they relied on the balance sheet and that the balance sheet was false or misleading, Plaintiffs offer no argument or basis upon which this Court can conclude that *Mr. Moro* had any involvement in preparing, reviewing, signing off on, providing the balance sheet to, or directing the balance sheet be provided to Plaintiffs. Accordingly, there is no connection between Mr. Moro and the "wrongful conduct or representation" Plaintiffs allege they relied on to their detriment and Plaintiffs' UTPCPL claim against Mr. Moro must be dismissed. *Dobson*, 356 F. Supp. 3d at 435.

Recognizing this fatal deficiency, Plaintiffs attempt to expand their allegations to include reliance on a June 17 tweet by Mr. Moro which stated:

> We will actively pursue recovery on any potential residual loss through all means available, however our potential loss is finite and can be netted against our own balance sheet as an organization. We have shed the risk and moved on….We continue to operate 24/7 and have met every client request. We are extremely confident in our ability to service lenders, borrowers and traders within our service level agreements.

Am. Compl. ¶ 92. However, Plaintiffs never alleged in the Amended Complaint that they relied on this tweet when deciding to extend or maintain loans at Genesis *three months later*, in September 2022, and this improper attempt to amend their Complaint through briefing should be rejected. *See, e.g.*, *Commonwealth ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss" (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984))).

Further refuting this newly alleged "reliance," Plaintiffs resort to blatant mischaracterizations of the Amended Complaint and its attachments in an attempt to fabricate non-existent allegations. To begin, Plaintiffs concede that the Amended Complaint fails to allege that Christopher Sokolowski ever even saw the June 17 tweet, much less relied on it. Opp. at 6 n. 1, 34 n. 3. Instead, Plaintiffs instruct this Court to simply "infer" that he both reviewed and was "influenced" by the tweet.

*Contra Abramson v. Caribbean Cruise Line, Inc.*, No. 2:14-CV-00435, 2014 WL 2938626, at *3 (W.D. Pa. June 30, 2014); *Santiago v. Brooks Range Cont. Servs., Inc.*, No. CIV.A. 11-7269, 2012 WL 1019060, at *2 (E.D. Pa. Mar. 26, 2012) ("While a plaintiff at the motion-to-dismiss stage need not plead all relevant facts that would support his claim, the Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint."). And while Plaintiffs claim that "Plaintiff Stephen Sokolowski later stated [the June 17 tweet] was critical to his reasoning," Opp. at 6 (citing Am. Compl. Ex. E at 5-6), the referenced transcript merely reflects that Stephen Sokolowski "believes" he asked some unidentified person(s) at Genesis "how – how things were – *you know* – what was going on at the company" at some indeterminate time after the June 17 tweet and that "they said *you know* everything is fine during – during that time." Am. Compl. Ex. E at 5-6. Nothing in this exchange suggests that the June 17 tweet was "critical" to any decision by Stephen Sokolowski, much less a decision to extend new loans or maintain current loans with Genesis in September 2022. Finally, Plaintiffs unequivocally allege that, "*[b]ut for the presentation of the fraudulent balance sheet*, Plaintiffs would not have renewed their loans and would have withdrawn all assets from Genesis." Am. Compl. ¶ 105 (emphasis). Given this allegation, Plaintiffs cannot now claim that they relied on or were harmed by Mr. Moro's heretofore unmentioned June 17 tweet—which had nothing to do with the

Promissory Note (entered into two weeks later) or any balance sheet provided to Plaintiffs in September 2022. Am. Compl. ¶ 92-93.

For these reasons, Plaintiffs have failed to allege that they relied on any wrongful conduct or representation by Mr. Moro and their Amended Complaint against him should be dismissed.

