# **COMPENDIUM OF UNPUBLISHED DECISIONS**

2014 WL 2938626
Only the Westlaw citation is currently available.
United States District Court,
W.D. Pennsylvania.

Stewart N. ABRAMSON, Plaintiff,
v.
CARIBBEAN CRUISE LINE, INC.
and Plaza Resorts, Inc., Defendants.

Civ. No. 2:14–cv–00435.
|
Signed June 23, 2014.
|
Filed June 30, 2014.

**Attorneys and Law Firms**

Clayton S. Morrow, Morrow & Artim, PC, Pittsburgh, PA, for Plaintiff.

Bradley J. Kitlowski, Buchanan Ingersoll & Rooney PC, Pittsburgh, PA, Richard W. Epstein, Jeffrey A. Backman, Greenspoon Marder, Fort Lauderdale, FL, for Defendants.

*MEMORANDUM OPINION*

MAURICE B. COHILL, JR., Senior District Judge.

 **\*1** Pending before the Court is a Joint Motion to Dismiss [ECF No. 15] filed by Caribbean Cruise Line, Inc. ("CCL") and Plaza Resorts, Inc. ("Plaza") pursuant to Rule 12 of the Federal Rules of Civil Procedure. In their Joint Motion to Dismiss, Defendants assert they did not violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), or the Federal Communication Commission ("FCC") regulations (*See* 47 C.F.R. § 64.1200) promulgated under the TCPA, because neither company initiated a call to Plaintiff, Stewart N. Abramson ("Plaintiff" or "Abramson"), using prerecorded messages for any of the impermissible purposes [ECF No. 15 at 3]. Further, Defendants assert that, pursuant to Fed .R.Civ.P. 12(b)(2), the First Amended Complaint should be dismissed on grounds that this Court lacks personal jurisdiction over Defendant Plaza [ECF No. 15 at 4–11]. Finally, Defendants assert that Plaintiff's First Amended Complaint should be dismissed under Rule 8(a) because the Complaint impermissibly lumps Defendants together causing confusion and failing to give sufficient notice of the

allegations against each Defendant [ECF No. 15 at 11–12]. For the following reasons, we will grant Defendants Motion to Dismiss in part, and deny in part.

**I. Procedural History**

On April 3, 2014, Defendants filed a timely motion for removal to the United States District Court for the Western District of Pennsylvania from the Court of Common Pleas of Allegheny County under federal question jurisdiction and pursuant to 28 U.S.C. § 1446 [ECF No. 1].

On April 24, 2014, Defendants filed a joint Motion to Dismiss and supporting memorandum claiming: (1) that this Court lacks personal jurisdiction over Defendant Plaza, and (2) that the Plaintiff's Complaint failed to state a claim upon which relief could be granted with respect to both Defendants Plaza and Caribbean Cruise Line [ECF No. 12]. Therefore, the lawsuit should be dismissed because, as a matter of law, no violation of TCPA had occurred. Further, Defendants requested that Plaintiff's Complaint be dismissed pursuant to Fed.R.Civ.P 8(a) because it lacked a clear claim for relief [ECF No. 12 at 9–10].

On May 5, 2014, Plaintiff filed his First Amended Complaint seeking to cure defects present in the first Complaint [ECF No. 14]. On May 23, 2014, Defendants filed a new Joint Motion to Dismiss, reasserting their Rule 12 and Rule 8 objections, and seeking dismissal with prejudice of Plaintiff's First Amended Complaint [ECF No. 15]. On June 9, 2014 Plaintiff filed a Response to Defendants' Joint Motion to Dismiss the Amended Complaint [ECF No. 16].

**II. Relevant Facts**

Caribbean Cruise Line, Inc. and Plaza Resorts, Inc. are Defendants in a case originally filed by Steward N. Abramson in the Court of Common Pleas of Allegheny County in February 2014 [ECF No. 1, Exhibit A]. Abramson seeks compensatory damages in the sum of $3,000, plus costs and attorney's fees [*See* ECF No. 14 at 8].

 **\*2** The facts of the case are that Abramson received two calls from the same number approximately 14 minutes apart on February 3, 2014 [ECF No. 14 at 5]. According to Plaintiff's First Amended Complaint, Plaintiff answered the phone to receive the first call, but no message was delivered [ECF No. 14 at 6]. Upon answering the phone to receive the second call, Plaintiff heard, "Hi, this is Jennifer with Caribbean Cruise Line, can you hear me ok?" [ECF No. 14 at 6]. The First

Amended Complaint alleges that the caller went on to say, "The reason for my call is because we're looking for qualified travelers, such as yourself, to occupy unused cabin space aboard our magnificent cruise liner." [ECF No. 14 at 6]. The First Amended Complaint also differs from the original Complaint filed with this Court, which stated that during the second call Plaintiff asked the caller to repeat their name, at which time the caller hung up [ECF No. 1 at 3].

Later that same day, Plaintiff called the number from which he had received the earlier calls [ECF No. 14 at 6–7]. The voice that answered the phone allegedly delivered the identical message Plaintiff had received during CALL 2 [ECF No. 14 at 6]. Plaintiff interacted with the voice until he was connected to a live person [ECF No. 14 at 6]. The live person stated her name was Bridgette, that she worked for CCL, and then she gave Plaintiff her direct phone number [ECF No. 14 at 6]. Plaintiff was then transferred to two other live people who each said they worked for CCL [ECF No. 14 at 6]. Plaintiff ultimately purchased a product during this final call [ECF No. 14 at 7]. Plaintiff alleges his credit card was subsequently charged by Defendant Plaza [ECF No. 14 at 7], a claim Defendants contest [ECF No. 15 at 3 n. 16]. Defendants' Joint Motion for Dismissal claims that Plaintiff never purchased a travel package on February 3, 2014, and that the reservation number provided by Plaintiff is associated with an individual named Brian Ludin [ECF No. 15 at 3 n. 16]. Neither party provides evidence to support their position on this matter.

### III. Standard of Review for Rule 12(b)(6) Motion to Dismiss

In ruling on a Rule 12(b)(6) Motion for Failure to State a Claim upon which Relief can be granted, a court must " 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.' " *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008) (*quoting Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir.2002)); (*see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, n. 8, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Rule 8 does, however, "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 555).

**\*3** "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (*citing Twombly,* 550 U.S. at 556). "Factual allegations [of a complaint] must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "This [standard] 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Phillips,* 515 F.3d at 234 (*quoting Twombly,* 550 U.S. at 556). Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).

The Supreme Court in *Iqbal* explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. *See* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* (*citing Twombly,* 550 U.S. at 555); *see also Phillips,* 515 F.3d at 232 ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests.") (*citing Twombly,* 550 U.S. at 555 n. 3 (2007)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

Finally, if the court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), the court must next decide whether leave to amend the complaint must be granted. As explained in *Phillips,* "We have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." 515 F.3d 236 (citing *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir.2002)).

### IV. TCPA 12(b)(6) Analysis

Plaintiff's First Amended Complaint alleges violations of 47 U.S.C. § 227(b)(1)(B) ("Restrictions on use of automated telephone equipment") and 47 C.F.R. § 64,1200(a)(3) ("Delivery restrictions") [ECF No. 14 at 8]. In order to prevail on his 47 U.S.C. § 227(b)(1)(B) claim, Plaintiff must prove that each Defendant "initiate[d] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)." 47 U.S.C. § 227(b)(1)(B). In order to prevail on his 47 C.F.R. § 64.1200(a)(3) claim, Plaintiff must prove that each Defendant "initiate[d] any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party." 47 C.F.R. § 64 .1200(a)(3).

### A. CALL 1

**\*4** Plaintiff's First Amended Complaint does not survive Defendant's Rule 12(b)(6) Motion to Dismiss with respect to CALL 1. CALL 1 was simply a hang-up call. No verbal communication was delivered. The First Amended Complaint states, "Plaintiff believes and therefore alleges that CALL 1 was initiated to deliver to Plaintiff the same prerecorded messages that were ultimately delivered to Plaintiff during CALL 2" [ECF No. 14 at 6]. We find that because the caller hung up before anything was said, there can be no violation of the TCPA since it cannot be determined that a prerecorded voice was used. Plaintiff's assertion does not "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Rather, his allegation is the type of "threadbare recital of the elements of a cause of action" that will not allow a Complaint to survive a Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim." *See Iqbal,* 556 U.S. at 678 (*citing Twombly,* 550 U.S. at 555). Without a more concrete factual basis for such an allegation, it cannot be said that the claim is "plausible on its face" with respect to CALL 1. *See Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 570).

Further, the fact the same number that initiated CALL 1 was the number that initiated CALL 2 does not prove that the same message was going to be delivered in CALL 1 that was ultimately delivered in CALL 2. It is mere speculation on the part of the Plaintiff that the message delivered in CALL 2 was intended to be delivered in CALL 1. Therefore, we will grant Defendants' Joint 12(b)(6) Motion to Dismiss with respect to CALL 1 as Plaintiff's right to relief is not "plausible on its face." *See Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 570). We find that without materially changing the alleged

facts, any possible amendment Plaintiff would submit would be futile. Accordingly, the claim with respect to CALL 1 in the First Amended Complaint will be dismissed with prejudice as to both Defendants, Plaza and CCL.

### B. Plaza and CALL 2

Plaintiff's First Amended Complaint alleges that CALL 2 was delivered by a prerecorded message stating, "Hi, this is Jennifer with Caribbean Cruise Line, can you hear me OK?" [ECF No. 14 at 6]. The message allegedly continued, "The reason for my call is because we're looking for qualified travelers, such as yourself, to occupy unused cabin space aboard our magnificent cruise liner." [ECF No. 14 at 6]. Plaintiff alleges that he called the number back later that day and heard the same prerecorded message [ECF No. 14 at 6].

