Philippe Z. Selendy
Jennifer M. Selendy
Claire E. O'Brien
Laura M. King
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, New York 10104
(212) 390-9000
pselendy@selendygay.com
jselendy@selendygay.com
cobrien@selendygay.com
lking@selendygay.com

*Attorneys for Genesis Global Holdco, LLC,*
*Genesis Global Capital, LLC, and Genesis*
*Asia Pacific Pte. Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*, | Case No.: 23-10063 (SHL) |
| Debtors.[1] | Jointly Administered |

## DEBTORS' MOTION TO ENFORCE THE PLAN AGAINST DIGITAL CURRENCY GROUP, INC.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Genesis Global Holdco, LLC (8219), Genesis Global Capital, LLC (8564), and Genesis Asia Pacific Pte. Ltd. (2164R).

## <u>TABLE OF CONTENTS</u>

<u>**Pages**</u>

PRELIMINARY STATEMENT .................................................................................1

BACKGROUND ................................................................................................5

    A.    The Plan Vests Exclusive Control Over Retained Causes of Action in the Debtors .............................................................................................5

    B.    The Debtors Prosecute Retained Causes of Action Against DCG in Delaware Chancery Court ..................................................................6

    C.    Third Parties Sue DCG in Separate Lawsuits ...........................................8

        1.    The Sokolowski Actions ..................................................8

        2.    The Falco Action.......................................................9

    D.    DCG Seeks to Exercise Control Over the Debtors' Claims by Commencing the Injunction Adversary Proceeding ...............................10

JURISDICTION AND VENUE .......................................................................10

ARGUMENT ................................................................................................11

CONCLUSION..............................................................................................16

Genesis Global Capital, LLC, Genesis Asia Pacific, Pte., and Genesis Global Holdco, LLC (together, "Genesis" or the "Debtors") respectfully move to enforce the Debtors' Amended Joint Chapter 11 Plan (the "Plan"), ECF No. 1874, and the order confirming the Plan (the "Confirmation Order"), ECF No. 1736, against Digital Currency Group, Inc. ("DCG"), to dismiss DCG's just-filed adversary proceeding (the "Injunction Adversary Proceeding"), *see Digital Currency Grp., Inc. v. Vincent Falco, et al.*, 25-01111 (Bankr. S.D.N.Y. 2025), which seeks to enjoin lawsuits by third parties against DCG pending in three federal district courts (the "Creditor Actions")[2] under 11 U.S.C. § 105(a) ("Section 105").   In the alternative, this Court should hold the Injunction Adversary Proceeding in abeyance indefinitely.

## PRELIMINARY STATEMENT

1.      This Court should not permit DCG to usurp the Debtors' control over prosecuting estate causes of action retained under the Plan (the "Retained Causes of Action").   In its Injunction Adversary Proceeding complaint, DCG admits that the Plan, Confirmation Order, and governing law vest the exclusive right to litigate estate causes of action in the Debtors.   *See, e.g.*, ECF No. 2172 ¶ 2 ("Adversary Complaint").   The Plan defines "Causes of Action" broadly to include not only claims, but also all related legal and equitable rights, and the Plan vests in the Debtors all rights to pursue the Retained Causes of Action in the best interests of the Debtors.[3]   As DCG also

---

[2] *See Sokolowski v. Digital Currency Grp., Inc.*, 25-cv-1 (M.D. Pa. 2025); *Sokolowski v. Digital Currency Grp., Inc.*, 25-cv-870 (D. Conn. 2025); *Falco v. Digital Currency Grp., Inc.*, 25-cv-3771 (S.D.N.Y. 2025).

[3] *See* Plan, Art. I.A.35 (defining "Cause of Action" to include, among other things, "whether asserted against a Debtor or any other Person or Entity, any action, claim, cause of action, controversy, third-party claim, dispute, proceeding, *demand*, *right*, *action*, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, account, *defense*, *remedy*, *power*, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, foreseen or unforeseen, existing or hereafter

admits, the Debtors are exercising their exclusive authority over estate claims as part of their post-confirmation activity, including by commencing a lawsuit in the Court of Chancery for the State of Delaware (the "Chancery Court") against DCG and other defendants for breach of fiduciary duty, fraud, civil conspiracy, unjust enrichment, and alter ego based on their rampant violations of Delaware state law (the "Delaware Action"). *See, e.g., id.* ¶¶ 28-29; *see also* Injunction Adversary Proceeding, ECF No. 3-1. DCG nonetheless filed the Injunction Adversary Proceeding seeking to enjoin the Creditor Actions with a Section 105 injunction on the grounds that they constitute Retained Causes of Action. DCG's attempt to enjoin what it contends are estate causes of action hijacks the Debtors' rights under the Plan, including their right to determine their own litigation path. Because DCG's conduct violates the terms of the Plan and the Confirmation Order, its Injunction Adversary Proceeding should be dismissed.

