**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

STEPHEN H. SOKOLOWSKI and
CHRISTOPHER H. SOKOLOWSKI,
**Plaintiffs,**

v.

DIGITAL CURRENCY GROUP, INC.,
BARRY E. SILBERT,
SOICHIRO "MICHAEL" MORO,
**Defendants.**

Electronically Filed

Case No. 4:25-cv-00001

Hon. Karoline Mehalchick
Hon. Martin C. Carlson

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF SECOND
MOTION FOR EXTENSION OF TIME TO FILE SECOND AMENDED
COMPLAINT**

**I    INTRODUCTION**

1.    Plaintiffs do not ask the Court to extend the stay entered on March 6, 2026. ECF No. 78. Plaintiffs ask only to extend the deadline for filing their second amended complaint from May 19, 2026 to November 19, 2026. The requested relief is a fixed, date-certain enlargement of a pleading deadline, not an indefinite stay of this action.

1

2.      Good cause exists because the Court rejected Plaintiffs' prior proposed second amended complaint under Rule 8, and Plaintiffs must now file a materially narrower pleading. Plaintiffs have also decided to address first, through counsel, the related adversary proceeding pending in the United States Bankruptcy Court for the Southern District of New York, *Digital Currency Group, Inc. v. Falco, et al.*, Adv. Proc. No. 25-01111 (SHL) (Bankr. S.D.N.Y.) (the "AP"). That approach will allow threshold assignment, standing, the circumstances surrounding the filing of the AP, and direct-versus-derivative issues to be clarified before the second amended complaint is filed here. A fixed, date-certain extension will allow Plaintiffs to file earlier if those issues are clarified sooner, while avoiding the open-ended concerns associated with a stay. See Fed. R. Civ. P. 6(b)(1)(A); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896-97 (1990); *Landis v. N. Am. Co.*, 299 U.S. 248, 254–56 (1936).

## II      RELEVANT BACKGROUND

3.      On March 6, 2026, the Court adopted the Report and Recommendation, denied Defendants' motions to dismiss as moot, granted Plaintiffs leave to amend, rejected Plaintiffs' proposed second amended complaint, and directed Plaintiffs to file a new second amended complaint by May 19, 2026 if they did not retain counsel by May 5, 2026. ECF No. 78.

4.      The Court's ruling followed Judge Carlson's explanation that the proposed complaint had become too broad, too long, and insufficiently consistent with Rule 8's requirement of a short and plain statement. ECF No. 72 at 7–10. Plaintiffs understand that the next pleading must be materially different: shorter, more disciplined, and limited to claims and parties that can responsibly be pleaded.

5.      Digital Currency Group, Inc. ("DCG") initiated the AP and asked the Bankruptcy Court to determine whether Plaintiffs' claims are direct claims belonging to Plaintiffs or derivative estate claims. DCG's own litigation choices have therefore placed overlapping standing, assignment, and direct-versus-derivative issues before the Bankruptcy Court, and DCG's own briefing has likewise placed before the Bankruptcy Court the circumstances surrounding the filing of the AP.

6.      The claim-transfer documents between Cryptocurrency Management LLC and Jefferies Leveraged Credit Products LLC ("Jefferies"), and communications concerning those documents, have become central to defenses raised or expected from all Defendants, not just DCG, as well as to Plaintiffs' expected second amended complaint. Plaintiffs are not asking this Court to adjudicate those issues now. Plaintiffs ask only for time to file the second amended complaint after those threshold issues are clarified in the AP, or after it becomes clear that the AP will not clarify them on a useful timetable.

3

7.      Plaintiffs have made substantial progress toward retaining counsel for the AP and have decided that any retained counsel should address that proceeding first. This development is material because the Court granted Plaintiffs' prior stay request so Plaintiffs could seek counsel, and the expected New York representation is the mechanism by which Plaintiffs intend to clarify the assignment, standing, the circumstances surrounding the filing of the AP, and direct-versus-derivative issues before filing the second amended complaint here.

## III    LEGAL STANDARD

8.      Fed. R. Civ. P. 6(b)(1)(A) provides that, when an act must be done within a specified time, the Court may extend that time for good cause if the request is made before the original time or its extension expires. Because this motion is filed before the May 19, 2026 deadline, Plaintiffs need only show good cause under Rule 6(b)(1)(A), not excusable neglect under Rule 6(b)(1)(B). See *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896-97 (1990); *Drippe v. Tobelinski*, 604 F.3d 778, 784–85 (3d Cir. 2010).

