UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

STEPHEN H. SOKOLOWSKI and
CHRISTOPHER H. SOKOLOWSKI,

Plaintiffs

- against -

DIGITAL CURRENCY GROUP, INC.,
BARRY E. SILBERT, and SOICHIRO
"MICHAEL" MORO,

Defendants.

Electronically Filed

Civil Action No. 4:25-cv-00001

Hon. Karoline Mehalchick
Hon. Martin C. Carlson

Complaint filed January 2, 2025

# DEFENDANTS' JOINT MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR EXTENSION OF TIME TO FILE <u>SECOND AMENDED COMPLAINT</u>

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017

MCCORMICK LAW FIRM
835 W 4th St, Williamsport, PA 17701

ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743

KLEHR HARRISON HARVEY
BRANZBURG LLP
1835 Market St., Suite 1400
Philadelphia, PA 19103

*Attorneys for Defendants Digital Currency Group, Inc.,*
*Barry E. Silbert, and Soichiro "Michael" Moro*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ..................................................................................................... 3

      A.     Plaintiffs and Their Investments .................................................................. 3

      B.     Plaintiffs Initiate this Action ...................................................................... 5

      C.     DCG Seeks to Enjoin Genesis Creditors from Pursuing Estate Claims ................. 6

      D.     Plaintiffs Seek Leave to File a Second Amended Complaint ............................... 8

      E.     The R&R Adopted by this Court ................................................................. 9

      F.     Plaintiffs' Public Statements About This Lawsuit .................................... 10

      G.     The Instant Extension Motion .................................................................. 11

ARGUMENT ......................................................................................................................... 13

    I.     Plaintiffs Cannot Establish Good Cause ........................................................ 13

    II.    The Adversary Proceeding Should Not Dictate the Course of this Action ................. 16

    III.   Defendants Will Be Unduly Prejudiced By a Further Extension ............................... 20

CONCLUSION ...................................................................................................................... 22

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Abreu v. Fairway Mkt. LLC*,
2018 WL 3579107 (S.D.N.Y. July 24, 2018) .................................................... 20

*In re Human Tissue Prods. Liab. Litig.*,
2009 WL 737048 (D.N.J. Mar. 18, 2009) ......................................................... 16

*LabMD, Inc. v. Tiversa Holding Corp.*,
2019 WL3081659 (W.D. Pa. July 15, 2019) .................................................... 17

*MCI Telecomms. Corp. v. Teleconcepts, Inc.*,
71 F.3d 1086 (3d Cir. 1995) ...................................................................... 13, 14

*Pilchesky v. Lackawanna Cnty.*,
2018 WL 2248749 (M.D. Pa. Feb. 22, 2018) ............................................. 16, 21

*Sharifi v. Twp. of E. Windsor*,
2023 WL 8595562 (3d Cir. Dec. 12, 2023) ................................................ 13, 14

*Tigue v. Com. Life Ins. Co.*,
631 N.Y.S.2d 974 (N.Y. App. Div. 1995) ........................................................ 19

## STATUTES & RULES

Fed. R. Civ. P. 1 .............................................................................................. 9, 14
Fed. R. Civ. P. 6 ................................................................................................... 13
Fed. R. Civ. P. 8 ......................................................................................... 9-10, 14
Fed. R. Civ. P. 11 ................................................................................................ 18

Defendants Digital Currency Group, Inc. ("DCG"), Barry Silbert, and Soichiro "Michael" Moro respectfully submit this memorandum of law in opposition to Plaintiffs' Second Motion for Extension of Time to File Second Amended Complaint (the "Extension Motion") (ECF 82).

## PRELIMINARY STATEMENT

For over 16 months, Plaintiffs have repeatedly prevented this Court from adjudicating the legal sufficiency of their meritless pleadings. In response to two separate rounds of motions to dismiss—representing substantial outlays of Defendants' time, money, and resources—Plaintiffs have amended (or sought to amend) their complaint, mooting Defendants' pending motions and wasting all the work that went into them. As Magistrate Judge Carlson determined, Plaintiffs' amendments have not clarified their claims; instead, they have made Plaintiffs' complaint ever more prolix and meandering, threatening to drive this lawsuit into "disarray" and "impending legal chaos." (ECF 72 at 1, 5.)

Meanwhile, Plaintiffs' conspiratorial assertions about Defendants have grown increasingly scurrilous and divorced from reality. In a recent blog post, Plaintiff Stephen Sokolowski claims that for the last nine years, President Trump has masterminded a conspiracy to unmask him as Satoshi (the pseudonymous creator of Bitcoin), bankrupt him, and forcibly transfer control of the bitcoin network from Plaintiffs to Chinese bitcoin miners and "Wall Street allies." (Ex. 11 at 1-2.)

