# EXHIBIT 3

**Exhibit 3**

STEPHEN H. SOKOLOWSKI
3178 Carnegie Dr
State College, PA 16803
Telephone: 814-600-9800
Email: steve@shoemakervillage.org
*Pro Se Defendant*

CHRISTOPHER H. SOKOLOWSKI
3178 Carnegie Dr
State College, PA 16803
Telephone: 814-600-9804
Email: chris@shoemakervillage.org
*Pro Se Defendant*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>Genesis Global Holdco, LLC, et al.,<br><br>Debtors[1] | Case No. 23-10063 (SHL) |
| DIGITAL CURRENCY GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN H. SOKOLOWSKI,<br>CHRISTOPHER H. SOKOLOWSKI,<br>GENESIS GLOBAL HOLDCO, LLC,<br>GENESIS GLOBAL CAPITAL, LLC, AND<br>GENESIS ASIA PACIFIC PTE. LTD.<br><br>Defendants. | Adversary Proceeding No.<br>25-01111 (SHL) |

**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND**
**REQUEST FOR CASE MANAGEMENT ORDER**

---

[1] The Wind-Down Debtors in these cases, along with the last four digits of each Wind-Down Debtor's registration number in the applicable jurisdiction, are as follows: Genesis Global Holdco, LLC (8219), Genesis Global Capital, LLC (8564), and Genesis Asia Pacific Pte. Ltd. (2164R)

## I.      PRELIMINARY STATEMENT

1.      Stephen H. Sokolowski and Christopher H. Sokolowski (together, the "Sokolowskis" or "Defendants") did not start this adversary proceeding, but they are ensuring that it will finish on the merits.

2.      On August 13, 2025, The Wind-Down Debtors (the "Debtors") filed their reply brief (Main Case, ECF No. 2217, hereafter the "Debtors' Reply") to their *Debtors Motion to Enforce the Plan Against Digital Currency Group, Inc.* (Main Case, ECF No, 2180, hereafter the "Debtors' Motion"). With the posting of the Debtors' Reply, it became clear that the instant Adversary Proceeding resulted from previously undisclosed E-Mails between public enemies Digital Currency Group, Inc. ("DCG") and the Debtors.

3.      During the exact same time they were publicly engaged in a bitter rivalry over billions of dollars in multiple courts in Delaware, both entities admit in their own briefs (the Debtors' Motion, the Debtors' Reply, and DCG's opposition to the Debtors' Motion (Main Case, ECF No, 2213)) that they, under the supervision of the Debtors' Litigation Oversight Committee ("LOC"), were privately holding confidential discussions about supporting each other in the instant Adversary Proceeding which attempts to enjoin the Sokolowskis, stating that they were "aligned on the requested relief." Debtors' Reply, n.7. Once the Adversary Proceeding was actually filed, the Debtors then pivoted, posting a technical motion to "undo" what had either been previously agreed upon or which had been allowed to proceed, changing their position to that they "see no need to take action now." Debtors' Motion, at 2. Fairness dictates that both parties *must not* be allowed to voluntarily dismiss their mistake now that their behavior has come to light.

4.  The Sokolowskis do not take lightly the far-reaching consequences of this document, and they deeply regret having been forced into making the decision to proceed in this manner. However, the Debtors and DCG continue to use the instant Adversary Proceeding—**whose outcome will determine the remainder of the lives of the Sokolowskis personally, as well as those of their families and households**—as a tool for procedural gamesmanship. This gamesmanship is not new: DCG has previously accused the Sokolowskis of committing "criminal bankruptcy fraud" against this Court. MDPA Action (definition in ¶ 7, *supra*), ECF No. 37, at 2, 4-5. The Sokolowskis are *pro se* litigants *precisely because* their lives have been ruined by DCG's and the Debtors' predecessors' duplicitous conduct. Accordingly, they have no choice but to respond firmly and decisively to protect their rights, reputations, and futures from further gaming of the judicial process.

5.  Whatever the sequence of events that led to the creation of the instant Adversary Proceeding, and whether their litigation in Delaware was ever actually at risk of being influenced or not, both the Debtors' and DCG's briefs nearly completely ignore the central, obvious question that is at issue while taking contradictory positions—or none at all.

6.  The need for a definitive answer to that central question—which both parties have been so far trying to avoid—is why the Sokolowskis hereby answer and **bring a counterclaim for declaratory relief**. Since the Counterclaim Defendants (DCG and the Debtors) are "aligned with the requested relief" DCG seeks in this adversary proceeding, this Court should decide whether the Sokolowskis' single Pennsylvania claim is direct or derivative, once and for all.

