# EXHIBIT 4

**Exhibit 4**

STEPHEN H. SOKOLOWSKI
3178 Carnegie Dr
State College, PA 16803
Telephone: 814-600-9800
Email: steve@shoemakervillage.org
*Pro Se Defendant*

CHRISTOPHER H. SOKOLOWSKI
3178 Carnegie Dr
State College, PA 16803
Telephone: 814-600-9804
Email: chris@shoemakervillage.org
*Pro Se Defendant*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>Genesis Global Holdco, LLC, et al.,<br><br>Debtors[1] | Case No. 23-10063 (SHL) |
| DIGITAL CURRENCY GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN H. SOKOLOWSKI,<br>CHRISTOPHER H. SOKOLOWSKI,<br>GENESIS GLOBAL HOLDCO, LLC,<br>GENESIS GLOBAL CAPITAL, LLC, AND<br>GENESIS ASIA PACIFIC PTE. LTD.<br><br>Defendants. | Adversary Proceeding No.<br>25-01111 (SHL) |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

---

[1] The Wind-Down Debtors in these cases, along with the last four digits of each Wind-Down Debtor's registration number in the applicable jurisdiction, are as follows: Genesis Global Holdco, LLC (8219), Genesis Global Capital, LLC (8564), and Genesis Asia Pacific Pte. Ltd. (2164R)

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................................iii

TABLE OF TERMS .........................................................................................................................x

INTRODUCTION ...........................................................................................................................1

    I.      Preliminary Statement ..........................................................................................1

    II.     Procedural Posture .............................................................................................3

    III.    Standards of Decision and Record Discipline...................................................4

    IV.    Nature of the Case and Summary of Argument ................................................4

ARGUMENT ...................................................................................................................................5

    V.     ARGUMENT 1: The Sokolowskis' UTPCPL Claim Is Direct as a Matter of Law and Cannot Be Enjoined.........................................................................................................5

        A.    Scope of the Court's Decision and the Question Presented...................................5

        B.    Cryptocurrency Management LLC Background ..........................................6

        C.    Pa.'s Framework: Consumer-Owned, Reliance-Based, Liberally Construed...........................7

        D.    The UTPCPL Claim Here Is Direct on the Face of the Pleadings .................................9

        E.    Bankruptcy Law Cannot Convert a Consumer-Only Right into Estate Property ......................12

        F.    Assignment/*Nemo Dat* Confirm Directness and Defeat Any Plan/Vesting Theory...................14

        G.    Choice-of-Law / Extraterritoriality ............................................................16

        H.    Application to the Record ....................................................................18

    VI.    ARGUMENT 2: The Record Warrants Limited, Targeted Discovery into DCG–Debtors Coordination, Motive, and Timing—If the Court Hesitates on the Merits of the UTPCPL, And Before Any Conn. Ruling.........................................................................19

        A.    Rule 408 Admissibility .......................................................................20

        B.    The Sequencing and Coordination—The Record That Justifies *In Camera* Review and Short Discovery.........................................................................................21

        C.    *UBMI v. Prohashing*: Missing Exhibit and Facial Staleness .....................................30

        D.    Targeted Discovery and *In Camera* Procedure.................................................31

        E.    How This Targeted Record Will Inform the Injunction Factors ..................................32

        F.    Conclusion on Discovery....................................................................33

    VII.   ARGUMENT 3: Other Grounds to Deny or Narrow Relief .......................................33

        A.    Laches: DCG's Six-Month Delay Defeats Any Emergency and Bars Equitable Relief...........33

        B.    Heightened Standard Applies Because the Requested Injunction Would Alter the Status Quo, Allowing the DCG/Debtors Litigation to Proceed First .....................................34

        C.    No Presumption of Irreparable Harm; DCG's Showing Fails as a Matter of Law ...............35

i

D. Non-Debtor/Third-Party Relief Is "Extraordinary" and Requires a Robust Estate-Harm Record ................................................................................................... 36

E. Federal–Federal Comity and the First-Filed Rule (Pa.) ............................................ 37

F. Bond Is Required or, at Minimum, Must Be Considered and Calibrated ................... 37

G. If (and Only If) Any Interim Relief Issues: Time Limited and Tight Tailoring ......... 37

H. Reserved arguments .................................................................................................. 38

CONCLUSION .......................................................................................................................... 39

VIII. REQUESTED RELIEF ........................................................................................... 39

IX. Final Note on Equity .............................................................................................. 39

# TABLE OF AUTHORITIES

## Cases

*Action Mfg. Co. v. Simon Wrecking Co.*,
375 F. Supp. 2d 411 (E.D. Pa. 2005)................................................................... 14

*Adam v. Jacobs*,
950 F.2d 89 (2d Cir. 1991) .................................................................................. 37

*Ayyash v. Bank Al-Madina*,
233 F.R.D. 325 (S.D.N.Y. 2005) .................................................................. 20, 33

*Balderston v. Medtronic Sofamor Danek, Inc.*,
285 F.3d 238 (3d Cir. 2002) ................................................................................ 15

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959)............................................................................................. 38

*Butner v. United States*,
440 U.S. 48, 54–55 (1979)................................................................................... 12

*Caplin v. Marine Midland Grace Tr. Co. of N.Y.*,
406 U.S. 416 (1972)............................................................................................. 12

*Cassino v. Reichhold Chems., Inc.*,
817 F.2d 1338 (9th Cir. 1987).............................................................................. 21

*Citibank, N.A. v. Citytrust,*
*756 F.2d 273 (2d Cir. 1985)* ................................................................................ 34

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
598 F.3d 30 (2d Cir. 2010) .................................................................................. 33

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013)............................................................................................. 38

*Commonwealth v. Golden Gate Nat'l Senior Care LLC*,
194 A.3d 1010 (Pa. 2018) ................................................................................... 17

*Commonwealth v. Monumental Properties, Inc.*,
329 A.2d 812 (Pa. 1974) ....................................................................................... 8

*Commonwealth v. Navient Corp.*,
354 F. Supp. 3d 529 (M.D. Pa. 2018), aff'd 967 F.3d 273 (3d Cir. 2020)............................. 9

*Conopco, Inc. v. Campbell Soup Co.*,
    95 F.3d 187 (2d Cir. 1996) ........................................................................ 33, 34

*Danganan v. Guardian Prot. Servs.*,
    179 A.3d 9 (Pa. 2018) ................................................................................ 8, 17

*Dixon v. Northwestern Mut.*,
    146 A.3d 780 (Pa. Super. Ct. 2016) ............................................................ 17

*Doctor's Assocs., Inc. v. Stuart*,
    85 F.3d 975 (2d Cir. 1996) .......................................................................... 37

*Dunaway v. Purdue Pharma L.P. (In re Purdue Pharma L.P.)*,
    619 B.R. 38 (S.D.N.Y. 2020) ...................................................................... 32

*Dwyer v. Ameriprise Fin., Inc.*,
    No. 2 WAP 2023, 2024 Pa. LEXIS 993 (Pa. Apr. 25, 2024)...................... 19

*Earl v. NVR, Inc.*,
    990 F.3d 310 (3d Cir. 2021) ........................................................................ 17

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)................................................................................... 4, 35

*Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*,
    522 F.3d 271 (2d Cir. 2008) ........................................................................ 37

*Falco v. Digital Currency Group, Inc., et al.*,
    No. 1:25-cv-03771-DLC (S.D.N.Y. May 6, 2025) ........................... passim

*Fine v. Checcio*,
    870 A.2d 850 (Pa. 2005) .............................................................................. 30

*Frank v. TeWinkle*,
    45 A.3d 434 (Pa. Super. Ct. 2012) .............................................................. 16

*Gabriel v. O'Hara*,
    534 A.2d 488 (Pa. Super. Ct. 1987) ............................................................. 8

*Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    40 F.3d 63 (3d Cir. 1994).......................................................................... 15, 16

*Genesis Global Capital, et al. v. Digital Currency Group, Inc., et al.*,
    Adv. Pro. No. 25-01097 (Bankr. S.D.N.Y. May 19, 2025) ........................ 18

*Genesis Global Holdco, LLC, et al. v. Digital Currency Group, Inc., et al*,
    C.A. No. 2025-0532-KSJM (Del. Ch. May 13, 2025)............................. x, 24, 28

*Gregg v. Ameriprise Fin., Inc.*,
   245 A.3d 637 (Pa. 2021) ................................................................................................ 7, 9

*Griffith v. United Air Lines, Inc.*,
   203 A.2d 796 (Pa. 1964) ................................................................................................ 16

*Hammersmith v. TIG Ins. Co.*,
   480 F.3d 220 (3d Cir. 2007) ........................................................................................... 16

*Harrington v. Purdue Pharma L.P., et al.*,
   603 U.S. 204 (2024) ..................................................................................................... 14

*Hirsch v. Arthur Andersen & Co.*,
   72 F.3d 1085 (2d Cir. 1995) ........................................................................................... 13

*In re Bernard L. Madoff Inv. Secs., LLC*,
   740 F.3d 81 (2d Cir. 2014) ............................................................................................. 13

*In re Calpine Corp.*,
   365 B.R. 401 (S.D.N.Y. 2007) ............................................................................... 20, 32, 36

*In re Chanticleer Assocs., Ltd.*,
   592 F.2d 70 (2d Cir. 1979) ............................................................................................. 36

*In re Emoral, Inc.*,
   740 F.3d 875 (3d Cir. 2014) ........................................................................................ 12, 13

*In re Grand Jury Subpoena Dated Jan. 4, 1984*,
   750 F.2d 223 (2d Cir. 1984) ........................................................................................... 20

*In re Lyondell Chem. Co.*,
   402 B.R. 571 (Bankr. S.D.N.Y. 2009) .................................................................. 20, 32, 33, 36

*In re Tronox Inc.*,
   855 F.3d 84 (2d Cir. 2017) ............................................................................................. 13

*Jayaraj v. Scappini*,
   66 F.3d 36 (2d Cir. 1995) .............................................................................................. 32

*Katz v. Aetna Cas. & Sur. Co.*,
   972 F.2d 53 (3d Cir. 1992) ............................................................................................ 8, 15

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
   342 U.S. 180 (1952) ..................................................................................................... 37

*Knight v. Springfield Hyundai*,
   81 A.3d 940 (Pa. Super. Ct. 2013) ................................................................................... 17

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ........................................................................................ 19

*Lautenberg Found. v. Picard (In re Bernard L. Madoff Inv. Secs., LLC)*,
512 F. App'x 18 (2d Cir. 2013) ...................................................................... 36

*Legal Capital, LLC v. Med. Prof'l Liab. Catastrophe Loss Fund*,
750 A.2d 299 (Pa. 2000) ................................................................................ 15

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................................................ 38

