# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEPHEN H. SOKOLOWSKI and
CHRISTOPHER H. SOKOLOWSKI,
**Plaintiffs,**

v.

DIGITAL CURRENCY GROUP, INC.,
BARRY E. SILBERT,
SOICHIRO "MICHAEL" MORO,
**Defendants.**

Electronically Filed

Case No. 4:25-cv-00001

Hon. Karoline Mehalchick
Hon. Martin C. Carlson

# PLAINTIFFS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF SECOND MOTION FOR EXTENSION OF TIME TO FILE SECOND AMENDED COMPLAINT

i

**TABLE OF CONTENTS**

PREFACE ..........................................................................................................1

I      INTRODUCTION.......................................................................................1

II     ARGUMENT ...........................................................................................4

     A     DCG's Own Adversary Proceeding Supplies Good Cause...........................4

     B     The Requested Extension Promotes the Rule 8 Reset the Court Ordered ................................................................................................9

     C     The Prior Consent Extension Correspondence Does Not Bar Relief..........11

     D     Defendants' Collateral Factual Narrative Does Not Defeat Good Cause ...................................................................................................12

     E     Defendants' Authorities Are Narrow and Do Not Support Their Expanded Propositions ...............................................................................15

     F     Defendants Show No Cognizable Prejudice From a Fixed Extension........18

     G     The Requested Relief Is Moderate Because It Is Date-Certain and Preserves the Court's Control ....................................................................19

III    CONCLUSION ......................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Abreu v. Fairway Market LLC*,
   No. 17-CV-9532 (VEC), ECF No. 36 (S.D.N.Y. July 24, 2018) ........................17

*Arthur v. Maersk, Inc.*,
   434 F.3d 196, 204–05 (3d Cir. 2006) ...................................................................19

*Dietz v. Bouldin*,
   579 U.S. 40 (2016) .................................................................................................11

*Dole v. Arco Chemical Co.*,
   921 F.2d 484, 488 (3d Cir. 1990). ........................................................................19

*Drippe v. Tobelinski*,
   604 F.3d 778 (3d Cir. 2010) ...................................................................................5

*Foman v. Davis*,
   371 U.S. 178, 182 (1962) .......................................................................................19

*Garrett v. Wexford Health*,
   938 F.3d 69 (3d Cir. 2019) .....................................................................................10

*In re Human Tissue Products Liability Litigation*,
   No. 2:06-cv-00135-WJM-MF, MDL No. 1763, ECF No. 762
   (D.N.J. Mar. 18, 2009) ...........................................................................................16

*LabMD, Inc. v. Tiversa Holding Corp.*,
   No. 2:15-cv-00092-MPK, ECF No. 408 (W.D. Pa. July 15, 2019) ....................16

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ...............................................................................................20

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ................................................................................................5

*MCI Telecommunications Corp. v. Teleconcepts, Inc.*,
   71 F.3d 1086 (3d Cir. 1995) ..................................................................................15

*Pilchesky v. Lackawanna County*,
   No. 3:16-CV-2537, ECF No. 58 (M.D. Pa. Feb. 22, 2018) .................................17

*Premier Comp Sols., LLC v. UPMC*,
   970 F.3d 316 (3d Cir. 2020) ...........................................................................5

*Sharifi v. Township of East Windsor*,
   No. 23-1714 (3d Cir. Dec. 12, 2023) ...............................................................15

*Tigue v. Commercial Life Insurance Co.*,
   631 N.Y.S.2d 974 (N.Y. App. Div. 1995) ........................................................17

## Statutes

11 U.S.C. § 105(a).......................................................................................1, 5

73 Pa. Stat. Ann. §§ 201-1 et seq. ..................................................................7

## Rules

Fed. R. Bankr. P. 7001(7).............................................................................1, 5

Fed. R. Bankr. P. 7016...................................................................................8

Fed. R. Bankr. P. 7019...................................................................................8

Fed. R. Bankr. P. 7021...................................................................................8

Fed. R. Bankr. P. 7026...................................................................................8

Fed. R. Bankr. P. 7065...............................................................................1, 5

Fed. R. Civ. P. 16(b)(4) .................................................................................5

Fed. R. Civ. P. 26(f).......................................................................................7

Fed. R. Civ. P. 4(j)........................................................................................15

Fed. R. Civ. P. 4(m)......................................................................................15

Fed. R. Civ. P. 6(b) ........................................................................................... passim

Fed. R. Civ. P. 6(b)(1)(A) ................................................................................5, 11, 15

Fed. R. Civ. P. 6(b)(1)(B) ............................................................................................15

Fed. R. Civ. P. 8 ............................................................................................... 1, 4, 10

