**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

STEPHEN H. SOKOLOWSKI and
CHRISTOPHER H. SOKOLOWSKI,
**Plaintiffs,**

v.

DIGITAL CURRENCY GROUP, INC.,
BARRY E. SILBERT,
SOICHIRO "MICHAEL" MORO,
**Defendants.**

Electronically Filed

Case No. 4:25-cv-00001

Hon. Karoline Mehalchick

**PLAINTIFFS' MEMORANDUM OF LAW**

**IN OPPOSITION TO DISMISSAL UNDER RULE 41(b) AND**

**RESPONSE TO THE REQUEST TO ADJOURN THE RULE 12(b)**

**DEADLINE**

# Table of Contents


Table of Contents ..... i
Table of Authorities ..... ii
Docket Reference Table ..... iv
Preliminary Statement ..... 1
Counterstatement of the Questions Involved ..... 2
Counterstatement of Facts and Procedural History ..... 2
Argument ..... 5
I. The October Complaint Follows the Court's Direction to Narrow the Case Under Rule 8 ..... 5
II. The Stay Expired as Ordered, and the Court Can Grant the Pending Extension Through October 19 ..... 7
III. The Focused Complaint Gives the Court a Practical Alternative to Dismissal Under Rule 41(b) ..... 11
A. Plaintiffs' Responsibility and the History of Delay ..... 12
B. Willfulness and the Allegation of Bad Faith ..... 13
C. Prejudice from the Delay and the Cost of Defending the Narrower Claim ..... 14
D. Meritoriousness of the Remaining Claim ..... 15
E. A Response Deadline and Warning as Alternatives to Dismissal ..... 16
Conclusion ..... 18

# Table of Authorities

## Cases

*Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund*,
29 F.3d 863 (3d Cir. 1994) .......... 14, 16

*Azubuko v. Bell National Organization*,
243 F. App'x 728 (3d Cir. 2007) .......... 12

*Bolus v. Bolus*,
No. 3:24-cv-2117, 2025 WL 1450545 (M.D. Pa. Apr. 25, 2025), *report and recommendation adopted in part*, 2025 WL 1448214 (M.D. Pa. May 20, 2025) .......... 18

*Briscoe v. Klaus*,
538 F.3d 252 (3d Cir. 2008) .......... 13, 16

*Emerson v. Thiel College*,
296 F.3d 184 (3d Cir. 2002) .......... 15

*Hildebrand v. Allegheny County*,
923 F.3d 128 (3d Cir. 2019) .......... 11, 13, 14, 19

*Lujan v. National Wildlife Federation*,
497 U.S. 871 (1990) .......... 8

*Poulis v. State Farm Fire & Casualty Co.*,
747 F.2d 863 (3d Cir. 1984) .......... 11, 12, 15, 17, 19

*Spain v. Gallegos*,
26 F.3d 439 (3d Cir. 1994) .......... 12

*Torres v. Gautsch*,
304 F.R.D. 189 (M.D. Pa. 2015) .......... 15

**Statutes**

15 Pa.C.S. § 8874(b) ....................4

Pennsylvania Unfair Trade Practices and Consumer Protection Law,
73 P.S. § 201-9.2(a) .................... 5, 6, 17, 20

**Rules**

Fed. R. Civ. P. 1 ....................17

Fed. R. Civ. P. 11 ....................10

Fed. R. Civ. P. 12, including 12(b) .................... 2, 12, 16, 18, 20

Fed. R. Civ. P. 15(a)(1)(B) ....................13

Fed. R. Civ. P. 26(f) ....................9

Fed. R. Civ. P. 41(b) .................... 2, 11, 20

Fed. R. Civ. P. 6(b)(1)(A) ....................8

Fed. R. Civ. P. 8, including 8(a)(2) and 8(d)(1) .................... 1, 5, 6, 12, 20

## Docket Reference Table

Sokolowski v. Digital Currency Group, Inc., No. 4:25-cv-00001 (M.D. Pa.)

