UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

STEPHEN H. SOKOLOWSKI and CHRISTOPHER H. SOKOLOWSKI,

Plaintiffs,

- against -

DIGITAL CURRENCY GROUP, INC., BARRY E. SILBERT, and SOICHIRO "MICHAEL" MORO,

Defendants.

Electronically Filed

Civil Action No. 4:25-cv-00001

Hon. Karoline Mehalchick
Hon. Martin C. Carlson

Complaint filed January 2, 2025

# REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' FED. R. CIV. P. 41(b) MOTION TO DISMISS

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

MCCORMICK LAW FIRM
835 West 4th St,
Williamsport, PA 17701

*Attorneys for Defendants Digital Currency Group, Inc. and Barry E. Silbert*

ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000

KLEHR HARRISON HARVEY BRANZBURG LLP
1835 Market St., Suite 1400
Philadelphia, PA 19103

*Attorneys for Defendant Soichiro "Michael" Moro*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ....1

ARGUMENT ....2

A. Plaintiffs Bear Exclusive Responsibility for the Delay. ....3

B. Defendants Are Prejudiced. ....3

C. Plaintiffs Have a History of Dilatoriness. ....5

D. Plaintiffs' Conduct Was Willful and in Bad Faith. ....7

E. Lesser Sanctions Will Not Suffice. ....11

F. Plaintiffs' Claim Lacks Merit. ....13

CONCLUSION ....13

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*,
29 F.3d 863 (3d Cir. 1994) ....................8

*Bolus v. Bolus*,
2025 WL 1450545 (M.D. Pa. Apr. 25, 2025) (R. & R.), *adopted in relevant part*, 2025 WL 1448214 (M.D. Pa. May 20, 2025) ....................1, 4-6, 12-13

*Briscoe v. Klaus*,
538 F.3d 252 (3d Cir. 2008) ....................6

*Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co.*,
843 F.2d 683 (3d Cir. 1988) ....................9

*Emerson v. Thiel Coll.*,
296 F.3d 184 (3d Cir. 2002) ....................11-12

*Hildebrand v. Allegheny Cnty.*,
923 F.3d 128 (3d Cir. 2019) ....................8

*Mack v. Travelers Personal Ins. Co.*,
2022 WL 17480419 (M.D. Pa. Nov. 3, 2022) (R. & R.), *adopted*, 2022 WL 17477099 (M.D. Pa. Dec. 6, 2022) ....................4

*Poulis v. State Farm Fire & Cas. Co.*,
747 F.2d 863 (3d Cir. 1984) ....................2-5, 11-12

*Roman v. City of Reading*,
121 F. App'x 955 (3d Cir. 2005) ....................8

*Shingara v. Danville PSPCA*,
2026 WL 2883846 (M.D. Pa. Sep. 26, 2026) ....................1, 4-8, 12-13

STATUTES & RULES

Fed. R. Civ. P. 8 ....................3

Fed. R. Civ. P. 11 ....................10

Fed. R. Civ. P. 12 ....................5

Fed. R. Civ. P. 41 ........................................................................................ 1-2, 5, 13

Pursuant to the Court's November 5, 2026 Order (ECF No. 106), Defendants respectfully submit this reply brief in further support of so much of their Motion (ECF No. 97) as seeks dismissal of the SAC under Fed. R. Civ. P. 41(b).[1]

## PRELIMINARY STATEMENT

Plaintiffs admit that they failed to comply with the Court's order to file their SAC on or before May 19, 2026. They concede they were solely responsible for filing it five months after it was due. And they acknowledge that they did nothing in the interim to further this litigation—including pursuing discovery in the New York Action as they told the Court they would in May. Indeed, Plaintiffs do not contest a single fact adduced in support of Defendants' Motion. Nor do Plaintiffs even attempt to excuse their noncompliance and delay. As such, there is no serious dispute that this Action should be dismissed with prejudice pursuant to Rule 41(b). This Court has reached the same conclusion in two recent cases. *See Shingara v. Danville PSPCA*, 2026 WL 2883846 (M.D. Pa. Sep. 26, 2026) (Mehalchick, J.); *Bolus v. Bolus*, 2025 WL 1450545 (M.D. Pa. Apr. 25, 2025) (R. & R.) (Carlson, M.J.), *adopted in relevant part*, 2025 WL 1448214 (M.D. Pa. May 20, 2025). It should do so again here.