## II.    PLAINTIFFS DO NOT ALLEGE ANY VIOLATION OF THE UTPCPL

Plaintiffs not only fail to allege a violation of the UTPCPL based on wrongful conduct or representations by Mr. Moro, Plaintiffs' Amended Complaint does not, and cannot, allege any violation of the UTPCPL *at all*. The UTPCPL "unambiguously permits only persons who have purchased or leased goods or services to sue." *See Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992); *see also Branche v. Wells Fargo Home Mortg., Inc.*, 624 F. App'x 61, 64 (3d Cir. 2015) (per curium) (affirming dismissal of UTPCPL claim where plaintiff "was not a purchaser of [defendant]'s services, as it was [her] common law husband who obtained the mortgage"); *see generally* 73 Pa. Cons. Stat. § 201-9.2. Further, UTPCPL claims can only be asserted against a seller, lessor, or some other entity in the "chain of supply." *Brownell v. State Farm Mut. Ins. Co.*, 757 F. Supp. 526, 533 (E.D. Pa. 1991) (dismissing UTPCPL claim where defendant was not "in any trade or commercial relationship with plaintiff").

Plaintiffs  fail to point to any allegation that there was a "purchase or lease" of any "goods or services" by *anyone*—much less by Plaintiffs. To the contrary, Plaintiffs' Amended Complaint is unambiguous that the transactions at issue here were "loans" and, under Pennsylvania law, a plaintiff who lends money or assets in exchange for interest "did not purchase a good or service." *Segal v. Zieleniec*, No. 13-7493, 2015 WL 1344769, at *4 (E.D. Pa. Mar. 24, 2015); s*ee also*, Am. Compl. ¶¶ 2 (Plaintiffs "simply *lent* their personally owned cryptocurrency and U.S. Dollars to Genesis in exchange for interest"); ¶ 28 ("The assets *loaned* to Genesis were Plaintiffs' personal savings"); ¶ 31 ("Plaintiffs' intention was to safely *lend* their personally owned assets"); ¶ 83 ("Genesis entered into *loans* with Plaintiffs using simple one-page term sheets.").

Notwithstanding these clear admissions, Plaintiffs now argue that CM's transactions with Genesis were not, in fact, loans but instead claim that Plaintiffs "purchased access to, and use of, what was marketed as a bundled financial-services platform." Opp. at 21. Once again, Plaintiffs' transparent recharacterization of their allegations is an impermissible attempt to amend the pleadings through briefing and should be rejected. *Zimmerman*, 836 F.2d at 181. Furthermore, the purported "services" Plaintiffs argue they "purchased" in their Opposition are alleged neither directly nor indirectly in the Amended Complaint.

For example, Plaintiffs argue that Genesis "provid[ed] a platform connecting capital providers (Plaintiffs) with yield-generating opportunities (Genesis's borrowers or internal strategies), sparing Plaintiffs the effort and risk of finding, vetting, and contracting with end-borrowers themselves." Opp. at 22. Yet contrary to Plaintiffs' argument that Genesis "connected" Plaintiffs with other borrowers as a sort of "middle man," Plaintiffs' Amended Complaint effectively alleges the opposite: that Plaintiffs did not know what Genesis did with the funds or assets that CM lent to it, much less who it lent them to. *See, e.g.*, Am. Compl. ¶ 84 (alleging Stephen Sokolowski understood Genesis was "just kind of like making loans and then, you know charging a higher interest rate and … pocketing the difference," but that it became "pretty clear that was not their entire or even their primary business model to just borrow money and then lend it out at a higher interest rate.").

The Amended Complaint also is clear that interest rates on loans to Genesis "were fixed at the time of loan origination and not dependent on Genesis's financial performance," Am. Compl. ¶ 83(c), specifically disclaiming any connection between CM, who made loans directly to Genesis, and any "end-borrowers," who likewise borrowed from and paid interest to Genesis. The remaining "services" Plaintiffs allege they purchased from Genesis are nothing more than the typical business operations offered by any counterparty to a loan: risk management (i.e., managing *Genesis'* business risks as a lending counterparty), convenience and platform

infrastructure (listing the offering of account statements, [loan] transaction processing, and customer support), and advice (purportedly regarding *Genesis'* current interest rates on loans). Opp. at 23.