Plaintiff's First Amended Complaint satisfies the requirements to survive a Fed.R.Civ.P. 12(b)(6) Motion to Dismiss with respect to CALL 2. Plaintiff adequately alleges that Defendant CCL (1) initiated the call to his residential landline, (2) with an artificial or prerecorded voice, (3) to deliver a message, (4) without his prior express consent, and (5) the call was not for one of the permissible purposes.

**\*5** Plaintiff's First Amended Complaint, however, does not survive Defendant Plaza's Rule 12(b)(6) Motion to Dismiss with respect to CALL 2. Accepting the allegations as true, the pleadings show that Defendant Caribbean Cruise Line was the party that initiated the telephone call which was allegedly in violation of TCPA. Throughout the conversation, Defendant Plaza is not mentioned once. Plaintiff's Response seeks to connect the two Defendants through a concept of "factoring" [ECF No, 16 at 13]. This argument, even if accepted, only proves that Defendant Plaza earns money from transactions processed, not that they initiated the call. Simply put, Plaintiff's allegations with respect to Plaza are too attenuated and speculative to survive a Rule 12(b)(6) Motion of Dismissal. *See generally Twornbly,* 550 U.S. at 555.

In order to cure the defects leading to our dismissal of Plaza as a Defendant in the First Amended Complaint, Plaintiff will have to allege sufficient facts to show a more definite connection between Plaza and CCL beyond mere speculation or suspicions. Plaintiff has repeatedly failed present any colorable claim of Plaza's involvement with CALL 2, beyond mere speculation and suspicions. Accordingly, we grant Defendant Plaza's Fed.R.Civ.P 12(b)(6) Motion to Dismiss.

## C. CCL and CALL 2

CCL requested dismissal of the First Amended Complaint for failure to satisfy Fed.R.Civ.P. 8(a). While the First Amended Complaint could have been more artfully drafted, it adequately informs CCL that it was in violation of TCPA with respect to CALL 2. Namely that CCL (1) initiated CALL 2, (2) using an artificial or prerecorded voice, (3) to deliver a message, (4) without the prior consent of Plaintiff, and (5) the call constituted telemarketing for a commercial purpose. There is no question that CCL had sufficient notice of the charge against it, and the factual allegations underlying each claim, so as to satisfy the notice requirement of Fed.R.Civ.P. 8.

CCL further asserts that Plaintiff has alleged no facts to establish that either Defendant initiated the call. [ECF No. 15 at 15]. We disagree with respect to CCL since the caller allegedly stated, "Hi, this is Jennifer *with Caribbean Cruise Line ....*" [ECF No. 14 at 6] (emphasis added). Plaintiff's First Amended Complaint, for purposes of surviving a Fed.R.Civ.P 12(b) (6), properly alleges that defendant CCL initiated the call.

CCL next asserts that the hang-up calls could not have contained prerecorded messages [ECF No. 15 at 16]. Defendant contends that because the caller asked the Plaintiff "if [he] could hear [her] ok," the calls must have been attended because "common sense establishes that a prerecorded message without a live attendant could not, and would not, ask Plaintiff a question such as whether he could hear her OK." [ECF No. 14 at 16]. It is plausible that, as Plaintiff suggests, the prerecording was designed to sound like a live person. Further, Plaintiff's allegations that he heard the next same message when he called the number back suggest that the message was prerecorded. At the very least, when looking at the facts in the light most favorable to the plaintiff, this Court can infer that the message was prerecorded.

**\*6** CCL also asserts that CALL 2 did not violate the TCPA because it was not made for commercial purposes since "nothing was said asking Plaintiff to purchase goods or services." [ECF No. 15 at 18]. We are not persuaded by this argument. Certainly, "The reason for my call is because we're looking for qualified travelers, such as yourself, to occupy unused cabin space aboard our magnificent cruise liner" is a solicitation on the part of CCL to sell cabins aboard its cruise ship, which, of course, is a commercial purpose. [*See* ECF No. 14 at 6]. In calling the Plaintiff, CCL sought to fulfill a commercial goal of soliciting business.

On a related note, we believe CALL 2 included or introduced an unsolicited advertisement, which constituted telemarketing. [*See* ECF No. 15 at 18]. The TCPA defines unsolicited advertisement as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." TCPA 47 U.S.C. § 227(a)(5).

CCL finally argues that Plaintiff manufactured liability under the TCPA by placing the call in which he allegedly bought goods. This is a misunderstanding of the law, which states that it is unlawful to initiate a call using a prerecorded voice message. Under Plaintiff's alleged facts, the violation of the TCPA occurred prior to, and independent of, the Plaintiff returning the call. CCL had already committed the violation of the Act when it initiated the call using a prerecorded voice message for a commercial purpose. Therefore, Plaintiff's returning of the call is immaterial to the alleged TCPA violation.

Finding that Defendant CCL's challenges to the First Amended Complaint are insufficient to warrant dismissal, we deny their Fed .R .Civ.P. 12(b)(6) Motion to Dismiss for Failure to State a Claim with respect to CALL 2.

## V. Personal Jurisdiction Standard of Review

A federal court may exercise personal jurisdiction over a non-resident Defendant to the extent permissible under the law of the forum state. Fed.R.Civ.P. 4(k)(1)(A); *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino,* 960 F.2d 1217, 1221 (3d Cir.1992). Under Pennsylvania's long-arm statute, we may assert personal jurisdiction over a non-resident Defendant "to the fullest extent allowed under the Constitution of the United States," 42 Pa.C.SA § 5322(b); *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 279 (3d Cir.1994). The statute's reach is coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Grand Entertainment Group. Ltd. v. Star Media Sales,* 988 F.2d 476, 481 (3d Cir.1993) (*citing Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984)).

Consistent with the requirements of due process, we must ensure that a nonresident Defendant is subjected to personal jurisdiction only where that "nonresident Defendant has 'certain minimum contacts [with the forum State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *See Helicopteros*

Abramson v. Caribbean Cruise Line, Inc., Not Reported in F.Supp.3d (2014)
2014 WL 2938626

*Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (*quoting International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," specifically the extent to which the Defendant has, through its contacts, "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefit and protection of its laws." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

**\*7** Personal jurisdiction may be either general or specific, and both the quality and quantity of the necessary contacts differs according to which sort of jurisdiction applies. *See Goodyear Dunlap Tires Operations, S.A. v. Brown,* —— U.S. ——, ——, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011). General personal jurisdiction arises from a Defendant's contacts with the forum that are unrelated to the cause of action being litigated. *Id.* Due process for general personal jurisdiction requires a showing that the defendant has had "continuous and systematic contacts" with the forum state so as to render them "essential at home." *See Helicopteros,* 466 U.S. at 412–13, 414 nn. 8 & 9, (1984); *See also Goodyear,* 131 S.Ct. at 2851.

The Supreme Court clarified this test, stating "the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systemic, it is whether that corporation's affiliations with the State are so continuous and systemic as to render it essentially at home in the forum State." *Daimler AG v. Bauman,* —— U.S. ——, ——, 134 S.Ct. 746, 761, 187 L.Ed.2d 624 (2014). The place where a company is incorporated, and the location where it has its principle place of business are the "paradigm bases for general jurisdiction." *Goodyear,* 131 S.Ct. at 2853–54 *citing Brilmayer et al, A General Look at General Jurisdiction,* 66 Texas L.Rev 721, 782 (1988).

Specific jurisdiction exists "when the plaintiff's claim is related to or arises out of the defendant's contacts with the forum." *Mellon Bank,* 960 F.2d at 1221. Specific personal jurisdiction comports with due process as long as the Defendant has sufficient minimum contacts with the forum state. *See International Shoe,* 326 U.S. at 316 (1945) (emphasis added). Put another way, when a Defendant's conduct is such that she reasonably should have foreseen being haled into court in the forum, the necessary minimum

contacts have been shown. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

"The relationship [between Defendant and forum state] must arise out of contacts that the Defendant himself creates with the forum state." *Walden v. Fiore,* —— U.S. ——, ——, 134 S.Ct. 1115, 1122, 188 L.Ed.2d 12 (2014). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused minimum contacts inquiry by demonstrating contacts between the Plaintiff and the forum state." *Id.; see also Helicopteros,* 466 U.S. at 417.

Further, the Supreme Court has stated that, "our minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden,* 134 S.Ct. at 1122 (*citing International Shoe,* 326 U.S. at 319). Specific personal jurisdiction, therefore, will be held over Defendants who purposefully reach out beyond their state and into another to conduct business, "but the Plaintiff cannot be the only link between the defendant and the forum ... [r]ather it is the Defendant's conduct that must form the necessary connection with the forum State and is the basis for its jurisdiction over him." *Walden,* 134 S.Ct. at 1122.

**\*8** Ultimately, due process requires that "a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden,* 134 S.Ct. at 1123 (*quoting Burger King,* 471 U.S. at 475).

If a non-resident Defendant has sufficient minimum contacts with the forum state, the court may further consider "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King,* 471 U.S. at 476 (*quoting International Shoe v. Washington,* 326 U.S. at 320). Although this determination is discretionary, courts in this circuit "have generally chosen to engage in this second tier of analysis in determining questions of personal jurisdiction." *Pennzoil Prods. Co. v. Colelli & Assoc.,* 149 F.3d 197, 201 (3d Cir.1998). Factors to be considered include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King,* 471

Abramson v. Caribbean Cruise Line, Inc., Not Reported in F.Supp.3d (2014)

2014 WL 2938626

U.S. at 477 (quoting *World–Wide Volkswagen*, 444 U.S. at 292).

At this point it becomes the Defendant's burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Grand Entertainment*, 988 F.2d at 483 (quoting *Burger King*, 471 U.S. at 477).