2. The Debtors are aware of the Creditor Actions and have the right to seek to enforce the Plan and Confirmation Order against third parties; they see no need to take action now, reserving all rights to do so.[4] If the Creditor Actions—following all motions to dismiss and amendments—assert derivative estate claims, the Debtors will take such protective steps. Notably, DCG has moved to dismiss one of the Creditor Actions, filed by Vincent Falco in S.D.N.Y. District Court (the "Falco Action"), on grounds including that Falco lacks standing because he brings derivative estate claims and not direct third-party claims against DCG. The S.D.N.Y. District Court has given Falco until July 25, 2025, to amend his complaint. As a result, enjoining the Falco Action now is premature, inefficient, and wastes judicial and estate resources.

---

arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated …" (emphasis added)); *id.* Art. IV.B.14.

[4] The Debtors reserve all of their rights under the Plan, Confirmation Order, and other applicable law (including Section 105 of the Bankruptcy Code) to seek to enjoin third-party prosecution of Retained Causes of Action if and when they determine it is appropriate to do so.

3. Moreover, DCG has no standing. DCG has no credible interest in protecting estate assets or the efficient administration of the estate. As a threshold matter, this Court already found that DCG is an out-of-the money equity holder that had no standing to object to the Plan based on the Plan's distribution of estate assets in which DCG has no interest. *In re Genesis Glob. Holdco, LLC*, 660 B.R. 439, 495-506 (Bankr. S.D.N.Y. 2024). For the same reasons, DCG has no standing to enjoin third-party litigation against it through the guise of protecting estate assets or the estate administration.

4. DCG filed the Injunction Adversary Proceeding in pursuit of its own litigation agenda against the Debtors. Through its request for a Section 105 injunction, DCG is attempting to usurp the role of four different District Judges with respect to dispositive legal issues that are properly heard in those courts.

5. *First*, following DCG's improper attempt to remove the Delaware Action to federal court, the Debtors and DCG are actively litigating before the United States District Court for the District of Delaware (the "District of Delaware") whether federal "related to" jurisdiction exists under controlling Third Circuit law over the Debtors' state law claims in the Delaware Action. Specifically, DCG wants to generate rulings by this Court in an attempt to bolster its unfounded arguments to remove and transfer the Debtors' Delaware Action to this Court—a strategy that further evidences DCG's attempt to exercise control over the Debtors' prosecution of the Retained Causes of Action. The Debtors have moved to remand the Delaware Action to Chancery Court because, among other things, no federal "related to" jurisdiction exists over the state law claims and causes of action they have asserted in the Delaware Action. Briefing on that issue was completed the day before DCG commenced its Injunction Adversary Proceeding. DCG is trying to end-run the District of Delaware's jurisdictional ruling by generating a holding that claims

concerning DCG's fraud satisfy the test for post-confirmation "related to" jurisdiction in the Third Circuit, or even that there is "related to" jurisdiction over the Delaware Action's claims.

6.     *Second*, as mentioned, DCG moved in S.D.N.Y. District Court to dismiss the Falco Action, including on the ground that Falco alleges only derivative estate claims, rather than direct claims, against DCG.  That discrete issue regarding the sufficiency of Falco's pleading is properly resolved in the S.D.N.Y. through DCG's motion to dismiss.  Notably, the S.D.N.Y. gave Falco an opportunity to amend his complaint.

7.     *Third*, if DCG contends that the two other Creditor Actions—filed by brothers Stephen and Christopher Sokolowski in in the United States District Court for the Middle District of Pennsylvania (the "Middle District of Pennsylvania") and the United States District Court for the District of Connecticut (the "District of Connecticut")—should not proceed because those pleadings are similarly deficient, then DCG must raise that issue in motions to dismiss before those courts.

8.     By seeking a Section 105 injunction to stop the various non-Debtor lawsuits against it, DCG weaponizes the Plan and Confirmation Order for its own benefit.  DCG also interferes with the Debtors' rights to control the prosecution of the Retained Causes of Action, including the Delaware Action.  The Debtors—not DCG—have the authority to enforce the Plan, which already enjoins creditors from prosecuting Retained Causes of Action.  *See* Plan, Art. VIII.G.ii; Confirmation Order ¶¶ 116-18, 151.  DCG's Injunction Adversary Proceeding therefore violates the Plan's language providing that the *Debtors* retain exclusive rights to commence and pursue all Retained Causes of Action in the best interests of the *Debtors*.  *See* Plan, Art. IV.B.14; Confirmation Order ¶¶ 116-18, 151.