9.      To the extent the March 6 Order is treated as a scheduling order, Fed. R. Civ. P. 16(b)(4) likewise permits modification for good cause and with the Court's consent. Under Third Circuit law, Rule 16(b)(4)'s good-cause inquiry depends in part on the movant's diligence. *Premier Comp Sols., LLC v. UPMC*,

970 F.3d 316, 319 (3d Cir. 2020). Plaintiffs satisfy that standard because they are moving before the deadline expires, because they are trying to comply with the Court's Rule 8 directive, and because the AP may materially affect the proper scope of the second amended complaint.

10.    The amendment principles embodied in Fed. R. Civ. P. 15(a)(2) also support the requested relief. Federal pleading rules favor decisions on the merits rather than avoidable technical pleading disputes, and leave to amend is ordinarily denied only for reasons such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 181–82 (1962). In the Third Circuit, prejudice to the non-moving party is the touchstone, and delay alone is insufficient. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204-05 (3d Cir. 2006).

11.    Finally, Fed. R. Civ. P. 8 and 11 are directly implicated by this motion. Rule 8 requires a short and plain statement, and each allegation must be simple, concise, and direct. Fed. R. Civ. P. 8(a)(2), 8(d)(1). *Garrett* explains that the Rule 8 inquiry is practical and context-dependent, that complex cases may require factual detail, but that overlong pleadings may be rejected when they fail to give fair and manageable notice. *Garrett v. Wexford Health*, 938 F.3d 69, 92–94 (3d Cir. 2019). Fed. R. Civ. P. 11(b)(3) requires factual contentions to have evidentiary support, or, if specifically identified, to be likely to have evidentiary support after a reasonable

opportunity for investigation or discovery. A fixed, date-certain extension will help Plaintiffs comply with both rules.

## IV   ARGUMENT

### A   An Extension Will Help Plaintiffs Comply with the Court's Rule 8 Directive

12.   Good cause exists because Plaintiffs are not attempting to recreate the rejected proposed second amended complaint. They are attempting to replace it with a focused pleading that complies with the Court's March 6 Order and Rule 8. *Garrett* recognizes both sides of Rule 8: a complaint must be understandable and manageable, but the amount of detail required depends on the complexity of the case. 938 F.3d at 92–94. A fixed, date-certain extension will help Plaintiffs comply with that directive without filing another overbroad protective pleading.

13.   The requested extension will make the next pleading shorter and more accurate. If Plaintiffs must file their second amended complaint before the threshold issues in the AP are clarified, they may be forced to plead broadly and protectively to avoid later arguments that omitted theories or parties were abandoned. That would risk repeating the very problem the Court identified. A fixed, date-certain extension will instead permit Plaintiffs to determine which facts,

6

claims, and parties can responsibly be included now, and which should be reserved unless future discovery warrants later amendment.

## B  The AP May Materially Affect the Second Amended Complaint

14.     DCG initiated the AP and asked the Bankruptcy Court to decide whether Plaintiffs are prosecuting direct individual claims or derivative estate claims. That issue overlaps with the defenses that all Defendants, not just DCG, have raised or may raise here, including assignment, standing, and the effect of the Jefferies transaction. See, e.g., Defendants' memoranda in support of their motions to dismiss the First Amended Complaint, ECF Nos. 37, 38.

15.     The Jefferies contract and related communications are not collateral details. They bear on what rights were transferred, what rights were not transferred, who may assert which claims, and whether additional parties or claims should be included in the second amended complaint. A pleading filed before those issues are clarified may be materially different from the pleading that should be filed after meaningful clarification in the AP, whether through discovery, motion practice, or ruling.

16.     The issues related to the Jefferies contract also bear directly on Plaintiffs' ability to obtain and use counsel. In the rejected proposed second amended complaint, Plaintiffs alleged that the Jefferies contract's unusual and

ambiguous language would create a costly threshold battle over contract interpretation, even if Jefferies ultimately could not enforce that language, and that attorneys aware of the expense and duration of such a fight would likely be unwilling to represent Plaintiffs. See proposed second amended complaint, ECF No. 60-1 ¶ 474. If discovery in the AP clarifies whether the Jefferies contract was structured or used to create litigation uncertainty, chill counsel, or generate threshold standing disputes, that discovery may materially affect both the substance of the second amended complaint and Plaintiffs' practical ability to file a disciplined, counsel-informed complaint here.