Defendants DCG and Mr. Silbert are supposedly "contractors" hired by the President to attack Plaintiffs and their now-defunct business Prohashing, LLC ("Prohashing"). (*Id.* at 2-4.)  Plaintiffs have simultaneously touted on social media their plans to use this case to "destroy[]" DCG and Mr. Silbert.  (Ex. 8.)

In granting Plaintiffs' motion for a stay and granting in part their motion to amend, this Court recognized that this case needs to move forward in an orderly way. The Court stayed the case for sixty days until May 5, 2026 for Plaintiffs to retain counsel to prepare a complaint that complies with the Federal Rules of Civil Procedure.  Nonetheless, this Court emphasized that even if they were unable to obtain counsel, "Plaintiffs *must* file a *pro se* second amended complaint on or before Tuesday, May 19, 2026."  (ECF 78 at 3-4.[1])

Now, just a week after representing to the Court and to Defendants that they needed only 30 more days to retain counsel to file a second amended complaint and would not seek any further extensions, Plaintiffs have done a complete one-eighty. They ask the Court to freeze this case for six more months while they pursue discovery about a contract *they signed* and to which *their company*—but not Defendants—*is a party* in a separate action in New York.  Such discovery is unnecessary because Plaintiffs, unsurprisingly, already have this contract, and even

---

[1] Unless otherwise noted, all emphases are added.

2

filed it in *this* Court. They further omit that the New York case cannot even proceed until they file an operative complaint *here*. Tellingly, they offer no explanation for why they need discovery about a contract they negotiated and signed—let alone any justification for why they cannot file a second amended complaint in *this* case by May 19 as the Court directed months ago. In short, Plaintiffs' gambit to take discovery in New York is a transparently improper fishing expedition to try to find evidence they either already have or does not exist. Allowing them more time to pursue such discovery will do nothing but sow delay and confusion as this case sinks deeper into the realm of fantasy.

After 16 months, enough is enough. Defendants are entitled to an opportunity to challenge Plaintiffs' vicious and untrue public statements against them in a court of law. Plaintiffs do not need more time or evidence; they either have viable claims or they do not. The Court should deny the Extension Motion and enforce its May 19 deadline for filing a second amended complaint.

## FACTUAL BACKGROUND

### A.    Plaintiffs and Their Investments

Plaintiff Stephen Sokolowski created Cryptocurrency Management LLC ("CM") to aggregate and invest digital assets and funds on behalf of Plaintiffs, their business (Prohashing), and others. (First Am. Compl. ("FAC") (ECF 22) ¶¶ 41, 48.) CM loaned cryptocurrency to Genesis Global Capital, LLC ("Genesis"), which was

3

in the business of borrowing and lending cash and cryptocurrency to and from high-net-worth counterparties. (*Id.* ¶¶ 8, 41, 48.) During unprecedented market turmoil in November 2022, Genesis faced a "run on the bank" and suspended withdrawals; it filed for bankruptcy in January 2023. (*Id.* ¶¶ 6, 127.)

Genesis did not repay CM's still-outstanding loans before suspending withdrawals. (*Id.* ¶ 155.) Rather than pursue bankruptcy claims, and to obtain immediate liquidity, Plaintiff Stephen Sokolowski caused CM to "unconditionally and irrevocably" sell all "right, title, interest, claims and causes of action in and to, or arising under or in connection with" its loans to Genesis to Jefferies Leveraged Credit Products LLC for $1 million. (ECF 17-2; *see also* ECF 22 ¶ 131.) Plaintiffs filed their agreement with Jefferies as an exhibit to their now-rejected proposed second amended complaint ("Proposed SAC"). (ECF 60-2, Ex. N to Ex. 2 at 315-32.) The agreement confirms that the transferred claims include all claims arising in any way from the unpaid loans to Genesis, including any claims against Genesis affiliates and control persons (as Defendants here allegedly are).[2] A Notice of Transfer of Claim, executed by Mr. Sokolowski, was filed in the Genesis bankruptcy

---

[2] *See id.* at 317 (transferring, *inter alia*, "all other claims . . . including any suits, causes of action and any other right of Seller against . . . any other entity that in any way is based on or arises out of the Assigned Claim" and any case against "any other third parties," including "'controlling persons' . . . relating to Genesis and/or Seller's accounts, investments, property . . . or trading activities.").

case to apprise the debtors and the bankruptcy court of this transfer, and was submitted by DCG and Mr. Silbert here as an exhibit to their motions to dismiss. (ECF 17-2.)