## II.  INTRODUCTION

7. The Sokolowskis, appearing *pro se* in the instant Adversary Proceeding and in the Middle District of Pennsylvania (hereafter "MDPA") action (*Sokolowski et al v. Digital Currency Group, Inc. et al*, No. 4:25-cv-00001-KM-PJC (M.D. Pa. Jan. 2, 2025, hereafter the "MDPA Action") and the District of Connecticut action *Sokolowski et al v. Digital Currency Group, Inc et al*, No. 3:25-cv-00870-VAB (D. Conn.) (hereafter the "Connecticut Action"), submit this Answer and assert a counterclaim and a case management proposal as follows.

8. DCG's complaint seeks an injunction to halt the Sokolowskis' consumer claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Stat. Ann. §§ 201-1, et seq. (West 2024), hereafter "UTPCPL") now pending in the MDPA Action. While the Sokolowskis previously took no position on DCG's standing, in light of the Debtors' reply they are exercising the rights reserved in their *Statement of Neutral Position* (Main Case, ECF No. 2215, ¶ 7) to oppose DCG's injunctions and seek a law-only determination on the direct/derivative issue. The UTPCPL claim is a personal, direct consumer claim—not property of the Debtors—and DCG has no contractual or prudential standing under the confirmed Plan to police third-party suits. See Confirmation Opinion, *In re Genesis Glob. Holdco, LLC*, 660 B.R. 439, 456, 496–98 (Bankr. S.D.N.Y. 2024) (finding DCG "out of the money" and lacking standing to be heard on plan economics).

9. The Debtors have now told this Court that although they "disagree" with aspects of DCG's brief, they were "*aligned on the requested relief,*" stating that they would "likely file a 'me too' submission of some kind in support of enjoining the actions." Debtors' Reply, n.7 (emphasis added). In neither the Debtors' Motion nor the Debtors' Reply do the Debtors oppose the relief requested by DCG nor do they state that they would not bring the same action themselves; they only oppose DCG's ability to bring the action on technical grounds. The

Debtors' Reply removes any doubt that the Debtors are not opposed or even neutral with respect to enjoining the Sokolowskis; it also proves the Debtors are a necessary party to any binding adjudication of the "direct vs. derivative" question and of DCG's asserted Plan-enforcement theory.

10.     To avoid serial litigation, forum jockeying, and inconsistent outcomes, the Sokolowskis (i) answer with targeted admissions and a general denial, (ii) assert affirmative defenses, including failure to join indispensable parties, and (iii) plead a narrow declaratory-judgment counterclaim that adds the Debtors as additional counterclaim defendants under Fed. R. Civ. P. 13(h) and 20, as incorporated by Fed. R. Bankr. P. 7013 and 7020.

11.     **Case-management proposal:** Consistent with the Court's guidance, the Sokolowskis request that (a) the motion for preliminary-injunction and all issues regarding the Connecticut action be held in abeyance; (b) the Court order law-only briefing and decide—on the pleadings and attached record—whether the UTPCPL claim as pleaded is direct (not derivative/Debtors' property); and (c) any party invited to join but declining after notice be subject to the ordinary consequences of later preclusion and judicial estoppel. See Debtors' Reply at 3–5, 8–10 (describing the Plan's exclusive vesting of estate claims to the Debtors and acknowledging the MDPA Action is the only active "creditor" (their use of the term) action).

## III.     JURISDICTION, VENUE, AND CORE/NON-CORE STATEMENT

12.     This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. § 1409.

13.     DCG's complaint—framed as "plan enforcement"—invokes core matters under 28 U.S.C. § 157(b)(2)(A), (L), and (O). The counterclaim's request to declare that the

Sokolowskis' UTPCPL claim is not Debtors' property is likewise a matter arising under or in a case under Title 11 to the extent it requires determining the scope of "property of the Debtors" and the Plan's effect.

14.     **Consent Statement:** Solely for the limited purpose of a law-only determination of whether the Pennsylvania UTPCPL claim, as pleaded, is not property of the Debtors, the Sokolowskis consent to the Bankruptcy Court's entry of final orders on those core plan-interpretation issues. The Sokolowskis do not consent to the entry of final orders on any non-core matter and fully preserve all jury, Article III, personal-jurisdiction, venue, and withdrawal-of-reference rights for any remaining issues, exactly as stated in their Limited Response. (This consent supersedes the limited non-consent stated in Defendants' August 11, 2025 *Statement of Neutral Position* (Main Case, ECF No. 2215) solely as to the law-only issues and declaratory relief pleaded herein, without prejudice to all other rights.)