*Mullins v. City of New York*,
626 F.3d 47 (2d Cir. 2010) ............................................................................ 20

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
883 F.3d 32 (2d Cir. 2018) ........................................................................ 4, 34

*Needle v. T. Rowe Price Grp., Inc.*,
2022 WL 3592206 (E.D. Pa. Aug. 19, 2022) ........................................... 15, 16

*Park Irmat Drug Corp. v. OptumRx, Inc.*,
152 F. Supp. 3d 127 (S.D.N.Y. 2016) ........................................................... 20

*Queenie, Ltd. v. Nygard Int'l*,
321 F.3d 282 (2d Cir. 2003) ..................................................................... 32, 36

*Salinger v. Colting*,
607 F.3d 68 (2d Cir. 2010) ....................................................... 4, 32, 33, 35

*Sampson v. Murray*,
415 U.S. 61 (1974) ......................................................................................... 35

*Seldon v. Home Loan Servs., Inc.*,
647 F. Supp. 2d 451, 470–75 (E.D. Pa. 2009) ............................................... 9

*Shuker v. Smith & Nephew, PLC*,
885 F.3d 760 (3d Cir. 2018) .......................................................................... 14

*Sokolowski v. Digital Currency Group, Inc., et al.*,
No. 3:25-cv-00870-VAB (D. Conn. May 30, 2025) .................................. x, 1, 5

*Sokolowski v. Digital Currency Group, Inc., et al.*,
No. 4:25-cv-00001-PJC (M.D. Pa. Jan. 2, 2025) .................................. passim

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*,
884 F.2d 688 (2d Cir. 1989) .......................................................................... 13

*Starter Corp. v. Converse, Inc.*,
170 F.3d 286 (2d Cir. 1999) ....................................................................................... 21

*Taylor v. Sturgell*,
553 U.S. 880, 884 (2008) ............................................................................................ 38

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
60 F.3d 27 (2d Cir. 1995) ....................................................................................... 4, 34

*Toy v. Metro. Life Ins. Co.*,
928 A.2d 186 (Pa. 2007) .............................................................................................. 7

*Uforma/Shelby Bus. Forms, Inc. v. NLRB*,
111 F.3d 1284 (6th Cir. 1997) ................................................................................... 21

*United Brands and Marketing International S.à r.l. v. Prohashing, LLC*,
No. 2:25-cv-03046 (E.D. Pa. June 13, 2025) ......................................... xi, 24, 30, 31

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) .................................................................................................... 20

*Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*,
574 A.2d 641 (Pa. Super. Ct. 1990), aff'd, 605 A.2d 798 (Pa. 1992) ........................ 8

*Walden v. BNY Mellon*,
No. 2:20 cv-01972-CBB (W.D. Pa. Dec. 16, 2024) ................................................ 8, 9

*Weinberg v. Sun Co., Inc.*,
777 A.2d 442 (Pa. 2001) ........................................................................................... 7, 9

*Wells Fargo Bank, N.A. v. Sokolowski*,
No. 2025-CV-1842-CI (Pa. Ct. Com. Pl. Centre Cnty. Jul. 8, 2025) ....................... 25

*Winter v. NRDC*,
555 U.S. 7 (2008) ...................................................................................................... 4, 35

*Yenchi v. Ameriprise Fin., Inc.*,
161 A.3d 811 (Pa. 2017) ............................................................................................... 7

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
854 A.2d 425 (Pa. 2004) ........................................................................................... 9, 17

## Statutes

11 U.S.C. § 105(a) ............................................................................................................. passim

11 U.S.C. § 1123(b)(3) ............................................................................................................ 12

11 U.S.C. § 541(a)(1) .............................................................................................................. 12

42 Pa. Cons. Stat. § 5524(7) ................................................................................................... 30

73 P.S. §§ 201-1 et seq. ..................................................................................................... passim

    73 P.S. § 201-2(3) .................................................................................................................. 8

    73 P.S. § 201-2(4)(xxi) ......................................................................................................... 7

## Rules

Fed. R. Civ. P. 30(b)(6) ........................................................................................................... 31

Fed. R. Civ. P. 65 ............................................................................................................... passim

    Fed. R. Civ. P. 65(c) ....................................................................................................... 37, 38

    Fed. R. Civ. P. 65(d) ......................................................................................................... 2, 38

Fed. R. Evid. 408 ............................................................................................................... 20, 21

Fed. R. Evid. 502(d) ................................................................................................................ 32

## Other Documents

*Debtors' Motion to Enforce the Plan Against Digital Currency Group, Inc*
    (Main Case, ECF No. 2180) .................................................................... xi, 23, 24, 26

*Debtors' Reply Brief in Support of Their Motion to Enforce the Plan Against Digital Currency
    Group, Inc.*
    (Main Case, ECF No. 2217) ................................................................................. passim

*Declaration of Benjamin S. Kaminetzky in Support of Digital Currency Group Inc.'s Objection to
    Debtors' Motion to Enforce the Plan*
    (Main Case, ECF No. 2214) ................................................................................. xi, 24

*Declaration of Jennifer M. Selendy In Support of Debtors' Reply Brief In Support Of Their Motion To Enforce The Plan Against Digital Currency Group, Inc.*
(Main Case, ECF No. 2218) ........................................................................................ xii, 26

*Declarations of Stephen H. Sokolowski and Christopher H. Sokolowski in Opposition to Motion for Preliminary Injunction*
(Sept. 6, 2025) .................................................................................................... passim

*Limited Response and Statement of Neutral Position Regarding Debtors' Motion to Enforce, with Request for Targeted Procedural Relief and Reservation of Rights*
(Main Case, ECF No. 2215) ..................................................................................... xii, 3, 25

*Memorandum of Law in Support of Motion for a Preliminary Injunction*
(ECF No. 4).......................................................................................................... passim

*Objection to Debtors' Motion to Enforce the Plan*
(Main Case, ECF No. 2213) .................................................................................. xii, 24, 34

# TABLE OF TERMS

AP ......................................................................................................................Adversary Proceeding

Alvarez ............................................................................................................... Amelia Alvarez
(Member of the Debtors' Wind-Down Oversight Committee)

Boyapati ..................................................................................................... Vijay Boyapati
(Member of the Debtors' Litigation Oversight Committee)

Conn. Action .................................................... *Sokolowski v. Digital Currency Group, Inc., et al.*,
No. 3:25-cv-00870-VAB (D. Conn. May 30, 2025)

CM LLC.............................................................................Cryptocurrency Management LLC

DCG ........................................................................................... Digital Currency Group, Inc.

Debtors............................................................................................. Wind-Down Debtors
(Genesis Global Holdco, LLC, Genesis Global Capital, LLC,
and Genesis Asia Pacific Pte. Ltd.)

Debtors' Motion .......... *Debtors' Motion to Enforce the Plan Against Digital Currency Group, Inc*
(Main Case, ECF No. 2180)

Debtors' Reply ..................... *Debtors' Reply Brief in Support of Their Motion to Enforce the Plan
Against Digital Currency Group, Inc.*
(Main Case, ECF No. 2217)

Del. Action .. *Genesis Global Holdco, LLC, et al. v. Digital Currency Group, Inc., et al.*, C.A. No.
2025-0532-KSJM (Del. Ch. May 13, 2025)

DP .......................................................................................................Discovery Protocol
(Ex. A)

Falco.......................................................................................................... Vincent Falco

Falco Action ............................................................*Falco v. Digital Currency Group, Inc., et al.*,
No. 1:25-cv-03771-DLC (S.D.N.Y. May 6, 2025)

Genesis.........................................................................................Genesis Global Capital LLC

Kaminetzky Decl. .........................................*Declaration of Benjamin S. Kaminetzky in Support of
Digital Currency Group Inc.'s Objection to
Debtors' Motion to Enforce the Plan*
(Main Case, ECF No. 2214)

LOC................................................................................................Litigation Oversight Committee

x

Pa. Action .......................................................... *Sokolowski v. Digital Currency Group, Inc, et al.*,
No. 4:25-cv-00001-PJC (M.D. Pa. Jan. 2, 2025)

Pa. Compl. ..................................................................................... Pa. Action, ECF No.22
[First Amended Complaint]

PI ................................................................................................ Preliminary Injunction

PI Brief .......................... Memorandum of Law in Support of Motion for a Preliminary Injunction
(ECF No. 4)

Selendy Decl. .. *Declaration of Jennifer M. Selendy In Support of Debtors' Reply Brief In Support
Of Their Motion To Enforce The Plan Against Digital Currency Group, Inc.*
(Main Case, ECF No. 2218)

Sokolowski Decl. ......... *Declarations of Stephen H. Sokolowski and Christopher H. Sokolowski in
Opposition to Motion for Preliminary Injunction* (Sep. 6, 2025)

Statement of Neutral Position ........................ *Limited Response and Statement of Neutral Position
Regarding Debtors' Motion to Enforce,
with Request for Targeted Procedural Relief and Reservation of Rights*
(Main Case, ECF No. 2215)

Opp. to Debtors' Motion .................................... *Objection to Debtors' Motion to Enforce the Plan*
(Main Case, ECF No. 2213)

UBMI .............................................................. United Brands and Marketing International S.à r.l.

UBMI Action .................. *United Brands and Marketing International S.à r.l. v. Prohashing, LLC*,
No. 2:25-cv-03046 (E.D. Pa. June 13, 2025)

UTPCPL ............................................. [Pa.] Unfair Trade Practices and Consumer Protection Law
(73 P.S. §§ 201-1, et seq. (West 2024)

WDOC ................................................................................. Wind-Down Oversight Committee

## INTRODUCTION

## I.      Preliminary Statement

On July 8, 2025, Digital Currency Group, Inc. ("DCG") filed this Adversary Proceeding ("AP"), Motion for Preliminary Injunction (ECF No. 2), and a supporting Memorandum of Law (ECF No. 4) (the "PI Brief"). This preliminary injunction ("PI") motion asks the Court to wield 11 U.S.C. § 105(a) to halt a *first-filed* federal consumer-protection action in Pennsylvania, *Sokolowski v. Digital Currency Group, Inc., et al.*, No. 4:25-cv-00001-PJC (M.D. Pa. Jan. 2, 2025) (the "Pa. Action") and a stay-pending action in Connecticut, *Sokolowski v. Digital Currency Group, Inc., et al.*, No. 3:25-cv-00870-VAB (D. Conn. May 30, 2025) (the "Conn. Action")—both filed by Stephen H. Sokolowski and Christopher H. Sokolowski (together, the "Sokolowskis," or "Defendants"). The Pa. Action asserts a private claim under the Pa. Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 et seq., based on the Sokolowskis' personal reliance on deceptive balance sheets and ascertainable, out-of-pocket losses.