Fed. R. Civ. P. 8(a)(2) ................................................................................................10

Fed. R. Civ. P. 8(d)(1) ................................................................................................10

**Other Documents**

Aug. 21, 2025 email from Laura King to Elliot Moskowitz, Stephen H.
   Sokolowski, and Christopher H. Sokolowski, Ex. A ............................................7

Aug. 25, 2025 email from Laura King to Chambers,
   AP, ECF No. 35, Ex. B ........................................................................................7

Debtors' Motion to Enforce the Plan Against Digital Currency Group, Inc.,
   Genesis Bankruptcy, ECF No. 2180 ....................................................................2

Debtors' Reply Brief in Support of Their Motion to Enforce the Plan Against
   Digital Currency Group, Inc.,
   Genesis Bankruptcy, ECF No. 2217 .................................................................2, 3

Defendants' Answer, Affirmative Defenses, Counterclaim, and Request for Case
   Management Order,
   AP, ECF No. 12 .....................................................................................................2

*Digital Currency Grp., Inc. v. Falco et al.*,
   Adv. Proc. No. 25-01111 (SHL) (Bankr. S.D.N.Y. July 8, 2025) ....................1, 5

*Falco v. Digital Currency Group, Inc. et al.*,
   No. 1:25-cv-03771 (S.D.N.Y. filed May 6, 2025) .................................................3

Notice of Voluntary Dismissal of Defendant Vincent Falco,
   AP, ECF No. 9 .......................................................................................................3

v

Objection to Debtors' Motion to Enforce the Plan,
 Genesis Bankruptcy, ECF No. 2213 ......................................................................6

*Sokolowski v. Digital Currency Group, Inc. et al.*,
 No. 3:25-cv-00870-VAB (D. Conn. May 30, 2025)...........................................7

# TABLE OF TERMS

AP...........................................................*Digital Currency Grp., Inc. v. Falco et al.*,
Adv. Proc. No. 25-01111 (SHL) (Bankr. S.D.N.Y.)

CM LLC .............................................................Cryptocurrency Management LLC

Connecticut Action.......................*Sokolowski v. Digital Currency Group, Inc. et al.*,
No. 3:25-cv-00870-VAB (D. Conn. May 30, 2025)

DCG ........................................................................ Digital Currency Group, Inc.

Debtors ..................................................................... Wind-Down Debtors
(Genesis Global Holdco, LLC, Genesis Global Capital, LLC,
and Genesis Asia Pacific Pte. Ltd.)

Genesis Bankruptcy ............................................ *In re Genesis Global Holdco, LLC*,
No. 23-10063 (SHL) (Bankr. S.D.N.Y.)

Jefferies .................................................... Jefferies Leveraged Credit Products, LLC

Jefferies Agreement............................... Agreement between CM LLC and Jefferies,
referenced at ECF No. 60-2, Ex. N

Plan...............Confirmed Chapter 11 plan of the Debtors in the Genesis Bankruptcy

UTPCPL........................[Pa.] Unfair Trade Practices and Consumer Protection Law
(73 Pa. Stat. Ann. §§ 201-1, et seq.)

**PREFACE**

1.      Plaintiffs Stephen H. Sokolowski and Christopher H. Sokolowski respectfully submit this reply in further support of their *Second Motion for Extension of Time to File Second Amended Complaint*. ECF No. 82.

**I      INTRODUCTION**

2.      Defendants' opposition avoids the central procedural fact: Digital Currency Group, Inc. ("DCG") filed a bankruptcy adversary proceeding ("AP") seeking to enjoin Plaintiffs from litigating the very claims whose amendment deadline is now before this Court. See *Digital Currency Grp., Inc. v. Falco et al.*, Adv. Proc. No. 25-01111 (SHL) (Bankr. S.D.N.Y. July 8, 2025) (the "AP"). DCG cannot make Plaintiffs' existing pleading and future prosecution of this action the object of bankruptcy court injunction litigation, preserve that AP, and then insist that the same proceeding is irrelevant when Plaintiffs seek a fixed, date-certain extension to file a focused amended complaint that complies with Fed. R. Civ. P. 8.