| ECF No. | Filing or exhibit | First cited (in body) |
|---|---|---|
| 9 | DCG and Silbert's first motion to dismiss | 2 |
| 22 | First Amended Complaint | 2 |
| 24 | Moro's motion to dismiss the amended complaint | 2 |
| 25 | DCG and Silbert's motion to dismiss ECF 22 | 2 |
| 37 | DCG and Silbert's brief supporting dismissal | 10 |
| 44 | Plaintiffs' opposition to dismissal | 2 |
| 52 | DCG and Silbert's reply supporting dismissal | 2 |
| 53 | Moro's reply supporting dismissal | 2 |
| 60 | Motion for leave to amend and supporting brief | 2 |
| 61 | Motion to stay and supporting brief | 3 |
| 63 | Amended motion to stay and supporting brief | 3 |
| 72 | Judge Carlson's Report and Recommendation | 1 |
| 78 | Order adopting the Report and Recommendation | 1 |
| 79 | Consent motion to extend stay and filing deadline | 3 |

**Docket Reference Table (continued)**

| ECF No. | Filing or exhibit | First cited (in body) |
|---|---|---|
| 80-1 | Correspondence about the consent extension | 3 |
| 81 | Plaintiffs' reply on the consent extension | 3 |
| 82 | Second motion to extend the filing deadline | 1 |
| 83 | Plaintiffs' brief supporting ECF 82 | 8 |
| 84 | Withdrawal of ECF 79 and clarification of ECF 82 | 3 |
| 85 | Defendants' joint opposition to ECF 82 | 3 |
| 85-7 | Correspondence adjourning the New York hearings | 9 |
| 86 | Defendants' notice of missed filing deadline | 3 |
| 87 | Plaintiffs' reply supporting ECF 82 | 3 |
| 87-1 | August 21, 2025 email about discovery | 8 |
| 96 | Second Amended Complaint | 4 |
| 97 | Rule 41(b) motion and Rule 12(b) scheduling request | 2 |
| 98 | Defendants' brief supporting ECF 97 | 1 |
| 98-1 | Declaration of Daniel J. Schwartz | 4 |
| 98-2 | New York adversary proceeding docket | 9 |

**Preliminary Statement**

Plaintiffs missed the May 19 deadline to file the Rule 8 pleading the Court directed. Although they requested an extension before the deadline, the Court had not granted it, and Plaintiffs accept responsibility for the delay. ECF Nos. 78, 82.

Defendants argue that Plaintiffs could readily have filed their single consumer claim by May 19. ECF No. 98 at 2, 6. But in his Report and Recommendation filed in response to the January 2, 2026 proposed Second Amended Complaint (the "Report"), Judge Carlson called for a "fundamental reset" after Plaintiffs proposed adding racketeering claims and accusing nonparties. ECF No. 72 at 2–6. Before Defendants moved, Plaintiffs had removed those claims and accusations and filed a 31-page complaint identifying each Defendant's alleged conduct. Defendants identify no financial prejudice from the delay itself; the costs they cite preceded May 19 or arise from the amended pleading the Court authorized. ECF No. 98 at 8–9, 13–14. The Court can set the next deadline and warn Plaintiffs of the consequences of missing it. Plaintiffs ask the Court to deny dismissal and grant the pending extension only through October 19.

**Counterstatement of the Questions Involved**

1. Does the missed deadline warrant dismissal with prejudice under Rule 41(b) when the narrowed complaint was already on file before Defendants moved? Plaintiffs submit that it does not.

2. As an alternative to dismissal, can the Court accept the October 19 filing by granting the timely extension request at ECF No. 82? Plaintiffs submit that it can.

3. Should Defendants' deadline to move under Rule 12(b) be adjourned until fourteen days after disposition of ECF No. 97? Plaintiffs do not object to additional time but prefer a fixed date.

**Counterstatement of Facts and Procedural History**

DCG and Silbert first moved to dismiss on March 4, 2025. Plaintiffs amended on March 25, the twenty-first day after service. Defendants moved to dismiss the First Amended Complaint, Plaintiffs opposed, and briefing concluded in July. ECF Nos. 9, 22, 24, 25, 44, 52, 53. On January 2, 2026, Plaintiffs sought leave to add parties and claims based on newly discovered information. They asked the Court to address the pending motions as it deemed efficient and expressly contemplated renewed motions. ECF No. 60 ¶¶ 6(d), 9. On January 9, Plaintiffs

filed an amended motion that expressly superseded their January 2 motion to stay (ECF No. 61). ECF No. 63 at 1.