---

[1] Capitalized terms not defined herein are defined in Defendants' opening brief (ECF No. 98) ("Opening Brief" or "Br."). "Opposition" or "Opp." refers to Plaintiffs' opposition brief (ECF No. 99). Unless otherwise noted, all case citations omit internal citations, quotation marks, or alterations, and all emphasis is added.

Rather than offer any explanation for their flagrant violation of this Court's order and their failure to prosecute, Plaintiffs merely quibble with the application of the Third Circuit's six-factor test set forth in *Poulis*. But Plaintiffs do not meaningfully dispute half the factors (personal responsibility, dilatory history, and willfulness/bad faith), and the remaining three with which they ***do*** take issue likewise support dismissal. Defendants ***are*** prejudiced by Plaintiffs' delay tactics—both by the unnecessary costs they were forced to incur and the delay in the case's resolution. No sanctions less than dismissal would suffice because pro se litigants such as Plaintiffs typically cannot cover a cost award. Meanwhile, Plaintiffs' proposal that the Court simply set a new, "firm schedule" is no sanction at all, and in any event, Plaintiffs disregarded the last schedule. And, even if Plaintiffs' claims had merit—which they do not—that would not rescue this Action from dismissal where, as here, the other *Poulis* factors uniformly favor dismissal.

For these reasons and those set forth below and in Defendants' Opening Brief, the Court should dismiss this Action with prejudice pursuant to Rule 41(b).

## ARGUMENT

Defendants demonstrated in their Opening Brief that each *Poulis* factor strongly supports dismissing this Action based on Plaintiffs' violation of the Court's May 19, 2026 deadline for filing their SAC and for failure to prosecute. (*See* Br. at 7-13 (citing, *inter alia*, *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d

Cir. 1984)).) The Opposition offers no meaningful response.

### A. Plaintiffs Bear Exclusive Responsibility for the Delay.

In the very first paragraph of their Opposition, Plaintiffs admit that they "missed the May 19 deadline to file the Rule 8 pleading the Court directed" and "accept responsibility for the delay." (Opp. at 1; *see also id.* at 12 ("Plaintiffs were responsible for the late filing, which came five months after May 19.").) There is thus no dispute that this factor favors dismissal. (*See* Br. at 8.)

### B. Defendants Are Prejudiced.

Defendants were prejudiced by Plaintiffs' delay tactics and failure to comply with the Court's order: they were forced to incur additional litigation expenses from serially rebriefing the same issues, ***and*** resolution of this meritless case has been put off. (*Id.*) Plaintiffs do not dispute that they occasioned Defendants' increased litigation spend but merely assert that those "costs . . . came before the [May 19] deadline or lie ahead," implying that they cannot be attributed solely to Plaintiffs' violation of the Court's order. (Opp. at 14.) This contention is unavailing: Defendants seek dismissal not ***only*** because Plaintiffs failed to timely file their SAC but also because they failed to timely prosecute this Action and engaged in dilatory tactics throughout. (Br. at 8-10.)