Confusingly, Plaintiffs claim that, "[h]ad Plaintiffs merely wished to make loans, they could have sought direct counterparty relationships and undertaken the associated due-diligence burden, accepting concentrated counterparty risk." Opp. at 23. Yet that is exactly what occurred here. CM sought a direct counterparty relationship with Genesis, undertook the associated due-diligence burden with Genesis, and accepted the concentrated counterparty risk to Genesis. *See, e.g.*, Am. Compl. ¶¶ 31, 83. As a result, CM's transactions with Genesis were loans and not subject to the UTPCPL.

For all of these reasons, Plaintiffs failed to allege that there was any purchase or sale of a good or service as required to support their UTPCPL claim and their Amended Complaint must be dismissed.[5]

## III.    PLAINTIFFS LACK STANDING TO ASSERT ANY UTPCPL CLAIMS

Even if CM's loans to Genesis did qualify as a purchase or lease of a good or service for purposes of the UTPCPL (which they do not), Plaintiffs' Amended

---

[5] In addition to the arguments herein, Mr. Moro refers the Court to the further arguments and caselaw relating to Plaintiffs' failure to plead the purchase or lease of goods or services included in § III.B. of the DCG Reply.

Complaint still must be dismissed because Plaintiffs lack standing to assert the claim. As discussed in Mr. Moro's Moving Brief, the Lending Agreements and resulting loans at issue in these transactions were between Genesis and CM, not Plaintiffs. As a result, any UTPCPL claim would belong to CM, not Plaintiffs. Br. at Section I(A)-(B).

In their Opposition, Plaintiffs characterize the fundamental legal principal that a limited liability company is a separate and distinct entity from that LLC's owners and/or beneficiaries as nothing more than a "technical defense." Opp. at 11. Plaintiffs argue that Defendants, including Mr. Moro, should be equitably estopped from asserting any defenses based thereon because Genesis, not Defendants, "engaged in a patter of inconsistent conduct that induced Plaintiffs to believe that they were the true parties in interest and that the LLC formality would not be used to shield Defendants from accountability." Opp. at 11. Plaintiffs' creative arguments notwithstanding, neither the law nor the facts alleged in Plaintiffs' Amended Complaint support this proposition.

To begin with, Plaintiffs' lack of standing is jurisdictional, and the Court is required to decide whether it has subject matter jurisdiction regardless whether a party raises a challenge. *Katz v. Fiat/Chrysler Automobiles*, No. 3:15-CV-0036, 2015 WL 2452419, at *3 (M.D. Pa. May 21, 2015).

-13-

Accordingly, the doctrine of "equitable estoppel" simply has no bearing here and Plaintiffs' argument should be rejected out of hand.

Moreover, Plaintiffs fail to satisfy the elements of equitable estoppel even if it were to apply to a consideration of standing (which it does not).   Under Pennsylvania law, equitable estoppel consists of three elements: "1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; 2) unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting estoppel; and 3) the lack of a duty to inquire on the party asserting the estoppel." *Wayne Moving & Storage of N.J., Inc. v. School Dist. Of Philadelphia*, 625 F.3d 148, 155 (3d Cir. 2010) (quoting *Chester Extended Care Ctr. V. Penn. Dep't of Pub. Welfare*, 526 Pa. 350, 586 A.2d 379, 382 (1991)).

First, Plaintiffs fail to allege that Mr. Moro engaged in any "misleading words, conduct, or silence" towards Plaintiffs regarding the relationship between Genesis, CM, and Plaintiffs. In fact, Plaintiffs fail to allege that Mr. Moro ever interacted with CM or Plaintiffs at all, or that Mr. Moro even knew CM was a counterparty to Genesis, knew of the relationship between CM and Plaintiffs, or knew that anyone at Genesis had ever interacted with Plaintiffs. To the contrary, Plaintiffs allege that *Genesis*, not *Mr. Moro*, was responsible for the allegedly misleading words, conduct, or silence. Opp. at 13-15. Despite Plaintiffs' attempt to gloss over this fact, Mr. Moro cannot be estopped by someone else's conduct. *See In re Tallarico's Estate*, 228

A.2d 736, 741-42 (Pa. 1967) (holding "the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist," and refusing to estop a claim where the misrepresentation "was on the part of the decedent and not on the part of his children").