#### A. General Jurisdiction Analysis

This Court clearly does not have general personal jurisdiction over either of the Defendants as neither can be said to be "essentially at home" in Pennsylvania. Neither company is incorporated in Pennsylvania, nor is either's principle place of business in that State. Any contacts either Defendant has with Pennsylvania cannot be said to be continuous and systemic to the point of rendering them at home in Pennsylvania. Plaintiff fails to discuss, or argue, that either Defendant is essentially at home in Pennsylvania, and thus fails to carry his burden of establishing the Defendants are subject to this Court's general personal jurisdiction.

#### B. Specific Jurisdiction over Plaza Analysis

Plaintiff fails to allege sufficient contacts between Defendant Plaza and Pennsylvania for this Court to have specific jurisdiction over the Defendant. Defendant Plaza's only interaction with the forum State was billing the Plaintiff while Plaintiff resided in the forum State. Plaintiff provides no evidence from which this Court can conclude that Defendant Plaza "expressly aimed their conduct *at Pennsylvania,*" as required to establish specific personal jurisdiction. *See Marten*, 499 F.3d at 296 (emphasis added). The act of billing the Plaintiff in the forum State is precisely the type of " 'random, fortuitous, or attenuated' contacts [a Defendant] makes by interacting with other persons affiliated with the State." *Walden*, 134 S.Ct. at 1123 [*quoting Burger King*, 471 U.S. at 475]. In this case, the Plaintiff is the "only link between the defendant and the forum." *Walden*, 134 S.Ct. at 1122. Accordingly, we lack personal jurisdiction over Defendant Plaza. Therefore, we will grant Plaza's Fed.R.Civ.P. 12(b)(2) Motion to Dismiss the TPCA claim.

**\*9** Plaintiff seeks leave "to conduct jurisdictional and other limited discovery or an opportunity to amend the complaint." [ECF No. 16 at 18–19]. Based on our dismissal of Plaza as a Defendant in IV.b *supra,* Plaintiff's request for jurisdictional discovery is moot. "Because [Plaintiff's] complaint is deficient under Rule 8, he is not entitled to

discovery." *Iqbal,* 556 U.S. at 686. Further, we noted that Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. We will however, grant Plaintiff's request for leave to Amend the Complaint to correct deficiencies present Should Plaintiff's Amended Complaint cure the Rule 8(a) deficiencies, we will reconsider his request for jurisdictional discovery.

#### C. Specific Jurisdiction over CCL Analysis

Plaintiff has successfully pleaded that Defendant CCL has sufficient contacts with Pennsylvania such that we may exercise specific personal jurisdiction over Defendant CCL. First, we note that the call made by CCL was to a phone number bearing a(412) area code—such a code is limited to residents of Pennsylvania. By initiating a call to such a number, it can be said that Defendant CCL "expressly aimed their conduct at Pennsylvania" because the number was associated with the State of Pennsylvania. *See Marten,* 499 F.3d at 296. Defendant would have, or should have, known it was reaching into Pennsylvania when the call was made. This satisfies the requirement for sufficient minimum contacts under the law. *See* Part V, *supra; See also Shaffer,* 433 U.S. at 204. Further, we note that Defendant CCL does not contest its being subject to this Court's specific personal jurisdiction, nor does it make any indication why it should not be subject to this Court's jurisdiction.

Finding the necessary minimum contacts to establish specific personal jurisdiction over Defendant CCL, we move to considerations of whether litigation in this forum would offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington,* 326 U.S. at 320. At the outset, we note that Defendant CCL has made no claim that litigation in this forum would be unreasonable. Because we found sufficient minimum contacts between CCL and Pennsylvania, and because CCL has failed to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable," we find that our exercise of specific personal jurisdiction over CCL does not offend the traditional notions of fair play and substantial justice. *See Grand Entertainment,* 988 F.2d at 483 (quoting *Burger King,* 471 U.S. at 477) (Noting that after sufficient minimum contacts are found, "it becomes the defendant's burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable").

#### VI. Conclusion

2014 WL 2938626

Pursuant to the foregoing reasoning, he hold Plaintiff's First Amended Complaint must be dismissed with prejudice with respect to CALL 1, against both Defendants, pursuant to Fed.R.Civ.P. 12(b)(6) for Failure to State a Claim. Further, we hold that Plaintiff's First Amended Complaint must be dismissed, without prejudice, against Defendant Plaza pursuant to Fed.R.Civ.P 12(b)(6) for Failure to State a Claim. Plaintiff's First Amended Complaint may proceed upon a theory of liability based upon the alleged TCPA violation with respect to CALL 2 against Defendant CCL only. Plaintiff's

total possible recovery is his "actual monetary loss from such a violation, or ... $500.00 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3).

**\*10**  An appropriate Order follows.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2938626

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

624 Fed.Appx. 61
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also U.S.Ct.
of Appeals 3rd Cir. App. I, IOP 5.1, 5.3, and 5.7.

United States Court of Appeals,
Third Circuit.

Annette BRANCHE, Appellant

v.

WELLS FARGO HOME MORTGAGE, INC.

No. 13–4639.
|
Submitted for Possible Summary Action
Pursuant to Third Circuit LAR 27.4 and
I.O.P. 10.6 Aug. 6, 2015.
|
Opinion filed: Aug. 12, 2015.

**Synopsis**

**Background:** Widow brought action against mortgage servicer for house owned by the estate of her deceased common law husband, alleging breach of contract and deceptive trade practices in connection with servicer's disbursement of insurance funds. The United States District Court for the Middle District of Pennsylvania, William W. Caldwell, J., 2013 WL 5954730, granted servicer's motion for summary judgment. Widow appealed.

**Holding:** The Court of Appeals held that widow did not have standing to bring claim against servicer under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL).

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

West Headnotes (1)

**[1]**   **Antitrust and Trade Regulation** ⬌ Consumers, purchasers, and buyers; consumer transactions

**Antitrust and Trade Regulation** ⬌ Private entities or individuals

Widow did not have standing to bring claim against the servicer of her deceased common law husband's mortgage for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) in connection with servicer's disbursement of funds to contractors under homeowner's insurance policy; widow was not a purchaser of servicer's services, as her husband had obtained the mortgage, and while husband's estate may have had a claim under the UTPCPL, widow brought the claim in her individual capacity, not as the administrator of husband's estate. 73 P.S. § 201–9.2(a).

3 Cases that cite this headnote

**\*61** On Appeal from the United States District Court for the Middle District of Pennsylvania (D.C. Civ. No. 1:11–cv–00468), District Judge: Honorable William W. Caldwell.

**Attorneys and Law Firms**

Annette Branche, Harrisburg, PA, pro se.

George W. Gekas, Esq., Harrisburg, PA, Caleb L. Nichols, Esq., Erie, PA, for Appellant.

Mark D. Bradshaw, Esq., Stevens & Lee, Harrisburg, PA, for Wells Fargo Home Mortgage, Inc.

Before: FISHER, SHWARTZ and GREENBERG, Circuit Judges.

OPINION [*]

PER CURIAM.

Case 4:25-cv-00001-KM-PJC    Document 53-1    Filed 07/01/25    Page 10 of 25

Annette Branche appeals pro se and in forma pauperis from the District Court's order granting defendant's motion for summary judgment and denying her motion for summary judgment. Because this appeal does not present a substantial question we will summarily affirm the District Court's order. *See* 3d Cir. LAR 27.4; 3d Cir. I.O.P. 10.6.

## *62 I.

Branche is the administrator of her common law husband's (Charles White's) estate, which includes the house in which Branche resides. Defendant/Appellee Wells Fargo Home Mortgage Inc. ("Wells Fargo") is the mortgage servicer for the house, which is now in the name of Mr. White's estate. The dispute between Branche and Wells Fargo arose out of a botched home renovation. In short, after Branche's first contractor damaged her house, the homeowner's insurance policy provided money for repairs, and Wells Fargo, as the mortgage servicer, was authorized to oversee the repairs and disburse the insurance funds to the contractor. Accordingly, the insurance money was initially distributed to an escrow account held by Wells Fargo.

On December 3, 2008, Wells Fargo sent to the Estate (in care of Branche) a letter describing the procedures for the distribution of the insurance funds for the repairs, which would be released in one-third increments. The first payment would be made after Wells Fargo received, among other things, an estimate and proof of the contractor's licensure. The second payment would be made after the work was fifty percent complete. The final payment was to be released after the work was fully completed, as evidenced by a certified statement and final inspection. Branche selected a contractor whose estimate for the work was $29,800, well over the amount of the insurance funds. Although Branche informed the contractor that the payment would be disbursed through an insurance policy, she did not explain the payment process.

Wells Fargo released the first payment ($6,497.30), six days after receiving the required contractor documentation. The second disbursement ($6,497.31) was released on January 9, 2009, one day after the work was certified as fifty percent complete. Branche's contractor stopped work after becoming dissatisfied with the timing of the payments, and she hired a new contractor to finish the project for an estimated cost of $18,200.

Thereafter, Wells Fargo released a payment in the amount of $10,400. And in May 2010, after Branche certified that the repairs were complete, Wells Fargo released the final disbursement. In total, Wells Fargo released approximately $29,000 for the work. [1] Branche still owes the final contractor $5,542.11, and she states that the first contractor is owed approximately $2,500.

Branche filed a lawsuit in state court against the contractors, the insurance company, and Wells Fargo. The lawsuit was removed to the District Court on the basis of Branche's apparent attempt to assert federal claims. Ultimately, in light of rulings not at issue here and Branche's decision to drop her claims against certain defendants, she proceeded only on claims for breach of contract and deceptive trade practices against Wells Fargo. Branche asserted that Wells Fargo failed to timely pay the contractors, violated an implied contractual obligation to allow her to safely occupy her home, violated the duty of good faith, and engaged in deceptive practices and fraudulent behavior.