9.      Consistent with the Plan and Confirmation Order, the Court should dismiss the Injunction Adversary Proceeding.  As DCG's own Adversary Complaint and motion make plain, DCG is pursuing rights that exclusively belong to the Debtors and has no standing to do so; the Court should summarily dismiss the Injunction Adversary Proceeding without further proceedings.  Alternatively, the Court should hold it in abeyance indefinitely.

## **BACKGROUND**

### A.      **The Plan Vests Exclusive Control Over Retained Causes of Action in the Debtors**

10.      Each of the Debtors filed for Chapter 11 bankruptcy in this Court on January 19, 2023.  *See, e.g.*, ECF No. 1.  On May 31, 2024, this Court issued the Confirmation Order.  ECF No. 1736.  The Plan became effective on August 2, 2024.  ECF No. 1907.

11.      The Plan and Confirmation Order vest the Debtors with the exclusive right to pursue any "Retained Causes of Action."  *See, e.g.*, Plan, Art. IV.B.14.  Retained Causes of Action include all claims arising from tort, breach of fiduciary duty, or "violation of state or federal law." *Id.*, Art. I.A.35, Art. I.A.208.  It expressly includes "all such Causes of Action or other claims against" DCG and its officers and directors, such as the Debtors' state law claims.  *Id.*, Art. I.A.35, Art. I.A. 208; *see also id.*, Art. I.A.60.  By contrast, Retained Causes of Action exclude "any claim or Cause of Action belonging solely to a Holder of a Claim," clarifying that third parties may bring *direct* claims against DCG or other third parties.  *Id.*, Art. I.A.208.  The Plan further provides that the Debtors "shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action belonging to the Debtors" and "may pursue such Causes of Action, as appropriate, in accordance with the best interests of the … Debtors."  Plan, Art. IV.B.14; *see also* Confirmation Order ¶¶ 116-17.

12.     The Plan enjoins third parties from prosecuting *estate* claims (directly or derivatively): "all Entities who have held, hold, or may hold Claims against or Interests in the Debtors … are enjoined from … enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests" against the Debtors—which includes by prosecuting the Retained Causes of Action on their own behalf.  Plan, Art. VIII.G.  The Confirmation Order states that the Plan's injunction provision "shall remain in full force and effect" following confirmation, such that any creditor's pursuit of an action to recover on its Claims would violate the Confirmation Order.  *See* Confirmation Order ¶ 151.

### B.     The Debtors Prosecute Retained Causes of Action Against DCG in Delaware Chancery Court

13.     On May 13, 2025, after many months of investigation, Genesis commenced the Delaware Action against DCG, Barry Silbert, DCG's former CFO Michael Kraines, DCG's President and COO Mark Murphy, Genesis's former "CEO" Soichiro "Michael" Moro, DCG's financial advisor Ducera Partners, LLC ("Ducera"), and Ducera's CEO Michael Kramer (together, the "Delaware Defendants") asserting common law claims under Delaware law on behalf of themselves and as assignees of Gemini Trust Company ("Gemini"), including for breach of fiduciary duty, fraud, civil conspiracy, unjust enrichment, and alter ego.  *See Genesis Glob. Holdco, LLC v. Digital Currency Grp., Inc.*, 2025-0532-KSJM, Dkt. 1 (Del. Ch. May 13, 2025); *see also* Injunction Adversary Proceeding, ECF No. 3-1.  The Debtors detail in over 200 pages— supported by extensive contemporaneous admissions by DCG, Silbert, and others—the abuse of corporate form, fraud, misrepresentations, and breaches of fiduciary duties committed by the Delaware Defendants.  *See* Injunction Adversary Proceeding, ECF No. 3-1 ¶¶ 147-58.  The Debtors also allege specific facts regarding public misrepresentations made by DCG and other

Delaware Defendants, including to Gemini, around Genesis's financial condition. *Id.* ¶¶ 163-70. The Debtors further allege that DCG committed multiple frauds and injustices through disregard of the Delaware corporate form, making Genesis the alter ego of DCG. *Id.* ¶¶ 51-79. The Debtors seek at least $2.2 billion of in-kind damages to return valuable cryptocurrencies to creditors and make them whole from the Delaware Defendants' wrongdoing.