17.    DCG also cannot fairly claim that the existence of the AP makes this request improper. DCG itself filed that proceeding and asked the Bankruptcy Court to restrain Plaintiffs' Pennsylvania action. AP, ECF Nos. 1, 2, 4. Having placed those threshold issues before another federal court, DCG cannot plausibly claim undue prejudice from allowing a fixed, date-certain period for those same issues to inform Plaintiffs' amended pleading here.

### C   The Requested Relief Is a Fixed, Date-Certain Deadline, Not an Open-Ended Stay

18.    Plaintiffs deliberately request a date certain: November 19, 2026. They do not ask this Court to wait until discovery in the AP is completed, and they

do not ask to extend the stay. This structure gives the Court control over its docket while avoiding premature amendment practice.

19.    This structure preserves flexibility without requiring the Court to wait indefinitely. If discovery or a ruling in the AP clarifies the threshold issues sooner, Plaintiffs may file sooner. If the AP remains inactive, is dismissed, or does not produce useful clarification, Plaintiffs can still file by the outside deadline based on the then-existing record.

20.    This approach is more moderate than a stay and more efficient than forcing a pleading now. It also matches the caution in *Landis* that litigation delays should be reasonable in scope and duration. 299 U.S. at 255–56.

**D  Defendants Will Not Be Unfairly Prejudiced**

21.    Defendants will not suffer unfair prejudice from the requested extension. This case remains at the pleading stage. No Defendant has answered, no merits discovery has begun in this Court, and no trial date is threatened. Extending the amendment deadline changes no substantive right and does not prevent Defendants from moving against the second amended complaint once it is filed.

22.    Third Circuit amendment cases confirm that prejudice, not delay alone, is the central concern. *Arthur*, 434 F.3d at 204-05; *Dole v. Arco Chemical Co.*, 921 F.2d 484, 487–88 (3d Cir. 1990). *Dole* further explains that the need to

revise motion practice or conduct some additional work does not, without more, establish undue prejudice; the opposing party must show that its ability to present its case would be seriously impaired. 921 F.2d at 488. Defendants cannot make that showing here because the case has not advanced beyond the pleadings.

23.    Indeed, Defendants have already concurred in an extension through June 18, 2026. ECF No. 79, corrected by ECF No. 81. Plaintiffs recognize that Defendants have not concurred in the full six-month extension, but the existing concurrence confirms that extending the pleading deadline causes no inherent prejudice; the longer fixed, date-certain extension requested here is justified by the related AP, the centrality of the Jefferies contract, and the Court's Rule 8 concerns.

**E  At Minimum, the Court Should Grant the Consented Extension**

24.    If the Court is not inclined to grant the full six-month extension, Plaintiffs respectfully request that the Court at least grant the consented extension motion (ECF No. 79, as clarified by ECF No. 81) through June 18, 2026. That fallback relief is consistent with Rule 6(b)(1)(A), Defendants' concurrence, and the absence of prejudice. Plaintiffs submit, however, that the full fixed, date-certain extension is more efficient because it avoids serial extension motions and permits the second amended complaint to be drafted in a disciplined, Rule 8-compliant form.

## V    CONCLUSION

25.    For the foregoing reasons, Plaintiffs respectfully request that the Court extend the deadline to file the second amended complaint to November 19, 2026; deny as moot, if this motion is granted, Plaintiffs' earlier consented extension motion, ECF No. 79, as clarified by ECF No. 81; state that the March 6, 2026 stay is not extended and may expire according to its existing terms; permit Plaintiffs to file earlier if appropriate; and grant such other relief as the Court deems just and proper.

26.    In the alternative, Plaintiffs request that the Court at least grant the consented extension through June 18, 2026, ECF No. 79, as clarified by ECF No. 81.

Dated: May 5, 2026

Respectfully submitted,


/s/ Stephen H. Sokolowski
Stephen H. Sokolowski, Pro Se
3178 Carnegie Drive
State College, PA 16803
(814) 600-9800
steve@shoemakervillage.org

/s/ Christopher H. Sokolowski
Christopher H. Sokolowski, Pro Se
3178 Carnegie Drive
State College, PA 16803
(814) 600-9804
chris@shoemakervillage.org

12