### B.    Plaintiffs Initiate this Action

Plaintiffs commenced this action on January 2, 2025.  (ECF 1.)  Their initial complaint (the "Complaint"), drafted by artificial intelligence, alleged a single violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") against DCG (Genesis's indirect parent), Mr. Silbert (DCG's CEO), and Mr. Moro (Genesis's former CEO).  (*Id.* ¶¶ 98-111.)  Plaintiffs alleged that nonparty Genesis induced nonparty CM to loan it digital assets based on a Genesis-created balance sheet that allegedly inflated certain asset values.  (*Id.* ¶¶ 57-69.)

Defendants moved to dismiss in March 2025.  (ECF 9, 17, 19.)  Just a week later, Plaintiffs filed the FAC.  As Magistrate Judge Carlson observed, the FAC, also drafted by AI, "expanded [Plaintiffs'] initial *pro se* pleading by some 347%" but ultimately alleged the same claim set forth in the original Complaint.  (ECF 22; ECF 72 at 2.)  Defendants again moved to dismiss, and their motions were fully briefed by July 1, 2025.  (ECF 24-25, 37-38, 44, 52-53.)[3]

---

[3] During briefing, Plaintiffs improperly filed a duplicative "protective" action in the U.S. District Court for the District of Connecticut (the "Connecticut Action"), which has since been stayed.  (*See* ECF 45, 57.)

## C.    DCG Seeks to Enjoin Genesis Creditors from Pursuing Estate Claims

In July 2025, DCG initiated an adversary proceeding (accompanied by a preliminary injunction motion) in the U.S. Bankruptcy Court for the Southern District of New York—where Genesis's bankruptcy case is proceeding—captioned *Digital Currency Group, Inc. v. Falco*, Adv. Proc. No. 25-01111 (Bankr. S.D.N.Y.) (the "Adversary Proceeding"). The Adversary Proceeding sought to enjoin Plaintiffs and Vincent Falco, a Genesis creditor, from prosecuting claims alleging that DCG caused Genesis's failure to repay its creditors or seeking to pierce the corporate veil between Genesis and DCG, on the grounds that such claims are the exclusive property of the Genesis bankruptcy estate. (*See* Ex. 1; Ex. 2.) DCG accordingly sought to enjoin this action, the Connecticut Action, and Mr. Falco's materially similar suit. (*See generally id.*)[4] The Adversary Proceeding does not address the issues Defendants raised in *this* case, including whether Plaintiffs have pled any viable claim under the UTPCPL, whether Plaintiffs' claims actually accrued to CM, and whether CM assigned those claims to Jefferies. Jefferies is not a party to the Adversary Proceeding. And the Adversary Proceeding is not remotely connected to Plaintiffs' theory that they are the targets of a presidential conspiracy.

---

[4] Mr. Falco subsequently voluntarily dismissed his suit.

On August 15, 2025, Plaintiffs served an answer and counterclaims against DCG and Genesis in the Adversary Proceeding. (Ex. 3.) Plaintiffs sought a declaratory judgment that the FAC's UTPCPL claim is not estate property. (*Id.* ¶ 38.) Plaintiffs also opposed DCG's preliminary injunction application, asserting a bizarre and unintelligible purported conspiracy among DCG, the Genesis estate, Mr. Falco, all of their counsel, and nonparty United Brands and Marketing International S.à.r.l—a customer of Prohashing that has no connection to this case or Genesis's bankruptcy, but which sued Prohashing on entirely unrelated grounds. (Ex. 4; Ex. 5.)

In January 2026, after Magistrate Judge Carlson filed his report and recommendation to deny the pending motions to dismiss in this action as moot and allow Plaintiffs to once again amend their complaint, Plaintiffs reached out to counsel for DCG and Genesis, proposing that all parties dismiss their claims in the Adversary Proceeding without prejudice because there was "no operative complaint to enjoin." (Ex. 6.) DCG instead requested—without opposition from Genesis— that the Bankruptcy Court adjourn any hearing on the preliminary injunction motion without date, pending Plaintiffs' filing of an amended complaint here. (Ex. 7.) This request was approved. (*Id.*)

7

**D.    Plaintiffs Seek Leave to File a Second Amended Complaint**

On January 2, 2026—one year after Plaintiffs filed their Complaint and over six months after Defendants' motions to dismiss were fully briefed—Plaintiffs moved for leave to further amend their complaint, appending the Proposed SAC. (ECF 60.)   As Magistrate Judge Carlson determined, the Proposed SAC had "metastasize[d]" to "a staggering 946 pages in length and contain[ed] more than 720 numbered paragraphs"—876% longer than the initial complaint.  (ECF 72 at 3.)