15.     Pursuant to Fed. R. Civ. P. 8(b)(3), made applicable by Fed. R. Bankr. P. 7008, Defendants generally deny each and every allegation of the Complaint not expressly admitted below.

16.     **Admissions:** Defendants admit:

    a.     The Genesis Chapter 11 cases are jointly administered in this Court as Case No. 23-10063 (SHL).

    b.     On July 8, 2025, Plaintiff DCG filed the Adversary Proceeding naming Vincent Falco, Stephen H. Sokolowski, and Christopher H. Sokolowski as defendants.

    c.     DCG's pleading purports to invoke Bankruptcy Rules 7001(7) and 7065 and 11 U.S.C. § 105(a), and seeks a preliminary injunction enjoining the

actions identified as *Sokolowski et al v. Digital Currency Group, Inc. et al*, No. 4:25-cv-00001-KM-PJC (M.D. Pa.) (amended complaint filed Mar. 25, 2025); *Sokolowski et al v. Digital Currency Group, Inc et al*, No. 3:25-cv-00870-VAB (D. Conn. May 30, 2025); and *Falco v. Digital Currency Group, Inc. et al*, No. 1:25-cv-03771-DLC (S.D.N.Y. May 6, 2025).

    d.    DCG is the ultimate corporate parent of Genesis.

    e.    Genesis filed for Chapter 11 bankruptcy protection on January 19, 2023.

    f.    The Sokolowskis are brothers who, through Cryptocurrency Management LLC ("CM LLC"), loaned cryptocurrency to Genesis.

    g.    DCG alleges venue and jurisdiction under 28 U.S.C. §§ 1334, 157, and 1409 and references the Plan's retained-jurisdiction provisions.

    h.    Debtors have themselves filed (i) a Delaware Chancery action and (ii) an avoidance adversary proceeding against DCG.

17.    **Denials/Reservations:** Except as admitted, Defendants expressly deny that:

    a.    They are "creditors" of the Debtors.

    b.    All claims asserted by Defendants are derivative or property of the Debtors.

    c.    DCG has contractual, prudential, or party-in-interest standing to enforce the Plan to enjoin non-estate claims.

    d.    Any injunction is warranted.

    e.    Any factual characterizations of the Sokolowskis' pleadings or statutes cited are accurate. To the extent the Complaint quotes or paraphrases

documents (e.g. the Plan, Confirmation Order, filings by the Sokolowskis), the documents speak for themselves.

## IV.    AFFIRMATIVE DEFENSES

18.    Without conceding any burden of proof, Defendants assert:

19.    **First Defense: Failure to State a Claim.** The Complaint fails to state a claim. DCG identifies no right under the Plan it may enforce to enjoin third-party suits about non-Estate claims; the Plan vests prosecution of estate causes exclusively in the Debtors. See Plan Art. IV.B.14.

20.    **Second Defense: Lack of Prudential/Party-in-Interest Standing (In the alternative).** In the alternative, DCG lacks prudential standing and "party in interest" status to pursue Plan enforcement that protects no cognizable DCG right. See Confirmation Opinion, at 456, 505-06 (DCG "out of the money"); accord *In re Teligent, Inc.*, 417 B.R. 197, 210 (Bankr. S.D.N.Y. 2009) (party-in-interest requires a direct financial stake); *In re Refco Inc.*, 505 F.3d 109, 117 n.10 (2d Cir. 2007) (same).

21.    **Third Defense: No Article III Injury; No Irreparable Harm; Failure to Satisfy Fed. R. Civ. P. 65, as incorporated by Fed. R. Bankr. P. 7065.** DCG pleads no concrete, particularized injury traceable to Defendants that an injunction would redress. In any event, DCG cannot make a clear showing of irreparable harm: litigation burdens are not irreparable injury, and DCG's delay defeats any claim of imminence. DCG also fails to satisfy the traditional injunction factors under Fed. R. Civ. P. 65, as incorporated by Fed. R. Bankr. P. 7065 (likelihood of success/serious questions, irreparable harm, balance of hardships, and public interest).

22. **Fourth Defense: Failure to Join Indispensable Parties (Fed. R. Civ. P. 19 & 12(b)(7), as incorporated by Fed. R. Bankr. P. 7019 and 7012).** The Debtors (Plan Administrator/LOC) are necessary and indispensable to complete relief on the "direct vs. derivative" question and on DCG's asserted Plan-enforcement theory. The Debtors' recent filing confirms "alignment on the requested relief" to enjoin the actions. Debtors' Reply, at 9–10 & n.7.