First, the Court has indicated it wishes to address the merits of the AP, and this extraordinary PI motion fails at the threshold because the UTPCPL claim is a direct, consumer-owned right, not "property of the estate." Bankruptcy cannot vest the estate with a claim the debtor never owned. If the Court holds (as it should) that the UTPCPL claim is direct, DCG's PI motion—as well as the entire AP regarding the Pa. Action—collapses, and the Pa. Action proceeds.

Second, there is a serious equity overlay[2] the Court cannot ignore if it chooses to weigh equitable factors: the record demonstrates a number of timing problems including one critical ordering issue, a sequence of DCG–Debtors coordination around this AP, a rapid public pivot and later disagreements about abeyance once Vincent Falco ("Falco") dismissed his case, questions about the "race to the courthouse" narrative, comments in briefs about litigation in Del., and statements by the Debtors the Sokolowskis found contradictory. If the Court reaches equity, it should proceed under the Discovery Protocol ("DP") in Ex. A[3], which provides *in camera* lodgings and narrowly tailored, time-limited discovery focused on coordination, motive, and timing relevant to the injunction requests.

Third, even apart from merits and clean hands, DCG's motion fails standard Fed. R. Civ. P. 65 requirements. It seeks a mandatory injunction that would alter the status quo by halting a first-filed federal action *and ensuring the Del. litigation between the Debtors and DCG proceeds first*. That triggers a heightened burden and requires a clear or substantial likelihood of success— a showing DCG cannot make. There is no presumption of irreparable harm; the movant must prove it and prove the balance of equities and public interest also favor relief. Any injunction must also satisfy Rule 65(d)'s specificity requirement.

Separately, the separate Conn. Action is stay-pending and thus not ripe for equitable relief here. Any interim or final ruling directed at that case should be held in abeyance and, if later

---

[2] The complete chronology underlying the coordination/timing issues appears in §§ VI.B (Sequencing and Coordination).

[3] Citations in the form of "Ex. A" without containing reference to another document are Exhibits in the *Declarations of Stephen H. Sokolowski and Christopher H. Sokolowski in Opposition to Motion for Preliminary Injunction*, dated Sept. 6, 2025.

considered at all, preceded by the same DP to first examine the equitable issues. See Statement

of Neutral Position[4], Main Case, ECF No. 2215, ¶ 1 (summary of status of Conn. stay).

## II.  Procedural Posture

To avoid duplication, the full sequencing-and-coordination chronology supporting the DP

appears in § VI.B and in the supporting declaration. In brief: (1) On Jan. 2, 2025, the Pa. Action

was filed, becoming the first-filed action. (2) On Mar. 25, an amended Pa. complaint was filed,

and (3) DCG and its co-defendants moved to dismiss in Pa. (4) On May 6, Vincent Falco's

complaint was filed, one week before the May 13 filing of the Debtors' Del. complaint against

DCG. Both complaints were filed over five months after the Pa. Action was filed. (5) On July 1,

DCG submitted its reply brief to its motion to dismiss in Pa., mentioning the "derivative" theory

for the first time. (6) On July 7, Judge Denise Cote in the Southern District of New York issued a

*sua sponte* order in the Falco Action. (7) On July 8, the day after Del. briefing closed, and the

day after Judge Cote's *sua sponte* order in the Falco Action, DCG filed this AP and its PI motion.

(8) On July 14, the Debtors publicly pivoted from prior alignment and filed their plan

enforcement motion. (9) On July 25, the day of Judge Cote's *sua sponte* amendment deadline,

Falco dismissed his action, and then the Debtors communicated with the Sokolowskis. (10) On

Aug. 6, the Debtors proposed mutual abeyance pending the Pa. Action's decision, and DCG

refused. This Court has set a Sept. 15, 2025 hearing and indicated that directness can be decided

as a law only issue on the pleadings.

---

[4] *Limited Response and Statement of Neutral Position Regarding Debtors' Motion to Enforce, with Request for Targeted Procedural Relief and Reservation of Rights*, Main Case, ECF No. 2215

## III.    Standards of Decision and Record Discipline

A movant must show (1) likelihood of success on the merits; (2) irreparable harm; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. NRDC*, 555 U.S. 7, 20–24 (2008); *Salinger v. Colting*, 607 F.3d 68, 77–83 (2d Cir. 2010). After *eBay* and *Winter*, and as the Second Circuit held in *Salinger*, there is *no presumption* of irreparable harm; the movant must prove it. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–94 (2006). Because DCG seeks a mandatory injunction that would alter the status quo by stopping the *first-filed* Pa. Action, which would reorder the litigation web by ensuring the Del. litigation between DCG and the Debtors proceeds first, a "clear or substantial showing of likelihood of success" is required. *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33–35 (2d Cir. 1995). That higher showing applies where the order alters the status quo or provides substantially all the ultimate relief in a way not readily undone on the merits. *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.,* 883 F.3d 32, 36–38 (2d Cir. 2018).

## IV.    Nature of the Case and Summary of Argument

This PI motion turns on a threshold merits question that is purely legal: the Sokolowskis' claim under the UTPCPL is a direct, consumer-owned right that never became estate property and therefore cannot be enjoined or channeled by the Debtors or DCG. **§ V: Argument 1** explains why under *Butner*, § 1123(b)(3), state law controls and the UTPCPL's private cause of action runs only to consumers; the pleaded Pa. reliance and ascertainable losses are particularized, not estate-wide. Independently, *nemo dat*/assignment principles confirm neither the Debtors nor DCG ever owned this claim.

4

If the Court reaches equity for the UTPCPL claim, and before any argument on the Conn. Action, **§ VI: Argument 2** reviews the current evidence supporting targeted, time-limited discovery to support an "unclean hands" finding. The discovery could follow the DP.

Finally, independent Rule 65 criteria would require denial or, at minimum, narrowing and conditioning of any interim restraint even apart from the foregoing; see **§ VII: Argument 3**. The governing standards and record discipline are set out in § III, *infra*.

**Issues and Requested Disposition:** (1) Deny DCG's PI motion and dismiss the AP as to the UTPCPL Pa. claim because that claim is direct and not estate property. (2) If equity is reached on the UTPCPL claim, adopt the time-limited, targeted DP before any injunctive relief. (3) Address any Conn. issues when they become ripe, and only after the DP is executed. See § VIII (Requested Relief).

## ARGUMENT

## V.      ARGUMENT 1: The Sokolowskis' UTPCPL Claim Is Direct as a Matter of Law and Cannot Be Enjoined

### A.      Scope of the Court's Decision and the Question Presented

This is a law only, pleadings-based submission. The question for this Court posed by the PI motion is ownership: whether, taking the well-pleaded allegations as true and drawing reasonable inferences in DCG (the plaintiff)'s favor, the UTPCPL claim asserted by the Sokolowskis vindicates their personal consumer rights and therefore is direct, or instead belongs to the Debtors' estates. The Sokolowskis *do not* ask the Court to adjudicate UTPCPL liability

now. The limited reliance and loss allegations are offered solely to demonstrate that the injuries pleaded are personal and particularized—and thus direct.

## B.      Cryptocurrency Management LLC Background

Cryptocurrency Management LLC ("CM LLC") is the entity associated with the Sokolowskis' Genesis relationship. It appears, for example, as the watermark on the Sept. 21, 2022 balance sheet that Genesis employee Griffin Tiedy sent and discussed with them. See § V.C (factual particularization) (balance sheet bearing a CM LLC watermark; personal receipt/review at the Sokolowskis' Pa. home).

As pleaded, Genesis's own employees suggested an LLC solely to aggregate household funds to bypass deposit minimums. The Genesis employees created a Telegram group to chat directly with the Sokolowskis (and other CM LLC passthrough individuals), accepted deposits into the scheme directly, and conducted know your customer checks directly on the individuals. The completed "Due Diligence Questionnaire" submitted to Genesis states that the "purpose … is to collect funds and exceed Genesis's minimum loan amounts" and to "only loan to Genesis." Pa. Action, ECF No. 22 (hereafter the "Pa. Compl."), Ex. K. The "balance sheet.pdf" sheet sent to Genesis stated that CM LLC had no assets because it was awaiting account approval from Genesis. Id., ¶ 46. CM LLC's Operating Agreement states: "The purpose of Cryptocurrency Management LLC is to securely store cryptocurrencies and to lend those cryptocurrencies to earn interest. The sole borrower at time of formation will be Genesis Trading." Id., Ex. G.

## C.    Pa.'s Framework: Consumer-Owned, Reliance-Based, Liberally Construed

### 1.    Private Right of Action is Consumer-Specific (Statutory Text)

The UTPCPL states:

> Any person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or person, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action…

73 P. S. § 201-9.2(a)

Remedies include actual damages (or $100 minimum), discretionary treble damages, attorneys' fees, and "additional relief." This is a consumer claim by design; none of the Debtors is a consumer.

### 2.    Catch-All Standard: Deceptive Conduct Requires No Scienter; Private Plaintiffs Prove Reliance and Loss

Pa.'s Supreme Court has squarely held that the catch-all, 73 P.S. § 201-2(4)(xxi), imposes liability for deceptive conduct that creates a likelihood of confusion; a private plaintiff must show justifiable reliance and ascertainable loss. See *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 649-53 (Pa. 2021); *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 201-03 (Pa. 2007); *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446-49 (Pa. 2001); *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 822–23 (Pa. 2017). These elements are inherently individualized, reinforcing that UTPCPL injuries are particularized, not estate-wide.

7

3. **Liberal Construction and Broad Coverage of "Services" (Statutory Definitions)**

The UTPCPL is remedial and must be construed liberally. *Commonwealth v. Monumental Properties, Inc.*, 329 A.2d 812, 816–18 (Pa. 1974). The statute defines "trade" and "commerce" to include the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, "wherever situate," including trade or commerce directly or indirectly affecting Pennsylvanians. 73 P.S. § 201-2(3). Financial services conduct fits comfortably within this scope. See *Danganan v. Guardian Prot. Servs.*, 179 A.3d 9 (Pa. 2018). Even non-itemized charges embedded in a transaction—such as fund expense ratios or other fees that do not appear as separate line items—can be actionable in connection with services under the UTPCPL. *Walden v. BNY Mellon*, No. 2:20 cv-01972-CBB, at *7 (W.D. Pa. Dec. 16, 2024).

4. **No Privity Requirement; Liability Reaches Non-Counterparties.**

The UTPCPL does not impose a privity barrier. Deceptive conduct in trade or commerce that induces a consumer's decision can trigger liability even if the deceiver is not the contractual counterparty. See *Gabriel v. O'Hara*, 534 A.2d 488, 494–99 (Pa. Super. Ct. 1987); *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 645–47 (Pa. Super. Ct. 1990), aff'd, 605 A.2d 798 (Pa. 1992) (allowing claims against an upstream manufacturer despite lack of contractual privity); *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55–57 (3d Cir. 1992) (confirming that privity is not required and that UTPCPL liability can extend beyond the immediate seller where the plaintiff is a purchaser/lessee or the deception was directed to the plaintiff.) Pa. appellate decisions—including suits by associations against upstream manufacturers—reflect this consumer protection reach.