3.      Nor is the AP the ordinary, DCG-controlled proceeding Defendants portray. DCG filed the AP under Fed. R. Bankr. P. 7001(7) and 7065 and 11 U.S.C. § 105(a) to enjoin this action and the Connecticut Action on the theory that Plaintiffs' claims are derivative estate property. AP, ECF No. 1 ¶¶ 1–7. But the

AP's actual posture is broader and contested. The Debtors themselves moved to enforce the Plan against DCG, arguing that DCG had "usurp[ed]" the Debtors' exclusive control over retained estate causes of action and requesting dismissal of the AP or, alternatively, that it be held in abeyance. Debtors' Motion to Enforce the Plan Against Digital Currency Group, Inc. ¶¶ 1–2, 27–29, *In re Genesis Glob. Holdco, LLC*, No. 23-10063 (SHL) (Bankr. S.D.N.Y.) (the "Genesis Bankruptcy"), ECF No. 2180. But the Debtors later acknowledged that, after DCG shared its draft injunction motion, they were "aligned on the requested relief" and expected to file a "'me too' submission" supporting an injunction. Debtors' Reply Brief in Support of Their Motion to Enforce the Plan Against Digital Currency Group, Inc. at 8 n.7, Genesis Bankruptcy, ECF No. 2217.

4.    Plaintiffs joined the Debtors to the AP for that reason: a ruling on whether Plaintiffs' UTPCPL claim is direct or estate property would affect not only DCG's injunction request, but also the Debtors' asserted Plan enforcement rights. Defendants' Answer, Affirmative Defenses, Counterclaim, and Request for Case Management Order ¶¶ 6, 9–11, 32–38, AP, ECF No. 12. The Bankruptcy Court therefore may decide directness, require discovery, consider joinder, hold matters in abeyance, dismiss or narrow the AP, or address equitable objections to the requested injunction.

2

5.     That contested posture is reinforced by the *Falco* sequence: Judge Cote *sua sponte* ordered Falco to amend by July 25, 2025 and warned that further amendment was unlikely; Falco dismissed his action on that same deadline; and the Debtors then invoked that dismissal in the AP as proof that their approach had "streamlin[ed] litigation," while DCG dismissed Falco from the AP but continued against Plaintiffs. *Falco v. Digital Currency Group, Inc. et al.*, No. 1:25-cv-03771 (S.D.N.Y. filed May 6, 2025), ECF Nos. 39, 42; Debtors' Reply Brief in Support of Their Motion to Enforce the Plan Against Digital Currency Group, Inc. at 1–2, 8–9, Genesis Bankruptcy, ECF No. 2217; Notice of Voluntary Dismissal of Defendant Vincent Falco, AP, ECF No. 9.

6.     Plaintiffs do not ask this Court to decide these issues or any merits issue from the AP. They do not ask for discovery in this Court before filing a complaint. They do not seek to extend the stay. They ask only for time to file a narrower amended pleading after, or with reasonable attention to, the threshold issues DCG itself placed before the Bankruptcy Court: whether Plaintiffs' claims are direct or derivative, whether any claim transfer or assignment issue affects Plaintiffs' rights, and whether DCG may use the Bankruptcy Court to restrain Plaintiffs' prosecution of this action.

7.     The request is also materially stronger than when filed. Plaintiffs have now retained Tarter Krinsky & Drogin LLP to represent them in the AP, and the

firm expects to enter a notice of appearance in that proceeding on or shortly after the day this reply brief is filed. That confirms Plaintiffs' diligence and the purpose of the motion: counsel has begun work on the overlapping proceeding that DCG filed, and Plaintiffs seek orderly sequencing so that the Second Amended Complaint in this case is narrower, more disciplined, and more consistent with Rule 8.

8.      Defendants' collateral attacks on public commentary and unpleaded matters do not change the Fed. R. Civ. P. 6(b) analysis. Public commentary is not the operative pleading, and this scheduling motion is not a premature motion to dismiss.

9.      For the reasons below, the Court should grant the requested extension to November 19, 2026. Alternatively, if the Court concludes that six months is longer than necessary, Plaintiffs respectfully request a shorter fixed extension, a status report requirement, or at minimum a deadline no earlier than June 18, 2026, the date to which Defendants previously agreed.

## II    ARGUMENT

### A  DCG's Own Adversary Proceeding Supplies Good Cause

10.     Fed. R. Civ. P. 6(b)(1)(A) permits the Court, for good cause, to extend a deadline when the request is made before the deadline expires. Fed. R. Civ. P.

6(b)(1)(A); see *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896–97 (1990); *Drippe v. Tobelinski*, 604 F.3d 778, 783–85 (3d Cir. 2010). To the extent Fed. R. Civ. P. 16(b)(4) applies, the question is likewise good cause, with emphasis on diligence. *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). Plaintiffs satisfy both standards.

11.    DCG filed the AP. DCG's AP complaint states that DCG brought that proceeding under Fed. R. Bankr. P. 7001(7) and 7065 and Bankruptcy Code § 105(a) "to enjoin" Stephen and Christopher Sokolowski from continued litigation of the causes of action asserted in this action and the Connecticut Action. AP, ECF No. 1 ¶ 1. DCG further alleged that Plaintiffs' claims are "derivative claims that belong exclusively to the Debtors." Id. ¶¶ 2–4.