The Report recommended resolving the earlier motions as moot, rejecting the proposed pleading with leave to file a focused replacement, and briefly staying the case so Plaintiffs could seek counsel. ECF No. 72 at 5–7, 10–13. On March 6, Judge Mehalchick adopted the Report in its entirety, granted leave to amend, and directed Plaintiffs to file a replacement. The stay ran through May 5; if Plaintiffs had not retained counsel by then, their *pro se* pleading was due May 19. ECF No. 78 at 3–4.

On April 26, while a prospective attorney reviewed the matter, Plaintiffs sought thirty more days. They accepted the condition that they would seek no further extension and confirmed it to the Court. ECF No. 79 ¶¶ 3–6; ECF No. 80-1; ECF No. 81 ¶¶ 1–3. On May 5, having elected to retain counsel in New York, Plaintiffs asked the Court to let the Pennsylvania stay expire and to extend the pleading deadline to November 19 or, alternatively, June 18. ECF No. 82 ¶¶ 1–4, 6–8. On May 6, they withdrew the consent motion and proposed orders while preserving the alternative request at ECF No. 82. ECF No. 84 ¶¶ 1–5. Defendants opposed on May 14 and notified the Court on May 21 that the deadline had passed. Plaintiffs replied on May 22. ECF Nos. 85–87.

New York counsel appeared for Plaintiffs on May 22 and conferred with DCG's counsel on May 27. ECF No. 98-1 ¶¶ 7–8. In June, Plaintiff Stephen Sokolowski ("Stephen") reviewed the potential Genesis claims of PROHASHING LLC ("PROHASHING"), a proposed plaintiff in January. Stephen Decl. ¶ 1 (Ex. 1); ECF No. 60 ¶ 3. Cryptocurrency Management LLC ("CM LLC") dissolved on June 21, and PROHASHING had dissolved by August. ECF No. 96 ¶ 14; Christopher Decl. ¶ 1 (Ex. 2). Stephen mailed certified notices to DCG, Silbert, and Jefferies on June 24 and further notices in July. The notices set deadlines for presenting written claims against CM LLC so those claims could be identified in winding up, outside this action. Stephen Decl. ¶ 2; 15 Pa.C.S. § 8874(b). Plaintiffs also used the Jefferies notice to identify any contractual claim it intended to assert against CM LLC and, if possible, narrow the issues requiring discovery. Stephen Decl. ¶ 2.

Drafting of the Pennsylvania complaint was underway in July. Stephen Decl. ¶ 6. Plaintiffs had already checked the depositors' losses. In August and September, as PROHASHING wound down, Plaintiff Christopher Sokolowski ("Christopher") further checked its balances, and each Plaintiff's, against the underlying records. Plaintiffs located separate February 2023 agreements recording CM LLC's allocations of Genesis sale proceeds to Christopher and PROHASHING. Christopher Decl. ¶¶ 1–2 (Ex. 2).

Plaintiffs considered adding Xclaim, a bankruptcy claims marketplace, and Andrew Glantz, its representative in the Jefferies sale, as Defendants as proposed in January. ECF No. 60 ¶ 3. Stephen mailed them a tolling proposal on September 11. Plaintiffs omitted the alternative claim from the complaint because its expected benefit did not justify defending Xclaim's and Glantz's additional motions. Stephen Decl. ¶ 3. In June, after finding that PROHASHING's systems had been compromised, Plaintiffs took their business systems offline and preserved their data as it then stood. That security work accounted for part of the delay. In September and October, Stephen helped rebuild the websites from the preserved data for records review and discovery. By October 19, he, Henry Sokolowski, and Jean Sokolowski had signed an agreement resolving potential family claims to the covered wallet assets. *Id.* ¶¶ 4–5. The October complaint seeks recovery only for the two individuals' own reliance injuries, not for CM LLC or any other nonparty. ECF No. 96 ¶¶ 7, 104. Defendants moved ten days later. ECF Nos. 97–98.

## Argument

### I. The October Complaint Follows the Court's Direction to Narrow the Case Under Rule 8

The Report described the original complaint as alleging, "[a]t bottom," a cryptocurrency scheme in violation of Pennsylvania's consumer protection law.