As to the delay flowing specifically from their violation of the Court order, Plaintiffs miss the point. They assert that Defendants "identify no evidence lost, no

witness rendered unavailable, no discovery response missed in this action, and no trial date displaced during the delay." (Opp. at 14.) But *Poulis* "does not require 'irremediable harm,'" and courts find prejudice where, as here, "Plaintiffs' failure to respond to the Court's Orders has frustrated and delayed resolution of this action." *Mack v. Travelers Personal Ins. Co.*, 2022 WL 17480419, at *6 (M.D. Pa. Nov. 3, 2022) (R. & R.) (Mehalchick, then-C.M.J.), *adopted*, 2022 WL 17477099 (M.D. Pa. Dec. 6, 2022). Indeed, Plaintiffs' failure to litigate their claim and the resulting delay in resolving this Action are, in and of themselves, prejudicial. (Br. at 8 (citing *Bolus*, 2025 WL 1450545, at *4).)[2]

This Court's recent decisions in *Bolus* and *Shingara* are instructive. In *Bolus*, "the plaintiff's failure to litigate this claim, or to comply with court orders . . . wholly frustrate[d] and delay[ed] the resolution of th[at] action" and "particular[ly] prejudice[d]" the defendant, who had "already been compelled to respond [to] this same meritless claim previously" and was "now compelled by [plaintiff] to relitigate this issue" yet again. *Bolus*, 2025 WL 1450545, at *4. And in *Shingara*, the "[p]laintiffs' failure to respond to the Court's instructions . . . frustrated and delayed

---

[2] Regardless, the Opposition confirms that relevant data very likely ***has*** been lost since Plaintiffs disregarded the May 19 deadline. Plaintiffs acknowledge that after that date, the business systems of their now-defunct company Prohashing—which lent cryptocurrency to Genesis Global Capital through their fund, Cryptocurrency Management ("CM LLC")—"had been compromised," "could not safely be returned to service," and had to be rebuilt. (Opp. at 5; ECF No. 100-1 ¶ 4.)

resolution of th[e] action" and prejudiced Defendants by precluding them from "seek[ing] a timely resolution of the case." *Shingara*, 2026 WL 2883846, at *2; *see also Poulis*, 747 F.2d at 868 (finding prejudice where "defendant encountered lack of cooperation from the plaintiff in areas where the plaintiff should cooperate").

The same holds true here. This case was originally filed on January 2, 2025, almost two years ago. Defendants incurred significant additional expense due to Plaintiffs' delays, including having to brief motions to dismiss two complaints that Plaintiffs later withdrew (in each instance, ***after*** Defendants had already briefed their motions), as well as in opposing multiple procedural motions that Plaintiffs later withdrew and refiled, requiring Defendants to brief them yet again. Absent dismissal under Rule 41(b), Defendants—as in *Bolus*—will once more be "compelled to respond [to] this same meritless claim" by having to brief their Rule 12(b) motions to dismiss the SAC, *see* 2025 WL 1450545, at *4, and as in *Shingara*, Plaintiffs' delay and failure to comply with this Court's order have prevented "a timely resolution of the case," *see* 2026 WL 2883846, at *2. Accordingly, there can be no serious dispute that *Poulis*'s prejudice factor supports dismissal.

### C. Plaintiffs Have a History of Dilatoriness.

Plaintiffs' extensive and repeated delays establish a history of dilatoriness, warranting dismissal under *Poulis* and Rule 41(b). (Br. at 9-10.) Plaintiffs admit that "[a]n extensive delay can create such a history" and do not deny that their five-

month delay in filing the SAC was extensive. (Opp. at 12); *see also Bolus*, 2025 WL 1450545, at *4 (recommending dismissal after plaintiff failed to respond to a motion to dismiss filed four months earlier).[3] Nor can they seriously dispute that this five-month delay comes on top of the repeated delays they already caused by seeking four separate extensions in 2026 and tactically amending their complaints to evade dismissal on two occasions—after Defendants had already briefed motions to dismiss, no less. Indeed, Plaintiffs admit that they continued seeking extensions even after representing to the Court and Defendants they would not. (Opp. at 3.)