Moreover, Plaintiffs also failed to allege that Genesis engaged in any misleading words, conduct, or silence that could mislead Plaintiffs to believe that they were the true counterparties to the loans between CM and Genesis. As covered in Mr. Moro's Moving Brief, Genesis specifically refused to allow any CM Participants who could not meet the minimum deposit requirements to setup individual accounts, Am. Compl. ¶ 41, and instead only permitted CM to lend directly Genesis. Br. at 7-9. The Lending Agreements themselves unambiguously stated that they were entered into between Genesis and CM, not Plaintiffs, and contained clear contractual language limiting the parties and beneficiaries, stating: "Neither this Agreement nor any provision hereof, nor any Exhibit hereto or document executed or delivered herewith, or Loan Term Sheet hereunder, shall create any rights in favor of or impose any obligations upon any person or entity other than the parties hereto." Br. at 6 (citing Lending Agreement).

Nor can Plaintiffs satisfy their burden of "unambiguous proof of reasonable reliance upon [any] misrepresentation." *Wayne Moving & Storage of N.J., Inc.*, 625 F.3d at 155. To the contrary, as Mr. Moro points out in his Moving Brief, both

Defendants *and Plaintiffs* acknowledged that CM was a distinct legal entity and treated it as such. Br. at 9. For example, on December 1, 2022, Stephen Sokolowski unambiguously acknowledged and asserted his right to control CM to the exclusion of the other CM Participants, writing to Genesis employees: "I just want to remind here (sic) that I am the only person authorized to speak or make decisions for the company right now, so anything said by anyone else does not represent my position and does not constitute a request for action." Am. Compl. ¶ 116. At the very least, any ambiguity caused between Genesis employee's interactions with CM Participants and the clear contractual language of the Lending Agreement would have triggered a "duty to inquire" by Plaintiffs into the relationship between the parties, *Wayne Moving & Storage of N.J., Inc.*, 625 F.3d at 155, further failing the third element of equitable estoppel.

Perhaps anticipating this response, Plaintiffs claim that "even if Plaintiffs had treated CM LLC as a business in Defendants' Telegram chats or anywhere else, that fact is irrelevant to whether *Defendants* are estopped from *their* arguments regarding CM LLC's identity. Only the Defendants' conduct is important here." Opp. at 19. Yet neither of the cases Plaintiffs cite for this proposition support this argument. *See Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502 (1983); *Com., State Public School Bldg. Authority v. Noble C. Quandel Co.*, 585 A.2d 1136 (1991). That Plaintiffs' conduct matters to this analysis is axiomatic from the fact that Plaintiffs

must prove that they "justifiably relied" on the purported misrepresentation. *Novelty Knitting Mills, Inc.*, 457 A.2d at 503 (requiring "another to rely justifiably thereon to his own injury or detriment"); *Com., State Public School Bldg. Authority*, 585 A.2d at 1141 (requiring "justifiable reliance on the misrepresented fact"). Here, Plaintiffs own assertions that CM LLC was a company with an independent relationship with Genesis defeat any such claim for reliance.

As a result, Mr. Moro cannot be equitably estopped from asserting the defenses contained in his Moving Brief, including that Plaintiffs lack standing to assert their claims because (i) they were not parties to the Lending Agreements between CM and Genesis and (ii) CM assigned these claims away in the Bankruptcy Proceeding. For these reasons, as well as the reasons outlined in Section I of Mr. Moro's Moving Brief, the DCG Memorandum, and the DCG Reply, Plaintiffs lack standing to assert a UTPCPL claim and Plaintiffs' Amended Complaint must be dismissed.