The parties filed cross-motions for summary judgment, and on November 6, 2013, the District Court entered judgment on behalf of Wells Fargo and against Branche. It determined that Wells Fargo abided by its obligation to disburse the *63 insurance proceeds to the contractors as delineated by the December 3, 2008 letter. The District Court explained that Branche conceded that she understood the disbursement protocol but that she did not explain it to her contractor, and that it was not Wells Fargo's fault that Branche's contractors were unsatisfied with the payment schedule. Further, Wells Fargo was required only to disburse the amount of the insurance proceeds. It was not obligated to provide payment for the total amount of the work.

As to Branche's assertion that Wells Fargo breached an obligation to ensure that she could safely occupy her house —which Branche stated was akin to a landlord's obligation to his or her renter—the District Court determined that Wells Fargo had no such obligation. The District Court also concluded that Wells Fargo did not violate its duty of good faith and fair dealing, as it complied with Branche's reasonable expectations in disbursing the insurance proceeds, and Branche testified that she understood the disbursement process.

The District Court then determined that Branche lacked standing to proceed on her claim against Wells Fargo under the Pennsylvania Unfair Trade Practices and Consumer

Protection Law ("UTPCPL"), 73 Pa. Cons.Stat. Ann. § 201–9.2(a). The District Court agreed with Wells Fargo that, because Mr. White had been the borrower, Branche herself was not a "purchaser" permitted to bring a lawsuit under the UTPCPL. The District Court also determined that the December 3, 2008 letter was not a commercial transaction, as it merely outlined the process for the disbursement of insurance proceeds.

The District Court thus granted judgment in favor of Wells Fargo, and Branche timely appealed. Wells Fargo has now filed a motion which we have construed as seeking summary action. Branche opposes the motion. [2]

II.

We have jurisdiction pursuant to *28 U.S.C. § 1291.* We exercise plenary review over a district court's grant of summary judgment and apply the same standard as does the district court. *McGreevy v. Stroup,* 413 F.3d 359, 363 (3d Cir.2005). Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Haybarger v. Lawrence Cnty. Adult Prob. & Parole,* 667 F.3d 408, 412 (3d Cir.2012).

After careful review of the record, we conclude that the District Court correctly granted Wells Fargo's motion for summary judgment and denied Branche's cross-motion for the reasons provided in its November 6, 2013 memorandum.

Only the question of Branche's standing under the UTPCPL requires brief discussion. [3] As the District Court explained, the **\*64** UTPCPL prohibits "unfair or deceptive acts or practices," and protects a person who "purchases or leases

goods or services ... and thereby suffers any ascertainable loss of money or property ... as a result of the use ... of a method, act or practice declared unlawful" by the Act. 73 Pa. Cons.Stat. Ann. § 201–9.2(a). For a private person to have standing, he or she must be a "purchaser" of the good or services, and must prove justifiable reliance. *Hunt v. U.S. Tobacco Co.,* 538 F.3d 217, 221, 224 (3d Cir.2008).

Here, the District Court correctly stated that "only those who purchase goods or services, not those who may receive a benefit from the purchase," satisfy the requirement that one be a "purchaser." *Gemini Phys. Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.,* 40 F.3d 63, 65 (3d Cir.1994). Although direct privity is not required, the statute "unambiguously permits only persons who have purchased or leased goods or services to sue.... Had the Pennsylvania legislature wanted to create a cause of action for those not involved in a sale or lease, it would have done so." *Katz v. Aetna Cas. & Sur. Co.,* 972 F.2d 53, 55 (3d Cir.1992).

Although Branche has had many dealings with Wells Fargo concerning the repairs to the house and payment of contractors, the District Court correctly determined that she was not a purchaser of Wells Fargo's services, as it was Branche's common law husband who obtained the mortgage. After Mr. White's death, his estate was listed on the mortgage, and while the estate may have had a claim under the UTPCPL, we need not and do not decide that issue because Branche, who brought the claim in her individual capacity, does not. Accordingly, the District Court properly dismissed this claim.

For the foregoing reasons, we grant Wells Fargo's motion and will summarily affirm the District Court's judgment.

**All Citations**

624 Fed.Appx. 61

---

## Footnotes

\*  This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

1  The insurance company had periodically adjusted the claim upwards from the initial amount it agreed to cover.

2    Although Branche has appealed pro se, we note that she was represented by multiple counsel at various stages in the District Court, including when she filed her Second Amended Complaint and at the summary judgment stage.

3    Although some of our previous decisions have framed this issue in terms of statutory "standing" under the UTPCPL, the Supreme Court recently clarified that the concept of statutory standing is "misleading" because the question is not one of subject matter jurisdiction but simply whether the plaintiff has stated a cause of action under the statute. *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* ─── U.S. ───, 134 S.Ct. 1377, 1387 n. 4, 188 L.Ed.2d 392 (2014). We are satisfied that Branche had Article III standing to assert her claims.

---

**End of Document**                                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 2452419
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

Frank **KATZ**, Plaintiff,

v.

**FIAT/CHRYSLER**

AUTOMOBILES, et al., Defendants.

Civil Action No. 3:15–CV–0036.
|
Filed May 21, 2015.

**Attorneys and Law Firms**

Frank **Katz**, Pocono Pines, PA, pro se.

### ORDER

A. RICHARD CAPUTO, District Judge.

 **\*1** Presently before the Court is Magistrate Judge Karoline Mehalchick's Report and Recommendation ("R & R") (Doc. 13) that Plaintiff Frank **Katz's** Amended Complaint (Doc. 12) be dismissed and the case be closed. Any objections to the R & R were due on May 11, 2015. On May 18, 2015, Plaintiff mailed an Objection to the R & R (Doc. 14), and on May 20, it was received and filed, nine (9) days after the deadline.

Where objections to a magistrate judge's R & R are filed, the Court must conduct a *de novo* review of the contested portions. *Sample v. Diecks,* 885 F.2d 1099, 1106 n. 3 (3d Cir.1989) (citing 28 U.S.C. § 636(b)(1)(c)). However, this only applies to the extent that a party's objections are both *timely* and specific. *Goney v. Clark,* 749 F.2d 5, 6–7 (3d Cir.1984) (emphasis added). The court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chafer,* 990 F.Supp. 375, 376–77 (M.D.Pa.1998). Because Plaintiff **Katz's** objections to the R & R (Doc. 14) were not timely, I reviewed the R & R for plain error and manifest injustice, and upon review, I will adopt the R & R.

**ACCORDINGLY,** this *21st* day of May, 2015, upon review of the Report and Recommendation of Magistrate Judge Karoline Mehalchick (Doc. 13) for plain error or manifest injustice, **IT IS HEREBY ORDERED** that:

(1) The Report and Recommendation (Doc. 13) is **ADOPTED.**

(2) The Amended Complaint (Doc. 12) is **DISMISSED.**

(3) The Clerk of Court is instructed to mark this case as **CLOSED.**

### *REPORT AND RECOMMENDATION*

KAROLINE MEHALCHICK, United States Magistrate Judge.

Presently before the Court is an amended complaint filed by *pro se* Plaintiff, Frank **Katz**. (Doc. 12). For the reasons provided herein, the Court will dismiss this action, *sua sponte,* for want of subject matter jurisdiction based on lack of standing.

### I. *BACKGROUND*

On January 7, 2015, **Katz** filed a complaint against **Fiat**/**Chrysler** Automobiles. (Doc. 1). **Katz's** claims arise from **Fiat Chrysler's** recall of 1.56 million older Jeep models in June, 2013, due to safety concerns resulting from rear-mounted plastic fuel tanks that allegedly rupture on collision. (Doc. 1). Specifically, he claims that while the dealership installed a trailer hitch on the rear of his wife's 2003 NOW Jeep Liberty Sport as an added layer of protection pursuant to the recall, those repairs were not completed in a timely manner. (Doc. 1). On March 24, 2015, this Court dismissed the action for lack of subject matter jurisdiction and lack of standing, on the basis that **Katz** failed to allege that the amount in controversy exceeded $75,000 in accordance with Rule 12(h)(3) of the Federal Rules of Civil Procedure, and that **Katz** failed to demonstrate standing to sue, as the Jeep was purportedly owned by his wife. The Court granted **Katz** leave to amend his complaint no later than April 24, 2015. (Doc. 11). On April 13, 2015, **Katz** filed an amended complaint. (Doc. 12). In his complaint, **Katz** reiterates many of the same allegations made in his original complaint, in addition to his claims that he is a registered, insured driver of his wife's vehicle, and he conducts 95% of the driving. (Doc. 12). **Katz** demands $300,000 in damages and "a safe car." (Doc. 12). Attached to his complaint are article clippings detailing the Chrysler recall of the fuel tank design and reported cases of deaths resulting from the vehicle's fuel tank rupturing upon rear end collision.

## II. *STANDING REQUIREMENT*

**\*2** The standing doctrine is a threshold inquiry to adjudication, which defines and limits the role of the judiciary. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343(1975). It is well settled that unless a plaintiff has standing, a federal district court lacks subject-matter jurisdiction with respect to the merits of the case. A plaintiff bears the burden of establishing three elements in order to invoke federal jurisdiction: injury, causation, and redressability. Specifically:

> [ (1) ]The plaintiff must have suffered an injury in fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent [;(2) ]the plaintiff must establish a causal connection between the injury and the conduct complained of[; and (3) ] the plaintiff must establish that it is likely, as opposed to merely speculative, that the injury will be "redressed by a favorable decision."

*In re McNeil Consumer Healthcare,* 877 F.Supp.2d254, 269 (E.D.Pa.2012) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted). "[T]he Court of Appeals for the Third Circuit recently held that a district court must apply a "plausibility" standard when analyzing whether the factual allegations of a complaint, taken as true, show that plaintiff possesses Article III standing." [1] *In re Sobering Plough Corp. Intron/Temodar Consumer Class Action,* 678 F.3d 235, 244 (3d Cir.2012).