14. On June 12, 2025, DCG filed a Notice of Removal to the District of Delaware, where the Delaware Action now is pending before the Honorable Richard G. Andrews. *Genesis Glob. HoldCo, LLC v. Digital Currency Grp., Inc.*, 25-cv-733, ECF No. 1 (D. Del. June 12, 2025). The next day, on June 13, 2025, the Debtors filed a motion to remand (the "Remand Motion"), arguing that the Delaware Action should be remanded to Chancery Court because there is no federal "related to" jurisdiction over the Delaware Action under controlling Third Circuit law. *Id.*, ECF Nos. 4, 5 (D. Del. June 13, 2025).

15. One week later, on June 20, 2025, the Delaware Defendants filed a Motion to Transfer Venue (the "Transfer Motion") to S.D.N.Y. for referral to this Court pursuant to 28 U.S.C. §§ 1404 and 1412. *Id.*, ECF No. 18 (D. Del. June 20, 2025). The Delaware Defendants attempted to show that transfer was appropriate under Section 1412, which provides for transfer of "a case or proceeding under title 11," on the purported ground that the Delaware Action is "related to" the Genesis bankruptcy despite contrary Third Circuit precedent. *Id.*, ECF No. 19 (D. Del. June 20, 2025). The Transfer Motion thus again raised the issue of "related to" jurisdiction and asked the District of Delaware to resolve that question. The Debtors of course opposed the Transfer Motion, reiterating why there is no federal jurisdiction over the Delaware Action. *Id.*, ECF No. 28 (D. Del. June 30, 2025).

16.     Both the Remand Motion and the Transfer Motion were fully briefed as of July 7,

2025—the day before DCG commenced this adversary proceeding.  *See id.*, ECF Nos. 26, 28, 34,

36.  The Notice of Removal and the briefs in support of and in opposition to the Remand Motion

and Transfer Motion are appended hereto for the Court's reference.  *See* Decl. of Claire E. O'Brien,

Exs. 1-7.

### C.     Third Parties Sue DCG in Separate Lawsuits

#### 1.     The Sokolowski Actions

17.     On January 2, 2025, the Sokolowskis commenced an action *pro se* in the Middle

District of Pennsylvania against DCG, Silbert, and Moro, over which the Honorable Karoline

Mehalchick is presiding.  *Sokolowski v. Digital Currency Grp., Inc.*, 25-cv-1, ECF No. 1 (M.D.

Pa. Jan. 2, 2025).  The Sokolowskis amended their complaint on March 25, 2025.  *Id.*, ECF No.

22 (M.D. Pa. Mar. 25, 2025); *see also* Injunction Adversary Proceeding, ECF No. 3-3.  The

Sokolowskis assert one claim for violation of the Pennsylvania Unfair Trade Practices and

Consumer Protection Law.  *See* Injunction Adversary Proceeding, ECF No. 3-3.

18.     DCG, Silbert, and Moro moved to dismiss the Sokolowskis' amended complaint

on April 22, 2025, for lack of standing and failure to state a claim.  *See Sokolowski*, 25-cv-1, ECF

Nos. 36, 37 (M.D. Pa. Apr. 22, 2025); *id*, ECF No. 38 (M.D. Pa. Apr. 23, 2025).  None of the

defendants argued that the Sokolowskis assert derivative claims in their motions.  The motions to

dismiss have been fully briefed since July 1, 2025, and remain pending.  *See generally Sokolowski*,

25-cv-1 (M.D. Pa. 2025).

19.     On May 30, 2025, the Sokolowskis filed an action *pro se* in the District of

Connecticut suing the same defendants (DCG, Silbert, and Moro) and alleging the same facts,

which action they described as a "protective measure to preserve their rights."  *See Sokolowski v.

Digital Currency Grp., Inc.*, 25-cv-870, ECF No. 1 (D. Conn. May 30, 2025); *see also* Injunction

Adversary Proceeding, ECF No. 3-4. They assert one claim under the Connecticut Unfair Trade Practices Act and common law claims for fraud, negligent misrepresentation, conspiracy, aiding and abetting fraud, and unjust enrichment. Injunction Adversary Proceeding, ECF No. 3-4 ¶¶ 192-215. The Honorable Victor A. Bolden is presiding over the Sokolowskis' Connecticut action. DCG, Silbert, and Moro have not yet responded to the Sokolowskis' Connecticut complaint; their responses are due on August 4, 2025. *See generally Sokolowski*, 25-cv-870 (D. Conn. 2025).