The Proposed SAC asserted the same UTPCPL claim based on CM's loans to Genesis (ECF 60-1 ¶¶ 281-401), but added hundreds of pages asserting bizarre and far-fetched RICO claims and allegations against DCG, Mr. Silbert, Mr. Moro, and a host of new defendants.  Chief among them, Plaintiffs sought to add allegations that Defendants engaged in a years-long conspiracy—with the help of countless unidentified individuals and Chinese hackers—to sabotage and/or steal from Plaintiffs and Prohashing, which Plaintiffs sought to add as a new plaintiff.  (*Id.* ¶¶ 169-280.)  The sole "fact" Plaintiffs cited as proof of this alleged scheme is what they called the "Digital Gold Logs," a supposed secret cipher that Plaintiffs claim to have discovered in Prohashing's computer code logs and then partially deciphered. But even a cursory read of the Proposed SAC reveals that it is, at best, a figment of Plaintiffs' imagination.  (*Id.* ¶¶ 230-250.)  Plaintiffs concurrently sought a 30-day

8

stay (and then a 90-day stay) of this action so that they could retain counsel to represent Prohashing, which cannot proceed *pro se*.  (ECF 61, 63.)

### E.    The R&R Adopted by this Court

On January 27, 2026, Magistrate Judge Carlson issued a report and recommendation (the "R&R") to grant Plaintiffs' motion to stay, deny Defendants' motions to dismiss as moot, grant Plaintiffs leave to file a second amended complaint, but reject the proposed SAC for violating Federal Rule of Civil Procedure 8's mandate to present "a short and plain statement of the claim showing that the pleader is entitled to relief."  (ECF 72 at 8-10 (quoting Fed. R. Civ. P. 8(a)).)  Judge Carlson expressed concerns that Plaintiffs had "followed a course which has expanded this pleading exponentially" (*id.* at 3-4), and that continuing on such a course would be "antithetical" to Federal Rule of Civil Procedure 1 by "ensur[ing] that the determination of this action will be slow, painful and expensive for all concerned."  (*Id.* at 5.)  To prevent this case from "spiraling out of control," and to "instill order, coherence and a sense of proportion to this litigation," Judge Carlson recommended that Plaintiffs be granted a stay to find counsel, "*provided that* the Court instructs the *pro se* plaintiffs that if they are unable to retain counsel within the time allotted by the Court it will remain their obligation to file an amended complaint which complies with Rule 8."  (*Id.* at 4-5, 13.)

This Court "agree[d] with the sound reasoning" in Judge Carlson's R&R and adopted it fully. (ECF 78 at 3.) As relevant, the Court "**DIRECTED**" Plaintiffs to file a second amended complaint but rejected the Proposed SAC. (*Id.*) The Court further granted Plaintiffs a 60-day stay until May 5, 2026 "for Plaintiffs to retain counsel," but ordered that "[i]f [they] are unable to retain counsel by or before Tuesday, May 5, 2026, Plaintiffs *must file* a *pro se* second amended complaint on or before Tuesday, May 19, 2026." (*Id.* at 3-4.)

## F.      Plaintiffs' Public Statements About This Lawsuit

From the outset of this case, Plaintiffs have actively posted about it on social media. (*See, e.g.*, ECF 17 at 11-12 n.9.) Since filing the Proposed SAC, their posts have become threatening. For example, on January 27, 2026, Stephen Sokolowski posted that "we are . . . 100% committed to destroying DCG and Silbert." (Ex. 8.) On February 27, 2026, he publicly unveiled his "plan to fix cryptocurrency in 3 steps," the first of which was to "[s]ue the Enterprise, its enabling banks, and its lawyers and law firms into oblivion [and] hire honest people to run DCG's businesses." (Ex. 9.) On March 21, 2026, he wrote that he was "all-in" on this case and therefore would empty out his trading account to hire a lawyer to ensure that "Silbert is going down." (Ex. 10.)

Most recently, on April 26, 2026, Mr. Sokolowski published a blog post and video manifesto in which he previewed additional allegations against DCG and Mr.