23. **Fifth Defense: Comity/Abstention (28 U.S.C. § 1334(c)(1)).** The narrow, state-law UTPCPL "directness" issue should be resolved on a law-only record; to the extent DCG invites factual litigation, permissive abstention or equitable abstention is appropriate in favor of the first-filed MDPA Action—without enjoining it.

24. **Sixth Defense: Contract Law Limits on Third-Party Enforcement.** Non-parties to a contract (and non-beneficiaries) cannot enforce it. See, e.g., *In re Motors Liquidation Co.*, 580 B.R. 319, 340, 348–49 (Bankr. S.D.N.Y. 2018).

25. **Seventh Defense: Unclean Hands/Equity.** DCG seeks to co-opt the Plan to obtain personal litigation relief from a direct, non-estate consumer claim, while the Debtors sue DCG elsewhere. Equity does not permit it.

26. **Eighth Defense: Reservation.** Defendants reserve all defenses available under Fed. R. Civ. P. 12 and 8(c), as incorporated by Fed. R. Bankr. P. 7012 and 7008, that may appear upon discovery or amendment, including preclusion based on any law-only declaration entered here.

27. **Ninth Defense: Laches / Unreasonable Delay and Prejudice:** DCG's delay of over six months in seeking "emergency" injunctive relief—despite long-standing knowledge of the Pennsylvania proceedings—constitutes laches and independently negates any claim of

9

irreparable harm. Equity should not reward delay that has prejudiced Defendants through duplicated effort and expense.

28. **Tenth Defense: Waiver/Forfeiture by Litigation Conduct (Assuming** *Arguendo* **Any Right Existed):** Without conceding that DCG has any contractual, prudential, or party-in-interest right to enforce the Plan against non-estate consumer claims, any such purported right was waived or forfeited by DCG's conduct. DCG chose for months to litigate in the Pennsylvania action before seeking extraordinary equitable relief here, inducing Defendants to continue litigating and causing prejudice.

29. **Eleventh Defense: Non-Estate, Direct Consumer Claim (Pennsylvania UTPCPL claim):** The Pennsylvania UTPCPL claim in the MDPA Action is a personal, direct consumer claim requiring "personal, family or household purposes" and not property of the Debtors.

30. **Twelfth Defense: Ripeness, Mootness, and No Irreparable Harm (Connecticut Action):** As to the Connecticut Action: (i) Plaintiffs moved to stay immediately upon filing; (ii) DCG/Silbert and Moro do not oppose the stay; (iii) the motion remains pending; and (iv) all parties—including the Debtors—have acknowledged that the Connecticut Action will proceed only if the Pennsylvania action fails to reach the merits. See *Statement of Neutrality,* Main Case, ECF No. 2215, ¶ 1 (summary of Connecticut Action); Debtors' Reply, ¶ 18 (Debtors' acknowledgement of stay). There is therefore no Article III case or controversy, no imminence, and no irreparable harm supporting any injunction concerning the Connecticut Action; equity favors abeyance.

31. **Thirteenth Defense: Connecticut Direct Claims (Reserved):** Without requesting any Connecticut Action ruling at this stage—and solely to preserve the issue should

the Court later reach it—Defendants plead in the alternative that the Connecticut claims asserted in the stay-pending Connecticut Action are personal, direct claims belonging to Defendants, not to the Debtors' estates, because the alleged injuries and remedies run to Defendants individually and do not constitute generalized, estate-wide harm. Nothing herein waives Defendants' position that the Court should decide only the Pennsylvania UTPCPL claim issue at this time.

## V.      COUNTERCLAIM (Fed. R. Civ. P. 13(a), 13(h), and 20 (via Fed. R. Bankr. P. 7013, 7020))

**Counterclaim Plaintiffs:** Stephen H. Sokolowski and Christopher H. Sokolowski.

**Counterclaim Defendants:** Genesis Global Holdco, LLC, Genesis Global Capital, LLC, and Genesis Asia Pacific Pte. Ltd. (by and through the Plan Administrator at the direction of the LOC); Digital Currency Group, Inc. (collectively, the "Counterclaim Defendants").

**Jurisdiction/Venue:** As stated above.

**Nature:** Declaratory relief under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, as incorporated by Fed. R. Bankr. P. 7057; ancillary equitable relief under 11 U.S.C. § 105(a) limited to case-management.

**Factual Allegations (for Counterclaim):**

32.      The Sokolowskis assert a UTPCPL claim in the MDPA Action alleging deceptive practices in connection with personal, household use of digital-asset services; they do not assert corporate or shareholder injury.