Additionally, UTPCPL liability does not hinge on bilateral contact; reliance may be based on deceptive statements disseminated publicly or through intermediaries—so long as the

8

consumer actually relied. See *Weinberg*, 777 A.2d 442 (private plaintiffs must show reliance, which can stem from advertising) and *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436-37 (Pa. 2004) (reliance may rest on promotional materials); cf. *Gregg*, 245 A.3d 637 (catch-all uses a deceptive-conduct standard, with private-plaintiff reliance/causation still required).

**5.      Financial-Services Applications.**

Courts have applied the UTPCPL to loan and financial servicing contexts, confirming that communications about credit risk, liquidity, and repayment—like balance sheet presentations—are within the statute's ambit when used to induce consumer decisions. See *Commonwealth v. Navient Corp.*, 354 F. Supp. 3d 529, 559–60 (M.D. Pa. 2018), aff'd 967 F.3d 273 (3d Cir. 2020); *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470–75 (E.D. Pa. 2009); *Walden*, No. 2:20 cv-01972-CBB.

**D.      The UTPCPL Claim Here Is Direct on the Face of the Pleadings**

**1.      What the Sokolowskis Purchased**

The Sokolowskis used a consumer-facing lending/custody platform and associated communications marketed as a safe, professionally managed yield-generating service. As pleaded, this is the purchase of "services" within the UTPCPL's scope. Pa. Compl. ¶¶ 76–79 & Exs. J, L.

**2.      Particularized Reliance is Plead**

The allegations, taken as true at this stage, trace a straight line of personal reliance and loss that is unique to the Sokolowskis:

**a.    Comparator Platform (Ledn) Would Not Provide a Balance Sheet**

As pleaded (and in incorporated exhibits), Stephen Sokolowski requested that competing platform Ledn provide a balance sheet and Ledn refused, so the Sokolowskis did not deposit with Ledn. That refusal made Genesis's balance sheet dispositive to the Sokolowskis' choice to renew with Genesis. Pa. Compl. ¶ 102 & Ex. E.

**b.    Sept. 21, 2022: Receipt of the Balance Sheet**

While at home in Pa., Stephen Sokolowski requested Genesis's balance sheet and received an email at 1:49pm from a Genesis representative attaching a sheet that listed $1.726 billion of "Other Assets" under "Current Assets." The Sokolowskis allege that the vast majority of that line item was a $1.1 billion, unsecured, 10-year DCG promissory note, misclassified as current and thereby overstating liquidity and solvency. See Pa. Compl. ¶ 94 & Ex. A. This balance sheet was particularized to the Sokolowskis (having a watermark of CM LLC) and contained different financial data and a different watermark from those of a balance sheet that one other creditor received. See Pa. Compl. ¶ 98 & Ex. D.

**c.    Same Day: Real-Time Discussion and Review**

Stephen Sokolowski discussed the balance sheet with Genesis representative Griffin Tiedy on a Telegram voice call while viewing the document. At 2:07 p.m., Stephen Sokolowski forwarded the balance sheet to Christopher Sokolowski, who personally discussed it later that afternoon with Stephen at the same Pa. residence. Pa. Compl. ¶¶ 94–96.

**d.    The Deception's Mechanics: "Weighted Avg" Mismatch.**

The same balance sheet included a "Weighted Avg" table touting a total loan tenor of roughly 35.5 days—an average irreconcilable with a single 10-year insider note representing

10

roughly a third of reported assets. The pleaded inconsistency supports the inference that the "current asset" classification was not clerical but part of the document's overall capacity to deceive. Pa. Compl. ¶¶ 99–100.

### e.  Decision Context: Why "Current Asset" Mattered to These Consumers

The Sokolowskis were deciding whether to call expiring short-term loans or renew them at up to one-year terms and whether to withdraw or remain on Genesis's platform. Their considered loan term was one year, so the "current asset" label—understood to mean assets callable within one year as defined under Generally Accepted Accounting Principles—thus directly addressed the time horizon of Plaintiffs' lending decision. Pa. Compl. ¶¶ 101–104.

### f.  But-For Reliance and Timing of Actions

The Sokolowskis allege that, because of this document and associated communications, they renewed large term loans on Sept. 26 and Sept. 30, 2022 and elected to continue "open term" USD/USDC loans, and that *but for* the misclassified "current asset," they would have withdrawn instead of renewing/maintaining. Pa. Compl. ¶ 105.

### g.  Personal Loss

The Sokolowskis further allege they later suffered ascertainable losses from the decision to maintain and extend their loans. These losses were caused by the deceptive balance sheet and not by generalized estate diminution. Pa. Compl. ¶¶ 105–106.

The Sokolowskis' reliance arose from bespoke, one-to-one communications—a CM LLC-watermarked balance sheet emailed to them and discussed by same-day call, followed by two renewals dated days later. Under the UTPCPL, privity is unnecessary; liability reaches non-counterparties whose deceptive communications induce a consumer's decision. See § V.C.4.

11

Because this claim rests on the Sokolowskis' particular reliance and their resulting ascertainable loss, it is not a general claim that belongs to the estate. See *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014) (estate owns only "general" claims with no particularized injury).

### E. Bankruptcy Law Cannot Convert a Consumer-Only Right into Estate Property

#### 1. *Butner* Principle (State Law Source of the Right)

Property interests are created and defined by state law; the bankruptcy estate takes only what the debtor owned. *Butner v. United States*, 440 U.S. 48, 54–55 (1979). Consistent with that baseline, 11 U.S.C. § 541(a)(1) provides that property of the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." A plan cannot vest the estate or a plan agent with rights the debtor never possessed. A private UTPCPL right belongs only to the deceived consumer who purchased for household purposes and relied; *the estates are not such consumers*.

#### 2. Plan-Retention Limits Under § 1123(b)(3)

The Code authorizes a plan to provide for the settlement of, or the retention and enforcement of, claims belonging to the debtor or the estate. 11 U.S.C. § 1123(b)(3)(A)–(B). That provision does not create ownership; it presupposes it. Where state law withholds ownership (as with private UTPCPL claims), there is nothing for a plan to retain or enforce.

#### 3. Trustee/Estate Standing Limits

Bankruptcy trustees (and post-confirmation representatives) may assert estate causes of action; they lack standing to press independent creditors' claims. See *Caplin v. Marine Midland Grace Tr. Co. of N.Y.*, 406 U.S. 416, 428–34 (1972); *St. Paul Fire & Marine Ins. Co. v. PepsiCo,*

*Inc.*, 884 F.2d 688, 701–04 (2d Cir. 1989). The Debtors themselves acknowledge a distinction between creditors' independent claims and estate causes of action. Debtors' Reply, at ¶15 ("While the Debtors believe that Genesis creditors may pursue direct claims against DCG, litigations by third parties against DCG could encroach on estate causes of action.") See also *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1094 (2d Cir. 1995) (trustee lacked standing to assert investors' misrepresentation claims). That federal standing architecture dovetails with Pa.'s consumer-specific private right.

While the Sokolowskis maintain that they are not "creditors" of Genesis, since the Debtors' and DCG's terminology throughout all their briefs incorrectly characterizes the Sokolowskis as "creditors" hundreds of times, the logical inference from the Debtors' statement is that the Debtors believe that the Sokolowskis may pursue direct claims against DCG.

**4.      General vs. Particularized Injuries**

Appellate courts distinguish derivative claims (generalized harm to the estate, often repackaged as fraudulent transfer or corporate misconduct claims) from direct claims that vindicate personal rights. See *Emoral,* 740 F.3d, at 879–83. A UTPCPL claim—requiring each plaintiff's own reliance and loss—sits squarely on the personal and particularized side of that line and is not estate property.

**5.      Anti-Suit/Derivative Precedents Are Inapposite**

Decisions enforcing bankruptcy anti-suit injunctions (e.g., where creditors attempted to repackage estate avoidance claims) do not apply to a consumer-only UTPCPL claim that never vested in the estate. See, e.g., *In re Tronox Inc.*, 855 F.3d 84, 100–05 (2d Cir. 2017); *In re Bernard L. Madoff Inv. Secs., LLC*, 740 F.3d 81, 89–95 (2d Cir. 2014). These Second Circuit

decisions police repackaged estate claims (fraudulent transfer/alter-ego) seeking estate-wide relief; by contrast, a UTPCPL claim is a consumer-owned, reliance based right that no trustee could bring, and its injury is particularized, not estate-wide.[5] Extending *Tronox*'s anti-suit channeling to a private, reliance-based consumer statute would require a substantial and unwarranted expansion of that line of authority.

**6.      Post-Confirmation Release Channeling Is No Answer**

Non-consensual third-party releases cannot extinguish or channel independent creditors' statutory rights. See *Harrington v. Purdue Pharma L.P., et al.*, 603 U.S. 204, 208–09 (2024). Even apart from those constraints, a plan cannot purport to "release" a claim the estate never owned.

**F.      Assignment/*Nemo Dat* Confirm Directness and Defeat Any Plan/Vesting Theory**

**1.      Only Consumers May Sue; CM LLC Never Owned This Claim**

The UTPCPL's private right, § 201-9.2(a), is limited to purchases "primarily for personal, family, or household purposes." Business or professional purchases are not covered. As pleaded, the Sokolowskis—natural persons using a consumer-facing service—fit the statute; CM LLC, the contractual signatory, does not. Pa. case law has repeatedly denied UTPCPL standing to corporations. *Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d

---

[5]**Jurisdictional note.** The Sokolowskis' "enterprise/alter-ego" allegations are pleaded solely to establish personal jurisdiction and to attribute the deceptive communications to the proper defendants; they are *not* asserted as an alter-ego cause of action seeking estate-wide relief.

Personal-jurisdiction imputation under an alter-ego theory is a separate inquiry from ownership of the claim and does not alter the consumer-only nature of the Sokolowskis' UTPCPL right. See, e.g., *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 422–25 (E.D. Pa. 2005) (discussing alter-ego as a basis to impute contacts for personal jurisdiction); *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (recognizing alter-ego/agency imputation principles in the jurisdictional analysis).

63, 65 (3d Cir. 1994); see also *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 241–42 (3d Cir. 2002) (doctor's business purpose purchases do not confer UTPCPL standing).

### 2. Non-Purchasers and Incidental Beneficiaries Lack UTPCPL Standing

Courts reject attempts by non-purchasers or incidental beneficiaries to sue under the UTPCPL. The Act centers the right in the consumer who purchased and relied. See *Katz*, 972 F.2d, at 55–57.