12.    Those allegations were not incidental. They were the premise of DCG's requested injunction. DCG asked the Bankruptcy Court to decide whether Plaintiffs may prosecute their district court claims at all. That is a threshold issue that may affect the content, scope, parties, and claims in any Second Amended Complaint.

13.    Although DCG alone filed the AP, the resulting procedural problem affects this case as to all Defendants. Plaintiffs do not contend that Mr. Silbert or Mr. Moro filed the AP. But all Defendants now oppose a scheduling accommodation, and none have at any time in this court stated that they oppose

5

DCG's filing of the AP. The AP's threshold issues are not limited to DCG: the claim transfer, standing, CM LLC, Jefferies, and ownership issues implicated by the AP overlap defenses raised or expected from all Defendants. See ECF No. 83 at 3.

14.     DCG also acknowledged in the Bankruptcy Court that it had not asked this Court to decide the derivative issue. In opposing the Debtors' motion to enforce the Plan, DCG stated that although it had moved to dismiss this action, "it has not asked that court to determine whether the Sokolowskis assert derivative claims" and instead had noted that it would seek relief in the Bankruptcy Court to address Plaintiffs' alleged assertion of estate causes of action. Objection to Debtors' Motion to Enforce the Plan at 6, Genesis Bankruptcy, ECF No. 2213.

15.     That concession is important. Defendants now argue that the AP should not affect the timing of this case. But DCG itself chose to place the direct-versus-derivative issue in the Bankruptcy Court rather than ask this Court to decide it in the ordinary motion to dismiss posture. Having made that choice, DCG cannot fairly insist that Plaintiffs must draft and file a new complaint immediately, without regard to the very AP DCG filed to restrain that complaint.

16.     Whether an order in the AP would be advisory, whether DCG has standing there, whether the Plan is self-executing, whether Section 105 relief is available, and whether the Bankruptcy Court should defer to this Court are issues

6

for the Bankruptcy Court. This Court need not—and should not—deny a Fed. R. Civ. P. 6(b) extension by making merits predictions about a separate federal proceeding. Plaintiffs' point is not that this Court should decide the AP. Plaintiffs' point is that the AP exists, that DCG filed it, that it seeks to restrain Plaintiffs' prosecution of this action, and that its threshold issues may materially affect the proper scope of the amended pleading. That is a case management fact, not an invitation for this Court to adjudicate the AP.

17.    Defendants also overstate the AP record by presenting discovery as if it were only Plaintiffs' preference. It was not. On August 21, 2025, the Debtors sent an email stating that "the estate expects to seek discovery in connection with this proceeding, including for potential presentation to the Court as part of a merits hearing," and offered to hold a Fed. R. Civ. P. 26(f) conference. Ex. A, Aug. 21, 2025 email from Laura King to Elliot Moskowitz, Stephen H. Sokolowski, and Christopher H. Sokolowski. Days later, the Debtors asked the Bankruptcy Court for a conference concerning the AP counterclaim, DCG's preliminary injunction motion, and the Debtors' Plan enforcement motion; stated that they needed limited discovery concerning the Jefferies Agreement; described ownership of the claims DCG sought to enjoin as a "gating, jurisdictional issue"; and stated that discovery might be necessary "to join Jefferies in the AP." Aug. 25, 2025 email from Laura King to Chambers, AP, ECF No. 35, Ex. B. DCG may disagree with the Debtors'

7

position, but DCG cannot erase it. Whether discovery, joinder, or any merits ruling is appropriate in the AP is for the Bankruptcy Court to decide, not for DCG to foreclose by assertion in this Court. See Fed. R. Bankr. P. 7016, 7019, 7021, 7026. That unresolved procedural posture is part of the good cause for a fixed extension here.

18.     Defendants' "plain words" argument (ECF No. 85 at 19) regarding the Jefferies Agreement proves too much. Plaintiffs do not seek discovery because they cannot read the Jefferies Agreement; they seek time because Defendants, the Debtors, and Jefferies have used that agreement to create threshold ownership and standing disputes that may affect the proper scope of the Second Amended Complaint. The Jefferies Agreement is not a simple transfer of Plan distributions. Its text reaches, among other things, DOJ forfeiture/remission funds, future class actions and other cases against non-debtor third parties, litigation related to "Genesis's conduct or actions," and legally unassignable rights through a fallback "participation" mechanism, while also acknowledging possible non-public information, imposing indemnification obligations, and restricting disclosure of the agreement's existence. ECF No. 60-2, Ex. N.