ECF No. 72 at 2. The January proposal, by contrast, ran to 946 pages with its exhibits; it added racketeering, conspiracy, and other claims and made accusations against named nonparties. The Report called for a "fundamental reset of this lawsuit" so that the parties could focus and clarify the issues. *Id.* at 3–6. It recommended rejecting the proposed pleading under Rule 8 but granting leave to amend. *Id.* at 7–10, 12. The Court adopted that course. ECF No. 78 at 2–3.

Rule 8(a)(2) requires a short and plain statement showing entitlement to relief, and Rule 8(d)(1) requires simple, concise, and direct allegations. The First Amended Complaint itself ran 81 pages and 163 numbered paragraphs. ECF No. 22. The October complaint runs 31 pages and 119 numbered paragraphs. It pleads a single count under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), identifies what DCG, Silbert, and Moro allegedly did, and omits the additional accusations against nonparties that the Report criticized. ECF No. 72 at 3–5, 9–10; ECF No. 96 ¶¶ 46–49, 91–97, 105–119. Its length is within the 100-page limit the Report suggested the Court might impose. ECF No. 72 at 10 n.2.

The changes are substantive, not merely editorial. The earlier pleading, for example, described an offer to open a trading account. ECF No. 22 ¶ 68(e). The October pleading specifies when Genesis activated trading for CM LLC, how an

accepted quote fixed the price before settlement, and how an existing loan could be converted and rebooked. ECF No. 96 ¶¶ 37–38.

The Report also questioned the breadth of the proposed relief. ECF No. 72 at 4–5. The October complaint addresses that concern: it identifies each Plaintiff's assets, acknowledges Jefferies's ownership of CM LLC's bankruptcy claim, and seeks relief for the two Plaintiffs' own injuries, subject to offsets for amounts received for the same loss. ECF No. 96 ¶¶ 7, 99–104, 115–119. Defendants acknowledge the removal of the January claims and parties, yet infer from the single remaining count that Plaintiffs filed essentially the same complaint as the First Amended Complaint. ECF No. 98 at 6, 9, 12. But retaining the consumer claim while making its factual basis more specific served the very purpose for which the Court required amendment.

## II. The Stay Expired as Ordered, and the Court Can Grant the Pending Extension Through October 19

Rule 6(b)(1)(A) permits an extension for good cause when the request is made before the deadline. Plaintiffs filed ECF No. 82 fourteen days before May 19, although its pendency did not extend the deadline. Defendants cite *Lujan v. National Wildlife Federation*, 497 U.S. 871, 895–98 & n.5, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990), where the Supreme Court upheld exclusion of late affidavits in

the absence of an adequate request to extend the time for their submission. ECF No. 98 at 11 n.3. Here, by contrast, the Court has a timely motion directed to the precise deadline in question, and it may decide that request now and limit relief to the date Plaintiffs filed.

The Report recommended time to seek counsel while preserving Plaintiffs' obligation to file *pro se* if that effort failed. ECF No. 72 at 11–13. No lawyer appeared for Plaintiffs here, and their May motion disclosed their change in plan. In the New York adversary proceeding, DCG sought to enjoin this suit on the grounds that the claim belonged to the Genesis estates (the "Debtors"). ECF No. 98-1 ¶¶ 2–4. Before the deadline, Plaintiffs explained why it mattered to a focused complaint which claims they could assert personally after CM LLC's sale. ECF No. 83 ¶¶ 6, 12–16. The October pleading limits their claim to their individual reliance injuries. ECF No. 96 ¶¶ 7, 100–104.

Plaintiffs said they would seek to resume the New York proceeding and pursue discovery there. ECF No. 82 ¶ 4. Defendants say Plaintiffs already had the Jefferies agreement, ECF No. 98 at 5, but the discovery Plaintiffs described concerned how that contract was "structured or used" and the "related communications," not just the document itself. ECF No. 83 ¶¶ 15–16. In 2025 the Debtors anticipated discovery and offered to confer under Rule 26(f). ECF No. 87-1 at ECF p. 2. In January, Judge Lane granted DCG's request to adjourn the

injunction and plan enforcement hearings without date. ECF No. 85-7 at ECF pp. 2–3. By DCG's own account, "there have been no further substantive developments" in New York since that adjournment. ECF No. 98-1 ¶ 5.