The Opposition, in fact, confirms Plaintiffs' history of delay. Plaintiffs note that on multiple occasions, they have moved for a shorter stay, only to withdraw their motion after Defendants expended time and resources to oppose it, and then filed a new motion seeking a much longer stay. (*Id.* at 13.) But that fact only highlights Plaintiffs' abusive and dilatory conduct. At base, this case is still at the pleading stage almost ***two years*** after Plaintiffs filed it because, at every turn,

[3] Plaintiffs cite *Briscoe v. Klaus* for the proposition that "conduct that occurs one or two times is insufficient to demonstrate a history of dilatoriness." (Opp. at 12 (citing *Briscoe*, 538 F.3d 252, 261 (3d Cir. 2008)).) But *Briscoe* itself confirms that the Court ***can*** find a history of dilatoriness based on "[e]xtensive ***or*** repeated delay or delinquency"—that is, repeated delay is not required. *Briscoe*, 538 F.3d at 260. Indeed, this Court dismissed plaintiff's claims in *Shingara* just three months after plaintiff, like Plaintiffs here, missed one deadline to file an amended complaint. 2026 WL 2883846, at *1. Regardless, as discussed, Plaintiffs have caused multiple, repeated delays—not merely the extensive five-month delay that flows directly from their violation of the Court's order.

Plaintiffs have employed tactics to send the case back to square one and prevent the Court from ruling on the merits of their claims. Indeed, Plaintiffs do not even dispute that they have caused extensive delay; they merely suggest that the fact that they violated only one Court-ordered deadline (albeit by five months) should "mitigate." (*Id.* at 12.) There is thus no dispute that this factor supports dismissal.

### D. Plaintiffs' Conduct Was Willful and in Bad Faith.

Plaintiffs do not dispute Defendants' showing that their conduct was, at the very least, intentional and willful. (Br. at 10-12.) To the contrary, Plaintiffs acknowledge that "[w]illfulness turns on intentional[ity]," (Opp. at 13), and they do not (and cannot) deny that their failure to file the SAC on May 19 was intentional.

Nor do Plaintiffs meaningfully dispute that their delay was in bad faith. Indeed, they concede that they did not even begin working on their SAC until July 2026 (*id.* at 4; ECF No. 100-1 ¶ 6)—***two months after*** it was due and ***four months after*** the Court granted them a 60-day stay to retain counsel and directed them, even failing that, to file the SAC pro se by May 19. (ECF No. 78.) Plaintiffs had more than adequate time to prepare a new complaint before the May 19 deadline; that they did not start working on it until well after the deadline had passed leaves no room to dispute that their conduct was in bad faith, which weighs strongly in favor of dismissal. *Shingara*, 2026 WL 2883846, at *3 ("Plaintiffs' failure to file an amended complaint, after receiving time to do so, demonstrates a complete indifference to

directives of the Court, giving rise to contumacious, bad-faith behavior").[4]

Remarkably, Plaintiffs offer ***no excuse*** for their tardiness—reinforcing an inference that they acted in bad faith. *See, e.g.*, *Roman v. City of Reading*, 121 F. App'x 955, 960 (3d Cir. 2005) ("Absence of reasonable excuses may suggest that the conduct was willful or in bad faith."), *cited favorably in Shingara*, 2026 WL 2883846, at *3. Plaintiffs admit that they were aware of the May 19 deadline and simply did not comply with it. (*Compare* Opp. at 1, 3 *with* Br. at 10-11.) They concede that before May 6 (the Court's deadline for obtaining counsel), they already had a "change in plan" and had decided not to retain counsel in this case, yet they do not suggest any reason why they did not begin working on the SAC themselves until two months after their filing deadline had elapsed. (Opp. at 8.) They acknowledge that their motion seeking to stay the May 19 filing deadline was ***never granted***, "did not extend the deadline," and did not authorize the self-help, five-month delay they gave themselves. (*Compare* Opp. at 7 *with* Br. at 11 & n.3.)[5] They

---

[4] This case is thus readily distinguishable from *Hildebrand v. Allegheny County*, cited by Plaintiffs, because, there, the docket was "administratively closed due to clerical error" and the delay was thus "caused by administrative confusion as much as anything else." 923 F.3d 128, 131, 135-36 (3d Cir. 2019). Likewise, this case bears no resemblance to *Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund*, where plaintiff moved slowly but did not miss any deadlines. 29 F.3d 863, 869 (3d Cir. 1994).