## IV.   PLAINTIFFS FAIL TO ALLEGE THAT THE COURT HAS PERSONAL JURISDICTION OVER MR. MORO

As discussed in Mr. Moro's Moving Brief, Br. at 16-18, and above, *supra* pp. 5-9, Plaintiffs allege that they relied on one deceptive act, namely, Genesis' provision of an allegedly fraudulent balance sheet in September 2022. And, as further discussed, Plaintiffs  failed to allege any connection between Mr. Moro and

this allegedly fraudulent balance sheet, prepared and provided to Plaintiffs more than a *month* after Mr. Moro left Genesis.

In their Opposition, Plaintiffs argue that "[a]llowing Moro to avoid liability would imply that any corporate officer could conduct fraud in Pennsylvania and resign minutes later to escape blame." Opp. at 45. Plaintiffs miss the point. Mr. Moro does not argue that his resignation "negated" any Pennsylvania contacts sufficient to establish specific jurisdiction; instead, Mr. Moro argues that Plaintiffs have failed to allege that that their claim is "one which arises out of or results from [Mr. Moro's] forum related activities" in the first place. *Ciolli v. Iravani*, 651 F. Supp. 2d 356, 365 (E.D. Pa. 2009). Here, Plaintiffs fail to allege that their UTPCPL claim arises out of *any* activity by Mr. Moro at all, much less any activity by Mr. Moro in Pennsylvania. *See supra* p. 4; Opening Br. § III.

Accordingly, Plaintiffs fail to allege that the Court has personal jurisdiction over Mr. Moro and Plaintiffs' Amended Complaint must be dismissed as to him.

## CONCLUSION

For the foregoing reasons, and those reasons outlined in Mr. Moro's Moving Brief, the DCG Memorandum, and the DCG Reply, Mr. Moro respectively requests that the Court dismiss Plaintiffs' Complaint with prejudice.

Dated: July 1, 2025                                Respectfully submitted,

                                                   */s/ Christian D. H. Schultz*

**KLEHR HARRISON HARVEY**                          **ARNOLD & PORTER KAYE**
**BRANZBURG LLP**                                  **SCHOLER LLP**
Joshua M. Link                                     Christian D. H. Schultz (*pro hac vice*)
1835 Market St., Suite 1400                        601 Massachusetts Ave, NW
Philadelphia, PA 19103                             Washington, DC 20001-3743
Telephone: +1 215.569.3003                         Telephone +1 202.942.5000
Fax: +1 215.568.6603                               Fax: +1 202.942.5999

                                                   Tyler J. Fink (*pro hac vice*)
                                                   250 West 55th Street
                                                   New York, NY 10019-9710
                                                   Telephone: +1 212.836.8000
                                                   Fax: +1 212.836.8689

                                                   *Attorneys for Defendant Michael Moro*

**CERTIFICATE OF SERVICE**

I, CHRISTIAN D. H. SCHULTZ, hereby certify that on July 1, 2025, I caused

a true and accurate copy of the foregoing and all supporting documents, filed with

this Court, to be served upon plaintiffs via first class mail and the Court's ECF filing

system and counsel of record for each party via the Court's ECF filing system.

*/s/ Christian D. H. Schultz*
Christian D. H. Schultz


**CERTIFICATE OF WORD LIMIT COMPLIANCE**

I, CHRISTIAN D. H. SCHULTZ, hereby certify, pursuant to Local Rule

7.8(b)(2), that the attached Memorandum of Law in Support of Soichiro "Michael"

Moro's Motion to Dismiss Plaintiffs' Amended Complaint does not exceed 5,000

words in length, exclusive of all captions, tables, signature blocks, and the certificate

of service. According to the word count feature of the word processing system used

to prepare this brief, with the exclusions of the above it comprises around 4400

words.

*/s/ Christian D. H. Schultz*
Christian D. H. Schultz