With respect to the "injury requirement," "the plaintiff must allege some form of injury as a result of the defendant's conduct that is 'distinct and palpable,' not 'abstract or conjectural or hypothetical.' " *In re McNeil Consumer Healthcare,* 877 F.Supp.2d at 270 (quoting *Danvers Motor Co. v. Ford Motor Co.,* 432 F.3d 286, 291 (3d Cir.2005)). While economic harm in the form of damages is a "paradigmatic" form of injury in fact, such a theory will not support the standing requirement when such allegations are "totally fanciful." *Id.* A purely subjective injury is not

sufficient. *City of Los Angeles v. Lyons,* 461 U.S. 95, 107 n. 8, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

Here, Katz's allegations are insufficient to demonstrate that he suffered a cognizable injury sufficient to give him Article III standing in the instant case. Katz appears to allege only the following: that his wife purchased a vehicle that was later recalled; that the recall, consisting of installing a trailer hitch as an added layer of protection, inconvenienced him; that the repairs do not adequately remedy the alleged defect in the vehicle's design; that individuals somewhere in the country were harmed by the vehicle's defect prior to the recall; and that he is entitled to \$300,000 in damages. (Doc. 12). The amended complaint makes clear that the claimed safety issues were never manifest in Katz's vehicle, and that he never suffered any physical harm resulting from the alleged vehicle's defect. As the plaintiff must allege "a distinct and palpable injury to himself," *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), that "must affect the plaintiff in a personal and individual way," *Lujan,* 504 U.S. at 560 n. 1, the absence of such allegations of personal injury are fatal. Moreover, Katz does not allege that he personally suffered any out-of pocket economic loss as a result of the purportedly inadequate recall, beyond the transportation costs associated with travelling to the dealership twice in order to have the trailer hitch installed. [2] *See In re McNeil Consumer Healthcare,* 877 F.Supp.2d 254, 273 (E.D.Pa.2012) ("A named plaintiff must allege facts showing that he or she personally suffered economic loss as a result of an inadequate recall to state a cognizable injury on the basis of the recalled product.").

**\*3** Rather, on the face of the complaint it appears to this Court that Katz merely alleges that the defect places him at increased risk of possible future injurya defect that materialized in a small percent of persons who bought the automobile in question. However, "fear and apprehension about a possible future physical or medical consequence ... is not enough to establish an injury in fact." *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 636 (3d Cir.1996) (Wellford, J., concurring); *see also Frank v. DaimlerChrysler Corp.,* 292 A.D.2d 118, 741 N.Y.S.2d 9, 17 (2d Dep't 2002) (affirming dismissal of product liability claims where plaintiff failed to suffer or allege actual injury); *Hubbard v. General Motors Corp.,* 1996 WL 274018 \*3 (S.D.N.Y.1996) (finding that purchaser of allegedly defective product has no claim where the alleged defect has not manifested itself in purchaser's product); *Yost v. General Motors Corp.,* 651 F.Supp. 656, 657 (D.N.J.1986) (noting that an allegation that a leak was

"likely" to occur and "may" create a safety hazard insufficient to avoid dismissal for failure to allege damages). As **Katz** fails to establish injury in fact for the purposes of Article III standing, this Court recommends dismissal of the complaint for lack of subject-matter jurisdiction. [3]

Finally, the Third Circuit has acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend ." *Lake v. Arnold,* 232 F.3d 360, 373 (3d Cir.2000). "Denial of leave to amend a complaint is especially appropriate where a party has already been given the opportunity to amend the complaint." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.,* 564 F. App'x 672, 673 (3d Cir.2014) (*citing Lake,* 232 F.3d at 373("[W]e are inclined to give the District Court even broader discretion when, as here, the court has already granted the requesting party an opportunity to amend its complaint."). Here, this

Court granted **Katz** an opportunity to amend his original complaint, but he has failed to cure the complaint's pleading deficiencies. As such, it is recommended that **Katz** not be given further leave to amend his complaint.

### III. *RECOMMENDATION*

Based on the foregoing, it is recommended that the amended complaint. (Doc. 12) be **DISMISSED** for lack of subject-matter jurisdiction, and the Clerk of Court be directed to **CLOSE** this case.

**Dated: April 23, 2015.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 2452419

---

**Footnotes**

1    While dismissal of a suit prior to service of process is generally discouraged, dismissal is warranted when, on the face of the complaint, the district court determines that it lacks subject matter jurisdiction. "This determination comports with Fed.R.Civ.P. 12(h)(3), which categorically states that '[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.' " *Roberts v. Mayor & Burgesses of London Borough of Brent,* 70 F. App'x 615, 618 (3d Cir.2003) (quoting Fed.R.Civ.P. 12(h)(3)). For a district court to possess subject matter jurisdiction over a plaintiff's action, the plaintiff must have standing to sue. Accordingly, this Court is authorized to dismiss **Katz's** complaint prior to service of process for lack of standing.

2    To the extent that **Katz** attempts to make a "benefit of the bargain" argument arising out of contract law by alleging that he has suffered subjective economic damages in the form of out-of-pocket expenditures, rather than advancing a product liability claim, this Court is unable to confer standing as he has failed to allege actual injury. The Fifth Circuit has addressed this "no-injury" product liability class action argument in *Rivera v. Wyeth Ayerst Laboratories,* 283 F.3d 315 (5th Cir.2002), which has been relied upon in several circuits and districts including the Eastern District of Pennsylvania. *See In Re McNeil Consumer Healthcare,* 877 F.Supp.2d 254 (2012). In *Rivera,* plaintiffs ingested a pain medication that was later withdrawn from the market due to reports of liver failure in some patients. As Plaintiff admittedly suffered no injury, she instead asserted causes of action based on an alleged failure to receive the benefit of the bargain from said medication. The Fifth Circuit rejected the "benefit of the bargain" argument and dismissed the case for lack of standing. Specifically, the court noted: "[t]he plaintiffs apparently believe that if they keep oscillating between tort and contract law claims, they can obscure the fact that they have asserted no concrete injury. Such inartful pleading, however, is not enough to create an injury in fact." *Rivera,* 283 F.3d at 320–21.

3    In liberally construing **Katz's** *pro se* amended complaint, the Court notes that **Katz** has indicated on his Civil Cover Sheet that this suit is brought as a class action. (Doc. 12). To the extent that **Katz** seeks to certify a class action pursuant to Rule 23(c) of the Federal Rules of Civil Procedure, **Katz** has failed to meet the

minimum requirements for certification of a class action. Four prerequisites must be met to obtain certification of a class action:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

A class can only be certified if all four requirements of Rule 23(a) are met. *Fotta v. Trustees of United Mine Workers of Am.,* 319 F.3d 612, 618–19 (3d Cir.2003). **Katz**, who is proceeding *pro se,* cannot satisfy the fourth requirement, adequacy of representation. *Nunez v. Lindsay,* No. 3:CV–05–1763,2006 WT 3242111, at *1 (M.D.Pa. Nov. 7, 2006) (citing *Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir.1975)). This is so because the "[a]bility to protect the interests of the class depends in part on the quality of counsel, and ... the competence of a layman representing himself [is] clearly too limited to allow him to risk the rights of others." *Oxendine,* 509 F.2d at 1407. Accordingly, this Court will deny class action certification in this case.

---

**End of Document**                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag

Declined to Extend by   Keister v. PPL Corp.,   M.D.Pa.,   June 13, 2014

2012 WL 1019060
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Antonio SANTIAGO
v.
BROOKS RANGE CONTRACT SERVICES, INC.

Civil Action No. 11–7269.
|
March 26, 2012.

**Attorneys and Law Firms**

Eman Abouelseoud, Kolman Ely PC, Penndel, PA, for Plaintiff.

Karen A. Doner, Roth Doner Jackson PLC, McLean, VA, Kaitlin M. Piccolo, Sidney R. Steinberg, Post & Schell PC, Philadelphia, PA, for Defendant.

*MEMORANDUM*

SURRICK, District Judge.

**\*1** Presently before the Court is Defendant Brooks Range Contract Services, Inc.'s Motion to Dismiss the Complaint. (ECF No. 7.) For the following reasons, Defendant's Motion will be granted in part and denied in part.

## I. BACKGROUND [1]

[1]   Pursuant to Federal Rule of Civil Procedure 12(b)(6), all factual allegations, and reasonable inferences to be drawn therefrom, are viewed in the light most favorable to Plaintiff, the nonmoving party. *McTernan v. City of York,* 577 F.3d 521, 526 (3d Cir.2009); *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("When assessing whether the complaint satisfies [the 12(b)(6) ] standard, courts must treat a complaint's allegations as true.").

Defendant Brooks Range Contract Services, Inc. is a federal government contractor engaged exclusively in the business of providing services to federal government agencies. (Compl. ¶ 3, ECF No. 1.) Plaintiff Antonio Santiago is a Hispanic male. (*Id.* at ¶ 16.) For twenty-three years, Plaintiff worked as a building engineer for U.S. Facilities, Inc. ("U.S.Facilities"). (*Id.* at ¶ 18.) On February 1, 2010, Defendant took over the U.S. Facilities contract. (*Id.* at ¶ 19.)

On January 22, 2010, Plaintiff was informed by his supervisor, Brian Gougler, that he, as well as other employees, had to put their identification badges in an envelope and turn them in to security. (*Id.* at ¶ 20.) Plaintiff was advised that he and the other employees would be notified whether they would be permitted to work for Defendant. (*Id.* at ¶ 21.) Plaintiff later learned that he would not be hired by Defendant. (*Id.* at ¶ 22.) While he had a "stellar record," Plaintiff was told that he would not be rehired because of "performance problems." (*Id.* at ¶ 23.) Plaintiff was seventy-three years old when he was told that he would not be hired by Defendant. (*Id.* at ¶ 17.)