### 2. The Falco Action

20. On May 6, 2025, Falco commenced an action in S.D.N.Y. District Court against DCG, Silbert, and Moro, over which the Honorable Denise L. Cote is presiding. *See Falco*, 25-cv-3771, ECF No. 1 (S.D.N.Y. May 6, 2025); *see also* Injunction Adversary Proceeding, ECF No. 3-5. Falco asserts seven causes of action, including fraud, aiding and abetting fraud, and conspiracy to commit fraud. Injunction Adversary Proceeding, ECF No. 3-5 ¶¶ 149-207. The Falco Action focuses on misrepresentations by DCG, Silbert, and Moro during the cryptocurrency market upheaval of 2022, including around the promissory note issued by DCG to Genesis on June 30, 2022. *See, e.g., id.* ¶ 44.

21. On July 2, 2025, DCG, Silbert, and Moro moved to dismiss the Falco Action for lack of standing and failure to state a claim. *Falco*, 25-cv-3771, ECF Nos. 34-38 (S.D.N.Y. July 2, 2025). As relevant here, DCG, Silbert, and Moro argued in their motions to dismiss that Falco lacks standing "because the claims he asserts are the Genesis bankruptcy estate's exclusive property"—that is, Falco asserts derivative claims that "do not satisfy Article III's [standing] requirement." *Id.*, ECF No. 35 at 10; *see id.*, ECF No. 38 at 2 n.1. DCG forecasted that it will "present this argument to the Bankruptcy Court" and asked the District Court to "defer ruling on this issue until the Bankruptcy Court has had a chance to issue its decision." *Id.*, ECF No. 35 at

9

10 n.3. On July 7, 2025, the District Court instead ordered Falco to file any amended complaint by July 25, 2025. *Id.*, ECF No. 39 (S.D.N.Y. July 7, 2025).

**D.      DCG Seeks to Exercise Control Over the Debtors' Claims by Commencing the Injunction Adversary Proceeding**

22.     On July 8, 2025, with the Remand Motion and Transfer Motion fully briefed and pending in the District of Delaware and with DCG's motion to dismiss filed in the Falco Action, DCG filed its Adversary Complaint, a Motion for Preliminary Injunction, and a Memorandum of Law in Support of Motion for a Preliminary Injunction in this Court, *see* Injunction Adversary Proceeding, ECF No. 4 ("Injunction Motion"); *see also id.*, ECF Nos. 1-3, seeking to enjoin the Creditor Actions because they purportedly assert "derivative" claims that belong to the Debtors.

## JURISDICTION AND VENUE

23.     The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012.

24.     The Court has "arising in" jurisdiction over this motion because it requires the Court to "interpret and enforce" its order confirming the Debtors' Plan.  *See, e.g., In re Motors Liquidation Co.*, 829 F.3d 135, 153 (2d Cir. 2016).[5]

25.     This motion to enforce the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

26.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[5] As discussed herein, *see infra* ¶¶ 36-37, the Debtors dispute DCG's allegation in its Complaint that "[t]he Court also has 'related to' jurisdiction over" the Injunction Adversary Proceeding to enjoin the Creditor Actions because they "could conceivably have any effect on the estate being administered in bankruptcy."  Adversary Complaint ¶ 14.  In any event, this Court need not decide whether such jurisdiction exists to grant the relief Debtors seek in this Motion, and the issue of "related to" jurisdiction is not before this Court.

## **ARGUMENT**

27.     By filing the Injunction Adversary Proceeding, DCG has violated the terms of the Plan and Confirmation Order by attempting to exercise control over, and impair, the Debtors' prosecution of Retained Causes of Action.  This Court should enforce the Plan and Confirmation Order against DCG by dismissing the unfounded adversary proceeding, or alternatively, holding the Injunction Adversary Proceeding in abeyance and enjoining its continued prosecution indefinitely.

28.     DCG has no standing to seek its requested injunction and cannot claim that it needs such an injunction, now or ever.  The Injunction Adversary Proceeding is unnecessary because the Plan and Confirmation Order already enjoin non-Debtors from prosecuting estate causes of action, directly or derivatively.  Article VIII of the Plan expressly enjoins creditors from recovering on account of claims owned by the estate from the Debtors:  "all Entities who have held, hold, or may hold Claims against or Interests in the Debtors … are enjoined from … enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests" against the Debtors, which includes prosecuting estate causes of action vested in the Debtors.[6] Plan, Art. VIII.G; *see also* Confirmation Order ¶ 151.

29.     The Injunction Adversary Proceeding is nothing more than a motion to enforce Article VIII of the Plan in disguise.  By filing it, DCG violates the express provisions of Article IV.B of the Plan and Paragraph 116 of the Confirmation Order, which provide that the Debtors

---

[6] The Plan also clarifies that, although the Debtors have the exclusive right to assert their Retained Causes of Action, and third parties are enjoined from recovering against the Debtors on account of their Claims or Interests, the term "Retained Causes of Action shall not include … any claim or Cause of Action belonging solely to a Holder of a Claim"—meaning that third parties may bring any direct causes of action they may have.  Plan, Art.I.A.208.

"shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes

of Action belonging to the Debtors."  Plan, Art. IV.B.14; *see also* Confirmation Order ¶¶ 116-17.

DCG itself acknowledges this in its Adversary Complaint:  the Plan and Confirmation Order "give

the *Debtors* the *exclusive* right to prosecute estate causes of action," and "the *Debtors* shall retain,

and may enforce, all rights to commence and pursue, as appropriate, any and all causes of action

*belonging to the Debtors*."  Adversary Complaint ¶¶ 2, 26 (emphasis added).  Only the Debtors—

and not DCG—can enjoin prosecution of the Creditor Actions on the grounds that the claims

belong to the estate and thus cannot be prosecuted by anyone but the Debtors.

  30. In any event, DCG lacks standing to bring a motion to enforce the Plan (or its

purported Section 105 injunction), as it has no legal right or interest in protecting the Debtors'

Retained Causes of Action under the Plan.  *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 499 (1975)

("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim

to relief on the legal rights or interests of third parties."); *Singleton v. Wulff*, 428 U.S. 106, 113

(1976) ("Federal courts must hesitate before resolving a controversy, even one within their

constitutional power to resolve, on the basis of the rights of third persons not parties to the

litigation.").  In bankruptcy proceedings, these "[p]rudential limitations on standing play an

especially important role."  *In re Quigley Co., Inc*., 391 B.R. 695, 702-03 (Bankr. S.D.N.Y. 2008)

(citing *Kane v. Johns-Manville Corp*., 843 F.2d 636, 644 (2d Cir. 1988)).

  31. DCG cannot show that its requested preliminary injunction would result in "any

recovery for DCG's equity interests."  *In re Genesis Glob. Holdco, LLC*, 660 B.R. at 498.  In its

Adversary Complaint, DCG argues that the Creditor Actions "will result in a race between the

Creditor Defendants and the hundreds of similarly situated creditors whose interests are

represented in the parallel litigation" by the Debtors and that other creditors may "launch their own

suits" thus "competing with the estates[' suit]," but none of that constitutes cognizable harm to DCG in violation of the Plan. Adversary Complaint ¶ 6. DCG cannot use its position as an equity holder to seek to enjoin lawsuits it faces for its rampant wrongdoing, and this Court should not countenance DCG's misuse of the Debtors' Plan to further its litigation strategy in other actions at the Debtors' expense.

32.     This Court has already ruled that DCG has no standing to object to the Plan because, "[g]iven the size of the creditor claims, DCG is out of the money as an equity holder by billions of dollars." *In re Genesis Glob. Holdco, LLC*, 660 B.R. at 456. As a result, DCG has "no direct economic interest in the manner in which value is being distributed under [the] Plan." *Id.* at 498. Accordingly, "DCG lacks standing to challenge the Distribution Principles" or "to object to the Setoff Principles" in the Plan. *Id.* at 498, 507. It follows that DCG also has no standing to enforce the Plan provisions at issue: under the same principles, DCG has no legally cognizable economic interest in the Debtors' prosecution of Retained Causes of Action. *Cf. Freeman v. J. Reg. Co*., 452 B.R. 367, 372 (S.D.N.Y. 2010) (concluding that equity holders lacked prudential standing to appeal a confirmation order when "the equity holders would clearly not have recovered anything in this case"). This Court has also rejected the notion that DCG should have governance rights over Genesis's post-confirmation activity, as DCG should not be able to control the estate's decisions with respect to its causes of action against DCG. *See Genesis Glob. Holdco, LLC*, 660 B.R. at 509-11.

33.     The Court should reject DCG's attempt to interfere with the Debtors' exclusive rights under the Plan to prosecute the Retained Causes of Action in accordance with the best interests of the Debtors and their estates, as determined *by the Debtors* (not DCG, who is a defendant in the Creditor Actions). The Debtors are the proper party to seek such relief. They

have not yet filed a motion for an injunction (although they reserve all rights to seek any relief needed to protect estate assets). The precise issue of whether Falco and the Sokolowskis have adequately pleaded direct claims against DCG, Silbert, and Moro should be decided by the District Courts presiding over those cases in a motion to dismiss, as confirmed by DCG's own cited cases. *See* Injunction Motion at 16, 21-22 (citing *In re 305 E. 61st St. Grp. LLC*, 130 F.4th 272 (2d Cir. 2025) (addressing derivative claim argument on motion to dismiss); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688 (2d Cir. 1989) (same); *In re Revlon, Inc.*, 2023 WL 2229352 (Bankr. S.D.N.Y. Feb. 24, 2023) (same); *Ritchie Cap. Mgmt., LLC v. Gen. Elec. Cap. Corp.*, 121 F. Supp. 3d 321, 335 (S.D.N.Y. 2015) (same)).