10

Silbert. (Ex. 11.)  Among many other things, Mr. Sokolowski claims that he was recognized by "[t]he world's intelligence agencies" as Satoshi Nakamoto (Bitcoin's pseudonymous creator), and that, since 2017, President Trump has orchestrated a "scheme to intimidate and bankrupt" him, which includes operating a "surveillance network" that monitors his "friends, family, relatives, and all of the current and future employees of PROHASHING." (*Id.*)  He asserts that President Trump bears a "grudge" against him and has "handed control of bitcoin to Chinese miners, enriched his Wall Street allies, and ruined the lives of millions of Americans as collateral damage." (*Id.*)  Mr. Sokolowski also claims President Trump retained DCG and Mr. Silbert as government contractors to facilitate his scheme and issued an executive order directing them to attack Prohashing. (*Id.*)  The purported "Digital Gold" scheme (from the rejected Proposed SAC) also makes a reappearance. (*Id.*)

### G.    The Instant Extension Motion

On April 26, 2026, Plaintiffs moved, with Defendants' consent, to extend all deadlines in this case by 30 days, so that potential legal counsel could complete his review of a draft complaint, for which he required additional time. (ECF 79.)  In obtaining Defendants' consent, Plaintiffs expressly agreed they would not seek any further extensions. (ECF 80-1; ECF 81 ¶ 1.)  When Plaintiffs filed their extension motion, however, they omitted this condition. (ECF 79.)  Accordingly, DCG and

Mr. Silbert responded to Plaintiffs' motion to state this condition, which Plaintiffs then confirmed to the Court.  (ECF 80, 81.)

One week later, on May 5, 2026, Plaintiffs reneged on their promise and filed this Extension Motion.  They now ask the Court to extend by six months their deadline to file a new complaint.  (ECF 83.)[5]  Plaintiffs acknowledged that their potential counsel had already completed reviewing the draft complaint (ECF 82), so the ostensible reason why they requested an extension in the first place was moot.  Instead, Plaintiffs state that, during their proposed six-month extension, they will seek discovery in the Adversary Proceeding in hopes of obtaining evidence to support the claims they first filed 16 months ago.  (ECF 82, 83.)  Plaintiffs' sole articulated basis for seeking this extension is that "[c]ircumstances have materially changed," by which they appear to mean that their legal strategy has changed and they "have elected to retain counsel in New York to defend Digital Currency Group, Inc.'s adversary proceeding" instead of moving forward with this litigation.  (ECF 82 ¶ 3.)

---

[5] On May 6, 2026, Plaintiffs withdrew their motion for a 30-day extension. (ECF 84.)

## ARGUMENT

Plaintiffs' Extension Motion is baseless. It flouts this Court's order requiring Plaintiffs to file a rules-compliant complaint by May 19, 2026 and violates their agreement not to seek further extensions. It should be denied.

## I.    Plaintiffs Cannot Establish Good Cause

Plaintiffs' Extension Motion fails to identify any good cause for a six-month extension. "Good cause" under Rule 6(b) is equivalent to "excusable neglect," and "requires 'a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.'" *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995) (citation omitted); *see also* Fed. R. Civ. P. 6(b)(1) (permitting extension of certain deadlines only "for good cause"). Where a plaintiff—even a *pro se* plaintiff—"provide[s] no explanation for her failure to meet the District Court's deadline" for filing an amended complaint, there is no abuse of discretion in denying her extension motion. *Sharifi v. Twp. of E. Windsor*, 2023 WL 8595562, at *2 & n.2 (3d Cir. Dec. 12, 2023) (per curiam) (rejecting as good cause *pro se* plaintiff's "well being" and upcoming jury service absent any explanation for why she did not comply with the Court's deadline).

Here, Plaintiffs offer no explanation for why they cannot file a second amended complaint by the Court-ordered May 19, 2026 deadline. Both the R&R

13

and the Court's Order adopting it were clear:  Plaintiffs were given 60 days until May 5, 2026 to secure counsel and, if they did not, were "**DIRECTED**" to file a rules-compliant second amended complaint *pro se* by May 19, 2026.  (ECF 78 at 3.) The Court adopted this framework based on a pattern of repeated amended pleadings that made Plaintiffs' claims longer and less intelligible without shedding light on the viability of their claims.  (*See* ECF 72 at 3-4.)  Granting Plaintiffs a generous extension *at that time* to enable them to secure counsel who might impose order on their unwieldy pleading thus served not only the aims of Rule 8—to provide a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2)—but also the goals of Rule 1—"the just, *speedy*, and inexpensive determination of" the action.  Fed. Civ. P. 1.  But, by the same token, granting Plaintiffs six more months *now* to seek abusive discovery—which they either already have (*see infra* at 18-19) or through which they may try to harass Defendants and nonparties in the name of finding support for their outlandish claims of persecution—would be "antithetical" to these goals.  (*See* ECF 72 at 5.)