33. DCG filed the instant Adversary Proceeding seeking to enjoin the MDPA Action's UTPCPL claim based on DCG's theory that the claim is derivative/property of the Debtors.

34. The Debtors have now represented that while they disagree with portions of DCG's brief, they were "aligned on the requested relief" and would "likely file a 'me too' submission of some kind in support of enjoining the actions." Debtors' Reply at 9–10 & n.7.

35. To prevent duplicative litigation and later "do-overs," the parties whose rights would be affected by a law-only declaration—the Debtors—must be joined to any final determination of whether the UTPCPL claim is direct.

## COUNT I: Declaratory Judgment
### (The UTPCPL Claim as Pleaded Is Direct and Not Property of the Debtors)

36. An actual controversy exists over whether the UTPCPL claim is property of the Debtors or a direct consumer claim.

37. The UTPCPL affords a personal remedial right to consumers who purchased or leased goods or services primarily for **personal, family, or household purposes** and suffered an ascertainable loss from unfair or deceptive practices. The injury alleged in the MDPA Action is personal to the Sokolowskis (not generalized creditor harm), and the remedy runs to them individually.

38. **Relief requested:** A declaration that the UTPCPL claim as pleaded in the MDPA Action is direct, not derivative/Debtors' property, and therefore not subject to any Plan-based injunction or stay as to the Sokolowskis.

**VI. REQUEST FOR CASE-MANAGEMENT ORDER (LAW-ONLY BRIEFING; PRELIMINARY INJUNCTION IN ABEYANCE)**

39. To efficiently resolve the dispositive legal questions while protecting all parties' rights, the Sokolowskis request the Court enter a short form case-management order providing:

40. **Scope:** The Court will decide, on a law-only record (no discovery), whether the UTPCPL claim, as pleaded in the MDPA Action, is direct (Count I). No Connecticut issues will be briefed or decided.

41. **Preliminary Injunction and Connecticut Action in Abeyance:** DCG's preliminary injunction application remains in abeyance pending the law-only ruling; and any proceedings regarding the Connecticut action remain in abeyance unless and until that action is ever revived.

42. **Joinder/Invitation**: The Debtors are joined under Fed. R. Civ. P. 13(h) and 20, made applicable by Fed. R. Bankr. P. 7013 and 7020, or, in the alternative, are invited to join for the limited purpose of law-only briefing and decision, with formal service under Fed. R. Bankr. P. 7004 within 3 days and a 7-day election to appear. The joinder seeks no damages from the Debtors – only declaratory relief.

43. **Nonparty Invitation & Notice (Informational Only):** To promote transparency without expanding the parties, Defendants respectfully request that the Court (i) invite nonparties **Barry E. Silbert** and **Soichiro "Michael" Moro** to move to intervene under Fed. R. Civ. P. 24 (via Fed. R. Bankr. P. 7024)—limited solely to the law-only issues identified herein—or to seek leave to file an amicus submission on those issues; and (ii) state that no appearance is required and that failure to intervene or appear as amicus will not delay the schedule.

44. **Briefing:** An immediate but moderate schedule of simultaneous opening briefs with simultaneous replies, allowing sufficient time for any self-represented litigant to review new authorities cited by the Counterclaim Defendants.

13

45.     **Effect of Dismissal:** Pursuant to Fed. R. Civ. P. 41(a)(2), as incorporated by Fed. R. Bankr. P. 7041, no dismissal of DCG's complaint shall impair the Court's jurisdiction to adjudicate the counterclaims.

## VII.   PRAYER FOR RELIEF

46.     Defendants respectfully request that the Court:

    a.  Dismiss the Complaint with prejudice, or, at a minimum, hold DCG's preliminary injunction in abeyance pending a law-only ruling.

    b.  Declare that the UTPCPL claim as pleaded in MDPA is direct, not derivative/estate property (Count I).

    c.  Enter the case-management order set out above (Section VI); and

    d.  Award such other and further relief as the Court deems just and proper, including preservation of the Court's jurisdiction to enforce its declarations.

## VIII.   JURY DEMAND

47.     No jury is requested on the equitable and declaratory issues.

Dated: August 14, 2025


Respectfully submitted,


/s/ Stephen H. Sokolowski
Stephen H. Sokolowski, Pro Se
3178 Carnegie Drive
State College, PA 16803
814 600-9800
steve@shoemakervillage.org

/s/ Christopher H. Sokolowski
Christopher H. Sokolowski, Pro Se
3178 Carnegie Drive
State College, PA 16803
814 600-9804
chris@shoemakervillage.org