### 3. UTPCPL Claims Are Not Assignable

Courts treat UTPCPL claims as personal to the consumer and not freely assignable. That non-assignability aligns with the statute's reliance-based design and consumer-centric remedies (trebles/fees). See *Gemini Physical Therapy*, 40 F.3d, at 65-66; *Needle v. T. Rowe Price Grp., Inc.*, 2022 WL 3592206, at *5, *7–8 (E.D. Pa. Aug. 19, 2022). As pleaded, the Sokolowskis' UTPCPL claim has not been assigned to anyone, and this brief does not rely on any assignment for standing or ownership.

### 4. *Nemo Dat*: Nothing to Transfer, Nothing to Retain

Even if some transfer device could be imagined, it cannot convey more than the transferor owns. Neither Genesis nor the Wind-Down Debtors ever owned the Sokolowskis' consumer-only UTPCPL claim, so no plan retention or vesting could conjure ownership where none existed. And because CM LLC never owned a UTPCPL claim, there was nothing to convey; the private UTPCPL right remains with the individual consumers who purchased and relied. See *Legal Capital, LLC v. Med. Prof'l Liab. Catastrophe Loss Fund*, 750 A.2d 299, 302 (Pa. 2000) (assignee stands in the shoes of the assignor); *Needle*, 2022 WL 3592206, at *5, *7–8

15

(dismissing UTPCPL claim where plaintiffs, as IRA heirs, were not "purchasers" of services and could not bootstrap standing as third-party beneficiaries or assignees).

### 5.       No Conceivable Assignee Exists

Even if CM LLC had anything to assign, the UTPCPL's private right belongs only to a "person" who purchased or leased "primarily for personal, family, or household purposes," 73 P.S. § 201-9.2(a). Not only is a bankruptcy estate not such a consumer, neither is any claims purchaser or broker/dealer such as Jefferies Leveraged Credit Products, LLC. Courts disfavor "assignments" that would send a statutory right to sue into the hands of someone outside the statute's protected class. See *Needle*, 2022 WL 3592206 (holding plaintiffs "do not have standing for their UTPCPL claim based on assignment"; UTPCPL protects only "purchasers" or "lessors") (citing *Gemini Physical Therapy*, 40 F.3d, at 68 (UTPCPL "protects only those who purchase goods or services, not those who may merely benefit from the purchase"; rejecting assignee's UTPCPL standing and refusing to "infer an assignment" of UTPCPL claims); accord *Frank v. TeWinkle*, 45 A.3d 434, 438–39 (Pa. Super. Ct. 2012) (champerty remains a viable public-policy brake on claim transfers to strangers to the underlying right).

### G.     Choice-of-Law / Extraterritoriality

### 1.     Pa. Law Applies—And Only Consumers Can Own a UTPCPL Claim

Under Pa.'s interest analysis choice of law framework, Pa. law governs. See *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805–06 (Pa. 1964) (abandoning *lex loci delicti* and adopting a flexible, policy-oriented analysis); *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226–27 (3d Cir. 2007) (summarizing Pa.'s three-step choice of law inquiry) Pa. also reads the UTPCPL's coverage broadly across borders consistent with its text. See *Danganan*, 179 A.3d, at

16–18 (UTPCPL applies to transactions with out-of-state elements). Regardless, the ownership question is dispositive: the UTPCPL's private right belongs only to a "person" who purchases or leases for personal, family, or household purposes, § 201-9.2(a); a bankruptcy estate—New York-based or otherwise—is not such a consumer and cannot own or enforce this claim.

## 2.    Economic Loss and Gist of the Action Do Not Bar UTPCPL Claims

The economic loss doctrine and gist of the action doctrine are not defenses to a statutory UTPCPL claim. That matters to directness because the UTPCPL expressly protects personal reliance injuries even when the losses are purely economic. See *Earl v. NVR, Inc.*, 990 F.3d 310, 314–15 (3d Cir. 2021); *Knight v. Springfield Hyundai*, 81 A.3d 940, 952–53 (Pa. Super. Ct. 2013); *Dixon v. Northwestern Mut.*, 146 A.3d 780, 789–90 (Pa. Super. Ct. 2016).

## 3.    Integration Clauses

Integration clauses bar reliance on prior or contemporaneous statements; they do not insulate subsequent deceptive conduct. The Sokolowskis' pleaded reliance concerns post-engagement balance sheet communications and later inducements. See *Yocca*, 854 A.2d, at 436–37. See also *Dixon*, 146 A.3d, at 789–90 (recognizing UTPCPL claims predicated on post-contract misrepresentations are not barred)

## 4.    Puffery vs. Misrepresentation.

Labeling a long-term insider note as a current asset is a concrete, verifiable representation about liquidity—not non-actionable puffery. The UTPCPL targets statements with the capacity or tendency to deceive. See Pa Compl. ¶¶ 99–101; *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1023–26 (Pa. 2018).

17

## H.  Application to the Record

DCG's PI memorandum frames the Sokolowskis' allegations as generalized, estate level injuries. DCG cites *not a single Pa. case* in the PI Brief because the law establishing the UTPCPL as a consumer protection statute is clear and overwhelming.

The pleaded UTPCPL claim turns on the Sokolowskis' *own* justifiable reliance and *own* ascertainable losses, making it a direct, consumer owned claim. The Debtors' own complaint against DCG in Del. alleges DCG "initiated a campaign of misinformation to *Genesis's customers*" centered on the $1.1 billion note; directed "business as usual," "strong [b]alance [s]heet," and "ton[s] of liquidity" messaging; and disseminated tweets/talking-points "*shared with Genesis customers*" (emphasis added). These allegations are cited solely to show that even the Debtors themselves characterize the challenged conduct as customer-directed. *Genesis Global Capital, et al. v. Digital Currency Group, Inc,. et al.*, Adv. Pro. No. 25-01097 (Bankr. S.D.N.Y.), ECF No. 1, ¶¶ 5–6, 78–82, 87.

### 1.  Undisputed Statutory Structure Controls.

Because only a consumer can bring a private UTPCPL action (and estates are not consumers), the claim's ownership is fixed by statute: it belongs to the deceived consumer. The estates could never own it; it is therefore not estate property.

### 2.  Allegations Establish Particularization.

The pleading set forth (i) the receipt of specific deceptive financial communications; (ii) Plaintiffs' justifiable reliance in maintaining/extending positions; and (iii) resulting ascertainable loss. Those are individual reliance injuries—direct, not derivative. See PA Compl. ¶¶ 94–106.

### 3.      Consumer-Specific Remedies Reinforce Individual Ownership

The UTPCPL's remedial scheme—actual damages (or $100 minimum), discretionary treble damages, and attorneys' fees—confirms its consumer-centered design. The Pa. Supreme Court recently reaffirmed that treble damages under the UTPCPL are independent of punitive damages. See *Dwyer v. Ameriprise Fin., Inc.*, No. 2 WAP 2023, 2024 Pa. LEXIS 993, at \*25–\*27 (Pa. Apr. 25, 2024).

## VI.    ARGUMENT 2:
## The Record Warrants Limited, Targeted Discovery into DCG–Debtors Coordination, Motive, and Timing—If the Court Hesitates on the Merits of the UTPCPL, And Before Any Conn. Ruling

DCG comes to this Court asking for equitable relief while at the same time invoking the Court's authority to write that the Sokolowskis committed "criminal bankruptcy fraud" against this Court or are subject to "Rule 11 sanctions" (but has never moved for sanctions.) Pa. Action, ECF No. 37, at 4. The Court should view any hypothetical additional calls for sanctions regarding this argument in the context of these prior remarks.

The Sokolowskis maintain that the UTPCPL claim is direct and that DCG's PI motion should be denied on the pleadings. If the Court hesitates, it should—under its inherent docket-management authority—adopt the short DP in Ex. A and permit narrowly tailored, time-limited discovery focused on DCG–Debtors coordination, motive, and timing, with targeted *in camera* review as needed, **before** issuing any extraordinary relief or addressing the stayed Conn. action. See *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (courts have inherent power to control their dockets); *Zolin*, 491 U.S., at 570–72 (permitting *in camera* review upon a threshold

showing to test privilege/crime-fraud); *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d

223, 224–25 (2d Cir. 1984) (approving *in camera* inspection to resolve privilege claims).

Bankruptcy courts in this Circuit apply the traditional Rule 65 framework and regularly

continue PI hearings to allow focused discovery and supplemental submissions where that record

will sharpen equitable determinations; PI proceedings may also be decided on procedures "less

formal" and evidence "less complete," which the proposed targeted discovery is calibrated to

respect. See *In re Calpine Corp.*, 365 B.R. 401, 408 (S.D.N.Y. 2007); *In re Lyondell Chem. Co.*,

402 B.R. 571 (Bankr. S.D.N.Y. 2009); *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ).

Expedited discovery is appropriate on a flexible good cause showing when it bears

directly on the injunction factors, and the Court may consider hearsay and the entire record at the

PI stage. See *Ayyash v. Bank Al Madina*, 233 F.R.D. 325, 327–28 (S.D.N.Y. 2005) (adopting

"flexible" good cause standard for expedited discovery); *Mullins v. City of New York*, 626 F.3d

47, 52 (2d Cir. 2010) (hearsay may be considered at the PI stage); *Park Irmat Drug Corp. v.

OptumRx, Inc.*, 152 F. Supp. 3d 127, 132 (S.D.N.Y. 2016) (court may consider the entire record,

including affidavits and other hearsay, on a PI motion).

## A.     Rule 408 Admissibility

Attorney Jennifer Selendy's ("Selendy") statements are admissible because they were not

made in bona fide "compromise negotiations" under Fed. R. Evid. 408. The only "offer"

proposed no concrete valuable consideration—only a unilateral demand for a bankruptcy claim

sale document, a document for which the Court refused to adjourn the Sept. 15 hearing, coupled

with a noncommittal promise to "consider" some stipulation. Vijay Boyapati ("Boyapati"),

20

member of the Debtors' Litigation Oversight Committee ("LOC") (Main Case, ECF No. 1117)

spent much of his communication with the Sokolowskis warning them to dismiss their cases.

In any event, the statements are offered for other permitted purposes (e.g., to show

motive, bias, and estoppel), not to prove the validity or amount of any claim; courts admit such

evidence and have specifically held that threats or other wrongs during putative negotiations are

outside Rule 408 and that contemporaneous termination/"release" proposals are admissible. See

*Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293–94 (6th Cir. 1997); *Cassino v.*

*Reichhold Chems., Inc.*, 817 F.2d 1338, 1342–46 (9th Cir. 1987); *Starter Corp. v. Converse, Inc.*,

170 F.3d 286, 293–95 (2d Cir. 1999).

To be clear: the Sokolowskis *do not* accuse any specific party of any specific act implied

below; they simply lay out the known facts for the Court. The DP is requested simply *to clarify*

*the record* before an equitable remedy is awarded. The Sokolowskis recorded extensive notes of

their meetings and will provide all notes to the Court for *in camera* review upon request;

statements in this section are backed by these notes.