19.     Defendants may ultimately argue that those provisions are enforceable, unenforceable, irrelevant, or dispositive. But their existence refutes

8

Defendants' assertion that "no discovery is conceivably necessary in the Adversary Proceeding." ECF No. 85 at 17.

20.    Defendants also do not offer the one representation that would undercut Plaintiffs' good cause showing: they do not state that DCG will dismiss the AP or refrain from using any Second Amended Complaint filed here as a basis to reactivate or advance bankruptcy court injunction proceedings. If Defendants' position is that the AP has no current purpose until a new complaint is filed, that does not defeat good cause; it confirms that filing the Second Amended Complaint is the very event that may give the AP renewed purpose. Defendants therefore seek to preserve the AP as a litigation tool while denying that it matters for scheduling. That is not a reason to deny relief; it is a reason to grant a reasonable, fixed extension.

## B    The Requested Extension Promotes the Rule 8 Reset the Court Ordered

21.    The Court has already identified the problem Plaintiffs must solve. Judge Carlson recommended, and this Court ordered, a "fundamental reset" so that Plaintiffs file a proper, focused amended complaint that complies with Rule 8. ECF Nos. 72, 78. Judge Carlson also recognized that, given the complexity and gravity of the claims, seeking counsel was prudent, and that securing counsel would promote orderly litigation rather than delay it. ECF No. 72 at 10–12.

9

22. Plaintiffs' request follows that directive. Plaintiffs are not trying to refile the rejected proposed Second Amended Complaint. Plaintiffs are trying to avoid another overbroad protective pleading. The risk is straightforward: if Plaintiffs must file before the threshold AP issues are clarified or before counsel can account for them, Plaintiffs may be forced to plead broadly to avoid later arguments that omitted facts, theories, parties, or claims were abandoned. That would risk reproducing the very problem the Court identified.

23. Rule 8 requires a short and plain statement, and allegations must be simple, concise, and direct. Fed. R. Civ. P. 8(a)(2), 8(d)(1). But the Third Circuit recognizes that Rule 8 is practical and context-dependent: a complaint must be understandable and manageable, while complex cases may require factual detail. *Garrett v. Wexford Health*, 938 F.3d 69, 92–94 (3d Cir. 2019). The requested extension serves both sides of that standard. It gives Plaintiffs time to reduce, focus, and discipline the pleading, while accounting for threshold issues DCG placed before the Bankruptcy Court.

24. Defendants frame the extension as delay. It is the opposite. A rushed complaint filed in the shadow of DCG's AP risks wasteful parallel motion practice, renewed injunction disputes, and another Rule 8 battle. A fixed, date-certain extension gives this Court control over the schedule while making it more likely

10

that the next complaint will be the narrower pleading the Court directed Plaintiffs to file.

### C  The Prior Consent Extension Correspondence Does Not Bar Relief

25.    Defendants emphasize that Plaintiffs previously agreed, in connection with a shorter consent extension, not to seek further extensions. Plaintiffs do not minimize that correspondence. But it does not bar relief under Fed. R. Civ. P. 6(b).

26.    First, the earlier "no further extension" condition was tied to a different motion seeking different relief: a thirty day extension based on counsel's review of evidence for the amended complaint in this action. ECF No. 79. That motion has been withdrawn. ECF No. 84. The operative motion is ECF No. 82, which seeks no extension of the stay and rests on a materially different procedural development: Plaintiffs have hired New York counsel to address the AP that DCG filed, and the AP may affect the proper scope of the Second Amended Complaint.

27.    Second, Fed. R. Civ. P. 6(b)(1)(A) commits deadline extensions to the Court's discretion when a motion is filed before the deadline expires. Fed. R. Civ. P. 6(b)(1)(A). A private scheduling condition between parties may be relevant to the Court's assessment of reasonableness, but it does not divest the Court of its authority to manage its docket. See *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (recognizing courts' inherent authority to manage their proceedings).

28.     Third, circumstances have changed in the way Plaintiffs represented they would. Plaintiffs have begun addressing the AP through New York counsel. The point of the requested extension is not to defer work indefinitely; it is to permit that work to inform a disciplined amended pleading here.

**D  Defendants' Collateral Factual Narrative Does Not Defeat Good Cause**

29.     Defendants devote substantial attention to public commentary, social media posts, and allegations from the rejected proposed complaint. That discussion does not decide this motion.

30.     This motion is not a motion to dismiss a complaint that has not yet been filed. Plaintiffs do not ask the Court to decide the truth, falsity, or legal significance of public statements on this Fed. R. Civ. P. 6(b) motion. To the extent a future Second Amended Complaint contains factual allegations overlapping with matters discussed publicly, those allegations will be tested under the ordinary pleading and discovery rules. Defendants may deny them, move against them, or seek appropriate relief after the pleading is filed. But pejorative labels applied to unpleaded matters are not a substitute for applying the Federal Rules in the proper procedural posture.