DCG's counsel reports that after the May 27 call about that adjournment, Plaintiffs served no discovery or third-party subpoena notices on DCG and sought no further relief in New York. ECF No. 98-1 ¶¶ 8–9. The expected cost of that discovery and Jefferies's nonresponse to the CM LLC claims submission notice were two reasons Plaintiffs chose to proceed on the existing record. Christopher Decl. ¶ 3; Stephen Decl. ¶ 2. No New York ruling clarified ownership or assignment before October 19. ECF No. 98-2.

Defendants cite the absence of New York discovery and the complaint's silence about the deadline as evidence of pretext. ECF No. 98 at 6, 11. Yet in May, Defendants argued that the bankruptcy court needed an operative Pennsylvania complaint and could decide from its face, without discovery, whether the claims belonged to the Genesis estate. ECF No. 85 at 3, 16–17. The absence of discovery therefore says little, by itself, about Plaintiffs' purpose. As for the complaint's silence, the Report called for a concise statement of the claims, and Plaintiffs addressed timing in their extension papers. ECF No. 72 at 8–10, 12. Those papers expressly contemplated filing "by the outside deadline based on the then-existing

record" if New York remained inactive. ECF No. 83 ¶¶ 18–19; ECF No. 87 ¶¶ 47–48.

Plaintiffs asked for more time after giving the April assurance. But they disclosed the change before May 19 and withdrew the consent request before receiving its benefit, and that change of position does not by itself establish that the April assurance was false when made. Their reply also offered a shorter extension or status reports. ECF No. 84 ¶¶ 3–5; ECF No. 87 ¶¶ 9, 25–28, 53.

DCG and Silbert had disputed whether Plaintiffs or CM LLC made the loans, invoking Rule 11 and referring to "sanctionable conduct." ECF No. 37 at 2, 4–5. Therefore, Plaintiffs began their broader evidence review in late August or early September. Stephen roughly estimates that it covered 500,000 emails and other documents, a figure offered only to show scale that could differ substantially. They checked the allocations, excluded PROHASHING's losses, and accounted for sale proceeds. They filed October 19, before a New York ruling or the Jefferies notice deadline. Stephen Decl. ¶¶ 2, 6; Christopher Decl. ¶¶ 1–3; ECF No. 96 ¶¶ 7, 99–104. That work supports granting the timely request through the actual filing date.

**III. The Focused Complaint Gives the Court a Practical Alternative to Dismissal Under Rule 41(b)**

Rule 41(b) addresses both failure to prosecute and failure to comply with a court order. In deciding whether dismissal is warranted, the Court weighs six factors: personal responsibility, prejudice to the defense, the history of delay, willfulness or bad faith, effective alternatives, and the merits of the claim or defense. *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868–70 (3d Cir. 1984). The factors must be considered together, and no single factor controls. Dismissal with prejudice is a last resort, and close cases should be resolved in favor of reaching the merits. *Hildebrand v. Allegheny County*, 923 F.3d 128, 132, 134–37 (3d Cir. 2019).

Defendants invoke the exception for conduct that makes adjudication impossible. ECF No. 98 at 7. In *Spain v. Gallegos*, 26 F.3d 439, 454–55 (3d Cir. 1994), the plaintiff expressly refused to try her remaining claims after an adverse ruling and a warning. In *Azubuko v. Bell National Organization*, 243 F. App'x 728, 729 (3d Cir. 2007) (per curiam) (nonprecedential), the plaintiff never supplied a replacement after a Rule 8 order and an express dismissal warning. Here the March order set a deadline without expressly warning of dismissal. ECF No. 78 at 3–4. Plaintiffs filed the replacement before Defendants moved, and Defendants

themselves identify issues they can raise under Rule 12. ECF No. 98 at 12–15. Because adjudication is possible, the *Poulis* factors should be weighed.