[5] That motion has now been explicitly dismissed. (ECF No. 106.) Accordingly, the third of the Opposition devoted to an unauthorized surreply in support of that extension motion is now irrelevant. (*See* Opp. at 7-10.)

concede that, contrary to what they told the Court, they opted ***not*** to pursue discovery in the New York Action after all, yet never updated the Court about that, either—notwithstanding that pursuing such discovery was the entire basis on which they had sought to stay the May 19 deadline. (*Compare* Opp. at 8-9 *with* Br. at 11-12.) Not only that, but their only purported explanation for failing to pursue that discovery—that discovery is expensive (Opp. at 9)—was surely known to them (or should have been, in any event) at the time they filed the stay motion in the first place.[6] Knowingly failing to comply with a Court order, based on an assertion known to be false and uncorrected, is textbook bad faith. *See, e.g.*, *Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co.*, 843 F.2d 683, 695 (3d Cir. 1988) (plaintiff's failure to comply with court deadlines of which it was aware and its false representation to opposing counsel "support[ed] the district court's finding of bad faith").

Unable to justify their violation of the Court's order, Plaintiffs list a series of unconnected events between June and October of 2026 that have absolutely nothing to do with this litigation or their claim. These include winding down their business in June (Opp. at 4), rebuilding its website in September and October (*id.* at 5), and settling unspecified claims with family members in October (*id.* at 5). Tellingly,

[6] Similarly, Plaintiffs admit they knew that the court in the New York Action had adjourned all deadlines ***months*** earlier in January 2026, which suggests that they also should have anticipated that restarting that proceeding to pursue discovery would be, to say the least, challenging. (Opp. at 8-9.)

these events all took place ***after*** Plaintiffs had already missed the Court-ordered May 19 deadline and accordingly cannot explain—let alone justify—their failure to file the SAC on time or even begin working on it before the deadline.[7]

Plaintiffs' violation of the Court's order is all the more inexplicable given that the SAC is substantively identical to their Original Complaint. (*Compare* ECF No. 1 *with* ECF No. 96.) As Plaintiffs acknowledge, the Court granted them a 60-day stay to retain counsel, in part, so that any new complaint would "focus and clarify the issues" in the Prior Proposed SAC, which added claims and allegations concerning an outlandish racketeering conspiracy. (Opp. at 6 (citing ECF No. 72).) But the SAC simply drops those additional claims and allegations, reverting in substance to what Plaintiffs had pled in the Original Complaint almost two years ago. Indeed, the various features that Plaintiffs contend are new to the SAC were all present in the Original Complaint. Both "identify each Plaintiff's assets" (*compare* Opp. at 7 *with* Original Complaint ¶ 117), "acknowledge[] Jefferies's ownership of CM's bankruptcy claim" (*compare* Opp. at 7 *with* Original Complaint ¶¶ 93, 94, 96),

---

[7] Plaintiffs also assert that they investigated unspecified facts underlying their claim in August and September (Opp. at 10), but—even if this assertion were true—such investigation post-dates the May 19 deadline and cannot justify Plaintiffs' untimely filing. In any event, if it ***is*** true that Plaintiffs did not investigate the factual underpinnings of their claim until August and September 2026, it begs the question of how they could represent—consistent with Rule 11—that their Original Complaint (filed January 2025), FAC (filed March 2025) and Prior Proposed SAC (filed January 2026) had evidentiary support. *See* Fed. R. Civ. P. 11(b)(3).

and "seek[] relief for the two Plaintiffs' own injuries, subject to offsets for amounts received for the same loss" (*compare* Opp. at 7 *with* Original Complaint ¶¶ 21, 96, 117).[8] There is simply no plausible reason why Plaintiffs could not have filed their SAC by the May 19 deadline, given that, in substance, it is the same as the Original Complaint they filed nearly two years ago.