On March 25, 2010, Plaintiff filed a written charge of discrimination (No. 530–2010–01652) against Defendant with the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC"), alleging age and race discrimination. (*Id.* at ¶ 13a.) On August 22, 2011, the EEOC issued a Notice of Right to Sue. (*Id.* at ¶ 13b.) On August 24, 2011, Plaintiff received this Notice. (*Id.* at ¶ 13c.) On November 21, 2011, Plaintiff filed a Complaint, in which he alleges age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") (Count One), race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count Two), and age and race discrimination in violation of the Pennsylvania Human Relations Act ("PHRA") (Count Three). (Compl.) On January 18, 2012, Defendant filed the instant Motion to Dismiss the Complaint. (Def.'s Mot., ECF No. 7.) On February 9, 2012, Plaintiff filed an unopposed motion for an extension of time to respond to Defendant's Motion. (ECF No. 10.) On February 10, 2012, the Court granted the motion. (ECF No. 11.) On February 24, 2012, Plaintiff filed a Response opposing Defendant's Motion. (Pl.'s Resp., ECF No. 12.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule

of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

 **\*2** A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir.2009). This " 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips,* 515 F.3d at 234 (quoting *Twombly,* 550 U.S. at 556). Nevertheless, over the past several years, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Fowler,* 578 F.3d at 210. After the Supreme Court's opinion in *Ashcroft v. Iqbal,* "it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Fowler,* 578 F.3d at 210 (quoting *Iqbal,* 129 S.Ct. at 1949).

### III. DISCUSSION

Defendant asserts that Plaintiff "has not pled any facts, let alone sufficient facts, to support any of his claims," and therefore, all three Counts should be dismissed. (Def.'s Mem. 1, ECF No. 7–2.) In addition, Defendant argues that Plaintiff should not be granted leave to amend the Complaint because any amendment would be futile. (*Id.* at 8–9.) Plaintiff, on the other hand, contends that he is not required to plead all facts that may support his claims, that he has sufficiently pleaded all three Counts, and that in the event the Court grants Defendant's Motion to Dismiss, he should be permitted to amend the Complaint. (Pl.'s Resp. 4, 6–9.)

### A. Age Discrimination Under the ADEA and the PHRA [2]

[2] The parties agree that Plaintiff's PHRA claims are analyzed under the same framework as his ADEA and Title VII claims. (Def.'s Mem. 8; Pl.'s Resp. 9.) Therefore, we will analyze Plaintiff's causes of actions by type of claim: age discrimination and race discrimination. *See Huston v. Procter & Gamble Paper Prods. Corp.,* 568 F.3d 100, 104 n. 2 (3d Cir.2009) ( " 'The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania Courts have construed the protections of the two acts interchangeably.' ") (citing *Weston v. Pennsylvania,* 251 F.3d 420, 426 n. 3 (3d Cir.2001)); *Koller v. Riley Riper Hollin & Colagreco,* No. 10–2933, 2012 WL 628009, at \*8 (E.D.Pa. Feb.28, 2012) (addressing Title VII and PHRA claims collectively on motion to dismiss); *Molisee v. Securitas Sec. Servs., USA, Inc.,* No. 11–1056, 2012 WL 13698, at \*7 (W.D.Pa. Jan.4, 2012) (addressing ADEA and PHRA claims collectively on motion to dismiss).

Under the ADEA, 29 U.S.C. §§ 621 *et seq.,* it is unlawful for an employer to "discriminate against any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1).[3] In the Third Circuit, to sufficiently allege disparate treatment on the basis of age, a plaintiff must allege that (1) his age played a role in the employer's decision, and (2) his age had a "determinative influence" on the result of that decision. *Monaco v. Am. Gen. Assurance Co.,* 359 F.3d 296, 300 (3d Cir.2004). In addition, the plaintiff must show that "ultimately [he was] replaced by a person sufficiently younger to permit an inference of age discrimination." *Id.; see also Garcia v. Newtown Twp.,* No. 09–3809, 2010 WL 785808, at \*9 (E.D.Pa. Mar.5, 2010) (stating same standard on motion to dismiss).[4]

 [3] An individual must be greater than forty years of age to be eligible for the ADEA's protections. 29 U.S.C. § 631(a). Plaintiff is seventy-three years old and therefore meets this requirement.

 [4] Defendant argues that Plaintiff has not established a *prima facie* case of age discrimination. (*See* Def.'s Mem. 5 ("Santiago alleges he is over 40 but does not assert any of the remaining elements of the prima facie case.").) Plaintiff asserts that "there is no need for plaintiff to establish a *prima facie* case of age discrimination, or to tailor his pleadings to the specific elements typically required of an employment discrimination plaintiff to survive a motion for summary judgment." (Pl.'s Resp. 6.) While we evaluate ADEA claims using the burden-shifting framework found in

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), on motions for summary judgment, *see Smith v. City of Allentown,* 589 F.3d 684, 691 (3d Cir.2009) (reaffirming use of *McDonnell Douglas* standard for ADEA claims on summary judgment, the *prima facie* case requirement under *McDonnell Douglas* is a standard for producing and evaluating evidence, not a pleading requirement, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). The Supreme Court has explained that it "has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511.

In the Complaint, there is no allegation or set of facts that might show that Plaintiff's age played a role in Defendant's decision not to hire Plaintiff, or that Plaintiff was replaced by someone younger than him. Plaintiff alleges that Defendant's conduct, "in refusing to hire Plaintiff because of his age and otherwise subjecting him to adverse employment actions because of his age, constitutes unlawful age discrimination against Plaintiff." (Compl.¶ 26.) This allegation, however, is a mere legal conclusion, and there are no facts in the Complaint to support it. *See Pierce v. Lowe's Home Ctrs., Inc.,* No. 10–507, 2010 WL 3122838, at *2 (W.D.Pa. Aug.9, 2010) (dismissing ADEA claim where "factual allegations provided are virtually non-existent and are completely insufficient to raise a right to relief above the speculative level for any cause of action"); *Pezzoli v. Allegheny Ludlum Corp.,* No. 10–0427, 2010 WL 2852988, at *2 (W.D.Pa. July 20, 2010) (dismissing ADEA claim because "[n]ot only does [plaintiff] fail to allege any non-speculative, non-conclusory facts that might support an inference of age discrimination as a 'but-for' cause, he also fails to assert that [his employer] ultimately filled the position with someone sufficiently younger than him [to] permit an inference of age discrimination."); *cf. Garcia,* 2010 WL 785808, at *9 (finding that complaint could survive motion to dismiss because of allegations that plaintiff was replaced by someone she believed to be more than ten years her junior and that defendant's employees discriminated against her because of her age); *Adams v. Perloff Bros., Inc.,* 784 F.Supp. 1195, 1197–98 (E.D.Pa.1992) (finding that plaintiff sufficiently alleged age discrimination where the complaint alleged that plaintiff was laid off then told that he could not work as a full-time employee because he was too old and had too much seniority, and where other individuals who were younger and had less seniority were subsequently

hired). Indeed, Plaintiff, in his Response, attempts to fill in the holes in the allegations of his Complaint by asserting that "upon information and belief, individuals selected by Defendant for continued employment were younger than Plaintiff, who was seventy-three years of age at the time his employment was adversely impacted." (Pl.'s Resp. 8.) However, no such allegation, or set of facts supporting such allegation, appears in the Complaint. Merely pleading that Plaintiff was seventy-three years old when not hired cannot survive a motion to dismiss. *See Sangi v. Warren Hosp.,* No. 10–4571, 2011 WL 4857933, at *2 (D.N.J. Oct.11, 2011) ("Plaintiff appears to believe that pleading [that 'she was subject to certain adverse employment actions including, ultimately, termination'] along with an allegation that Plaintiff is in a protected class is sufficient to state her claim. It is not."). While a plaintiff at the motion-to-dismiss stage need not plead all relevant facts that would support his claim, the Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *California Pub. Employee Ret. Sys. v. Chubb Corp.,* 394 F.3d 126, 143 (3d Cir.2004) (citing *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997)). Nor must the court accept legal conclusions that are set forth as factual allegations. *Twombly,* 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Accordingly, Plaintiff has failed to state claims for age discrimination under the ADEA and the PHRA, and we must grant Defendant's Motion with respect to these claims.

### B. Race Discrimination Under Title VII and the PHRA

**\*3** Title VII states that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire ... any individual or otherwise to discriminate against any individual ... *because of* such individual's race, color, religion, sex, or national origin ...." 42 U.S.C. § 2000e–2(a) (emphasis added) . [5]

[5]    For the reasons discussed *supra,* at Section III.A, Plaintiff need not plead a *prima facie* case for his race discrimination claims in order to survive a motion to dismiss. *See Miller v. Keystone Blind Ass'n/TPM,* No. 11–887, 2011 WL 6338699, at *3 (W.D.Pa. Dec.19, 2011) (noting that *McDonnell Douglas* framework is not applied to Title VII claim on a motion to dismiss); *Huggins v. Coatesville Area Sch. Dist.,* No. 07–4917, 2008 WL 4072801, at *5 (E.D.Pa. Aug.27, 2008) (noting that

at the motion to dismiss phase, a Title VII plaintiff
need not plead a *prima facie* case of discrimination
in order to survive a motion to dismiss).