34. Indeed, DCG, Silbert, and Moro have moved to dismiss the Falco Action including for a failure to plead direct claims, which is pending before the Honorable Denise L. Cote. *Falco*, 25-cv-3771, ECF No. 35 at 9-11 (DCG and Silbert's argument that Falco "lacks standing to sue … because the claims he asserts are the Genesis bankruptcy estate's exclusive property"); *id.*, ECF No. 38 at 2 n.1 (Moro's same argument). Bringing the same issues before this Court through an unfounded and unnecessary Section 105 injunction action is both an ineffective and inefficient use of judicial resources. If the District Court determines Falco has no standing, then the Falco Action will be dismissed. *See, e.g.*, *In re R.H.N. Realty Corp.*, 84 B.R. 356, 359 (Bankr. S.D.N.Y. 1988) (describing case in which the court dismissed a "cause of action asserted in a private controversy between a third-party plaintiff and nondebtor defendants … for lack of jurisdiction because the action did not arise under title 11, nor was it related to a case under title 11"). The record in that case is continuing to develop, as the District Court has given Falco a deadline to amend his complaint.

35.     The procedural impropriety of DCG's filing makes plain DCG's true objectives:  to (1) bolster its unfounded position with respect to the Remand and Transfer Motions pending in the District of Delaware and (2) usurp the three District Courts presiding over the Creditor Actions.[7]

36.     The Injunction Adversary Proceeding tactically and obviously embeds issues that are at play in the Debtors' Remand Motion in the District of Delaware:  akin to its arguments in opposition to that motion, DCG incorrectly implies that there is federal jurisdiction over the claims and causes of action asserted in the Delaware Action because "pursuit of estate claims against DCG is a centerpiece" and "key component[]" of the Plan.  Adversary Complaint ¶¶ 21-22.  DCG likewise contends that this Court retains jurisdiction to "adjudicate, decide, or resolve any and all matters related to Causes of Action by or against a Debtor."  *Id.* ¶ 27.  Through these calculated assertions, DCG rehashes arguments here that DCG advances in support of its contention that there is "related to" jurisdiction under Third Circuit law in the Delaware Action.  *See* Ex. 5 at 12-15; Ex. 3 at 10-12; Ex. 7 at 2-5.  As described in Genesis' thorough briefing, the Debtors have explained that there is no federal jurisdiction to hear the Delaware Action because the resolution of the claims in the Delaware Action will not affect the Plan in a way that creates the "close nexus" required for "related to" jurisdiction in the Third Circuit.  *See* Ex. 2 at 9-11; Ex. 6 at 8-12; Ex. 4 at 2-5.  Thus, the issue of whether there is "related to" jurisdiction on these topics is fully briefed in the District of Delaware and is ripe for decision.

37.     DCG also suggests that this Court has "related to" jurisdiction over the Creditor Actions because they "could conceivably have any effect on the estate being administered in

---

[7] DCG does not request an injunction as to other actions allegedly arising from the facts at issue in the Delaware Action, including *McGreevy v. Digital Currency Group, Inc.*, 23-cv-82 (D. Conn. 2023), an action asserting claims against DCG and Silbert.  This cherry-picking further demonstrates DCG's ulterior motive: namely, to try to obtain a favorable ruling to use in the Delaware Action.

bankruptcy." Adversary Complaint ¶ 14 (*quoting Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995)). The question of whether such third-party Creditor Actions may have an effect on estate administration is wholly different from the question of whether the claims asserted by the estate itself, pursuant to its exclusive rights under and consistent with the Plan, could somehow satisfy the Third Circuit's "close nexus" test for post-confirmation "related to" jurisdiction. DCG's implicit efforts to conflate the two questions—based on DCG's contention that the actions arise from similar facts—should not be countenanced. As the Delaware Defendants (including DCG) have acknowledged, the Delaware Action is subject to the Third Circuit's "close nexus" test. *See* Ex. 2 at 9-11; *see also* Ex. 3 at 10. This Court therefore cannot determine that "related to" jurisdiction exists with respect to the Delaware Action based on whether the Delaware Action "could conceivably have any effect" on the Genesis estate. The Injunction Adversary Proceeding is a nothing but a ploy to end-run the District of Delaware's jurisdictional decision and try to generate support from this Court for DCG's misguided attempt to remove Genesis's Delaware Action.