Because Plaintiffs suggest no "reasonable basis" for why they cannot file a *pro se* amended complaint by May 19, 2026, *see MCI Telecomms.*, 71 F.3d at 1097, their rationales for seeking more time are irrelevant.  *See Sharifi*, 2023 WL 8595562, at *2 & n.2.  But, even if the Court were inclined to consider them, those reasons fall well below the standard of "good cause."

14

Again, Plaintiffs' original rationale for seeking a shorter, 30-day extension—to enable counsel to review a draft second amended complaint—is moot, as Plaintiffs have acknowledged that counsel already completed his review.  (ECF 82 ¶ 3.) Tellingly, Plaintiffs—still proceeding *pro se*—do not represent that counsel agreed to take this case, and no appearance has been filed.  Moreover, Plaintiffs represented to both Defendants and the Court that they did not need more than 30 days to retain counsel and file an amended complaint and would not seek any further extensions. Absent something truly momentous, there can be no justification for Plaintiffs' sudden about-face to claim that they now need six more months.

The Extension Motion offers nothing of the sort.  It attempts to justify Plaintiffs' reneging on their agreement solely through the conclusory statement that "[c]ircumstances have materially changed since the Court's March 6 Order" and their previous extension request. (ECF 82 at 2.)  But the only changed circumstance identified is that on April 26, Plaintiffs wanted to pursue this action, but that by May 5, they had changed their minds and "elect[ed] to retain counsel in New York to defend" the Adversary Proceeding instead.  Their unilateral shift in strategy is not good cause to string both Defendants and the Court along for another six months while Plaintiffs decide whether they actually have a basis or desire to litigate this action.  Indeed, if a party's change of heart constituted good cause, then no extension request could ever be denied.  Rather, the history of this litigation demonstrates that

15

Plaintiffs should be held to the Court's deadline for filing a second amended complaint. *See Pilchesky v. Lackawanna Cnty.*, 2018 WL 2248749, at *14 (M.D. Pa. Feb. 22, 2018) ("a pattern of serial delays, inspired by serial amendments of th[e] complaint" constitutes "undue delay").

## II.    The Adversary Proceeding Should Not Dictate the Course of this Action

Plaintiffs' new strategy of litigating the Adversary Proceeding to obtain evidence for use in this action does not merit an extension because (1) the Adversary Proceeding is not an appropriate vehicle for that and (2) Plaintiffs already have any evidence they claim to need, or else such evidence plainly does not exist.

*First*, the Adversary Proceeding is not an appropriate forum to seek discovery for use in *this case*. DCG filed the Adversary Proceeding because Plaintiffs' prior complaints in this action asserted derivative claims that are property of the Genesis bankruptcy estate and can be pursued only by Genesis. (Ex. 1 ¶ 24.) Plaintiffs' counterclaim sought a declaration that the claims asserted in their prior complaints were *not* estate property. (Ex. 3 ¶¶ 36-38.) But there currently is no operative complaint in this case, so it is impossible for the bankruptcy court to determine whether any claims Plaintiffs *might* one day assert here should be enjoined. Indeed, any ruling by the bankruptcy court in the absence of a complaint would be nothing more than an impermissible advisory opinion. *See, e.g.*, *In re Human Tissue Prods. Liab. Litig.*, 2009 WL 737048, at *8 (D.N.J. Mar. 18, 2009) (order on issue for which

16

"there are no complaints pending … would be an advisory opinion on hypothetical cases"). This is precisely why *Plaintiffs themselves* proposed dismissing all claims in the Adversary Proceeding in January 2026, and why DCG requested—and the bankruptcy court granted—an adjournment of its preliminary injunction motion without date pending Plaintiffs' filing a second amended complaint here. (Ex. 7.)

Plaintiffs' course reversal is an admission that they are not seeking discovery in the Adversary Proceeding for any proper purpose in litigating that action. Instead, they are seeking discovery in New York as part of a fishing expedition to support their claims in *this* case. That approach is improper. *See, e.g.*, *LabMD, Inc. v. Tiversa Holding Corp.*, 2019 WL3081659, at *7 (W.D. Pa. July 15, 2019) (discovery on topics that are "not the subject of this case" cannot "be used as a fishing expedition for other cases").

In fact, no discovery is conceivably necessary in the Adversary Proceeding. The only question before the bankruptcy court is whether whatever claims Plaintiffs may ultimately assert here and in Connecticut belong to Genesis's estate, a purely legal issue that can be determined from the face of Plaintiffs' second amended complaint, if and when they file it. Plaintiffs' proposed discovery concerning their decision to assign CM's claims to Jefferies has no bearing on this issue. (ECF 83 ¶ 16.) Nor is Jefferies even a party to the Adversary Proceeding, begging the

17

question of why Plaintiffs believe it will be an effective vehicle to obtain the irrelevant discovery they claim to seek.