**B.      The Sequencing and Coordination—The Record That Justifies *In Camera***
**Review and Short Discovery**

**1.      2024-2025: Meeting and "Likes"**

On Dec. 6, 2024, Stephen Sokolowski requests to meet with Boyapati and Amelia

Alvarez ("Alvarez"), member of the Debtors' Wind-Down Oversight Committee ("WDOC")

(Main Case, ECF No. 1117), by video call. During this meeting, Stephen Sokolowski describes

the Pa. Action that was being prepared. Alvarez expresses concern for PROHASHING[6] employee Sarah Manter, who had been laid off after PROHASHING's reserve was lost to the alleged original DCG fraudulent scheme. Sokolowski Decl., ¶ 20. From Jan. 2 through Aug. 8, 2025, the user "skeptical_aa" "likes" multiple X posts by Stephen Sokolowski covering his fight against DCG and explaining his briefs in the Pa. Action.

The link between Alvarez, the "AA UCC" email account, and the "skeptical_aa" X account is confirmed by the email in Ex. K: Alvarez writes by email "it was a pleasure speaking with you today" to Stephen Sokolowski immediately after their Dec. 6, 2024 meeting. Later, in Ex. J, Alvarez requests by email that an X post be corrected; Stephen Sokolowski did so (see May 22 post in Ex. B), and "skeptical_aa" immediately "likes" the corrected post.

The user "Vijay Boyapati" also likes one Stephen Sokolowski post, on Mar. 23, 2025, two days before the Pa. complaint is amended. Ex. B.

2. **Jan. 2, 2025: The Pa. Action is Filed**

Because neither the Debtors nor any Plan representative had yet to sue DCG over the fraud and would not sue for another five months, the Pa. Action becomes the first-filed action in the litigation web.

3. **Mar. 4, 2025: DCG Moves to Dismiss the Pa. Action**

In their motion to dismiss the Pa. Action (Pa. Action, ECF No. 37), DCG invokes this Court, arguing that the Pa. case should be dismissed due to the Sokolowskis having committed

---

[6] PROHASHING LLC is a business owned and operated by Defendants Stephen H. Sokolowski and Christopher H. Sokolowski.

"criminal bankruptcy fraud" (id., at 4), citing felony statutes (id., at 20), and threatening

sanctions (id., at 20)—without ever moving for sanctions.

**4.      Mar. 25, 2025: The Sokolowskis Amend their Complaint in the Pa. Action**

This amended complaint (Pa. Action, ECF No. 22) adds 289 pages of evidence (id., Exs.

F-L) to bolster the Sokolowskis' equitable estoppel argument DCG's and the other defendants'

motions to dismiss.

**5.      May 6, 2025: Vincent Falco Files His Action**

Falco's complaint pleads otherwise consumer claims from three different states, but,

among other similar statements, writes that his bitcoins became "property of Genesis Global's

estate" and that the defendants were "mere alter egos" of Genesis. *Falco v. Digital Currency

Group, Inc., et al.*, No. 1:25-cv-03771-DLC (S.D.N.Y. May 6, 2025) (hereafter the "Falco

Action"), ECF No. 1, at 3, 29 n.21.

**6.      May 17, 2025: "Genesis LOC Update"**

The Debtors' Reply states that "The Debtors… have been discussing those cases with the

relevant plaintiffs for months." Debtors' Reply, ¶1. On May 17, Alvarez sends one of ten emails

to Stephen Sokolowski—the only other communications the Sokolowskis had with the Debtors

before Boyapati's July 25 warnings began. Sokolowski Decl., ¶ 23. In one message, Alvarez

thanks Stephen Sokolowski for sharing the Pa. Action's complaint and its new evidence with her.

Continuing her friendly communications that had been ongoing, she states: "Would also

appreciate it if you could follow us on X: @TheGenesisLOC. Personally, I've been following

you on X and cheering you on for a long time. Wishing you all the best, Amelia." Ex. H. Alvarez

ceases all communications (except "likes") on June 24, one week before the AP filing

discussions are known to have begun. Sokolowski Decl., ¶ 26; Ex. I.

**7.      June 13, 2025: The UBMI v. PROHASHING Case Is Filed**

On May 27, 2025, the Sokolowskis file their opposition brief to DCG's and the other Pa.

defendants' motions to dismiss. Pa. Action, ECF No. 44. Footnote 3 in the Sokolowskis' brief

references that their business PROHASHING possesses "terabytes of data." Id., at 20. Two

weeks later, the UBMI Action is filed. See section VI.C for details on that case.

**8.      July 7, 2025: Del. Briefing Closes**

In the Del. Action[7] (removed and targeted for transfer), both the Remand and Transfer

motions are fully briefed as of July 7, 2025, according to the Debtors' own chronology. *Debtors'*

*Motion to Enforce the Plan Against Digital Currency Group, Inc* (Main Case, ECF No. 2180,

hereafter the "Debtors' Motion"), at 9–11 & Exs. 1–7.

**9.      July 7, 2025: Judge Cote's *Sua Sponte* Order in the Falco Action**

Judge Denise Cote, from the Southern District of New York, orders *sua sponte* in the

Falco Action: "ORDERED that plaintiff shall file any amended complaint by July 25, 2025. *It is*

*unlikely that plaintiff will have a further opportunity to amend.*" (emphasis added). The order

noted that an "elongated briefing schedule" had been agreed upon, which would have run

through the end of Sept. The PI hearing in this AP is scheduled for Sept. 15. She continued: "IT

IS FURTHER ORDERED that the initial pretrial conference scheduled for July 10, 2025 is

---

[7] *Genesis Global Holdco, LLC, et al. v. Digital Currency Group, Inc., et al*,
     C.A. No. 2025-0532-KSJM (Del. Ch. May 13, 2025)

adjourned *sine die.*"; and *"IT IS FURTHER ORDERED THAT….* plaintiff shall file*…* a letter…

explaining the basis for his belief that diversity of citizenship exists." Falco Action, ECF No. 39.

**10.     July 8, 2025 (morning): Wells Fargo Files a Debt Collection Suit Against Stephen Sokolowski**

This debt was the subject of a dispute since early 2023. Wells Fargo, represented by

Orlans Law Group, did not move to sue Stephen Sokolowski until May 30, 2025, when Stephen

Sokolowski received a demand letter—three days after the Sokolowskis responded to DCG's

motion to dismiss the Pa. Action. Sokolowski Decl., ¶ 27. The Wells Fargo case, while

potentially colorable, originates from the payment of the Genesis bankruptcy claim sale. It was

served by Centre County, Pa. sheriffs the morning of the filing of this AP. See *Wells Fargo Bank,*

*N.A. v. Sokolowski,* No. 2025-CV-1842-CI (Pa. Ct. Com. Pl. Centre Cnty. Jul. 8, 2025).

**11.     July 1–8, 2025: "Alignment," Pa. Preview, and a Split-Second Public Break.**

On July 1, DCG's reply brief in the Pa. Action previewed this PI motion and asserted a

new defense—that the Sokolowskis' claim "belongs to the estate." Pa. Action, ECF No. 52, at 24

n.12. This "derivative" defense had not been mentioned in any previous brief filed by anyone in

that case—including in DCG's original motion to dismiss. Simultaneously, DCG and the Debtors

exchanged drafts of the PI Brief "on a common-interest basis," with "several more emails" over

the following days. Then, at 7:17:39 p.m. on July 8—three seconds before the Debtors' Motion

was docketed at 7:17:42 p.m.—the Debtors emailed DCG that the AP was "misguided" and

aimed to "strengthen [DCG's] removal and transfer efforts in Delaware" Opp. to Debtors'

Motion, at 6-7; Kaminetzky Decl.[8], Ex. A; Debtors' Motion (timestamp). The Debtors' reply

---

[8] *Declaration of Benjamin S. Kaminetzky in Support of Digital Currency Group Inc.'s Objection to Debtors' Motion to Enforce the Plan* (Main Case, ECF No. 2214)

brief later confirmed that, before the public pivot, they and DCG were "aligned on the requested relief" and would "likely file a 'me too' submission of some kind in support of joining the actions." *Debtors' Reply Brief in Support of Their Motion to Enforce the Plan Against Digital Currency Group, Inc.* (Main Case, ECF No. 2217, hereafter the "Debtors' Reply"), at 9–10 & n.7.

**12.    July 8, 2025 (evening): DCG Files this AP and Motion for PI**

**13.    July 14, 2025: The Motion to Enforce the Plan**

The Debtors change their earlier position of being aligned with DCG in seeking the "derivative" ruling—a ruling that the Sokolowskis have argued in § V is inappropriate for the UTPCPL claim—and instead file the Debtors' Motion. On Aug. 12, a post about the Sokolowskis' Statement of Neutral Position, which declined to support the Debtors' effort to dismiss this AP, is "liked" by "skeptical_aa." Ex. B.

**14.    July 16, 2025: Co-defendant Coordination Anomaly**

Christopher Sokolowski attempted to contact Vincent Falco's counsel to coordinate a joint defense; his attorney did not respond. Ex. C.

**15.    July 25, 2025: Falco Drops Out; Debtors First Reach Out**

Falco dismisses the Falco Action on the same day as Judge Cote's *sua sponte* amendment deadline. Later that evening, Boyapati sends his first legal communication to the Sokolowskis requesting a meeting.

**16.    July 28 & July 30, 2025: Leverage and Admission**

On July 28, Boyapati meets with both Sokolowskis for the first time and invokes Falco's fresh dismissal to pressure the Sokolowskis to dismiss their cases. On July 30, Debtors' counsel

26

Selendy states in regard to some of the Sokolowskis' claims: "to be honest, the claims are different from those of the estate." She also stated that the "consumer protection claims were direct." Sokolowski Decl., ¶ 5-6. Afterward, Boyapati states in an email: "To the extent that we believe there are claims that belong to the estate, we are happy to meet to coordinate on that issue, as we did several times with Falco and his counsel." Ex. E.

**17.     Aug. 6-12, 2025: Debtors' Request Abeyance and DCG Refuses**

The Debtors (by Aug. 6 letter) propose holding both the Debtors' Motion and DCG's PI motion and AP in abeyance pending a ruling on the Pa. Action. DCG declines on Aug. 12. Selendy Decl. (Main Case, ECF No 2218)[9], ¶4 & Ex. 2.