31.     Nor do Defendants' generalized accusations that Plaintiffs seek time to "fabricate additional falsehoods" or "falsely attack" Defendants change the

12

analysis. ECF No. 85 at 20–21. Such labels do not identify which specific factual propositions are supposedly false, do not provide an evidentiary record for resolving them, and do not transform a scheduling motion into a premature merits adjudication.

32.     Defendants' collateral discussion actually confirms why a measured extension is appropriate. Defendants are already previewing arguments they intend to make against a future amended complaint. That makes it more important—not less—that Plaintiffs file a focused, counsel-informed pleading rather than a rushed submission drafted under the threat of renewed bankruptcy court injunction proceedings and preemptive character attacks.

33.     Defendants' reliance on public commentary also does not establish prejudice from the requested extension. Defendants argue that they should not have to "sit idly by for six more months" while Plaintiffs allegedly disparage them on social media. ECF No. 85 at 21. But denying the extension would not end this case, resolve the merits, or regulate public commentary. It would only accelerate the filing of a Second Amended Complaint, after which Defendants would remain free to move against that pleading. If Defendants believe any public statement is actionable, they may seek appropriate relief in the proper procedural vehicle. They have not filed a defamation claim, sought an injunction against speech, or shown

13

that the amendment deadline causes or cures the alleged reputational harm. That is not litigation prejudice under Rule 6(b).

34.    Defendants' collateral narrative also blurs basic record distinctions, which further illustrates why the Court should not decide this motion based on character attacks rather than the Rule 6(b) standard.[1,2]

35.    The same is true of Defendants' references to AI-assisted drafting: Defendants identify no violation of any Court order or rule governing generative AI use, and no court has ruled that Plaintiffs' disclosed AI-assisted drafting was improper. Plaintiffs are *pro se* litigants, not trained counsel.[3]

---

[1] Cryptocurrency Management LLC ("CM LLC") is not a plaintiff in this action, is not a plaintiff in the Connecticut Action, and is not a defendant in DCG's AP; DCG's AP named only Vincent Falco, Stephen H. Sokolowski, and Christopher H. Sokolowski as the "Creditor Defendants." AP, ECF No. 1 ¶ 1; see also ECF No. 85 at 6 (describing the AP as seeking to enjoin "Plaintiffs and Vincent Falco"). Defendants nevertheless refer to CM LLC as "their company" and "Plaintiffs' own company," ECF No. 85 at 2, 18–19, although CM LLC is solely owned by Stephen Sokolowski. ECF No. 60-1 ¶ 33; ECF No. 22-8 at 2. Defendants also describe CM LLC as "created . . . to aggregate and invest digital assets and funds on behalf of Plaintiffs, their business (Prohashing), and others," ECF No. 85 at 3, although the cited allegations describe a passthrough conduit created to meet Genesis's minimum deposit thresholds, not an independent operating business, investment adviser, or fund. See ECF No. 60-1 ¶¶ 100–03, 107–12. Finally, Defendants attribute public commentary to "Plaintiffs" collectively, see ECF No. 85 at 2, 10–11, 21, but Defendants' examples identify only Stephen Sokolowski, and Defendants identify no public commentary by Christopher Sokolowski regarding this case. Plaintiffs note these corrections only because Defendants' collateral narrative should not be accepted as record fact; none affects the Fed. R. Civ. P. 6(b) analysis.

[2] Defendants likewise mischaracterize Plaintiffs' New York preliminary injunction opposition as asserting a "bizarre and unintelligible purported conspiracy" among DCG, the Genesis estate, Falco, counsel, and others. ECF No. 85 at 7. Its Argument 2 expressly stated: "the Sokolowskis do not accuse any specific party of any specific act implied below"; rather, they "simply lay out the known facts for the Court," and the proposed discovery protocol was "requested simply to clarify the record before an equitable remedy is awarded." ECF No. 85-4 at 21.

[3] As such, Defendants' X post exhibits regarding AI usage, e.g. discussing the summarization ability of models, ECF No. 85, Ex. 12, and stating that the ongoing improvement in models has caused "faith that things are going to work out somehow", ECF No. 85, Ex. 10, are inappropriate and prejudicial, and should be disregarded.

14

**E  Defendants' Authorities Are Narrow and Do Not Support Their Expanded Propositions**

36.     Defendants' authorities are narrow. They involve missed deadlines, post-judgment reconsideration, untimely discovery motions, arbitration agreements, or ordinary contract interpretation. None addresses this posture: a timely Rule 6(b)(1)(A) request for a fixed pleading extension after this Court ordered a Rule 8 reset and after DCG filed an AP seeking to enjoin Plaintiffs from prosecuting this action.