**A. Plaintiffs' Responsibility and the History of Delay**

Plaintiffs were responsible for the late filing, which came five months after May 19. But conduct that "occurs one or two times is insufficient to demonstrate a 'history of dilatoriness.'" *Briscoe v. Klaus*, 538 F.3d 252, 261 (3d Cir. 2008). An extensive delay can create such a history, but when the delay is "an isolated incident," that fact "should serve to mitigate the weight" of this factor. *Hildebrand*, 923 F.3d at 135 (three-year delay). Defendants also count Plaintiffs' prior amendments as delay. The first amendment, however, was filed within the period allowed by Rule 15(a)(1)(B), and Plaintiffs opposed the motions directed to it. When they later proposed a broader pleading, they expressly contemplated renewed dismissal motions. ECF No. 60 ¶ 6(d). The Report explained that the proposal evinced an intent to abandon the First Amended Complaint and recommended deeming the pending motions moot, and the Court did so. ECF No. 72 at 6–7; ECF No. 78 at 3. That history explains why those motions did not produce a merits ruling; it lends little support to the inference that Plaintiffs amended to evade a decision. ECF No. 98 at 2, 8–10.

Defendants also count four stay or extension motions in 2026. *Id.* at 10. But the amended January stay motion expressly superseded the first, and the Court granted a single sixty-day stay. ECF No. 63 at 1; ECF No. 78 at 3–4. Plaintiffs withdrew the April request, and the May request left the end of the stay intact. ECF No. 84 ¶¶ 1–5.

**B. Willfulness and the Allegation of Bad Faith**

Willfulness turns on intentional or self-serving conduct; even inexcusable delay, standing alone, does not establish it. *Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 875–76 (3d Cir. 1994); *Hildebrand*, 923 F.3d at 135–36. Plaintiffs' timely extension request was still pending on May 19 and on May 21, when Defendants notified the Court that the deadline had passed; Plaintiffs replied the next day but did not then file the complaint. ECF Nos. 78, 82, 86–87. But they had disclosed before the deadline that they could file on the existing record if New York remained inactive, and they did so before Defendants moved. ECF No. 83 ¶¶ 18–19; ECF Nos. 96–97. Those acts weigh against the asserted purpose of evading adjudication.

In *Emerson v. Thiel College*, 296 F.3d 184, 190–91 (3d Cir. 2002), the court upheld a finding of willfulness where the plaintiff missed successive response deadlines and a hearing despite accommodations. In *Torres v. Gautsch*, 304 F.R.D.

189, 191–93 (M.D. Pa. 2015), the plaintiffs failed to respond to two status orders, one expressly warning of dismissal, and did not oppose the motion to dismiss. Here, by contrast, Plaintiffs filed the required pleading and are defending their right to proceed on it.

### C. Prejudice from the Delay and the Cost of Defending the Narrower Claim

Prejudice under *Poulis* is prejudice "caused by the failure to meet scheduling orders." 747 F.2d at 868. It generally includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories," or "the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Briscoe*, 538 F.3d at 259 (quoting *Adams*, 29 F.3d at 874). Defendants identify no evidence lost, no witness rendered unavailable, no discovery response missed in this action, and no trial date displaced during the delay. ECF No. 98 at 8–9, 14–15. Nor do they identify any expense incurred during the five months of delay; after their May 21 notice, their declaration describes only a May 27 call between counsel. ECF No. 98-1 ¶¶ 8–9. The costs Defendants cite came before the deadline or lie ahead. Both rounds of dismissal briefing predated May 19, and Defendants rely on that briefing to challenge the remaining count. ECF No. 98 at 8–9, 12–13. The Rule 12(b) motion they ask to defer, *id.* at 13–14, follows from the leave to amend that the

Report recommended without objection from Defendants and the March order granted, not from the delay; they would have faced the same motion had Plaintiffs filed on May 19. ECF No. 78 at 2–4. And the case Defendants now face costs less to defend: one count in 119 paragraphs, without exhibits, instead of the 163-paragraph First Amended Complaint and its exhibits. ECF Nos. 22, 96. The complaint separates each Plaintiff's losses from PROHASHING's and accounts for sale proceeds, and its allegations were checked against the underlying records, which should narrow discovery and damages disputes. ECF No. 96 ¶¶ 99–104; Stephen Decl. ¶ 6; Christopher Decl. ¶¶ 1–3. That serves the Rule 1 goal of an "inexpensive determination" the Report invoked. ECF No. 72 at 5.