In short, the overwhelming inference here is that Plaintiffs intentionally chose to violate the Court's order, knowing that choice was unjustifiable and based on an untruth, without ever correcting the misimpression they had created. Such conduct readily meets the definition of bad faith under *Poulis* and supports dismissal here.

**E. Lesser Sanctions Will Not Suffice.**

Defendants showed that lesser sanctions will not suffice because pro se litigants such as Plaintiffs typically cannot pay cost awards. (Br. at 12.) Plaintiffs do not dispute this. Instead, they argue that the Court should "set a firm schedule"— which is not a sanction at all. (Opp. at 17.)[9] Moreover, the Court already "set a firm

---

[8] Meanwhile, the SAC's allegations concerning "when Genesis activated trading for CM LLC, how an accepted quote fixed the price before settlement, and how an existing loan could be converted and rebooked" (Opp. at 6-7) are wholly immaterial to Plaintiffs' claim that non-party Genesis allegedly used a fraudulent balance sheet to induce non-party CM LLC to extend loans.

[9] When the Third Circuit considers alternative sanctions, it considers awarding costs to defendants. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002) (analyzing attorney's fees as an alternative sanction); *Poulis*, 747 F.2d at 869 (discussing the alternative of ordering plaintiff's attorney to pay defendant's costs "with an order that such costs are not to be passed on to the client, directly or
(….continued)

schedule" requiring Plaintiffs to file their SAC pro se by May 19. Plaintiffs ignored it. There is no reason to think that they will not do so again. *Shingara*, 2026 WL 2883846, at *3 ("The signs of dilatoriness exhibited in this case leads the Court not to expect compliance from Plaintiffs"). As in *Bolus*, this Court "counsel[ed] the plaintiff[s] on [their] obligations in this case," yet they "still ignore[d] [their] responsibilities," leaving "only the sanction of dismissal" "to ensure that this litigation progresses in an orderly fashion." *Bolus*, 2025 WL 1450545, at *5.

Plaintiffs also argue that the Court should expressly warn them that failure to comply with its orders could result in dismissal (Opp. at 17), but they do not and cannot claim to have been unaware that they could be penalized for ignoring the Court's order for five months. Regardless, a warning is not required. In *Poulis* itself, the Third Circuit found that lesser sanctions would not suffice, and there is no mention of the plaintiff receiving a dismissal warning. *See Poulis*, 747 F.2d at 865, 869 (dismissing action within a week of plaintiff missing a deadline that had already been extended); *see also Shingara*, 2026 WL 2883846, at *1 (dismissing action after plaintiff failed to file a timely complaint without issuing a separate warning). A warning would also serve no purpose because Plaintiffs suggest that, so long as they filed their complaint ***eventually*** and before Defendants sought relief, dismissal is

---

indirectly"). That is exactly why alternative sanctions are not available against pro se litigants—"an assessment of attorney's fees [is] not a serious consideration given [pro se plaintiff's] financial situation." *Emerson*, 296 F.3d at 191.

unavailable. (Opp at 17.) In essence, Plaintiffs argue that they should be given leave to file pleadings whenever they want, regardless of the deadlines, and should face no consequences. Such disregard for their obligations as litigants is exactly why dismissal is warranted here. Accordingly, there is no dispute that dismissal is the only appropriate sanction.