Plaintiff's race discrimination claims suffer similar infirmities
as his age discrimination claims. Plaintiff does not allege
any factual circumstances that raise an inference of race
discrimination. Viewing the allegations in a light favorable
to Plaintiff, we note that Plaintiff alleges that he is a
"Hispanic male" (Compl.¶ 16), was notified that he would
not be hired by Defendant (*id.* at ¶ 22), and had a "stellar
record" (*id.* at ¶ 23). Based on these allegations, there can
be no inference of race discrimination. *See Pierce,* 2010
WL 3122838, at *2 (dismissing Title VII claim where
"factual allegations provided are virtually non-existent
and are completely insufficient to raise a right to relief above
the speculative level for any cause of action"); *cf. Miller,*
2011 WL 6338699, at *1, 4 (denying motion to
dismiss Title VII race discrimination claim where African–American
plaintiff alleged hiring of white employee, instead of him,
for a position, that he was the only African–American
employee of twenty-five employees who attended a meeting,
and that there were write-ups against him by a manager who
allegedly made a racist comment); *Alexander v. Keystone
Mercy Health Plan,* No. 06–5599, 2007 WL 1651147, at *4
(E.D.Pa. June 4, 2007) (denying motion to dismiss Title VII
race discrimination claim where African–American plaintiff
alleged that she was systematically stripped of all meaningful
responsibilities, whereas similarly situated white employees
were not subjected to this stripping of responsibility). While
Plaintiff asserts that Defendant's conduct of failing to hire him
"constitutes unlawful race discrimination against the Plaintiff,
in violation of Title VII" (Compl.¶ 29), this is a mere legal
conclusion. Again, we are not required to accept mere legal
conclusions as factual allegations. *Twombly,* 550 U.S. at 555
(citing *Papasan,* 478 U.S. at 286). Thus, Plaintiff has failed
to state claims for race discrimination under Title VII and
the PHRA. We will grant Defendant's Motion with respect to
these claims.

### C. Leave to Amend Complaint
Pursuant to Federal Rule of Civil Procedure 15(a), "if a
plaintiff requests leave to amend a complaint vulnerable to

dismissal before a responsive pleading is filed, such leave
must be granted in the absence of undue delay, bad faith,
dilatory motive, unfair prejudice, or futility of amendment."
*Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d
Cir.2002) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83
S.Ct. 227, 9 L.Ed.2d 222 (1962)). If a plaintiff does not
seek leave to amend a deficient complaint after a defendant
moves to dismiss it, "the court must inform the plaintiff that
he has leave to amend within a set period of time, unless
amendment would be inequitable or futile." *Id.* Here, Plaintiff
has requested leave to amend the Complaint. (Pl.'s Resp. 8–
9.) Defendant argues that it would be futile to grant leave
to amend. (Def.'s Mem. 8.) We disagree. In his Response,
Plaintiff has made representations from which it appears that
he may be able to amend his Complaint to adequately plead
claims of age and race discrimination. Moreover, there is no
evidence of undue delay, bad faith or having a dilatory motive
on Plaintiff's part. Nor is undue prejudice likely to result to
Defendant from granting leave to amend. Accordingly, we
will give Plaintiff the opportunity to amend the Complaint as
set forth in the accompanying Order. [6]

[6]    We caution that "formulaic recitation of a cause
      of action's elements" will not survive a motion
      to dismiss. *Twombly,* 550 U .S. at 555. While
      detailed factual allegations are not necessary, a
      plaintiff must allege sufficient facts to suggest that
      discovery may lead to evidence of the necessary
      elements of the claim. *McTernan,* 577 F.3d at 526
      (discussing the federal pleading standards in light
      of the Supreme Court's ruling in *Twombly* ).

### IV. CONCLUSION
 **\*4**  For the foregoing reasons, Defendant's Motion to
Dismiss is granted in part and denied in part.

An appropriate Order follows.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 1019060

🚩 KeyCite Yellow Flag

Distinguished by  Stann v. Olander Property Management Co. Inc.,
E.D.Pa.,  July 24, 2015

2015 WL 1344769
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Glenn SEGAL, Plaintiff,
v.
Samuel ZIELENIEC, Defendant.

Civil Action No. 13–7493.
|
Signed March 24, 2015.

**Attorneys and Law Firms**

Peter A. Lesser, Patrick Joseph Troy, Sirlin Lesser & Benson
PC, Philadelphia, PA, for Plaintiff.

William E. Mahoney, Jr., Ian M. Long, Stradley Ronon
Stevens & Young LLP, Philadelphia, PA, for Defendants.

### MEMORANDUM OPINION

RUFE, District Judge.

**\*1** Presently before the Court is Defendant Samuel
Zieleniec's motion to dismiss the Amended Complaint for
failure to state a claim.

### I. FACTUAL AND PROCEDURAL HISTORY

The Amended Complaint alleges the following facts. Starting
in 2007, Zieleniec solicited investments from Plaintiff Glenn
Segal, a resident of Pennsylvania, to fund a series of loans
to owners of real property in Israel. Between June 4, 2007
and October 18, 2007, Zieleniec and Segal entered into four
Trust Agreements that are the subject of this litigation: the
Baka Trust, the Katamon Trust, the Metudela Trust, and
the Avida Trust. Zieleniec was the trustee, and Segal was
the beneficiary. After problems developed with the Trusts,
Defendant Zieleniec's father Henry Zieleniec became co-
trustee.

The Trust Agreements provide that "the beneficiary together
with others have decided to provide private loans to third

parties" and that the beneficiary would wire a specified
principal amount into an escrow account set up on the Trust's
behalf. [1] Zieleniec, as trustee, would use the principal to make
and manage loans to owners of real property in Israel on
Segal's behalf. The loans were for a term of six months at
an interest rate of 16% per annum, minus a 2% per annum
administrative fee to be paid to the trustee Zieleniec. On 30
days' notice, the loan's term could be extended to twelve
months on the same terms. If the principal and interest were
not repaid to Segal in full at the end of the six or twelve month
term, interest would continue to accrue at a rate of 2% per
month. The parties intended that the loans would be secured
by either a mortgage on the borrower's property, or in the
case of the Baka Trust, by a lien on shares in the borrowing
company. These security interests were to be the property of
each Trust (the "Trust Property").

Zieleniec, as trustee, agreed to undertake certain fiduciary
duties to Segal as beneficiary. Zieleniec agreed to "hold
and manage" the Trust property on Segal's behalf, and not
to benefit from the Trust or Trust property without Segal's
written consent. [2] The Trusts, and Zieleniec's fiduciary duties
as Trustee, were to continue in existence until the loans
were repaid to Segal in full. The Trust Agreements further
provide that the Trust Agreements "shall be governed by and
construed according to the laws of the state of Israel." [3]

Between July 1, 2007 and October 18, 2007, Segal wired a
total of $1,060,000 to the escrow accounts of the Trust in order
to fulfill his obligations under the Trust Agreements. Even
if extended to twelve months, the term of every loan made
pursuant to the Trust Agreements had expired by October
18, 2008. At that time, Segal's investment was not repaid in
full. Although Segal never received any payments whatsoever
on his investment in the Baka Trust, Segal received interest
payments totaling $578,482.19 on his investments in the
Katamon, Metudela, and Avida Trusts, with the last payment
received on November 20, 2012. Segal alleges losses on his
investments totaling $1,935,580.01 in outstanding principal
and unpaid interest, with interest continuing to accrue at 2%
per month after the filing of this case.

**\*2** Segal contends that his losses were caused by Zieleniec's
failure to perform his fiduciary duties under the Trust and
Zieleniec's fraudulent misrepresentations. Zieleniec allegedly
did not fund any loans, rendering all of his representations
regarding the nature of the loan transactions fraudulent. Segal
alleges that the Trusts were a Ponzi scheme and Zieleniec used
the funds deposited into escrow for his own personal gain and

Case 4:25-cv-00001-KM-PJC    Document 53-1    Filed 07/01/25    Page 22 of 25
Segal v. Zieleniec, Not Reported in F.Supp.3d (2015)
2015 WL 1344769

to repay earlier investors. Defendant Zieleniec and his father Henry Zieleniec allegedly made fraudulent representations regarding their attempts to collect the loans, including that payment was delayed by the borrowers' bankruptcies or involvement in litigation. Defendant Zieleniec and Henry Zieleniec also allegedly refused to provide documentation of their administration of the Trusts, including an accounting of their actions on behalf of the Trusts. Notably, Segal does not plead when any of these failures to perform a fiduciary duty or fraudulent misrepresentations occurred.

On November 20, 2013, Segal filed this action in the Montgomery County Court of Common Pleas against Defendant Zieleniec and Henry Zieleniec. On December 23, 2013, Defendants timely removed the case to this Court and Segal filed an Amended Complaint on January 13, 2014. The Amended Complaint asserts nine state law causes of action arising out of Zieleniec's alleged failures to perform his fiduciary duties and fraudulent misrepresentations: 1) Breach of Contract; 2) Breach of Fiduciary Duty; 3) and 4) Two Counts of Fraud; 5) Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); [4] 6) Conversion; 7) Negligence; 8) Unjust Enrichment; and 9) Civil Conspiracy.

On January 27, 2014, Defendants moved to dismiss the Amended Complaint for lack of personal jurisdiction and failure to state a claim. By memorandum opinion and order dated June 16, 2014, this Court dismissed all claims against Henry Zieleniec for lack of personal jurisdiction, but held that Defendant Zieleniec's contacts with Pennsylvania were sufficient to subject him to personal jurisdiction. Zieleniec is therefore the sole remaining defendant in this action. With regard to whether Segal had stated a claim against Zieleniec, the Court found that it could not determine what law to apply due to the parties' agreement that Israeli law would govern the trust agreements. The Court therefore denied this aspect of Defendants' motion without prejudice until the parties briefed the choice of law issue.

On July 28, 2014, Zieleniec filed a renewed motion to dismiss for failure to state a claim, which raises a statute of limitations defense to Segal's claims for breach of contract, breach of fiduciary duty, fraud, conversion, negligence, unjust enrichment and civil conspiracy. Zieleniec further contends that Segal's remaining claim, for violation of the UTPCPL, should be dismissed because Segal's claims do not fall within the statute. For the purposes of this motion, the parties agree that Pennsylvania law governs the statute of limitations

defense. [5] Contrary to the Court's directives, however, neither party makes any argument as to which law governs the merits of Segal's claims.