## CONCLUSION

For the reasons stated above, the Court should enforce the Plan and Confirmation Order against DCG and dismiss the Injunction Adversary Proceeding by exercising its core bankruptcy jurisdiction under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012. Alternatively, this Court should hold the Injunction Adversary Proceeding in abeyance indefinitely.

Dated:    New York, NY
          July 14, 2025

Respectfully submitted,

SELENDY GAY PLLC


By:      /s/        *Jennifer M. Selendy*
         Philippe Z. Selendy
         Jennifer M. Selendy
         Claire E. O'Brien
         Laura M. King
         SELENDY GAY PLLC
         1290 Avenue of the Americas
         New York, NY 10104
         Tel: 212-390-9000
         pselendy@selendygay.com
         jselendy@selendygay.com
         cobrien@selendygay.com
         lking@selendygay.com

         *Attorneys for Plaintiffs Genesis Global Holdco,
         LLC, Genesis Global Capital, LLC, and Genesis
         Asia Pacific Pte. Ltd.*

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |

## [PROPOSED] ORDER GRANTING DEBTOR'S MOTION TO ENFORCE PLAN INJUNCTION AND CONFIRMATION ORDER

Upon consideration of the Motion for an Order Enforcing the Amended Joint Chapter 11 Plan (the "Motion") filed by Genesis Global Holdco, LLC, Genesis Global Capital, LLC, and Genesis Asia Pacific Pte. Ltd. (the "Debtors") and all subsequent responsive and supportive papers; and upon consideration of the Debtor's Amended Joint Chapter 11 Plan [ECF No. 1712] – as confirmed by this Court in its May 17, 2024 Memorandum of Decision [ECF No. 1691] and by its Findings of Fact, Conclusions of Law, and Order (I) Confirming the Debtors' Amended Joint Chapter 11 Plan and (II) Granting Related Relief on May 31, 2024 [ECF No. 1736] as modified on July 21, 2024 [ECF No. 1874] and as supplemented on December 29, 2023 [ECF No. 1117], January 6, 2024 [ECF No. 1131], January 8, 2024 [ECF No. 1137], January 9, 2024 [ECF No. 1144], February 24, 2024 [ECF No. 1379], February 26, 2024 [ECF No. 1391], April 9, 2024 [ECF No. 1561], May 6, 2024 [ECF No. 1661], May 29, 2024 [ECF No. 1720], and July 30, 2024 [ECF No. 1895]; and the Adversary Complaint filed by Digital Currency Group, Inc. ("DCG") on July 8, 2025 [ECF No. 2172, Adv. Pro. No. 25-01111-shl; (the "Injunction Adversary Proceeding")]; and it appearing that this Court has jurisdiction to decide the Motion under 28

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).

U.S.C. §§ 157 and 1334; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and all parties in interest; and it appearing that the notice of the Motion is sufficient, adequate, and timely under the circumstances of this case and that no other or further notice need be provided; and a reasonable opportunity to object or be heard regarding the Motion having been given to all parties; and a full and fair opportunity having been afforded to litigate all issues raised in all objections, or which might have been raised; and upon all of the proceedings before the Court; and after due deliberation and sufficient cause appearing therefor;

**ORDERED** That the Motion is GRANTED to the extent set forth below for the reasons set forth on the record; and it is further

**ORDERED** Not later than fourteen (14) days after the entry of this Order, DCG shall take all appropriate actions to dismiss the Injunction Action with prejudice; and it is further

**ORDERED** If DCG fails to dismiss the Injunction Action or it is not otherwise dismissed within the fourteen (14) day period, this Court shall issue an order holding DCG in contempt of Court for violating the terms of this Order, this Court's Memorandum of Decision [ECF No. 1691], and this Court's May 31, 2024 Findings Of Fact, Conclusions of Law, and Order (I) Confirming the Debtors' Amended Joint Chapter 11 Plan and (II) Granting Related Relief [ECF No. 1736]; and it is further

**ORDERED** Further, in connection with any contempt proceeding against DCG, the Debtors shall be permitted to seek sanctions against DCG in this Court for their reasonable expenses and costs, including attorneys' fees and costs, in connection with this matter in an amount to be determined by this Court; and it is further

**ORDERED** The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order; and it is further

**ORDERED** Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

**ORDERED** All objections to the Motion or the relief requested therein, if any, that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits; and it is further

**ORDERED** This Court shall retain jurisdiction solely with respect to all matters arising or related to the implementation of this Order.

Dated:  White Plains, New York
      _____ \_\_, \_\_\_\_\_

                             _____
                             Hon. Sean H. Lane
                             United States Bankruptcy Judge