*Second*, the discovery Plaintiffs supposedly will seek underscores the lack of good cause for their Extension Motion. Plaintiffs claim that, before filing a second amended complaint, they must obtain documents and communications concerning the scope of CM's assignment to Jefferies. (ECF 83 ¶¶ 6, 14-16.) Not so.

To start, Plaintiffs knew about the Jefferies agreement and Notice of Transfer when they filed their Complaint 16 months ago, even alleging it in their pleading. (ECF 1 ¶ 93.) Plaintiffs signed their initial complaint pursuant to Rule 11, representing that its "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). If Plaintiffs had "evidentiary support" for their contentions about the agreement then, they do not need discovery about it now. In any event, the import of the Jefferies agreement and Notice of Transfer to the parties' arguments has long been known—DCG and Mr. Silbert relied on the sale and assignment of the claim at issue to Jefferies as a basis for moving to dismiss Plaintiffs' original Complaint over a year ago in March 2025. (ECF 16 at 13-14.) The import of that sale—which divested Plaintiffs of any possible standing—is not a "change in circumstances" between April 27 and May 5, *2026*.

CM, moreover, is Plaintiffs' own company. Stephen Sokolowski signed the Jefferies agreement and Notice of Transfer, both of which have been publicly filed

in this case.  (ECF 37-2; ECF 60-2, Ex. N to Ex. 2, at 316-332.)  Under New York law, which governs both agreements, the words of the contracts control.  *See, e.g.*, *Tigue v. Com. Life Ins. Co.*, 631 N.Y.S.2d 974, 975 (N.Y. App. Div. 1995) ("[T]he court must ascertain the intent of the parties from the plain meaning of the language employed.").  Plaintiffs therefore have the relevant evidence in their possession.  It defies logic for Plaintiffs to argue that they need discovery in the Adversary Proceeding to obtain evidence related to a contract they already have, which documents a transaction they negotiated and executed, and to which no other party to the Adversary Proceeding is a party.

Plaintiffs further assert that they must take discovery because "the Jefferies contract's unusual and ambiguous language would create a costly threshold battle over contract interpretation," because they posit that the contract may have been "structured or used to create litigation uncertainty, chill counsel, or generate threshold standing disputes."  (ECF 83 at ¶ 16.)  This argument is unavailing, because this Court is plainly in the best position to decide whether this contract bars Plaintiffs' claims *in this action*—an issue that Defendants have already briefed twice.  Plaintiffs offer no explanation why it would even be appropriate for the bankruptcy court to resolve that issue, especially because DCG did not raise this issue there.  Moreover, any discovery beyond the documents Plaintiffs already have—the contract itself and communications to which Plaintiffs are party—is not

19

warranted, because parties' "subjective knowledge as to the meaning of the agreement . . . is irrelevant." *Abreu v. Fairway Mkt. LLC*, 2018 WL 3579107, at \*2 (S.D.N.Y. July 24, 2018).

And if Plaintiffs intend to seek discovery of the fanciful conspiracy against them, that too provides no basis to extend their deadline for filing a second amended complaint. In litigation, a plaintiff must *first* file a proper complaint and, if the complaint survives, discovery follows. Not the other way around. The notion that evidence might exist to support such facially implausible claims—let alone that such evidence could be developed through the wholly unrelated Adversary Proceeding— is also unmoored from reality. Plaintiffs should not be given more time to fabricate additional falsehoods in their quixotic quest to "destroy[]" DCG and Mr. Silbert and sue their lawyers "into oblivion" in the name of improving cryptocurrency. (Ex. 8; Ex. 9.)

## III.    Defendants Will Be Unduly Prejudiced By a Further Extension

Plaintiffs' failure to demonstrate good cause for their requested extension is compounded by the significant prejudice that would ensue if their motion were granted.

It is patently unfair to both the Court and Defendants for Plaintiffs to seek repeated extensions of their deadlines. This case remains stuck at the pleading stage on the Court's docket because Plaintiffs either refuse or are unable to commit to any

theory of liability.  Plaintiffs assert that a six-month, additional extension will not prejudice Defendants because it "does not prevent [them] from moving against the second amended complaint once it is filed."  (ECF 83 ¶ 21.)  But Plaintiffs ignore that their procedural gamesmanship "has forced the defendants to twice file potentially dispositive motions"—at great expense—"only to see [Plaintiffs] attempt to frustrate resolution of these motions through the expedient of filing another amended complaint."  *Pilchesky*, 2018 WL 2248749, at *14.  Defendants therefore have not had the opportunity to address Plaintiffs' scurrilous allegations before the Court.  Rather, Plaintiffs' prior amendments of their complaint and motion for a stay have delayed a judicial determination of whether Plaintiffs have stated any legally valid claim.  *See id.* (denying leave to file third amended complaint where the case had "been pending for more than a year without a threshold assessment of the legal merits of [the plaintiff's] claims").