**18.     Aug. 15, 2025: Counterclaim and "Like"**

At the status conference, the Debtors tell the Court that they were "working with" "creditors" to resolve the issue, as they had with Falco's earlier dismissal, and the Sokolowskis inform the Court about their answer and counterclaim. "skeptical_aa" "likes" Stephen Sokolowski's X post announcing the countersuit against the Debtors. Ex. B.

**19.     Aug. 17, 2025: Critical *Falco* Complaint "Copied and Pasted" Timing Mismatch**

DCG's PI Brief states that the Defendants offer "allegations that are substantially similar to the allegations made in support of the Debtors' causes of action…" PI Brief, at 3. During a subsequent Aug. 17 meeting, Boyapati states that what he called the "obviously derivative" Falco Action's consumer complaint, which pleads that his bitcoins became "property of Genesis Global's Estate," (Falco Action, ECF No. 1, ¶5) was **"copied and pasted"** from the Debtors' complaint. Sokolowski Decl., ¶ 8. A timing mismatch exists: the Debtors' action, in Del.

---

[9] *Declaration of Jennifer M. Selendy in Support of Debtors' Reply Brief in Support of Their Motion to Enforce The Plan Against Digital Currency Group, Inc.* (Main Case, ECF No. 2218)

27

Chancery Court, was filed on May 13, 2025 and was sealed until June 11, 2025. Falco filed his action earlier—on May 6, 2025.

**20.     Aug. 17, 2025: The First-Filed Argument**

For the second time (the first occurred on July 28), when Stephen Sokolowski again points out that the Pa. Action was *first-filed*, Boyapati suggests collaboration against DCG but avoids discussing any specific actions suggested by Stephen such as coordinating on discovery. Sokolowski Decl., ¶ 12.

**21.     Aug. 17-18, 2025: Not Reading the Pa. Complaint**

In their Aug. 17 meeting, Boyapati states that the LOC and Selendy Gay had had miscommunications, and that repeated use of the word "creditors" in their briefs and at the Aug. 15 status conference, did not reflect the LOC's intent and pre-dated counsel's reading of the Sokolowskis' complaints.

Boyapati and Selendy tell the Sokolowskis after Aug. 15 in multiple instances, including in their Aug. 18 meeting, that one or both "hadn't read" (and, later, "hadn't really understood") the Sokolowskis' Pa. Compl. and had mistakenly believed that the AP was primarily focused on Falco. Sokolowski Decl., ¶¶ 13-14. The AP complaint references the Sokolowskis in the first paragraph. ECF No. 1, ¶ 1. The first paragraph of the Debtors' Reply, in which the Sokolowskis are referred to as "creditors," states "The Debtors have also been aware of the Creditor Actions since their inception.", and Boyapati previously stated that he had "been following along with [Stephen Sokolowski's] posts." Ex. D.

28

**22.    Aug. 17-18, 2025: Admissions and the "Direct" Position**

In their Aug. 17 meeting, Boyapati states that the LOC never intended to enjoin the Sokolowskis' claims, and when pressed whether that included the Conn. claims, Boyapati agrees that he didn't think any of either the Pa. or Conn. claims were derivative and that the Debtors aren't seeking to enjoin them, compared to the "obviously derivative" Falco lawsuit. When Stephen Sokolowski states that he believes that this Court will rule the Pa. claim is direct at the Sept. 15 hearing, Boyapati first agrees, then later in the meeting warns that the Court might enjoin the lawsuits. Sokolowski Decl., ¶15.

In their Aug. 18 meeting, Selendy promises to consider taking some action that would ensure that the Sokolowskis' claims were acknowledged as direct to the Court, but only if the Sokolowskis first provide her with a bankruptcy claim sale contract. To justify the need for the document, Selendy argues "non-creditors can't have derivative claims, right?" Sokolowski Decl., ¶ 16. The Debtors' Reply states "While the Debtors believe that Genesis creditors may pursue direct claims against DCG, *litigations by third parties against DCG could encroach on estate causes of action.*" Debtors' Reply, ¶ 15 (emphasis added).

**23.    Aug. 17, 2025: Statements About Impact Upon DCG**

In their Aug. 17 meeting, Boyapati states again that DCG is trying to "manufacture jurisdiction" in the Debtors' Del. case. In their Aug. 18 meeting, Boyapati and Selendy repeatedly reiterate, despite being provided counterarguments, that a "direct" ruling would not harm DCG. Sokolowski Decl., ¶¶ 17-18.

After Stephen Sokolowski introduces the Sokolowskis' counterclaim against DCG during the Aug. 15 status meeting, DCG attorney Benjamin Kaminetzky states in court that the

Sokolowskis and DCG might be "violently aligned." Sokolowski Decl., ¶ 19 . DCG's PI Brief offers not a single Pa. authority to support its theory of derivativeness, even while presenting a dispute grounded in Pa. law.

### C.    *UBMI v. Prohashing*: **Missing Exhibit and Facial Staleness**

On June 13, 2025, *United Brands and Marketing International S.à r.l. v. Prohashing, LLC*, No. 2:25-cv-03046 (E.D. Pa. June 13, 2025) (the "UBMI Action") is filed against the Sokolowskis' business, PROHASHING, by a foreign shell corporation represented by Bull Blockchain Law, LLP.

### 1.    **Damages Require Discovery**

The complaint pleads damages of $2 million "upon information and belief" and that the "actual amount owed cannot be determined without access to documents in Prohashing's possession." UBMI Action, ECF No. 1, ¶¶ 33–35, 49.

### 2.    **Facial Statute-of-Limitations Problem**

The alleged incidents occurred between 2017 and 2021. UBMI Action, ECF No. 1, ¶ 38. Filed June 13, 2025, the fraud-based counts appear outside Pa.'s two-year limitations period for fraud/deceit, absent pleaded tolling, which is not present. See 42 Pa. Cons. Stat. § 5524(7); *Fine v. Checcio*, 870 A.2d 850, 857–60 (Pa. 2005).

### 3.    **Missing Evidence; Wrong Forum**

By invoking but failing to attach "Exhibit A," the pleading withholds the controlling Terms of Service it cites. UBMI Action, ECF No. 1 ¶¶ 33–35 (referencing "Exhibit A"). The PROHASHING Terms of Service also selects the Middle District of Pa., not the Eastern District where the case is filed. Ex. F.

30

### 4. Internal-Records Contradiction (Power of Attorney)

To establish standing, the complaint alleges a Power of Attorney ("PoA") having been requested by PROHASHING. UBMI Action, ECF No. 1, ¶38. A declaration of Christopher Sokolowski attests that he searched all of PROHASHING's support, compliance, email, and customer resource management repositories and found no record of any customer PoA or any request for one—consistent with PROHASHING policy never to request or accept customer PoA. His declaration and that of Stephen Sokolowski and former employee Vance Vu attest that they had never heard of United Brands and Marketing International S.à r.l ("UBMI") before that case was filed, and all also had no awareness of any PoAs ever being related to PROHASHING. Sokolowski Decl., ¶¶ 29,32; Ex. G (Vu Decl.)

### 5. Imposition of Fiduciary Duty

PROHASHING has limited reserves (Sokolowski Decl., ¶ 33) and cannot afford the cost of defense through trial of even a weak case. Should the UBMI Action continue into wide-ranging discovery, PROHASHING is likely to declare Chapter 7 bankruptcy. The bankruptcy risk has currently imposed a fiduciary duty upon the Sokolowskis, restricting their actions in this AP and the other cases, since PROHASHING also passed funds through CM LLC.

### D. Targeted Discovery and *In Camera* Procedure

The specific, time-limited discovery steps appear in Ex. A: Phase-1 in camera lodgings within 10 days; narrowly tailored RFPs per producing party with substantial completion in 10 days; and, only if the Ex. A § F expansion triggers occur (material gaps; privilege blocking coordination/draft evidence; or a party submits declarations), short entity-only Fed. R. Civ. P. 30(b)(6) depositions (one per DCG and Debtors/LOC, up to 60 minutes each) and document-

only third-party subpoenas with 14-day returns. The Protocol is proportional to the injunction issues, preserves privilege via in-camera lodgings and Fed. R. Evid. 502(d), and avoids merits detours.

### E.     How This Targeted Record Will Inform the Injunction Factors

**Likelihood of success.** If discovery reveals internal communications—particularly if dated earlier than the current record shows—that the Sokolowskis' Pa. claim is direct, then the central merits predicate of DCG's § 105(a) theory collapses. See *Calpine*, 365 B.R. at 408; *Lyondell*, 402 B.R. 571. The Debtors' "aligned on the requested relief" admission (Debtors' Reply, at 9–10 & n.7) is already strong evidence that the estate ownership theory is a litigation tactic, not a legal inevitability.

**Irreparable harm.** Discovery may permit the Court to inquire in depth about how the narrative of a "race to the courthouse" originated, because in its absence, there is no irreparable harm. See *Salinger*, 607 F.3d, at 79–80 (no presumption; movant must prove irreparable harm); see also *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (irreparable harm not shown where monetary or corrective relief later will suffice); cf. *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287–88 (2d Cir. 2003) (estate harm must be immediate and concrete to justify extending protections to non-debtors); contrast *Dunaway v. Purdue Pharma L.P.* (*In re Purdue Pharma L.P.*), 619 B.R. 38, 58 (S.D.N.Y. 2020) (affirming § 105(a) PI on a robust estate-harm record).

**Balance of equities & public interest.** The public interest is not served by using § 105(a) to delay a first-filed personal consumer claim, as resequencing could conceivably reduce the scope of documents and testimony into the Debtors' and DCG's actions in the original scheme that are ultimately revealed—and whether any depositions related to the original scheme

32

are ultimately taken at all. *Precision Instrument*, 324 U.S., at 814–16 (unclean-hands doctrine safeguards the integrity of the judicial process). The public interest disfavors an injunction built on an incomplete record of communication that could lead to a flawed understanding of the attitudes of all parties regarding the AP.

## F. Conclusion on Discovery

This targeted procedure is proportional, efficient, and consistent with the Court's equitable discretion and Rule 65. The Sokolowskis seek this discovery in the alternative for the UTPCPL ruling and always before any Conn. ruling.

The Sokolowskis urge the Court not to accept even the "Del. strategy" narrative at face value, and to permit a deeper investigation into the full scope of conduct if equity is reached. The DP would ensure the Court sees the whole picture before issuing extraordinary relief and deters the use of § 105(a) as a vehicle for collateral objectives. See *Salinger*, 607 F.3d, at 79–80; *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35–40 (2d Cir. 2010); *Lyondell*, 402 B.R. 571; *Ayyash*, 233 F.R.D. at 327–28.