37.     First, *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086 (3d Cir. 1995), does not impose the rigid rule Defendants suggest. *MCI* was a service-of-process case under former Fed. R. Civ. P. 4(j): service occurred after the 120-day period, MCI sought no extension, and the Third Circuit found no "good cause" for the unexplained delay. Id. at 1096-98. Here, Plaintiffs moved before the deadline and identified a concrete case management reason: DCG's AP may affect the amended pleading's scope. *MCI* nonetheless let the case proceed because Rule 4(m)  permitted discretion even absent good cause. Id. at 1098. *MCI* therefore supports deadline management discretion, not denial.

38.     Second, *Sharifi v. Township of East Windsor*, No. 23-1714 (3d Cir. Dec. 12, 2023), is still farther afield. *Sharifi* was a nonprecedential post-deadline Fed. R. Civ. P. 6(b)(1)(B) case in which the plaintiff failed to amend, moved only

after the deadline expired, and offered no explanation beyond generalized references to "well being" and jury duty. Id. at 2, 4. The Third Circuit emphasized that she "provided no explanation for her failure to meet the District Court's deadline." Id. at 4. Plaintiffs here identified DCG's AP, explained its pleading relevance, and sought a fixed date. *Sharifi* holds only that an unexplained post-deadline request need not be granted.

39.    Third, *In re Human Tissue Products Liability Litigation*, No. 2:06-cv-00135-WJM-MF, MDL No. 1763, ECF No. 762 (D.N.J. Mar. 18, 2009), does not make the AP irrelevant. *Human Tissue* was a post-judgment MDL reconsideration decision refusing an amended causation order about tissue not involved in any pending complaint, because the requested ruling would have been advisory. Id. at 19-20. Plaintiffs seek no advisory merits ruling. They seek scheduling relief because DCG preserved an AP it filed to enjoin this action and has not represented that it will dismiss or refrain from reactivating that AP after amendment. *Human Tissue* may bear on what the Bankruptcy Court should decide; it does not defeat good cause here.

40.    Fourth, *LabMD, Inc. v. Tiversa Holding Corp.*, No. 2:15-cv-00092-MPK, ECF No. 408 (W.D. Pa. July 15, 2019), is not a Rule 6 scheduling case. *LabMD* denied a twenty-month-delayed motion to compel, filed after fact discovery closed, in a case narrowed to two defamation statements. Id. at 1-2, 5-7.

16

Its concern was a "fishing expedition" for other cases. Id. at 6-7. Plaintiffs seek no discovery order from this Court; they seek time to file a narrower pleading after counsel accounts for threshold issues in the AP DCG filed.

41.   Fifth, *Tigue v. Commercial Life Insurance Co.*, 631 N.Y.S.2d 974 (N.Y. App. Div. 1995), and *Abreu v. Fairway Market LLC*, No. 17-CV-9532 (VEC), ECF No. 36 (S.D.N.Y. July 24, 2018), do not resolve the Jefferies issues on this scheduling motion. *Tigue* was a security interest dispute over agency agreements and renewal commissions. 631 N.Y.S.2d at 975. Abreu involved signed employee arbitration agreements; the quoted "subjective knowledge" language applied only absent fraud or unlawful conduct. No. 17-CV-9532 (VEC), ECF No. 36 at 4–5. Neither case involved a bankruptcy claims trade, UTPCPL assignability, estate-property issues, or direct-versus-derivative analysis. And neither holds that a timely extension may be denied because a defendant predicts a later contract-interpretation issue will defeat the plaintiff.

42.   Finally, even accepting Defendants' quotation from *Pilchesky v. Lackawanna County*, No. 3:16-CV-2537, ECF No. 58 (M.D. Pa. Feb. 22, 2018), that case does not justify denial here. Defendants cite *Pilchesky* for "a pattern of serial delays, inspired by serial amendments" that frustrated dispositive motion practice. Id. at 37-38. Plaintiffs are not seeking leave to file another sprawling pleading or to moot a pending dispositive motion. The Court already denied the

17

prior motions as moot, rejected the proposed Second Amended Complaint, and ordered a narrower Rule 8 pleading. ECF Nos. 72, 78. *Pilchesky* condemns amendment practice that perpetuates disorder; Plaintiffs seek to avoid reproducing the disorder this Court identified.

43.     Defendants' authorities therefore turn on facts absent here. Plaintiffs moved before the deadline, seek no merits ruling or discovery order, and request time to file the disciplined Rule 8 pleading this Court required. A fixed, date-certain extension will let Plaintiffs account for the AP DCG filed, reduce the risk of another overbroad protective pleading, and preserve this Court's control over the schedule.