### D. Meritoriousness of the Remaining Claim

The Court left the merits open when it disposed of the earlier motions. ECF No. 78 at 3. For this factor, the question is whether the allegations, if established at trial, would support recovery or constitute a complete defense. *Poulis*, 747 F.2d at 869–70. Each Plaintiff alleges that he obtained lending and account services through CM LLC for personal and household purposes and gave Genesis the use of his assets as consideration. Plaintiffs allege that Moro's June 17 statements about Genesis's exposure and its ability to service lenders contributed to their June renewal decisions, and that the September 21 balance sheet misrepresented the

liquidity of assets that included the long-term note DCG issued to Genesis. They identify the statements each received, why each renewed or retained assets he otherwise would have withdrawn, each Defendant's role, and the resulting losses. 73 P.S. § 201-9.2(a); ECF No. 96 ¶¶ 37–39, 46–49, 59–77, 84–99, 106–114.

Defendants challenge standing, invoke a waiver, and dispute whether Plaintiffs satisfy the statutory elements. ECF No. 98 at 12–13. Their earlier assignment and waiver arguments were directed to the First Amended Complaint. ECF No. 37 at 18–23. The October complaint identifies later, lender-specific representations and alleges that, although CM LLC sold its bankruptcy claim, neither individual authorized assignment of his personal claim. ECF No. 96 ¶¶ 63–68, 87–89, 100–104. The present motion cites the earlier briefing without addressing ¶¶ 88 and 101 of the October pleading. Defendants can present their challenges to the waiver, assignment, and consumer service allegations in a Rule 12 motion directed to ECF No. 96.

### E. A Response Deadline and Warning as Alternatives to Dismissal

Defendants argue that a lesser measure would be ineffective because the Court already directed a filing by May 19 and because *pro se* status "severely limits" the alternatives. ECF No. 98 at 12. The report in *Bolus v. Bolus*, No. 3:24-cv-2117, 2025 WL 1450545, at *1–2, *4–5 (M.D. Pa. Apr. 25, 2025), *report and*

*recommendation adopted in part*, 2025 WL 1448214 (M.D. Pa. May 20, 2025), concerned a plaintiff who refiled within days after dismissal and failed to oppose the new motion despite two orders warning of dismissal. In *Poulis*, the missed filings included discovery and a pretrial statement that the defense needed. 747 F.2d at 865–66. In *Hildebrand*, even the loss of a key witness during a three-year delay did not relieve the court of the need to consider effective alternatives. 923 F.3d at 134–37.

Whatever weight the Court gives the delay, the required pleading, unlike the missing submissions in Defendants' cases, was on file before Defendants moved. Nor does *pro se* status leave dismissal as the only option. Defendants identify no prior warning of dismissal or lesser sanction, and the Court can expressly warn Plaintiffs, set a firm schedule, and direct status reports.

Plaintiffs do not object to reasonable additional time for Defendants to move under Rule 12(b), but request a fixed calendar deadline measured from the October 19 service of the amended complaint. Defendants have had the pleading since that date and can prepare their substantive objections while this motion remains pending. Setting a briefing deadline would preserve the Court's discretion to decide this motion first while avoiding a further delay of uncertain duration.

**Conclusion**

The October complaint substantially addresses the Report's concerns about clarity under Rule 8, the breadth of the claims and relief, litigation expense, and fairness to nonparties. In 31 pages, it identifies each Defendant's alleged conduct, pleads a single UTPCPL count for Plaintiffs' own injuries, and omits the proposed accusations against nonparties. ECF No. 72 at 4–6, 9–10; ECF No. 96 ¶¶ 7, 99–119. Plaintiffs therefore respectfully ask the Court to deny Defendants' request for dismissal under Rule 41(b), to accept ECF No. 96 as filed on October 19, 2026, by granting the pending extension through that date, and to set a fixed date for Defendants' response to ECF No. 96.

Dated: November 2, 2026

Respectfully submitted,

/s/ Stephen H. Sokolowski
Stephen H. Sokolowski, *Pro Se*
3178 Carnegie Drive
State College, PA 16803
(814) 600-9800
steve@shoemakervillage.org

/s/ Christopher H. Sokolowski
Christopher H. Sokolowski, *Pro Se*
3178 Carnegie Drive
State College, PA 16803
(814) 600-9804
chris@shoemakervillage.org