### F. Plaintiffs' Claim Lacks Merit.

As set forth in two rounds of prior motion to dismiss briefing, Plaintiffs' claim, which concerns transactions to which ***neither Plaintiffs nor Defendants*** were parties, completely lacks merit. (Br. at 12-13 (citing ECF Nos. 17, 37, 38, 52, 53).) Regardless, as Defendants argued—and Plaintiffs do not challenge—the "untested merits" of Plaintiffs' claims "standing alone, cannot prevent dismissal of a case for failure to prosecute." (Br. at 15 (quoting *Bolus*, 2025 WL 1450545, at *4).) *See also Shingara*, 2026 WL 2883846, at *3 (the merits of Plaintiffs' case "cannot save their case because they are now wholly noncompliant with their obligations as litigants"). Because every other factor supports dismissal here, the Court need not consider the supposed merits of Plaintiffs' claim on this Motion.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' Opening Brief, Defendants respectfully request that the Court dismiss Plaintiffs' SAC with prejudice pursuant to Rule 41(b).

Dated: New York, New York
November 11, 2026

Respectfully submitted,

**DAVIS POLK & WARDWELL LLP**

*/s/ Benjamin S. Kaminetzky*
Benjamin S. Kaminetzky (*admitted pro hac vice*)
Daniel J. Schwartz (*admitted pro hac vice*)
Matthew R. Brock (*admitted pro hac vice*)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
ben.kaminetzky@davispolk.com
daniel.schwartz@davispolk.com
matthew.brock@davispolk.com

– and –

**McCORMICK LAW FIRM**

*/s/ Austin White*
Austin White
PA312789
835 West Fourth Street
Williamsport, PA 17701
Telephone: (570) 326-5131
Facsimile: (570) 326-5529
awhite@mcclaw.com

*Attorneys for Defendants Digital Currency Group, Inc. and Barry E. Silbert*

**ARNOLD & PORTER KAYE SCHOLER LLP**

*/s/ Marcus A. Asner*
Marcus Asner (*admitted pro hac vice*)
Yiqing Shi (*admitted pro hac vice*)
250 West 55th Street
New York, New York 10019

Telephone: (212) 836-8000
Facsimile: (212) 836-8689
Marcus.Asner@arnoldporter.com
Yiqing.Shi@arnoldporter.com

– and –

**KLEHR HARRISON HARVEY BRANZBURG LLP**

/s/ *Joshua M. Link*
Joshua M. Link
1835 Market St., Suite 1400
Philadelphia, PA 19103
Telephone: (215) 569-3003
Facsimile: (215) 568-6603
jlink@klehr.com

*Attorneys for Defendant Michael Moro*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN H. SOKOLOWSKI and CHRISTOPHER H. SOKOLOWSKI,<br><br>Plaintiffs,<br><br>- against -<br><br>DIGITAL CURRENCY GROUP, INC., BARRY E. SILBERT, and SOICHIRO "MICHAEL" MORO,<br><br>Defendants. | Electronically Filed<br><br>Civil Action No. 4:25-cv-00001<br><br>Hon. Karoline Mehalchick<br>Hon. Martin C. Carlson<br><br>Complaint filed January 2, 2025 |

**CERTIFICATE OF COMPLIANCE WITH L.R. 7.8**

This brief complies with L.R. 7.8(b)(2) because it contains 3,527 words using the word count features of Microsoft Word in 14-point font size and Times New Roman Type Style.

DAVIS POLK & WARDWELL LLP

By: */s/ Benjamin S. Kaminetzky*
Benjamin S. Kaminetzky (*admitted pro hac vice*)

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
ben.kaminetzky@davispolk.com

*Attorneys for Defendants Digital Currency Group, Inc. and Barry E. Silbert*

**CERTIFICATE OF SERVICE**

I hereby certify that the attached Brief in Support of Defendants' Fed. R. Civ. P. 41(b) Motion to Dismiss and Request to Adjourn Deadline to File Fed. R. Civ. P. 12(b) Motion to Dismiss was electronically filed with the court and electronically served upon all counsel on November 11, 2026.

DAVIS POLK & WARDWELL LLP

By: *<u>/s/ Benjamin S. Kaminetzky</u>*
Benjamin S. Kaminetzky (*admitted pro hac vice*)

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
ben.kaminetzky@davispolk.com

*Attorneys for Defendants Digital Currency Group, Inc. and Barry E. Silbert*