## II. STANDARD OF REVIEW

**\*3** In order to survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." [6] Additionally, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." [7] A plaintiff who survives a motion to dismiss for failure to state a claim on which relief may be granted states facts sufficient to " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " [8] In deciding a motion to dismiss, the Court may consider exhibits attached to the complaint as well as the allegations of the complaint itself. [9]

A plaintiff is not required to plead facts sufficient to overcome affirmative defenses, such as failure to comply with the statute of limitations, in order to survive a motion to dismiss. [10] If, however, "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations," then the complaint may be dismissed. [11] But "[i]f a time-bar is not clear on the face of the complaint, then the motion to dismiss should be denied and the issue should be decided at a later stage of the litigation." [12] Thus, dismissal pursuant to Rule 12(b)(6) on statute of limitations grounds requires the plaintiff to " 'effectively plead [ ] herself out of court by alleging facts that are sufficient to establish the defense.' " [13]

## III. DISCUSSION

### A. Statute of Limitations Defense

Under Pennsylvania law, the statute of limitations begins to run "as soon as the right to institute and maintain suit arises." [14] The statute of limitations for Segal's breach of contract and unjust enrichment claims is four years, [15] whereas the statute of limitations for Segal's tort claims is two years. [16] In order to obtain dismissal of Segal's claims on statute of limitations grounds, therefore, Zieleniec must show that Segal's right to institute and maintain suit on his breach of contract and unjust enrichment claims had arisen by November 20, 2009, and that Segal's right to institute and

maintain suit on all his tort claims had arisen by November 20, 2011. [17] Zieleniec contends that Segal could have brought suit on all of his claims on October 18, 2008, when the term of any loan made under the Trust Agreements must have expired, but Segal had not received full repayment of his investment.

Based upon the current record, the Court cannot determine as a matter of law that any of the claims are time-barred because the statutes of limitation for all of Segal's claims are subject to tolling under Pennsylvania's "discovery rule." The discovery rule "applies in Pennsylvania to all causes of action, including breach of contract." [18] Where " 'the injury or its cause was neither known nor reasonably knowable,' " [19] the statute of limitations may be tolled until "the plaintiff knew, or through the exercise of reasonable diligence should have known, of the injury and its cause." [20] Whether the discovery rule applies "involves a factual determination ... [and][t]hus, this issue is generally decided by a jury, unless the court finds that 'reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause' and that therefore the discovery rule does not apply as a matter of law." [21] Zieleniec contends that the discovery rule does not apply because Segal should have been aware of all of his alleged injuries when Segal's investment was not repaid in full on October 18, 2008 as expected.

 **\*4** However, that Segal did not receive full repayment of his investment is insufficient to establish, as a matter of law, that Segal knew or should have known of the alleged cause of his injuries: Zieleniec's failure to perform his fiduciary duties and fraudulent misrepresentations. The Trust Agreements provided that the loans were to be made to third parties in Israel, and Plaintiff argues that he was deceived by allegedly fraudulent statements by the Zieleniecs that the purported Israeli borrowers were unable to pay on time because they were involved in bankruptcies or litigation. Segal also alleges that he received what were purported to be interest payments from the Katamon, Metudela, and Avida Trusts into 2012. The Amended Complaint also alleges that Segal made repeated requests for records of the Trusts' activities, but the Zieleniecs refused to provide them. Segal does not plead when he discovered the alleged causes of his injury, and he is not required to do so at this stage of the proceedings.

In the context of the discovery rule, "when the pleading does not reveal when the statute of limitations period began to run ... the statute of limitations cannot justify Rule 12 dismissal." [22] For the same reasons that the facts as plead in the Amended Complaint do not establish that the cause of Segal's injury was known or reasonably knowable, the Amended Complaint does not reveal when Segal knew or reasonably should have known of the cause of his injuries. Thus, none of Segal's claims will be dismissed pursuant to Rule 12(b)(6) as time-barred. [23] Following discovery, however, Defendant may, if appropriate, renew his statute of limitations defense.

### B. UTPCPL Claim

Rather than raising a statute of limitations defense, Zieleniec moves to dismiss Segal's UTPCPL claim on the basis that the loan transactions at issue do not fall within the scope of the UTPCPL. Because the UTPCPL is a Pennsylvania statute, the Court may apply Pennsylvania law in determining its merits. The private right of action under the UTPCPL applies only to "purchases or leases [of] goods or services primarily for personal, family, or household purposes." [24] Thus, a claim may fall outside the scope of the UTPCPL on two grounds: 1) plaintiffs did not purchase or lease a good or service; [25] or 2) the good or service purchased was not primarily for personal, family, or household purposes. [26] Segal does not respond to Zieleniec's claim that the loan transactions at issue in this case do not fall within the scope of the UTPCPL or defend the viability of the UTPCPL claim in any other fashion.

The Court finds that Segal cannot obtain relief under the plain language of the statute. In funding loans to Israeli borrowers through the Trust Agreements, Segal did not purchase a good or service. Segal also does not allege that he viewed the loan transactions as anything other than an investment, and investment is not a personal, family or household purpose as those terms are ordinarily used. Thus, Segal's UTPCPL claim will be dismissed.

### IV. CONCLUSION

 **\*5** For the reasons stated above, Defendant's Renewed Motion to Dismiss the Amended Complaint will be granted in part and denied in part. None of Segal's claims will be dismissed as time-barred because the Amended Complaint does not permit the conclusion that the discovery rule does not apply or when the cause of Segal's injuries was known or reasonably knowable. Dismissal of the UTPCPL claim will be granted because the investment transactions at issue in this case do not fall within the scope of the statute.

Case 4:25-cv-00001-KM-PJC    Document 53-1    Filed 07/01/25    Page 24 of 25
Segal v. Zieleniec, Not Reported in F.Supp.3d (2015)
2015 WL 1344769

An appropriate order follows.

### ORDER

**AND NOW,** this 24th day of March 2015, upon consideration of Defendant's Renewed Motion to Dismiss the Amended Complaint [Doc. No. 23], and Plaintiff's Memorandum in Opposition, it is hereby **ORDERED** that Defendant's Motion is **GRANTED IN PART AND DENIED IN PART** as follows: Count V of the Amended Complaint is **DISMISSED** and the Motion is **DENIED** in all other respects.

It is further **ORDERED** that Defendant shall **ANSWER** the Amended Complaint no later than 21 days from the date of this Order.

**IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.3d, 2015 WL 1344769

---

### Footnotes

1    *E.g.,* Baka Trust, Exh. A to Am. Compl.

2    *E.g., id.*

3    *E.g., id.*

4    73 P.S. § 201–1 *et seq.*

5    The choice of law provision of the contract does not affect the application of Pennsylvania law to the statute of limitations defense, however, because to do so, the choice of law provision must be specific as to the statute of limitations. *See Gluck v. Unisys Corp.,* 960 F.2d 1168, 1179 (3d Cir.1992) ("Choice of law provisions in contracts do not apply to statutes of limitations, unless the reference is express.").

6    Fed.R.Civ.P. 8(a)(2).

7    *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

8    *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

9    *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993).

10   *See Schmidt v. Skolas,* 770 F.3d 241, 251 (3d Cir.2014).

11   *Id.* at 249 (internal quotations omitted).

12   *Wise v. Mortgage Lenders Network USA, Inc.,* 420 F.Supp.2d 389, 393 (E.D.Pa.2006).

13   *Schmidt,* 770 F.3d at 251 (quoting *Hollander v. Brown,* 457 F.3d 688, 691 n. 1 (7th Cir.2006)).

14   *Morgan v. Petroleum Products Equipment Co.,* 92 A.3d 823, 828 (Pa.Super.Ct.2014) (citing *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 468 A.2d 468, 471 (Pa.1983)).

15    42 Pa.C.S.A. § 5525.

16    42 Pa.C.S.A. § 5524. The statute of limitations for civil conspiracy is determined by the unlawful act that the defendant allegedly conspired to commit. *Ammlung v. City of Chester,* 494 F.2d 811, 814 (3d Cir.1974). Segal alleges that Zieleniec conspired to commit fraud and therefore the two year statute of limitations for fraud applies.

17    As discussed in the next section, Defendant does not argue that Plaintiff's UTPCPL claim is time-barred.

18    *Morgan,* 92 A.3d at 828 (citing *Sadtler v. Jackson–Cross Co.,* 402 Pa.Super. 492, 587 A.2d 727, 731 (Pa.Super.Ct.1991)).

19    *Padalino v. Standard Fire Ins. Co.,* 616 F.Supp.2d 538, 547 (E.D.Pa.2008) (quoting *Drelles v. Mfr. Life Ins. Co.,* 881 A.2d 822, 831 (Pa.Super.Ct.2005)).

20    *Wise,* 420 F.Supp.2d at 395 (internal quotations omitted).

21    *Padalino,* 616 F.Supp.2d at 547 (quoting *Drelles,* 881 A.2d at 832) (internal citations omitted).

22    *Schmidt,* 770 F.3d at 251 (internal quotations omitted) (ellipsis original).

23    Segal also contends that the statute of limitations for all of his claims should be tolled on fraudulent concealment grounds. Because the Court finds that Segal's claims are not time-barred on other grounds, the Court makes no ruling as to whether the injuries alleged in Segal's claims were fraudulently concealed.

24    73 P.S. § 201–9.2.

25    *See Balderston v. Medtronic Sofamor Danek, Inc.,* 285 F.3d 238, 240–42 (3d Cir.2002).

26    *See Taylor v. Creditel Corp.,* No. 04–CV–2702, 2004 WL 2884208 at *7 (E.D.Pa. Dec. 13, 2004) (dismissing UTPCPL claim on grounds including that the transaction at issue was primarily for business purposes).

---

**End of Document**                                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.