Defendants would face further prejudice.  In their social media posts, Plaintiffs continue to disparage DCG and Mr. Silbert, pledging to "destroy" them on multiple occasions.  (*See* Ex. 8; Ex. 12.)  Defendants should not have to sit idly by for six more months while Plaintiffs continue to falsely attack them.

In short, Plaintiffs' Extension Motion is a last-ditch effort to avoid complying with the Court's order that they must file a rules-compliant complaint by May 19, 2026.  The Court should reject this gamesmanship and enforce its order.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Extension Motion.

Dated:  New York, New York
May 14, 2026

Respectfully submitted,

**DAVIS POLK & WARDWELL LLP**

*/s/ Benjamin S. Kaminetzky*
Benjamin S. Kaminetzky (*admitted pro hac vice*)
Daniel J. Schwartz (*admitted pro hac vice*)
Matthew R. Brock (*admitted pro hac vice*)
450 Lexington Avenue
New York, New York 10017
Telephone:   (212) 450-4000
Facsimile:    (212) 701-5800
ben.kaminetzky@davispolk.com
daniel.schwartz @davispolk.com
matthew.brock@davispolk.com

 – and –

 **McCORMICK LAW FIRM**

*/s/ Austin White*
Austin White
PA312789
835 West Fourth Street
Williamsport, PA 17701
Telephone:   (570) 326-5131
Facsimile:    (570) 326-5529
awhite@mcclaw.com

*Attorneys for Defendants Digital Currency Group, Inc. and Barry E. Silbert*

23

**ARNOLD & PORTER KAYE SCHOLER LLP**

*/s/ Christian D. H. Schultz*
Christian D. H. Schultz (*pro hac vice*)
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone +1 202.942.5000
Fax: +1 202.942.5999

Yiqing Shi (*pro hac vice*)
250 West 55th Street
New York, NY 10019-9710
Telephone: +1 212.836.8000
Fax: +1 212.836.8689

**KLEHR HARRISON HARVEY BRANZBURG LLP**
Joshua M. Link
1835 Market St., Suite 1400
Philadelphia, PA 19103
Telephone: +1 215.569.3003
Fax +1 215.568.6603

*Attorneys for Defendant Michael Moro*

24

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN H. SOKOLOWSKI and CHRISTOPHER H. SOKOLOWSKI,<br><br>                              Plaintiffs<br><br>        - against -<br><br>DIGITAL CURRENCY GROUP, INC., BARRY E. SILBERT, and SOICHIRO "MICHAEL" MORO,<br><br>                              Defendants. | Electronically Filed<br><br>Civil Action No. 4:25-cv-00001<br><br>Hon. Karoline Mehalchick<br><br>Complaint filed January 2, 2025 |

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.8

This brief complies with L.R. 7.8(b)(2) because it has fewer than 15 pages and contains 4958 words using the word count features of Microsoft Word in 14-point font size and Times New Roman Type Style.

DAVIS POLK & WARDWELL LLP

By: */s/ Benjamin S. Kaminetzky*
Benjamin S. Kaminetzky (*admitted pro hac vice*)
450 Lexington Avenue
New York, New York 10017
Telephone:   (212) 450-4000
Facsimile:   (212) 701-5800
ben.kaminetzky@davispolk.com
*Attorneys for Defendants Digital Currency Group, Inc. and Barry E. Silbert*

25

# CERTIFICATE OF SERVICE

I hereby certify that the attached Defendants' Joint Memorandum of Law in Opposition to Plaintiffs' Second Motion for Extension of Time to File Second Amended Complaint was electronically filed with the Court and electronically served upon all counsel on May 14, 2026.

DAVIS POLK & WARDWELL LLP

By: */s/ Benjamin S. Kaminetzky*
Benjamin S. Kaminetzky (*admitted pro hac vice*)
450 Lexington Avenue
New York, New York 10017
Telephone:   (212) 450-4000
Facsimile:    (212) 701-5800
ben.kaminetzky@davispolk.com

*Attorney for Defendants Digital Currency Group, Inc. and Barry E. Silbert*

26