## VII. ARGUMENT 3:
## Other Grounds to Deny or Narrow Relief

### A. Laches: DCG's Six-Month Delay Defeats Any Emergency and Bars Equitable Relief

Laches is an equitable defense that bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996). Significant delay in seeking injunctive

relief tends to "neutralize" a claim of irreparable harm. *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (ten-week delay "undercuts" need for PI.) All three elements of laches are met here. (i) **Knowledge.** DCG knew of the first-filed Pa. Action, at the latest, on Jan. 30, 2025, upon signing a waiver of service of summons. Pa. Action, ECF No. 5. (ii) **Unreasonable delay.** DCG waited until July 8, 2025—the day after the Del. briefing was completed, the day after Judge Cote's Falco Action order, and nearly six months after accepting service from Pa.—to move for a PI. (iii) **Prejudice.** During that period, the Pa. Action proceeded (including amendments and briefing), and the Sokolowskis organized their litigation strategy and resources in reliance on the absence of any restraint; DCG's belated motion forces duplicative work, compressed schedules, and case management changes that Rule 65's equity analysis disfavors. See *Conopco*, 95 F.3d, at 192–95 (affirming denial of equitable relief where plaintiff slept on its rights).

## B.  Heightened Standard Applies Because the Requested Injunction Would Alter the Status Quo, Allowing the DCG/Debtors Litigation to Proceed First

A PI that "[commands] some positive act" and alters the last peaceable status quo constitutes a mandatory injunction and therefore requires a clear or substantial likelihood of success; the "serious questions" alternative does not apply. *Tom Doherty,* 60 F.3d, at 33–35 (distinguishing prohibitory vs. mandatory injunctions); *N. Am. Soccer League,* 883 F.3d, at 36–38 (affirming denial; heightened standard where relief would change status quo). DCG asks the Court to halt prosecution of a first-filed federal consumer action and to police other suits—relief that necessarily changes, not preserves, the status quo.

Critically, granting the PI would *re-sequence* proceedings so that DCG/Debtors litigation can go first by delaying the first-filed consumer action and allowing both entities to control

34

discovery on each other regardless of the ultimate outcome of this AP—further confirming this is an alteration of the status quo, not its preservation.

**C.**     **No Presumption of Irreparable Harm; DCG's Showing Fails as a Matter of Law**

There is no presumption of irreparable harm after *eBay*/*Winter*; the movant must prove it. *Winter*, 555 U.S., at 20–24; *eBay*, 547 U.S., at 391–94. See also *Salinger*, 607 F.3d, at 79–83. Litigation expense and reputational concerns are not irreparable, and speculative future risks are insufficient. Irreparable harm must be actual and imminent, not speculative or remote. *Sampson v. Murray*, 415 U.S. 61, 88–92 (1974).

In mid-May 2025, WDOC member Alvarez emailed the Sokolowskis to announce that the "LOC complaints have finally been filed and made public," linked the official LOC website, and invited their feedback and engagement. Alvarez thanked the Sokolowskis for sharing evidence—conduct flatly inconsistent with any claim of urgency or irreparable harm. Ex. H. This communication continued until June 25, less than a week before discussions between the Debtors and DCG regarding the AP were known to have begun, when Stephen Sokolowski contemporaneously observed that the Debtors themselves appeared to have tracked some of the legal theories and wording from the Pa Action. Ex. I.

On this record—particularly given Falco's dismissal and the Debtors' public offer of abeyance (which DCG refused)—DCG cannot carry its burden. See Debtors' Reply; Opp. to Debtors' Motion.

35

**D.** **Non-Debtor/Third-Party Relief Is "Extraordinary" and Requires a Robust Estate-Harm Record**

Extending bankruptcy protections to non-debtors is permitted only in narrow, unusual circumstances typically where claims against the non-debtor will have an immediate adverse economic consequence for the estate (e.g., guaranty claims or claims against the debtor's insurer). *Queenie*, 321 F.3d, at 287–88. Courts demand a detailed, particularized showing even when relief is sought under § 105(a). See *Calpine*, 365 B.R., at 408–10 (articulating standards); *Lyondell*, 402 B.R., at 588–90 (issuing a *time-limited, 60-day* injunction after targeted discovery and supplemental briefing). DCG's record—largely attorney argument and curated emails—does not meet this threshold.

DCG's authorities rely on § 105(a) being "construed liberally to enjoin suits that might impede the reorganization process." *Lautenberg Found. v. Picard (In re Bernard L. Madoff Inv. Secs., LLC)*, 512 F. App'x 18, 20 (2d Cir. 2013). But there is no reorganization here: the Genesis plan was confirmed, and the estates are in wind down. See Main Case, ECF No. 1691, at 8–10 (finding "nowhere near enough assets to provide any recovery to DCG," and that "the Debtors are insolvent"). Additionally, Chanticleer[10] doesn't help DCG: it addressed a foreclosure on an estate's real property and was reversed as an improper adverse plan modification; the Sokolowskis' UTPCPL claim seeks money from a non-debtor. Without an immediate adverse economic consequence to the estate, the stay doesn't reach non-debtors. *Queenie*, 321 F.3d. at 287–88.

---

[10]*In re Chanticleer Assocs., Ltd.*, 592 F.2d 70 (2d Cir. 1979)

Additionally, even setting the UTPCPL aside, DCG's fraudulent transfer cases are inapposite. The $1.1 billion promissory note reflected DCG's obligation to Genesis and involved no cash leaving the estate—i.e., no disposition of estate property.

## E.  Federal–Federal Comity and the First-Filed Rule (Pa.)

The Middle District of Pa. is first filed on the Sokolowskis' UTPCPL claim. Federal comity generally favors letting the first-filed forum proceed absent special circumstances. *Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275–76 (2d Cir. 2008); *Adam v. Jacobs*, 950 F.2d 89, 91–92 (2d Cir. 1991); *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952). These comity principles concern merits adjudication of the UTPCPL claim; they do not preclude this Court from deciding the discrete (direct/derivative) question, which will facilitate efficient resolution in Pa. However, comity and efficiency weigh against duplicative injunction proceedings over issues already prepared in Pa.

## F.  Bond Is Required or, at Minimum, Must Be Considered and Calibrated

If any restraint issues, the Court should require meaningful security given the risk of wrongfully enjoining a household-level consumer claim that seeks damages currently valued at $30 million. Rule 65(c); *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (district court has *wide discretion* over the amount, including the discretion to require or dispense with a bond).

## G.  If (and Only If) Any Interim Relief Issues: Time Limited and Tight Tailoring

If the Court declines to decide directness on the pleadings, it should order the short, targeted DP and hold any interim relief in abeyance until that record is complete. If the Court

nonetheless issues an interim restraint, it should be (i) time-limited; (ii) claim- and party-specific with precise terms (see Rule 65(d)(1)–(2)); (iii) supported by meaningful security under Rule 65(c); and (iv) make clear that it does not adjudicate or bind the rights of non-parties.

## H. Reserved arguments

1. **Jury trial sequencing (preserved):** To the extent related actions include legal claims triable to a jury (e.g., in Conn.), any equitable relief should be crafted to avoid resolving issues that would impair the jury's role on those legal claims. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11 (1959).

2. **Non-party preclusion / "virtual representation" (preserved):** Any attempt to bind absent consumers or other non-parties through preclusion or "virtual representation" would contravene due process; the Supreme Court has rejected "virtual representation" and permits non-party preclusion only within a few, narrowly defined categories. *Taylor v. Sturgell*, 553 U.S. 880, 884, 893–98 (2008).

3. **Enforcement authority (preserved):** Without seeking a ruling at this stage, the Sokolowskis reserve that enforcement of plan-retained estate rights lies with the estate representative, not a non-debtor, and that § 105(a) cannot expand substantive rights or deputize private actors.

4. **Article III standing (preserved):** Any forward-looking injunction requires a concrete, imminent, and traceable injury, not generalized inconsistency or estate-level concerns. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–14 (2013).

38

## CONCLUSION

## VIII.  REQUESTED RELIEF

For all the reasons set forth in Parts I–VII, the Court should **deny** DCG's request for a PI in its entirety and allow the first-filed consumer-protection action to proceed in Pa.

1.      **Primary (Merits):** Deny DCG's motion for a PI; and dismiss this AP with prejudice as to the Sokolowskis' UTPCPL claim because the claim is direct and no § 105(a)/Rule 7065 injunction can issue against a non-estate claim. Acknowledge that the Pa. complaint may be amended, if appropriate, to add additional counts and defendants without disturbing the UTPCPL "direct" ruling.

2.      **Alternative (Discovery, If Equity is Reached):** Continue the PI hearing briefly and order the DP, including *in camera* lodgings, then adjudicate the injunction factors on a complete, proportional record.

3.      **Conn. Action (Ripeness/Abeyance):** Because the Conn. Action is not ripe and is presently stay-pending, the Court should hold in abeyance any request to restrain or otherwise adjudicate issues relating to that case and first implement the DP. Only after that limited record is complete should any decision concerning the Conn. case be made, and any interim order should expressly avoid merits findings on issues reserved for a jury in that forum.

## IX.    Final Note on Equity

In conclusion, the Sokolowskis allege that DCG and the other defendants defrauded them of 90% of their life savings. Pa. Compl., ¶30. The Court has expressed a desire to decide the matter on the merits. However, if it cannot achieve a "direct" ruling, the Court should not render

39

a decision that will determine the remainder of the lives of the Sokolowskis, their families, and their households without the minimal and targeted record established through the DP that will determine whether DCG and the Debtors come to equity with clean hands.

While they would not object to such a ruling if it is the only available outcome, the Sokolowskis critically note that a ruling of "unclean hands" would *neither* prevent the Debtors from continuing any pressure campaign (if the Court determines one exists) against the Sokolowskis *nor* prevent DCG from resurrecting the AP's arguments in Pa. after many appeals. The limited remedies available to a bankruptcy court, like sanctions, do not help unrepresented parties like the Sokolowskis who have spent no attorney's fees.

Therefore, the Sokolowskis respectfully note that a ruling of "direct"—if the Court is convinced the law supports one—while holding the proceeding regarding the Conn. claims in abeyance, is the most effective way to permanently end any conduct the Court considers inequitable. In the event of a ruling favorable to them by this Court, improper behavior involving the creation of this AP would still be investigated; the Sokolowskis will, if appropriate, take action against any responsible parties in a separate non-core matter.

40

Dated: Sept. 6, 2025


Respectfully submitted,


/s/ Stephen H. Sokolowski
Stephen H. Sokolowski, Pro Se
3178 Carnegie Drive
State College, PA 16803
814 600-9800
steve@shoemakervillage.org

/s/ Christopher H. Sokolowski
Christopher H. Sokolowski, Pro Se
3178 Carnegie Drive
State College, PA 16803
814 600-9804
chris@shoemakervillage.org