## F   Defendants Show No Cognizable Prejudice From a Fixed Extension

44.     Defendants identify no concrete litigation prejudice from the requested extension. This case remains at the pleading stage. No Defendant has answered. No discovery has begun in this Court. No trial date exists. Extending the amendment deadline does not impair any Defendant's ability to challenge the Second Amended Complaint after it is filed. Nor have Mr. Silbert or Mr. Moro shown any independent prejudice from a fixed extension. The action remains in the same procedural posture to all Defendants.

45.     In the amendment context, leave to amend should be freely given absent reasons such as undue delay, bad faith, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Third Circuit law further explains that prejudice to the non-moving party is the touchstone and that delay alone is insufficient. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204–05 (3d Cir. 2006). *Dole v. Arco Chemical Co.* explains that the need to revise motion practice or perform additional work does not, without more, establish undue prejudice; the opposing party must show serious impairment of its ability to present its case. 921 F.2d 484, 488 (3d Cir. 1990). Defendants make no such showing here.

46.     Defendants' prior concurrence in an extension through June 18, 2026 also confirms that extending the pleading deadline causes no inherent prejudice. ECF Nos. 79, 80-1, 81. Plaintiffs recognize that Defendants did not consent to a six month extension. But their earlier concurrence undercuts any claim that a reasonable extension of a pleading deadline, before discovery and before any trial date, is inherently prejudicial.

### G  The Requested Relief Is Moderate Because It Is Date-Certain and Preserves the Court's Control

47.     Plaintiffs request a date certain: November 19, 2026. They do not ask this Court to wait until AP discovery is complete. They do not ask for an indefinite stay. They do not ask to extend the March 6 stay. Plaintiffs may file earlier if the

19

AP is clarified sooner, if counsel determines that filing is appropriate sooner, or if the AP does not proceed on a useful timetable.

48.    This structure is more moderate than an indefinite stay and more efficient than serial extension motions. It also preserves this Court's control over its docket. See *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). If the AP materially advances, the Second Amended Complaint can be better tailored. If the AP does not advance, Plaintiffs can still file by the outside date.

49.    In summary, Defendants seek the benefit of two inconsistent positions. In New York, DCG contends that Plaintiffs' prosecution of this action causes irreparable harm because the claims allegedly belong to the estate. In Pennsylvania, Defendants contend that the AP DCG filed to obtain that relief should have no effect on the timing of the complaint DCG seeks to restrain. The Court need not resolve which tribunal will ultimately decide any bankruptcy issue to recognize that Defendants' position creates avoidable procedural collision. A fixed extension addresses that collision without adjudicating the AP, without extending the stay, and without prejudging the future Second Amended Complaint.

## III    CONCLUSION

50.    Defendants' opposition asks this Court to decide far more than the motion presents. Defendants invite the Court to evaluate public commentary,

20

predict how the Bankruptcy Court will manage the AP, decide whether AP discovery or Jefferies joinder could ever be warranted, construe the Jefferies Agreement, assess the significance of disputed bankruptcy court filings, review how artificial intelligence should be used in legal proceedings, and treat unpleaded reputational complaints as scheduling prejudice. None of those issues is before the Court in an adjudicatory posture.

51.   Plaintiffs have not asked this Court to decide the AP, supervise bankruptcy discovery, resolve assignment or direct-versus-derivative merits questions, evaluate the circumstances surrounding the *Falco* case, or adjudicate any speech-related claim. This is a Rule 6 motion for a fixed extension of a pleading deadline. The only question is whether good cause exists to allow Plaintiffs additional time to file the disciplined Rule 8 pleading this Court directed, considering the AP that DCG filed and the threshold issues that proceeding has created.

52.   For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Second Motion for Extension of Time and extend the deadline to file the Second Amended Complaint to November 19, 2026, without extending the stay and without prejudice to Plaintiffs filing earlier.

53.   In the alternative, if the Court concludes that the requested six month extension is longer than necessary, Plaintiffs request that the Court extend the

21

deadline no earlier than June 18, 2026, the date to which Defendants previously agreed, or to a reasonable date after the Court's order if the Court rules after that date.


Dated: May 22, 2026

Respectfully submitted,


/s/ Stephen H. Sokolowski
Stephen H. Sokolowski, Pro Se
3178 Carnegie Drive
State College, PA 16803
(814) 600-9800
steve@shoemakervillage.org

/s/ Christopher H. Sokolowski
Christopher H. Sokolowski, Pro Se
3178 Carnegie Drive
State College, PA 16803
(814) 600-9804
chris@shoemakervillage.org

22